UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MONSANTO COMPANY and | ) | |
| MONSANTO TECHNOLOGY LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:09CV00686 ERW |
| | ) | |
| E.I. DU PONT DE NEMOURS AND | ) | |
| COMPANY and PIONEER HI-BRED | ) | |
| INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Plaintiffs' Motion to Stay Discovery and for Separate Trial of Defendants' Antitrust Counterclaims [doc. #35]. The Court heard arguments from the Parties on this Motion on September 2, 2009.

**I.  BACKGROUND**

Plaintiffs Monsanto Company and Monsanto Technology LLC ("Plaintiffs") filed this lawsuit in May 2009 against Defendants E.I. du Pont de Nemours and Company and Pioneer Hi-Bred International, Inc. ("Defendants") for patent infringement, breach of contract, and unjust enrichment. Defendants responded with seven antitrust counterclaims. Some of these counterclaims depend on the validity and construction of the patents at issue in Plaintiffs' claims, specifically Defendants' allegations of patent fraud, sham litigation to enforce those patents, and misrepresentations concerning Plaintiffs' patent position. Additional antitrust counterclaims allege that Plaintiffs inserted anticompetitive restrictions into their licensing agreements with independent seed companies. Defendants' remaining antitrust claims are based on a Monsanto-Dow agreement that prohibits or penalizes Dow for permitting Pioneer to sub-license Herculex®

to independent seed companies, and an alleged "switching strategy" whereby Plaintiffs use new licensing agreements to shift independent seed companies from the current Roundup Ready® trait seed line in soybeans to Roundup Ready 2 Yield® to extend patent protection until 2020, action designed to prevent generic entry into the market before the patent for Plaintiffs' Roundup Ready® trait seed line expires.

## II.  DISCUSSION

Plaintiffs contend that staying discovery and trying Defendants' counterclaims separately would be more efficient and therefore more desirable because resolution of Plaintiffs' patent claims will moot or at least simplify many of Defendants' antitrust claims. Defendants argue that a stay is inadvisable for essentially three reasons: (1) because resolution of Plaintiffs' patent claims will not moot its antitrust claims involving the license restrictions, the alleged "switching strategy," and the Monsanto-Dow agreement; (2) because the delay will be prejudicial to Defendants in that Plaintiffs' "switching strategy" is currently causing economic harm to Defendants; and (3) because it would be more efficient to conduct discovery of all claims concurrently due to substantial overlap in the issues.

The Court has the discretion to order separate trials "for convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). District courts commonly bifurcate patent and antitrust claims, but this is not mandatory. *See, e.g.*, *Climax Molybdenum Co. v. Molychem, L.L.C.*, 414 F. Supp. 2d 1007, 1013-14 (D. Colo. 2005) ("[D]istrict courts often order separate trials of patent and antitrust claims."); *ASM Am., Inc. v. Genus, Inc.*, 2002 WL 24444, at *6 (N.D. Cal. 2002) ("It is a common practice in federal court to stay antitrust counterclaims until after the trial of the invalidity issue."). In determining whether separate trials are desirable, courts

consider factors such as efficiency, the separability of the issues, and fairness to the parties. *Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957, 964-65 (10th Cir. 1993).

The efficiency factor weighs in favor of bifurcation. A separate trial on Plaintiffs' patent claims has the potential of mooting a number of Defendants' antitrust claims. At a minimum, a trial on Plaintiffs' patent claims will simplify or eliminate Defendants' antitrust claims relating to sham litigation, fraud on the patent office, and misrepresentations of patent rights. Additionally, there is the possibility of simplifying those claims alleging that Plaintiffs' license restrictions are anticompetitive. The Court recognizes that these latter allegations also form the basis of Defendants' "switching strategy" theory, but the complexity of that claim also suggests that separate trials are warranted.

The "switching strategy" and Monsanto-Dow agreement claims present different factual issues that may be cumbersome and confusing to resolve in conjunction with the patent issues. The Monsanto-Dow agreement introduces an entirely new issue unrelated to the patent claims, which could have the effect of making a single trial unwieldy. Moreover, the "switching strategy" claim presents a significant risk of jury confusion. Defendants allege that certain of Plaintiffs' licensing practices, when viewed as a whole and in the context of monopoly power, violate § 2 of the Sherman Act even if those practices are permissible viewed individually. Having a jury resolve patent validity / invalidity issues contemporaneously with deciding if licensing agreements violate the Sherman Act – potentially requiring determinations that laypeople may perceive as contradictory – presents too many obstacles to fair and orderly disposition of complex litigation. *See Hewlett-Packard Co. v. Genrad, Inc.*, 882 F. Supp. 1141, 1158 (D. Mass. 1995) ("Antitrust issues are complex and . . . raise different issues and proof. Bifurcation therefore serves the interest of avoiding jury confusion."). Furthermore, the Court agrees with Plaintiffs that

Defendants' allegations of monopolization could bias the jury when it evaluates Plaintiffs' patent claims. *See Hunter Douglas, Inc. v. Comfortex Corp.*, 44 F. Supp. 2d 145, 154 (N.D.N.Y. 1999) (noting acceptance of such a "prejudice-from-a-'negative label' theory" in deciding whether to sever infringement and antitrust claims).

There is also little indication that granting a stay will be substantially prejudicial to Defendants. Plaintiffs correctly assert that Defendants could have brought many of these claims years ago, yet instead they waited until this litigation. Defendants are likewise correct that the "switching strategy" allegations relate to more recent conduct, but the Court concludes that the potential for confusion, discussed above, outweighs any prejudice that might result from bifurcating the claims. Moreover, the fact that Defendants did not bring an independent action concerning the "switching strategy" weakens their prejudice argument. *See ASM Am., Inc. v. Genus, Inc.*, 2002 WL 24444, at *6 (N.D. Cal. 2002) ("[Defendant's] allegation of irreparable harm rings somewhat hollow . . . in light of its failure to bring its antitrust claims against ASM independently.").

Although a separate trial for Defendants' counterclaims is appropriate, there is no reason to stay discovery related to the Monsanto-Dow agreement and the "switching strategy." District courts have considerable discretion in ordering discovery. *Hahn v. Star Bank*, 190 F.3d 708, 719 (6th Cir. 1999). There is no suggestion by either party that Defendants' claim concerning the Monsanto-Dow agreement will be affected in any way by resolution of Plaintiffs' patent claims. As discussed above, Defendants' "switching strategy" theory also does not hinge on the validity of Plaintiffs' patents, although it will require significant patent- and license-related discovery. Because these claims cannot be mooted by resolution of the infringement action, allowing discovery to proceed does not increase the potential that the parties will conduct discovery that

will ultimately prove unnecessary, and such a course will likely reduce delay in resolving all issues before the Court.

In sum, the Court concludes that a stay of discovery and a separate trial of Defendants' antitrust counterclaims is warranted. Discovery should proceed, however, on Defendants' antitrust counterclaims that will not potentially be eliminated or narrowed by resolution of Plaintiffs' patent claims, specifically, Defendants' claims related to the "switching strategy" and the Monsanto-Dow agreement.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Stay Discovery and for Separate Trial of Defendants' Antitrust Counterclaims [doc. #35] is **GRANTED, in part**, and **DENIED, in part**.

Dated this 16th day of September, 2009.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE