UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MONSANTO COMPANY and<br>MONSANTO TECHNOLOGY LLC,<br><br>                Plaintiffs,<br><br>    v.<br><br>E.I. DUPONT DE NEMOURS and<br>COMPANY AND PIONEER HI-BRED<br>INTERNATIONAL, INC.<br><br>                Defendants. | Civil Action No. 4:09-CV-00686-ERW |

**OPPOSITION TO ORAL MOTION TO COMPEL
PRE-*MARKMAN* DOCUMENT PRODUCTION**

Plaintiffs Monsanto Company and Monsanto Technology LLC (collectively, "Monsanto") file this opposition to Defendants' un-noticed, oral motion made at the June 21, 2010 hearing, seeking to compel production of certain further categories of documents from prior litigations (the "Prior Litigations") asserting the patent-in-suit, U.S. Patent No. RE39,247 (the "'247 RE Patent"), and its predecessor, U.S. Patent No. 5,633,435 (the "'435 Patent'). The oral motion concerns only document production on an expedited, pre-Markman basis and not the ultimate production in the main case as a whole.

As an initial matter, Monsanto objects to the oral motion as an improper means to raise a discovery dispute under the Federal Rules and the Local Rules.[1]  As to the substance of the

---

[1] Defendants' oral motion to compel discovery made without notice to Monsanto and without a proper meet and confer violates numerous Court Rules, including (i) this Court's local rule regarding Discovery Motions ("Hearings on all discovery motions are set by the Court to assure case management deadlines are observed."), (ii) Local Rule 37-3.04 ("The Court will not consider any motion relating to discovery and disclosure unless it contains a statement that movant's counsel has conferred in person or by

(continued…)

- 1 -

motion, Monsanto has already made an extensive production of over 7,500 pages of documents from the Prior Litigations, based upon a written agreement between the parties regarding what types of documents from those litigations needed to be produced pre-Markman. In its oral motion, Defendants did not apprise the Court of the prior written agreement or their requested supplementation thereto, both of which were agreed to by Monsanto in a good faith gesture to facilitate this process. Importantly, Defendants make no complaint about Monsanto's full compliance with the parties' agreements regarding pre-Markman production. The oral motion, instead, appears to be asking for more than what was agreed to by adding completely new categories of documents nearly five months after the parties' original agreement, and six weeks after the May 3 production deadline in the Court's Scheduling Order.

Defendants' Motion should be denied because (i) it is in contravention of the written agreement reached by the parties after extensive negotiation as to the proper scope of the pre-Markman production, and (ii) the requested categories of documents are not relevant to claim construction.

## BACKGROUND

Defendants' oral motion is now the fourth attempt by Defendants to change the parties' agreement regarding the proper scope of pre-Markman discovery. This Court's March 3, 2010 Scheduling Order set a May 3, 2010 deadline for "Production of specific patent-related documents for Markman claim construction." (D.I. 178, pg. 1). Anticipating that the scheduling order would include such a date, Monsanto began negotiating with Defendants in January regarding the precise documents that would be produced on a pre-Markman basis.

---

telephone …"), and (iii) Rule 78-4.02 ("A party requesting the presentation of oral argument or testimony in connection with a motion shall file such request with its motion …").

The relevance of the Prior Litigations to claim construction was a main disputed issue and was the focus of much of the negotiations. Monsanto's position was that most of the documents sought by Defendants relating to the Prior Litigations had no relevance to claim construction.

In an effort to compromise, however, Monsanto sent Defendants a letter dated January 29, 2010, stating specifically what categories of documents it would produce pre-<u>Markman</u>, including the following list of the specific types of documents that would be produced from Prior Litigations involving the '247 RE patent:

- Contention interrogatory responses by Monsanto on issues pertaining to infringement or validity

- <u>Markman</u> briefing

- Inventor depositions of Monsanto employees relating to work disclosed in the patent-in-suit

- Summary judgment motions on issues of validity or infringement

- Any court orders on such summary judgment motions, or claim construction orders.

Ex. 1.

When Defendants lodged no objection to the list in Monsanto's January 29 letter, Monsanto undertook to collect the documents. But in early-April, nearly three months after Monsanto reasonably concluded that an agreement had been reached, Defendants wrote and sough to change what Monsanto thought had been agreed upon months earlier. In this first change, Defendants sought to add to the list expert reports for experts who submitted declarations in support of motions for summary judgment. Ex. 2, Spears April 6, 2010 email. Despite this request being made less than a month before the production deadline, Monsanto, again in good faith, agreed. <u>Id.</u>

Then, on April 7, 2010, Defendants sought to again change what Monsanto thought had been agreed upon, making more red-lined additions to the original January 29 list. Notably, Defendants continued to agree that only cases involving the '247 RE patent-in-suit were relevant. Id., Fleming April 7 e-mail. In this e-mail, Defendants' counsel wrote "***Please confirm you agree and we are done with this***." Id. (emphasis added).[2] Despite these additions being so close to the May 3 production deadline, Monsanto's counsel agreed, stating "[t]his looks fine to me as to the scope of the pre-Markman production." Id., Spears April 9 e-mail.

