# EXHIBIT 3

# WINSTON & STRAWN LLP

214 NORTH TRYON STREET
CHARLOTTE, NORTH CAROLINA 28202-1078

35 WEST WACKER DRIVE
CHICAGO, ILLINOIS 60601-9703

43 RUE DU RHONE
1204 GENEVA, SWITZERLAND

99 GRESHAM STREET
LONDON EC2V 7NG

333 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-1543

1700 K STREET, N.W.
WASHINGTON, D.C. 20006-3817

(202) 282-5000

FACSIMILE (202) 282-5100

www.winston.com

4 STASOVOY ULITSA
119071 MOSCOW, RUSSIAN FEDERATION

200 PARK AVENUE
NEW YORK, NEW YORK 10166-4193

ONE RIVERFRONT PLAZA
NEWARK, NEW JERSEY 07102-5401

25, AVENUE MARCEAU
CS 31621
75773 PARIS CEDEX 16

101 CALIFORNIA STREET
SAN FRANCISCO, CALIFORNIA 94111-5802

JOHN J. ROSENTHAL
(202) 282-5785
jrosenthal@winston.com

May 14, 2010

Cynthia Christian
Boies, Schiller & Flexner LLP
530 Wisconsin Avenue, N.W.
Washington, D.C. 20015-2015

Re: Monsanto Co. vs. E.I. DuPont de Nemours & Co.,
Case No. 09-CIV-0686-ERW (E.D. Mo.)

Dear Cynthia:

I am writing in response to your letter of May 5, 2010 regarding the outstanding issues between Monsanto and DuPont relating to the ESI Stipulation. We are also in receipt of your motion.

We strongly disagree with your characterization that Monsanto has "frustrated efforts to finalize the ESI Stipulation." We also disagree with the statements and hyperbole in your motion, to which we will file an opposition, if necessary. We have worked for weeks/months in an effort to reach a reasonable and workable discovery plan.

We prefer the path of good faith cooperation between the parties rather than time-consuming motion practice and seek your participation in a conference to address any outstanding issues. There is no point in debating why we have not reached a final agreement. We should strive to make an effort to reach accommodation here rather than encumber the District Court with the pending motion. To that end, Kyle McClain has placed a call to Justin Miller to request one final conference to bring these issues to a close with client representatives present. I believe having the clients present will further the goal of reaching a final agreement.

Boies, Schiller & Flexner LLP
May 14, 2010
Page 2

With this said, let me address the substance of the pending open issues:

A.  **ESI Stipulation Paragraph 1.**

We have said for some time that we cannot agree with your description that the only issue as to paragraph 1 of the ESI stipulation has to do with subsection (b). To the contrary, issues remain with all three subparagraphs regarding the scope of preservation and discovery.

**Contract Claims Discovery.** As to subparagraph (a) on the contract claims, we cannot agree that discovery should be limited to documents created through May 4, 2009. The breach is ongoing and, therefore, "relevant information concerning acts that occurred subsequent to the filing of the complaint may also be an appropriate subject of discovery, under either the old or the new standard of relevance for discovery purposes." *Moore's Federal Practice*, 3d. §26.41[12] at 26-200 (emphasis added). Many courts have recognized and upheld this principle.[1] Your assertion that there should be no discovery after May 4, 2009 is simply not supportable or reasonable. In fact, after being directed to the cases referenced herein, your arbitration team backed away from this same position. In an effort to reach a compromise on paragraph 1(a), we suggest that May 4, 2009 be the general cutoff, but that the parties produce a discrete set of documents created after that date. We have set forth this list of discrete categories in the attached revisions to the ESI Stipulation. *See* Attachment A hereto.

**Patent Claims Discovery.** As to subparagraph (b) on the patent claims, we have tried in earnest to reach a compromise on the scope of patent discovery prior to January 1, 2004. Those repeated efforts have been rejected. In this regard, you are insisting that Monsanto engage in overbroad preservation back to 1983, but written proposals you have made did not include an agreement to preserve documents relating to: (i) defendants' genetic analysis of the caused products; (ii) defendants' analysis of the '247 patent; or (iii) defendants' field work relating to OGAT. We will endeavor to again set forth what we believe to be a reasonable scope of discovery on the patent issues, which is also set forth in the attached revisions to the ESI Stipulation. In terms of documents created after May 2009, Monsanto is certainly entitled to evidence relating to the research, development, testing, making, using, selling and marketing of

