**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **MONSANTO COMPANY, and** ) <br> **MONSANTO TECHNOLOGY LLC** ) <br> ) <br> **Plaintiffs,** ) <br> ) <br> **v.** ) <br> ) <br> **E.I. DUPONT DE NEMOURS and** ) <br> **COMPANY and PIONEER HI-BRED** ) <br> **INTERNATIONAL, INC.,** ) <br> ) <br> **Defendants.** ) <br> ) | Case No. 4:09-cv-00686(ERW) |

**MOTION TO MODIFY THE SCHEDULING ORDER**

Plaintiffs Monsanto Company and Monsanto Technology LLC (collectively,

"Monsanto") respectfully request a modification of the pre-trial and trial schedule set forth in the

Court's Case Management Order, dated March 3, 2010 (Dkt. # 178).  Monsanto seeks a 60-day

extension of the deadline for the parties' document production from September 15, 2010 to

November 15, 2010.  Monsanto also requests that the Court enlarge the time for fact depositions

from 76 days to 120 days and amend the pre-trial and trial schedule accordingly to reflect these

modifications.  The current pre-trial and trial schedule is simply unrealistic given the significance

and complexity of the claims and issues in this litigation, the parties' continued and extensive

discussions and conferences attempting to resolve disputes concerning the scope of discovery,

Defendants' recent substantial amendments to their counterclaims and affirmative defenses, and

the Court's recent orders expanding that scope in this stage of the litigation.

1

SLC-6176371-1

I.   **A SIXTY-DAY EXTENSION OF THE PRODUCTION DEADLINE IS WARRANTED GIVEN THE VOLUME OF DOCUMENTS, THE PARTIES' CONTINUED DISCOVERY DISPUTES, AND THE COURT'S RECENT ORDERS**

Monsanto has worked diligently to meet the Court's September 15th deadline for completing its production of documents.  On top of countless hours of work by its own in-house and outside counsel, Monsanto retained three separate vendors and 27 contract attorneys to process the extraordinary volume of potentially responsive documents in this case.  Thus far those contract reviewers have spent over 4,500 hours reviewing more than 60 gigabytes of data, conservatively estimated to comprise nearly 4 million pages.  Monsanto has already produced 30,000 pages of documents in advance of the *Markman* claims construction briefing, another 54,000 pages on September 15, 2010, and anticipates another 100,000 to 150,000 pages to be produced by this Friday or next Monday.  Despite these efforts, Monsanto will not be able to meet the document production deadline.  Monsanto had, in fact, raised this possibility with the Defendants on several different occasions over the last week.  Unable to reach an agreement on an extension with Defendants, Monsanto requests a 60-day extension of the document production deadline.  Such an extension is warranted for the following reasons:

*First*, Defendants' document requests are incredibly expansive.  Defendants served three different sets of document requests totaling 192 separate requests.  These requests cover at a minimum a time period of over 9 years – and in some cases nearly 30 years.  The breadth of Defendants' requests is perhaps not surprising given that their own Second Amended Answer and Counterclaims ("SAAC") exceeds 600 paragraphs and 150 pages.  But they have required

SLC-6176371-1

Monsanto to collect and process over 1,000 gigabytes of information, which conservatively translates into 65 million pages of documents.[1]

*Second*, the inability to reach an early agreement on search terms and the expansive nature of Defendants' terms also delayed Monsanto's production.  As previously noted (Dkt. #222), Monsanto first proposed 63 search terms to be applied to its documents on February 16, 2010, but over the next two months, Defendants provided no less than four different sets of suggested additions to those search terms, more than quadrupling the number to over 280 terms. Despite Monsanto's repeated agreements to add additional terms, Defendants refused to compromise on a reasonable set of search terms that would help reduce the volume of information to be reviewed and thus Monsanto's burden.  The dispute over search terms was not resolved until August 17, 2010, when this Court issued an order (Dkt. #312).  And as Monsanto had feared, Defendants' insistence on ever more search terms has resulted in a mountain of documents for Monsanto's attorneys to examine.  Indeed, even after applying the agreed and Court-ordered lists of search terms, the total amount of information to be reviewed exceeds well over 250 gigabytes, which conservatively translates into 15 million pages.