On April 21, 2010, however, Defendants told Monsanto on the phone that the pre-Markman production should not be limited to cases involving the '247 RE patent, despite their express written agreement to the contrary, but should be expanded to include cases involving its predecessor, the '435 patent. This third attempt by Defendants to change the January 29 list was far more dramatic than the prior two, because there are many more cases where the '435 patent was asserted, and the files are much older. Indeed, many of the files were warehoused in New Orleans when Hurricane Katrina hit. Moreover, this significant change was proposed less than two weeks before the May 3 deadline, making production by that date impossible. Regardless, Monsanto yet again agreed to Defendants' third change, stating in a May 14, 2010 letter that it would make the requested production of the specified documents from prior '435 patent litigations by June 14, which Monsanto has since completed. Ex. 3, pg. 5.

Two-and-a-half months later, at the June 21, 2010 hearing, without any notice to Monsanto, Defendants, for the first time, requested to the Court a fourth change to the January 29 list of pre-Markman documents. In addition to the many categories of Prior Litigation

---

[2] Defendants' revisions included brackets making clear that they were reserving the right to seek the production of further documents from the Prior Litigations in the main case, as opposed to what was to be contained in the pre-Markman production.

documents that Monsanto has already produced, Defendants now seek an order compelling production of all (i) pleadings, (ii) deposition transcripts, (iii) expert reports, (iv) test data, and (v) data to determine infringement from the Prior Litigations.

**ARGUMENT**

**I. DEFENDANTS' ORAL MOTION VIOLATES THE AGREED SCOPE OF THE AGREED PRE-<u>MARKMAN</u> PRODUCTION.**

The parties reached a written agreement regarding the scope of pre-<u>Markman</u> production. Defendants have, more than once, unilaterally modified it. In an effort to compromise and expedite the process, Monsanto agreed to such changes. Defendants' latest attempt to change the parties' agreement, this time in the form of an oral motion to compel discovery without any meet and confer, is inappropriate. It neither complies with the parties' agreement on the scope of discovery, nor the Federal or Local Rules regarding the process for raising discovery motions. Monsanto's opposition here simply seeks to hold Defendants to their word and to the procedural rules of this Court.

On April 7, 2010, Defendants prepared a revised list of documents to be produced on a pre-<u>Markman</u> basis from the Prior Litigations and represented "***Please confirm you agree and we are done with this***." Ex. 2, Fleming April 7 e-mail (emphasis added). Monsanto promptly confirmed that it agreed. <u>Id.</u>, Spears April 9 e-mail. The parties and the Court, therefore, should heed this agreement. This was a binding written agreement between the parties as to the scope of discovery, and it should be enforced as such by this Court. Fed. R. Civ. P. 29(b); <u>Jetz Midwest, Inc. v. Kaplan Higher Educ. Corp.</u>, 2009 WL 2568065 (D. Neb. Aug. 19, 2009); <u>cf. Fenix v. Finch</u>, 436 F.2d 831, 837 (8th Cir. 1971) (holding that "[t]he general rule is that parties are bound by stipulations voluntarily made . . . .").

While holding Defendants to their word should, by itself, justify denial of Defendants' Motion, denial is even more appropriate here in view of the prejudice that Defendants' tactics cause Monsanto. Under the Court's Scheduling Order, the parties should now be focusing their claim construction efforts on identifying the claims in dispute and negotiations and/or briefing the proposed constructions for those claims. By repeatedly going back to the well for more documents (most of which have little or no relevance to claim construction), Defendants create a distraction from the task at hand. Going back to these files multiple times to collect documents also adds unnecessary expense which would not be incurred if Defendants honored the parties' initial agreement. Defendants' dilatory tactics are not appropriate, particularly in light of their repeated statements of the need to move this litigation forward and maintain a very aggressive schedule.[3]

## II. DEFENDANTS HAVE MADE NO SHOWING FOR HOW THE REQUESTED DOCUMENTS ARE RELEVANT TO CLAIM CONSTRUCTION.

If the Prior Litigation documents requested at the June 21 hearing had such high relevance to claim construction issues, Defendants would have promptly sought to include them in the January 29 list, not at an oral motion six months after the fact. Because Defendants are seeking production of these documents, it is Defendants' burden to explain their relevance. Moreover, at this stage, the Court is only addressing pre-<u>Markman</u> discovery, which means that the requested documents must be relevant to an issue of claim construction. The lack of relevance of the additionally-listed documents to claim construction, considering the documents

---

[3] More fundamentally, this is not how discovery agreements should be reached and enforced in good faith during the course of a litigation. Once a compromise is reached on a disputed discovery issue, that should be the end of the dispute. The Court should not be bothered with it, absent some good cause. Defendants, however, seek to employ a different tactic, which is to reach "compromise," obtain the documents, and then renege on the agreement and ask for more. Were Defendants permitted to conduct discovery in this fashion, it would jeopardize the ability for Monsanto to comprise on any discovery issue.

which Monsanto has already produced, is an independent basis to deny the Defendants' oral motion.