---

[1] *Carlson Cos. v. Sperry & Hutchinson Co.*, 374 F. Supp. 1080, 1102 (D. Minn. 1974) (plaintiffs were entitled to "any documents coming into existence after the filing of the complaint" – especially since "various counts in the complaint alleged continuing violations."); *U.S. v. City of Torrance*, 164 F.R.D. 493, 495 (C.D. Cal. 1995) (citing *Carlson* and holding that documents "which bear a date after the filing of a complaint may relate to events occurring prior to the filing of the complaint"); *Lefkowitz v. Duquesne Light Co.*, No. 86-1046, 1988 WL 169273, at *1 (W.D. Pa. June 14, 1988) (citing to *Carlson* and holding that "defendants cannot expound a blanket relevance objection to all documents generated after the filing of the lawsuit. If a requested document is relevant to the subject matter of the lawsuit, it is discoverable."); *Southwest Hide Co. v. Goldston*, 127 F.R.D. 481, 483-4 (N.D. Tex. 1989) (rejecting "post complaint conduct objection" because "[t]here is no per se rule barring discovery regarding events which occurred after the date the pending action was filed"); *Dart Drug Corp. v. Corning Glass Works*, 480 F. Supp. 1091, 1107 (D. Md. 1979) (citing *Carlson* and holding that "[d]iscovery as to materials produced after the filing of the complaint is proper where the materials are relevant to plaintiff's claims").

**WINSTON & STRAWN** LLP

Boies, Schiller & Flexner LLP
May 14, 2010
Page 3

the infringing products after the filing of the complaint, together with other documents specified in the attached draft ESI stipulation.

**Antitrust Counterclaims Discovery.** Regarding subparagraph (c) on the scope of antitrust discovery, we are not inclined to agree to an open-ended cutoff for the antitrust issues. We agree that in light of the bifurcation of the contract/patent issues and the majority of the antitrust issues, preservation should be a forward-looking obligation on the antitrust issues. Moreover, as to the two non-stayed antitrust issues (the "switching strategy" and the Dow issues), we certainly agree that – like the breach of contract issues – certain categories of documents after May 2009 should be produced. We do believe, however, that the antitrust discovery during this first phase of discovery should not be open-ended after May 2009 due to obvious burden issues. In an effort to reach a compromise, we are making a proposal in the attached stipulation regarding those areas of antitrust discovery – not subject to the stay order – that should be subject to discovery for the period after May 2009.

**B.     ESI Stipulation Paragraph 26.**

We had several discussions about producing documents from prior productions. We did agree in our telephone conversation that producing from these legacy productions should not relieve a party from producing the ESI with its associated metadata if the same document was also available from the relevant custodian's files searched as part of a party's production in this matter. We deleted the sentence because the obligation to produce from the original documents is captured by the language of the 1st sentence in the paragraph and, thus, the addition was not necessary. If you feel the language is necessary, we would suggest the following revision:

> Production of a document or ESI (regardless of format) from a prior litigation does not relieve any party hereto from the obligation to reproduce that same document or ESI (with agreed upon metadata) to the extent such is a potentially responsive record within the files of a custodian identified in paragraph 7 hereto.

**C.     Search Terms re DuPont's Documents**

You are correct that we are down to two terms with respect to the DuPont search terms. We would note that we have reached an agreement relatively easily on the DuPont search terms because we largely provided you one set of comments to those terms, as compared to the multiple sets of comments and additions offered in the context of the Monsanto proposed terms.

As to the first term, GLG or Greenleaf Genetics is DuPont's licensing joint venture with Syngenta. Certainly, documents relating to GLG go well beyond the issues of licensing, violation or germplasm as suggested by your proposed limitations to those terms. Despite asking, you have not provided any information as to how or why you believe the term "GLG,"

**WINSTON & STRAWN** LLP

Boies, Schiller & Flexner LLP
May 14, 2010
Page 4

"Greenleaf" or "Greenleaf Genetics" is overbroad in the context of the 50 custodians that will be searched. Instead, your response was simply that you would only provide that information if Monsanto would provide similar information relating to the outstanding terms at issue in the Monsanto search terms. Please note there are 152 Monsanto-related terms and phrases that remain in dispute -- not two. If there were just two, we would be happy to run searches to demonstrate why these terms are overbroad and how they could be limited. Nonetheless, in an effort to reach a resolution of this issue, we would suggest the following search term:

> (GLG or Greenleaf) and (*licens* or distribut* or sublicens* or subdistribut* or violat* or germplasm* or agree* or stack* or combin* or compl* or Monsanto or Herculex) or ("Roundup Ready" or RR* or 40*3*2 or EPSP or CP4 or NK*603 or NK603 or (post-patent) or yield)

As to the second term, Monsanto originally proposed the term or phrase: ("field test" or "laboratory test" or research or marketing or "product development") and ("Optimum GAT" or "GAT" or "O-GAT" or OGAT or "356043"). As we previously indicated, these terms go to the very heart of our contract and patent claims. We do not believe that it is appropriate to limit these search terms by changing the "and" to a "/30." Nonetheless, in an attempt to reach a compromise, we suggest the following term:

> ("field test*" or "lab* test*" or research or "r&d" or market* or ("product development")) /45 ("Optimum GAT" or "GAT" or "O-GAT" or OGAT or "356043").