*Third*, Defendants' recent amendments and the Court's recent order considerably expanded the scope of antitrust discovery in this stage of the litigation, increasing both the cost and volume of Monsanto's production.  On July 30, 2010, the Court issued an order (Dkt. # 283) granting Defendants leave to file their amended answers and counterclaims, which added over 80 pages and over 300 paragraphs of new allegations, including brand new inequitable conduct allegations and contract and antitrust theories.  *Compare* First Am. Ans. & Countercls. (Dkt.

---

[1] Monsanto's production is complicated not just because of Defendants' broad discovery requests, but also by (i) the inordinate amount of electronically stored information ("ESI") maintained by Monsanto; (ii) the fact that Monsanto maintains an e-mail archive of all its e-mails since 2006; and (iii) that most of the 50 designated custodians have been subject to multiple legal holds over the last several years, multiplying the amount of ESI subject to review.

SLC-6176371-1

#24) *with* SAAC (Dkt. # 317).  The July 30th order also clarified the scope of its September 2009

stay order (Dkt. #77) and granted Defendants' motion for reconsideration of the Court's January

15, 2010 order (Dkt. #124), which had granted partial judgment on the pleadings to Monsanto on

its contract claims.  As a result, the first stage of discovery now encompasses not only

Defendants' new theories and defenses, but also the full scope of Defendants' "switching

strategy" allegations, including Monsanto's licensing practices over nearly a decade with over

200 independent seed companies, as well as the fact-intensive issue of the parties' negotiations

and understanding of their license agreements.  Following the July 30th order, Monsanto

withdrew its objections and must now produce documents in response to 36 more of Defendants'

requests, introducing an entirely new set of documents to review and produce before the

September 15th deadline.[2]

*Fourth*, the pace of the review has been complicated by the highly technical nature of the

documents involved.  This case and Defendants' discovery requests involve complex patent

issues and biotechnology, with a relevant time period dating back to 1983 for such issues.  While

the review team includes attorneys with technical degrees, the pace of the review has been

substantially slower than typical reviews because of the complexity of the issues and documents.

Monsanto is taking steps to increase the rate of review.  But there are limits to how fast the

attorney reviewers – even attorneys with technical degrees – can review highly technical

documents.

*Fifth*, contrary to Defendants' assertions, neither side is in a position to complete their

document productions by the September 15th deadline.  While Defendants claim they are

_____

[2] Another result of the Court's July 30th order expanding the scope of antitrust and contract discovery is that
Monsanto recently propounded an additional 52 document request covering new issues.  Monsanto received
Defendants' response to those document requests only last Friday, September 10, 2010, but anticipates another
lengthy meet-and-confer process and potential motions practice before Defendants will have satisfied their discovery
obligations in connection with these requests.

SLC-6176371-1

prepared to meet that deadline, the reality is that they have decided based on meritless objections not to produce massive numbers of highly-responsive documents. For example, Defendants refuse to produce any responsive documents *whatsoever* relating to their OGAT corn – whether alone or stacked with Roundup Ready. Monsanto has served a number of requests seeking documents to support its allegation that Defendants have infringed Monsanto's patents by making, using, selling, or offering to sell an OGAT/RR stack in corn, *see* Compl., ¶ 65; and to challenge Defendants' claims that Monsanto has excluded them from marketing an OGAT corn product and monopolized three different corn trait markets, *see, e.g.*, SAAC, ¶¶ 36, 32-49, 492-519. By refusing to produce any documents relating to OGAT corn, Defendants essentially have refused to produce documents relating to **roughly half the issues in the case**. Similarly, through their pending motion to bifurcate, Defendants also are trying to avoid producing any documents relating to the willfulness of their infringement, which includes numerous categories of documents beyond just opinions of counsel. The parties are nearing completion of the meet-and-confer process, and both sides will be moving to compel production of various categories of additional documents. Thus, despite their rhetoric, Defendants are far from completing their own production, and there remains significant work to be done *by both parties* before document discovery can be completed.

Monsanto has undertaken a number of steps to speed up its production, the most important of which is doubling the size of the contract attorney review team. Even with those steps, however, there remain over 180 gigabytes or more than 11 million pages left to review. Monsanto has conferred with its review vendor and believes that, realistically, an additional sixty-days is required to complete its production. During that time, Monsanto is prepared to produce documents on a rolling basis, week-by-week. Alternatively, DuPont has suggested a

5

SLC-6176371-1

phased approach to the production in percentages of the total production (25% per phase) – a proposal to which Monsanto is agreeable.  Monsanto is also willing to provide periodic reports to both the Court and Defendants regarding the progress of its review and production.