Not all documents from a prior litigation involving the patent-in-suit would be relevant to claim construction. That is why Monsanto negotiated a specific, agreed list of documents from the Prior Litigations that would be produced pre-<u>Markman</u>. Monsanto has already produced, as to the '247 RE and '435 patents:

- its contention interrogatories pertaining to infringement or validity,
- any <u>Markman</u> briefing,
- deposition transcripts of Monsanto employees related to work disclosed in the patent-in-suit,
- summary judgment motions on issues of validity or infringement,
- court orders on such summary judgment motions,
- any claim construction orders, and
- expert reports and deposition transcripts from experts who submitted declarations supporting summary judgment motions.

It should be noted that while there have been many dozens of such Prior Litigations, they have been against individual farmers, and have been much more truncated in nature than a typical patent litigation. For example, none of these prior cases involved a formal <u>Markman</u> hearing or claim construction process for the '247 RE or '435 patents. In view of what has already been produced, what Defendants request now is not reasonably calculated to lead to the discovery of any facts pertinent to claim construction.

<u>All Pleadings</u>: Pleadings in patent cases are typically notice-type pleadings which identify the accused infringer, the patent-in-suit, and the accused product. The pleadings do not

state substantive positions relevant to claim construction. Those positions would typically be contained, if at all, in the other types of documents that have already been produced. Answering pleadings by Defendants would have even less bearing on claim construction because they are not statements of Monsanto. Accordingly, the pleadings from the many dozens of Prior Litigations would not be relevant to claim construction, and in any event, are generally publically available.

<u>All Deposition Transcripts</u>: Monsanto has already produced (i) deposition transcripts of Monsanto employees related to work disclosed in the patent-in-suit, and (ii) deposition transcripts from experts who submitted declarations supporting summary judgment motions. In view of what has already been produced, Defendants' request for "all" deposition transcripts is not reasonably calculated to lead to the discovery of any facts pertinent to claim construction. For example, no facts relevant to claim construction would be expected from a deposition of (i) a farmer accused of infringement, (ii) a damages expert, or (iii) witnesses not testifying as to patent issues.

<u>All Expert Reports</u>: Monsanto has already produced expert reports from experts who submitted declarations supporting summary judgment motions, which were the only expert reports requested when Defendants sought their first change to the January 29 list. In view of what has already been produced, Defendants' request for "all" expert reports is not reasonably calculated to lead to the discovery of any facts pertinent to claim construction. For example, no facts relevant to claim construction would be expected from an expert report for (i) a damages expert, (ii) a technical expert who is not opining on any issue pertaining to claim construction, or (iii) any expert reports submitted by the defendant in the case.

Test Data On Accused Products in Prior Litigations: What tests were done on the accused products in the Prior Litigations has nothing to do with claim construction in this case. While it is difficult to ascertain what Defendants are thinking as to relevance (because there was never a meet and confer on this point), Defendants may assert that any test Monsanto did in the Prior Litigations is a tacit admission that the claims require performance of that test to show infringement. This would be pure conjecture, far removed from any proper claim construction analysis. Why Monsanto performs any particular test in a litigation is dependent upon the circumstances of that litigation. Indeed, the circumstances in the Prior Litigations are often materially different than what exists here. In the Prior Litigations, the defendants often take the position that they do not have 40-3-2 Roundup Ready® soybeans in their fields. Here Defendants stipulate that the accused products contain the 40-3-2 soybean event, which is established in both Monsanto's and Defendants' regulatory filings as containing an EPSPS gene that falls squarely within the claims of the '247 RE patent.

### III. WHETHER THE REQUESTED DOCUMENTS SHOULD BE PRODUCED IN THE MAIN CASE (AS OPPOSED TO PRE-<u>MARKMAN</u>) IS NOT RIPE.

The issue before the Court in Defendants' oral motion is directed only to what needs to be produced on an expedited pre-<u>Markman</u> basis. This issue is not what needs to be produced as part of the overall production in the main case. This is an important distinction for two reasons. First, were the Court to order this production as part of the pre-<u>Markman</u> production, Defendants might attempt to use any ordered production as a basis to delay the <u>Markman</u> process, despite the fact that any such delay would be entirely Defendants' own doing.