D.   **Search Terms re Monsanto's Documents**

We have tried on numerous occasions to reach an agreement on the search terms to be applied to Monsanto's documents. At each turn, defendants added numerous additional terms. In this regard, we originally offered 63 terms or phrases. In your latest proposal, you are at 136 agreed terms or phrases and 152 additional terms or phases that remain in dispute, for a total of 288 terms or phrases that you are requesting to be applied to Monsanto's documents.

As to the 152 disputed terms or phrases, many of these were added during later exchanges. While we have withdrawn objections to many of these additional terms or made reasonable counter-proposals, we have found that defendants have generally refused to narrow the scope of unduly broad terms. In an effort to close the gap, however, are making the attached counter-proposals regarding many of these outstanding 152 terms or phrases. *See* Attachments B & C hereto. As to these counter-proposals, we reserve the right to have these revised terms tested against company data to determine whether the terms will result in an overwhelming amount of hits and, therefore, reserve the right to continue the discussion as to some of these additional terms. Nonetheless, we hope that our counter-proposal will lead to some movement

**WINSTON & STRAWN** LLP

Boies, Schiller & Flexner LLP
May 14, 2010
Page 5

on your part to either eliminate or narrow the reaming terms in dispute in an effort to reach a final agreement.

### E. *Markman* Discovery

The motion you filed also raises a number of issues with respect to Monsanto's *Markman* production that we would like to address here. We note that on many of these issues, there was no "meet and confer" prior to DuPont's filing of its discovery motion.

First, defendants claim that we did not produce complete file histories. That is not correct. We produced the certified file histories for all of the applications (with the exception of the '537 application, which the PTO has lost and the '440 application, which the PTO has yet to provide). In addition, except for the lost '537 application, we also produced "uncertified" copies for all of the applications at issue, including the '440 application, and as to the lost '537 application, we produced the file history materials that are available for that application. Your instant motion offers no explanation as to why defendants deem the production incomplete or which specific file histories they believe to be deficient. If you would explain your concern, we would be happy to address it.

Your motion also maintains that Monsanto only produced selected documents from the '247 RE litigation. This was done pursuant to a written agreement specifying the selected documents that were to be produced.

Your motion also indicates that Monsanto "failed to produce any hearing or deposition transcripts" from the '247 RE cases. The only such transcript that falls within the agreed scope of discovery is the hearing transcript from *Trivette*, which you already have as evidenced from the summary judgment briefing. If you would like us to reproduce that to you, we would be happy to do so.

Defendants also maintain that Monsanto should produce documents "pre-*Markman*" from the '435 patent cases. In Steven Spears' letter to you dated January 29, 2010, and after substantial discussion on the issue, we defined for you the categories of documents that Monsanto would be willing to produce on an expedited basis prior to the *Markman* hearing. That letter defined specific types of documents that Monsanto would be willing to produce from prior litigations and explicitly limited those prior litigations to ones involving the assertion of the '247 RE patent, which is the patent in suit here. Many months later, you wrote to us on April 7, 2010 with a slightly revised statement of the proper scope of pre-*Markman* discovery to which we subsequently agreed. Notably, that agreed-upon discovery for pre-*Markman* purposes based upon your own correspondence was likewise limited to cases asserting the '247 RE patent and did not include cases asserting the predecessor '435 patent. However, after reaching an agreement on these issues and just two weeks before the production was due, you requested in an April 21 phone conversation that the pre-*Markman* production also include the same category of

WINSTON & STRAWN LLP

Boies, Schiller & Flexner LLP
May 14, 2010
Page 6

litigation documents for cases asserting the '435 patent, and agreed that we would have additional time beyond the May 3, 2010 date in the scheduling order to make that production.

Upon consideration of these issues, we cannot agree that the subject documents related to cases in which the '435 patent was asserted are properly within the scope of the Court's order requiring pre-*Markman* production by May 3, 2010 because that was not the written agreement of the parties, and you did not provide sufficient notice of your request for those documents to be produced by May 3. However, as an accommodation to your request, we will agree to produce by June 14, 2010, the categories of documents addressed in my January 29, 2010 letter as to prior litigations involving the '247 RE issue patent, for cases involving assertions of the '435 patent as well. As stated in our prior letter, we do not agree that any of these documents are pertinent to any claim construction issue in this case, but are instead making this production as an accommodation and to avoid the need for the Court to address this issue.

As I indicated above, we suggest that the parties have one additional conference call with client representatives in an effort to reach a global resolution of these issues or at least narrow the issues to be addressed by the Court. We are available any day next week should defendants be willing to have such a dialogue.

Sincerely,

John J. Rosenthal

cc: Kyle McClain
    Thomas Fleming
    Greg Gutzler
    Steven Spears
    Amy Mauser