Defendants will no doubt complain, as they already have, that Monsanto has dragged its feet in this litigation, and that they need this litigation to proceed because there is a "cloud" over Defendants in the marketplace regarding their ability to bring OGAT to the marketplace.  It is important, however, to bear in mind that Monsanto is the plaintiff here, and it is Monsanto's patent rights that are being impaired.  Moreover, Defendants' claim that they need resolution of this litigation in order to commercialize OGAT in soybeans is belied by their own public announcements that they will not introduce that product until at least 2013 or 2014 because it is not "commercially viable" and they have entirely abandoned OGAT in corn.  Monsanto has taken its obligations under the scheduling order seriously and made significant efforts to comply with the production deadline.  The fact remains that the scope and size of this production has been ever changing and expanding due to Defendants' positions on search terms and the Court's recent orders, which were not finally resolved until late-July and mid-August of 2010.  In sum, there are constraints on how quickly Monsanto has been able to collect, process, cull and review data.  Those limitations require a sixty-day extension.

## II.  GIVEN THE NUMBER OF DEPOSITIONS AND ISSUES IN THIS LITIGATION, A 44-DAY ENLARGEMENT OF THE FACT DEPOSITION PERIOD IS APPROPRIATE

The current fact deposition schedule is simply unrealistic in light of the scope of the issues in this case.  That schedule provides for fewer days (76), *even including weekends and holidays*, than the number of potential fact depositions in this case, which includes 35 fact witness depositions and 30 hours of Rule 30(b)(6) depositions per side.

6

Both parties agree that this case is complex, covering a wide range of issues over a nearly 30-year period and involving agreements with hundreds of third parties.  Since the Court entered the scheduling order in March, the issues in this case and the scope of discovery have grown substantially.  As noted above, through their recent amendment, Defendants greatly expanded their antitrust counterclaims and patent and contract defenses, adding brand new inequitable conduct allegations and contract and antitrust theories.  As Monsanto previously explained, "those amendments would greatly expand the scope of discovery and may require alteration of the pre-trial schedule in this case."  Joint Proposed Scheduling Plan at 12 (Dkt. # 165).  Similarly, since the entry of the scheduling order, the Court has clarified that discovery to expand the scope of the so-called "switching strategy," as well as the scope and meaning of the parties' licensing agreements.  *See* 7/30/10 Order (Dkt. # 283).

Given the breadth of the claims, counterclaims, and defenses, preparing witnesses for depositions and preparing to take depositions in this matter is no simple task.  Requiring the parties to conduct at least 70 depositions plus up to 60 hours of Rule 30(b)(6) depositions in 76 days (including weekends and holidays) is simply not realistic.  In this instance, many of the witnesses will be third-parties and former employees located in various places across the country, further complicating a short deposition period.  While there are large law firms involved on both sides of the table, simply ordering double or triple tracking of depositions is not realistic.  There is a limit to the lawyers' time on both sides of the case, and because of the complexity of the issues, there are only so many lawyers that can productively and efficiently take depositions here.  In short, expanding the deposition period from 76 to 120, which would enlarge the deposition period by 44 total days and only 27 business days, is necessary under the circumstances of this case.

SLC-6176371-1

### III.   GIVEN THE NUMBER OF DEPOSITIONS AND ISSUES IN THIS LITIGATION, AN EXTENSION OF THE FACT DISCOVERY CUT-OFF AND OTHER PRE-TRIAL DEADLINES IS APPROPRIATE

Monsanto recognizes that extension of the parties' document production deadline and enlargement of the fact deposition period will directly impact the other deadlines in the current scheduling order. Thus, to accommodate this additional time without compressing the time intervals for later deadlines, Monsanto respectfully requests that the Court modify the current schedule as follows:

| Event | Current Date | New Date |
|---|---|---|
| Parties' document productions | 9/15/10 | 11/14/10 |
| Final day of fact discovery | 11/30/10 | 3/12/11 |
| Expert reports | 1/05/11 | 4/15/11 |
| Rebuttal expert reports | 2/09/11 | 5/16/11 |
| Final day of expert discovery | 3/23/11 | 7/01/11 |
| Dispositive motions | 4/06/11 | 7/15/11 |
| Oppositions to dispositive motions | 5/06/11 | 8/15/11 |
| Replies to dispositive motions | 6/06/11 | 9/15/11 |
| Joint stipulation of uncontested facts, witness and exhibit lists, deposition designations and jury instructions | 8/23/11 | 11/08/11 |
| Objections to deposition designations, exhibits and jury instructions | 8/26/11 | 11/11/11 |
| Pretrial conference | 9/01/11 | 11/18/11 |
| Trial | 9/12/11 | 12/01/11 |

## CONCLUSION

For the foregoing reasons, Monsanto respectfully requests that the Court modify the current scheduling order to extend by 60 days the deadline for the parties' document productions, to enlarge the time for fact depositions by 44 days, and to modify the remaining schedule accordingly.