Second, the parties are now engaging in an extensive meet and confer process as to the proper scope of document production for the main case. Monsanto recognizes that the Defendants put a "placeholder" in the pre-<u>Markman</u> agreement to request that additional

documents be produced from the Prior Litigations in the main case. What such additional documents need to be produced (if any) is an issue that is being negotiated between the parties now. At a June 16, 2010 in-person meet and confer in Washington D.C., Defendants agreed to give Monsanto a list specifically identifying the additional such Prior Litigation documents that Defendants think they are entitled to have in the main case, and Monsanto agreed to consider that list and get back to Defendants with a response. Notably, despite discussing this exact issue on June 16, Defendants never mentioned a desire to bring the issue before the Court at the June 21 hearing, and still have not provided the requested list to Monsanto (unless the list provided at the June 21 hearing was intended as the complete list).

Addressing discovery as to the case as a whole, therefore, is not now ripe because the parties have not yet reached a disagreement in the meet and confer process. Granting Defendants' motion would further have a tremendous chilling effect on that process, for the reasons stated above. In short, part of the motivation for compromising on a discovery dispute is to obtain resolution with the knowledge that no further documents need be produced.

## CONCLUSION

Monsanto has worked diligently and in good faith, in accordance with this Court's Rules, to reach discovery compromises with Defendants. Defendants' oral motion to compel, without any meet and confer, violates this Court's Rules. Additionally, there has been no showing that the newly-requested documents have any relevance at the pre-<u>Markman</u> stage. For the reasons stated above, Defendants' oral motion made at the June 21 hearing should be denied.

Dated: June 24, 2010

Respectfully submitted,

HUSCH BLACKWELL SANDERS LLP

By: /s/ Joseph P. Conran
Joseph P. Conran, E.D. Mo. #6455
joe.conran@huschblackwell.com
Omri E. Praiss, E.D. Mo. #35002
omri.praiss@huschblackwell.com
Greg Gutzler, E.D. Mo., #84923
greg.gutzler@huschblackwell.com
Tamara M. Spicer, E.D. Mo. #122214
tamara.spicer@huschblackwell.com
Steven M. Berezney, E.D. Mo. #499707
steve.berezney@huschblackwell.com
190 Carondelet Plaza, Suite 600
St. Louis, MO  63105
Telephone:  314.480.1500
Facsimile:  314.480.1505

WINSTON & STRAWN
Dan K. Webb
dwebb@winston.com
Todd Ehlman
tehlman@winston.com
35 W. Wacker Drive, Suite 4200
Chicago, IL 60601
Telephone:  312.558.5600
Facsimile:  312.558.5700

John J. Rosenthal
Matthew A. Campbell
1700 K Street, N.W.
Washington DC 20006
Chicago, IL 60601
Telephone:  202.282.5000
Facsimile:  202.282.5100

ARNOLD & PORTER LLP
Anthony Franze
anthony.franze@aporter.com
555 Twelfth Street, N.W.
Washington, DC 20004
Telephone:  202.942.5000
Facsimile:  202.942.5999

- 11 -

SLC-6102365-1

        MCDERMOTT WILL & EMERY LLP
Steven G. Spears
sspears@mwe.com
1000 Louisiana Street, Suite 3900
Houston, TX  77002
Telephone:  713.653.1700
Facsimile:   713.739.7592

COVINGTON & BURLING LLP
Kurt G. Calia
kcalia@cov.com
1201 Pennsylvania Avenue, NW
Washington, DC  20004-2401
Telephone:  202.662.5602
Facsimile:   202.662.6291

*Attorneys for Plaintiffs Monsanto Company and Monsanto Technology LLC*

## CERTIFICATE OF SERVICE

       The undersigned hereby certifies that on the 24th day of June, 2010, the foregoing was filed electronically to the Clerk of Court for the United States District Court Eastern District of Missouri, Eastern Division and served by ECF notice by operation of that Court's electronic filing system upon the following:

    Andrew Rothschild, Esq.
    C. David Goerisch, Esq.
    LEWIS, RICE & FINGERSH, L.C.
    500 N. Broadway, Suite 2000
    St. Louis, MO  63102

    Leora Ben-Ami, Esq.
    Thomas F. Fleming, Esq.
    Christopher t. Jagoe, Esq.
    KAYE SCHOLER LLP
    425 Park Avenue
    New York, NY  10022

    Donald L. Flexner, Esq.
    BOIES, SCHILLER & FLEXNER LLP
    575 Lexington Avenue, 7th Floor
    New York, NY  10022

    James P. Denvir, Esq.
    Amy J. Mauser, Esq.
    BOIES, SCHILLER & FLEXNER LLP
    5301 Wisconsin Avenue, N.W.
    Washington, DC  20015

*Attorneys for Defendants*

                                                                                             /s/ Joseph P. Conran