SLC-6176371-1

Dated:  September 16, 2010

Respectfully submitted,

HUSCH BLACKWELL LLP


By:   /s/ Joseph P. Conran                         .
Joseph P. Conran, E.D.Mo. # 6455
joe.conran@huschblackwell.com
Omri E. Praiss, E.D.Mo. # 35002
omri.praiss@huschblackwell.com
Greg G. Gutzler, E.D.Mo. # 84923
greg.gutzler@huschblackwell.com
Tamara M. Spicer, E.D.Mo. # 122214
tamara.spicer@huschblackwell.com
Steven M. Berezney, E.D.Mo. # 499707
steve.berezney@huschblackwell.com
190 Carondelet Plaza, Suite 600
St. Louis, MO  63105
(314) 480-1500 – telephone
(314) 480-1505 – facsimile

WINSTON & STRAWN LLP
Dan K. Webb
dwebb@winston.com
George C. Lombardi
glombardi@winston.com
Todd J. Ehlman
tehlman@winston.com
James M. Hilmert
jhilmert@winston.com
35 W. Wacker Drive, Suite 4200
Chicago, IL  60601
(312) 558-5600 – telephone
(312) 558-5700 – facsimile

9

John J. Rosenthal
jrosenthal@winston.com
Matthew A. Campbell
macampbell@winston.com
Jovial Wong
jwong@winston.com
1700 K Street, N.W.
Washington, DC  20006
(202) 282-5000 – telephone
(202) 282-5100 – facsimile

Gail J. Standish
gstandish@winston.com
333 South Grand Avenue
Los Angeles, CA 90071-1543
(213) 615-1700 – telephone
(213) 615-1750 – facsimile

MCDERMOTT WILL & EMERY
Steven G. Spears
sspears@mwe.com
Scott W. Clark
sclark@mwe.com
1000 Louisiana Street, Suite 3900
Houston, TX  77002-5005
(713) 653-1700 – telephone
(713) 739-7592 – facsimile

COVINGTON & BURLING LLP
Kurt G. Calia
kcalia@cov.com
1201 Pennsylvania Avenue, NW
Washington, DC  20004-2401
(202) 662-6000 – telephone
(202 662-6291 – facsimile

10

ARNOLD & PORTER LLP
Anthony J. Franze
anthony.franze@aporter.com
555 Twelfth Street, N.W.
Washington, DC  20004
(202) 942-5000 – telephone
(202) 942-5999 – facsimile

*Attorneys for Plaintiff Monsanto Company and
Monsanto Technology LLC*

11

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 16th  day of September, 2010, the foregoing was filed electronically with the Clerk of the Court for the United States District Court for the Eastern District of Missouri, Eastern Division, and was served by operation of that Court's electronic filing system, upon the following:

Andrew Rothschild, Esq.
C. David Goerisch, Esq.
Lewis, Rice & Fingersh, L.C.
600 Washington, Suite 2500
St. Louis, MO 63102

Leora Ben-Ami, Esq.
Thomas F. Fleming, Esq.
Christopher T. Jagoe, Esq.
Howard S. Suh, Esq.
Jeanna Wacker, Esq.
Kaye Scholer LLP
425 Park Avenue
New York, NY  10022

Donald L. Flexner, Esq.
Hershel Wancjer, Esq.
Cynthia Christian, Esq.
Robert M. Cooper, Esq.
Boies, Schiller & Flexner LLP
575 Lexington Avenue, 7th Fl.
New York, NY  10022

James P. Denvir, Esq.
Amy J. Mauser, Esq.
Boies, Schiller & Flexner LLP
5301 Wisconsin Avenue, N.W.
Washington, D.C.  20015


*Attorneys for Defendants*


  /s/ Joseph P. Conran                      .

SLC-6176371-1