IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MONSANTO COMPANY and )
MONSANTO TECHNOLOGY LLC, )
)
    Plaintiffs, )
)
vs. )
)
E.I. DUPONT DE NEMOURS AND )   Case No. 4:09-cv-00686-ERW
COMPANY and )
PIONEER HI-BRED INTERNATIONAL, )
INC., )
)
    Defendants. )

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION REGARDING DEFENDANTS' VIOLATION OF THE PROTECTIVE ORDER AND OTHER COURT ORDERS

Plaintiffs Monsanto Company and Monsanto Technology LLC (collectively "Monsanto") respectfully submit this memorandum in support of its Motion to find that Defendants, E.I. du Pont de Nemours and Company ("DuPont") and Pioneer Hi-Bred International, Inc. ("Pioneer") (collectively "Defendants"), have violated this Court's Orders regarding use and disclosure of the terms of the Amended and Restated Roundup Ready Soybean License Agreement ("Soybean License Agreement"). Monsanto hereby respectfully requests an emergency in-person hearing on or before October 12, 2010 because of the prejudice being suffered by Monsanto.

## INTRODUCTION

Defendants' General Counsel has violated this Court's Orders by publicly disclosing the confidential financial terms of the Soybean License Agreement. On October 5, 2010, an article entitled "Sowing Seeds of Discontent" appeared in Canada's largest newspaper in which Tom Sager, DuPont's Senior Vice President and General Counsel, was interviewed and disclosed the confidential royalty that Pioneer pays Monsanto under the Soybean License Agreement. *See* Jeff

1
REDACTED VERSION

Gray, *Sowing the Seeds of Discontent*, The Globe and Mail, Oct. 5, 2010 (Ex. A). Mr. Sager made this unauthorized public disclosure after having previously insisted that the entire License Agreement remain confidential and refusing to permit Monsanto to publicize certain terms of the very same agreement. *See* 07/02/09 Sager letter (Ex. B).

Defendants' disclosure of the confidential terms of the agreement is a direct violation of the confidentiality provisions in the Soybean License Agreement and the ███████████ ██████ that Defendants previously guarded so stridently, as well as this Court's repeated orders requiring that the financial terms remain out of the public domain.

Defendants' conduct has and continues to severely prejudice Monsanto. Defendants have been using this Court's Orders and the confidentiality provisions of the Agreements as both a sword and shield. Over the last several months, for example, Defendants have stated repeatedly in pleadings and press statements that Monsanto is misusing its license position with respect to its patented soybean technology. Monsanto has been unable to respond to such allegations, despite repeated requests for permission to disclose the financial terms of the Soybean License Agreement.

Defendants' violation is egregious given the circumstances under which it was made. Here, Mr. Sager's disclosure was made a day before Monsanto's quarterly earning report, clearly designed to impact Monsanto's stock value. Monsanto has been unable to publicly respond to Mr. Sager's disclosure and/or respond to inquiries from Wall Street and/or customers regarding the financial terms of the Soybean License Agreement.

This is not the first time that DuPont has willfully disobeyed this Court's orders and wrongfully publicized confidential license terms. In previous litigation before this Court between the parties involving Monsanto's patented Bt corn technology, the Court sanctioned

Pioneer over $8 million "for Pioneer's willful disobedience of the Court's orders" regarding discovery. *Pioneer Hi-Bred Int'l, Inc. v. Monsanto Co.*, 2001 WL 170410, at *20 (E.D. Mo. Jan. 2, 2001) (Webber, J.). In that case, this Court also found that Pioneer's attachment of the Bt license agreement as an exhibit to the Complaint, coupled with its statements to the media "that resulted in wide dissemination of the subject matter of the Agreement," were prohibited "public statements" in direct violation of the agreement's confidentiality provision. 12/09/99 Order at p. 38 & n.29 (Ex. C).[1]

As in the prior litigation, this Court should not permit Defendants to unilaterally choose – in violation of the protective order in this case, this Court's orders, and the confidentiality provisions in the agreements – what confidential information about the parties' license agreements is disclosed. Given Defendants' self-serving propensity to disclose confidential financial terms of the Soybean License Agreement, and to prevent the public from getting a distorted view of the agreement, Monsanto respectfully requests that this Court: (i) permit the full financial terms of the Soybean License Agreement to be publicly disclosed; (ii) grant Monsanto leave to take discovery of Defendants regarding the nature and extent of the violation of this Court's orders and the confidentiality provisions of the Agreements; (iii) require Defendants' to pay the fees and costs associated with this motion; and (iv) hold an emergency hearing on or before October 12, 2010 on this motion.

## RELEVANT FACTS

### A.    Confidentiality Provision of the Soybean License Agreement

Section ████ of the Soybean License Agreement provides as follows:

---

[1] A jury later returned a verdict that Pioneer's breach was material. *Pioneer*, 2001 WL 170410, at *4. Based on this finding, the Court terminated Pioneer's license agreement with Monsanto. Consequently, Defendants' knowledge that the Agreements are confidential and that violation of such confidentiality is material is undisputed.

REDACTED VERSION



*See* Soybean License Agreement at ▮▮▮▮, attached to Complaint as Ex. B; *see also* Amended and Restated Roundup Ready Corn License Agreement at ▮▮▮▮, attached to Complaint as Ex. C.  It is undisputed that the economic terms underpinning the Soybean License Agreement – namely, the royalty amounts that Pioneer pays Monsanto for the rights to sell Roundup Ready soybean seed – are confidential.

**B.    Confidentiality Provisions in the** ▮▮▮▮▮▮



REDACTED VERSION

████████████████████████████████████ (emphasis added) (Ex. D).  The

████ expressly contemplates and prohibits discussion of the terms of the Soybean License

Agreement with the media or any other third party.

### C.    Filing of the Soybean License Agreement Under Seal

Because ██████ of the soybean and corn License Agreements mandate that the terms of

those agreements not be publicized, Monsanto filed its Complaint in this case, with the two

agreements attached as exhibits, under seal.  (Dkt. #3).  Defendants did not oppose Monsanto's

motion to file these under seal, and the motion was granted.  (*See* Dkt. #5).  The disclosure of

confidential information filed under seal violates the Court's Local Rules.  *See* E.D.Mo. L.R. 83-

13.05.

### D.    The Protective Order

On June 28, 2010, the Court entered a Protective Order in this case specifically limiting

how the parties may use information designated as confidential.    The Protective Order

specifically provides:

> All information designated Confidential or Restricted Confidential
> shall be used solely for the purpose of this action and not for any
> other purpose.
>
> ...
>
> The Protective Order shall not abrogate or diminish any
> contractual, statutory, or other legal obligation or right of any party
> or person with respect to any confidential information.

June 28, 2010 Protective Order at 4, 14 (Dkt. #238).  There can be no dispute that the Soybean

License Agreement is subject to the terms of the Protective Order.

**E.     The Court's Order Relating to the Continued Confidential Nature of the Soybean License Agreement**

On October 23, 2009, the Court heard oral argument on Monsanto's motion for partial judgment on the pleadings relating to its claim for breach of contract of the Soybean and Corn License Agreements. (Dkt. 40).   One issue addressed prior to oral argument was how the terms of the Soybean License Agreement (and specifically the royalty terms) would be treated at the public hearing.   The day before this Court heard oral argument, Defendants requested an emergency hearing to specifically request that the royalty terms of the Soybean License Agreement remain confidential.

Defendants confirmed to this Court that the Soybean License Agreement "by its terms is confidential," and specifically proposed: "that for tomorrow's discussion in court that the parties agree and that the Court agree . . . that *economic terms of the license will not be discussed* in open court tomorrow."   10/22/09 Hr'g Tr. (Doc. 92) at 4.   In addition, lead trial counsel for Defendants unequivocally stated that the economic terms of the Soybean License Agreement "are always considered highly, highly confidential."   *Id.* at p. 7.   Defendants' counsel added "I don't see why royalty rates of payments, things of that nature, need to be made public."   *Id.* at p. 8.

This Court agreed, unambiguously ordering:

> I will not permit these confidential matters to be spread upon the public record because I understand the significance of protecting that information for the respective parties.

*Id.* at 8 ("Oral Argument Order").   The Court and the parties then agreed that Monsanto would discuss the issue of economic terms at side bar and not in public.   In fact, during the October 23, 2009 hearing, the Court ███████████████████████████████████████

███████████████████████████████████████:

█████████████████████████████████████

10/23/09 Hr'g Tr. (Doc. 93) at 3.  Monsanto has abided by the Court's orders; Defendants have violated the Court's orders.[2]

### F.   Defendants' October 5, 2010 Public Disclosure of Confidential Financial Terms Relating to the Soybean License Agreement

On October 5, 2010, an article entitled "Sowing Seeds of Discontent" appeared in the *Globe and Mail* newspaper discussing this litigation.  *See* Jeff Gray, Sowing the Seeds of Discontent, The Globe and Mail, Oct. 5, 2010 (Ex. A).  The article included the following passage in which Tom Sager, DuPont's Senior Vice President and General Counsel, discloses the confidential financial terms of the parties' license agreement:

> DuPont said its trait would increase yields and make crops resistant to pesticides other than glyphosate – a big concern as the widespread use of the pesticide has resulted in an explosion of new, glyphosate-resistant weeds. ***And the company said a $30-million-a-year licensing deal with Monsanto gave it the right to stack the two traits in soybean and corn seeds.***

*Id.* (emphasis added).  The only source of information about this litigation and the parties' license agreements identified in the article is Mr. Sager.  The $30 million dollar figure goes directly to the most crucial financial terms of the royalty provision of the Soybean License Agreement – the very thing that Defendants have sought to keep confidential.  The *Globe and Mail*, one of Toronto's most highly-circulated newspapers, is also available online to the world.[3]

---

[2] Defendants have insisted on the confidential status of the financial terms of the Soybean License Agreement in other contexts.  For example, ███████████████████████████████████████████████████████████

████████████████████████████████████████████ (Ex. E))

[3]  *See* http://www.theglobeandmail.com/report-on-business/industry-news/the-law-page/sowing-seeds-of-discontent/article1744246/.

REDACTED VERSION

### G.   Defendants' Violation Is Not Inadvertent

Mr. Sager is well aware of the confidential nature of the Soybean License Agreement.  In June 2009, Monsanto's general counsel wrote to Mr. Sager regarding DuPont's misleading public statements concerning the Soybean License Agreement, and requested that DuPont agree to waive its confidentiality provisions to allow Monsanto to respond to DuPont's innuendo and allegations.  Mr. Sager replied on July 2, 2009, stating:

> Regarding your request that DuPont waive confidentiality with respect to "pertinent portions of the Roundup Ready soybean and corn license agreements that address Pioneer's stacking rights," a blanket waiver is inappropriate given Monsanto's continuing efforts to unlawfully exclude competition. *We do not believe that selectively disclosing what is "pertinent" from license agreements that do not tell the whole story will help farmers or policymakers.*

07/02/09 Sager letter (Ex. B) (emphasis added).  As such, the same general counsel that previously insisted on strict confidentiality of the Soybean License Agreement's terms unilaterally decided to publicize those very terms when it served Defendants' purposes.

## ARGUMENT

### I.   THE COURT POSSESSES BROAD POWERS TO REMEDY A VIOLATION OF ITS ORDERS

This Court's Protective Order and two orders regarding the confidential nature of the Soybean License Agreement cannot be taken lightly, nor should their underlying purpose be intentionally disregarded by either party.  "[C]ourts should construe protective orders in a reasonable and commonsense fashion, so that their prohibitions are connected to their purpose." *Hunter Eng'g Co. v. Hennessy Indus., Inc.*, No. 4:08-CV-465, 2010 WL 1186454, at * 2 (E.D. Mo. Mar. 29, 2010).

Under Federal Rule 37(b)(2), courts have the authority to impose sanctions for violations of a protective order. *See Poliquin v. Garden Way, Inc.*, 154 F.R.D. 29, 31 (N.D. Me. 1994)

("Discovery orders that can be enforced through Rule 37(b) include protective orders issued under Federal Rule of Civil Procedure 26(c)"); *see also Schiller v. City of New York*, No. 04-CV-7921, 2007 WL 1623108, at *3 (S.D.N.Y. June 5, 2007) (listing cases); *Baella-Silva v. Hulsey*, 454 F.3d 5, 11-13 (1st Cir. 2006) (Hansen, J. 8th Cir. sitting by designation) (holding trial court properly sanctioned party for breaching confidentiality provision in settlement agreement by filing unsealed motion disclosing agreement's terms ).

Even apart from Rule 37, courts have the inherent power to sanction parties that violate court orders. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 46 (1991) ("[T]he inherent power extends to a full range of litigation abuses."); *Greiner v. City of Champlin*, 152 F.3d 787, 790 (8th Cir. 1998); *Nick v. Morgan's Foods, Inc.*, 99 F. Supp. 2d 1056, 1061 (E.D. Mo. 2000) ("[A] district court has express authority, under the Federal Rules of Civil Procedure and its inherent authority, to impose sanctions when a party violates the Federal Rules of Civil Procedure, the court's local rules, and the court's orders.").

As this District recently recognized, the "[c]ourt is vested with broad powers to enforce its own lawful orders whether in a FED. R. CIV. P. Rule 37 context or under its inherent powers." *American Boat Co., Inc. v. Unknown Sunken Barge*, No. 1:01-CV-00021, 2008 WL 1821486, at *2 (E.D. Mo. Apr. 22, 2008); *see also Yates v. Applied Performance Technologies, Inc.*, 205 F.R.D. 497, 500 (S.D. Ohio 2002) ("[W]here protective orders have been violated, courts have broad discretion to impose whatever remedy they deem appropriate"). Courts within this circuit endorse using these broad powers to remedy violations of protective orders in particular. *See, e.g., Kehm v. Proctor & Gamble Mfg. Co.*, 724 F.2d 630, 630-31 (8th Cir. 1984) (affirming award of attorney fees where party disclosed confidential documents subject to a protective

order); *Hunter Eng'g*, 2010 WL 1186454, at *6 (imposing sanctions for party's disclosure made in violation of court's protective order).

## II.  DEFENDANTS' DISCLOSURE VIOLATES THIS COURT'S ORDERS AS WELL AS THE CONFIDENTIALITY PROVISIONS OF THE SOYBEAN LICENSE AGREEMENT AND THE ███████████████████████████████

It is undisputed that the economic terms underpinning the Soybean License Agreement – namely the royalty amounts that Pioneer pays Monsanto for the limited rights to sell Roundup Ready soybean seed – are confidential.  Indeed, Defendants have repeatedly made representations to this Court that *all terms* of this agreement are confidential.  Mr. Sager's disclosure to the *Globe and Mail* blatantly violates the terms of this Court's Protective Order and two oral argument orders regarding the confidential treatment of that agreement.

Defendants' violation here is particularly egregious given Defendants' prior efforts before this very Court to ensure that the financial terms of the Soybean License Agreement remain confidential.  Even more alarming are the circumstances under which the violation took place, showing that the violation was both intentional and in bad faith.[4]  Defendants' disclosure is part of a coordinated strategy designed to injure Monsanto with the public, its customers, and its investors.  It is no accident that the disclosure took place the day before Monsanto's quarterly earnings call, suggesting that the disclosure was a calculated decision by Defendants to attempt to impact financial markets and further aid Defendants' public smear campaign against Monsanto.

---

[4] While this Court need not find that Defendants acted in bad faith before a court can use its inherent powers to sanction a party, *Stevenson v. Union Pacific Railroad Co.*, 354 F.3d 739, 745 (8th Cir. 2004), it is clear that Defendants did so by willfully violating this Court's orders by purposely disclosing confidential information to the public despite previously representing to the Court that the information was highly confidential.

### III.   MONSANTO HAS BEEN, AND CONTINUES TO BE, PREJUDICED BY DEFENDANTS' VIOLATION, WHICH WARRANTS APPROPRIATE REMEDY BY THIS COURT

The prejudice Monsanto continues to suffer from this violation is real and requires an urgent remedy.  Defendants have used the confidential terms of the Soybean License Agreement as a sword and shield.  In this regard, Defendants have engaged in a broad campaign that includes repeated allegations that Monsanto is overcharging customers for its seed technology.  As part of this campaign, Defendants have invoked the terms of the Soybean License Agreement generally and, in this case, with the very financial terms Defendants have insisted on keeping from the public.

Defendants' intentional violation leaves Monsanto with no ability to respond publicly to their allegations or to discuss the financial terms of the Soybean License Agreement without violating the Court's Orders or giving rise to a breach of the Soybean License Agreement and ████████████████████████████.  In particular, Monsanto is unable to affirmatively discuss or respond to press, investment analysts, customers, or other inquiries about the financial terms of the Soybean License Agreement or Mr. Sager's comments regarding the same.   It is fundamentally unfair to Monsanto that Defendants can preserve the confidentiality of those portions of the license agreements they would like to keep from the public, while strategically advertising to reporters and the public other elements in a one-sided way as part of a coordinated campaign against Monsanto.

This Court is given discretion to fashion an appropriate sanction to fit the circumstances. *See Stevenson*, 354 F.3d at 745 ("A court's inherent power includes the discretionary 'ability to fashion an appropriate sanction for conduct which abuses the judicial process.'") (quoting *Chambers*, 501 U.S. at 44-45); *Harlan v. Lewis*, 982 F.2d 1255, 1262 (8th Cir. 1993) (stating same principle).  The remedy can range anywhere from a modest monetary award up to dismissal

of the lawsuit. *Chambers*, 501 U.S. at 45 (noting range of available sanction options); *Harlan*, 982 F.2d at 1261-62 (same); *see also Plaintiffs' Baycol Steering Committee v. Bayer Corp.*, 419 F.3d 794, 797 (8th Cir. 2005) (trial court did not err in using inherent powers to remove attorneys from steering committee as a sanction); *Stevenson*, 354 F.3d at 750 (trial court did not abuse its discretion in using inherent powers to sanction party by giving adverse inference instruction). Given the Court's broad authority to fashion appropriate relief for violations of its orders, Monsanto respectfully requests the following:

*First*, Monsanto respectfully requests the Court permit the public disclosure of the financial terms of the Soybean License Agreement. Defendants have already selectively divulged the most critical aspect of the financial terms of that agreement—the total amount paid. Equity and fairness dictate that Monsanto be given the opportunity to place into the public record the full scope of the financial terms of the agreements in order to counteract any public misunderstanding caused by Defendants' piecemeal leaks.

*Second*, Monsanto requests an order allowing further inquiry into Mr. Sager's disclosures and any other public communications by Defendants, its officers, employees, or agents concerning the confidential terms of the license agreements. In particular, Monsanto asks that it be permitted to depose Mr. Sager regarding 1) the circumstances surrounding his interview with the *Globe and Mail* and his disclosure of confidential information during that interview, with waiver of the attorney client privilege as to statements made and documents created for the preparation or presentation of the newspaper interview disclosed in the *Globe and Mail* article; and 2) and any other disclosures of confidential license information. A *limited* broadening of discovery falls within this Court's discretion, and is appropriate here where the full extent Defendants' disclosures in violation of the Protective Order remain unknown. *See Static Control*

*Components, Inc. v. Darkprint Imaging*, 201 F.R.D. 431, 437 (M.D.N.C. 2001) (permitting discovery on possible additional violations following defense counsel's "technical violation" of protective order); *Schiller*, 2007 WL 1623108 at *4 (noting that further discovery would be permitted if breach of protective order had originated with plaintiffs' counsel). Such additional narrow discovery is necessary to ensure that Defendants or their agents have not made further disclosures of confidential information.

*Third*, Monsanto requests the ability to return to this Court to seek additional relief and/or sanctions after conducting the limited discovery outlined in the preceding paragraph if such discovery yields additional instances of improper disclosure of confidential contract terms.

*Fourth*, Monsanto requests an order requiring Defendants to pay reasonable attorneys' fees and costs incurred by Monsanto in bringing this motion. "The court has inherent power to assess attorneys' fees as a sanction for willful disobedience of a court order." *Greiner*, 152 F.3d at 790 (upholding sanctions imposed on attorney for, in part, violating the under seal provisions in protective order). As with the forgoing remedies, an award of reasonable attorneys' fees falls within the sound discretion of this Court.

Finally, Monsanto seeks an in-person emergency hearing on or before October 12, 2010 to hear this motion and the relief sought.

## CONCLUSION

For the foregoing reasons, Monsanto respectfully requests an emergency hearing and an order granting the requested relief set forth herein.

Dated: October 8, 2010

13
REDACTED VERSION

Respectfully submitted,

HUSCH BLACKWELL LLP

By:  /s/ Joseph P. Conran                          .
Joseph P. Conran, E.D.Mo. # 6455
joe.conran@huschblackwell.com
Omri E. Praiss, E.D.Mo. # 35002
omri.praiss@huschblackwell.com
Greg G. Gutzler, E.D.Mo. # 84923
greg.gutzler@huschblackwell.com
Tamara M. Spicer, E.D.Mo. # 122214
tamara.spicer@huschblackwell.com
Steven M. Berezney, E.D.Mo. # 499707
steve.berezney@huschblackwell.com
190 Carondelet Plaza, Suite 600
St. Louis, MO  63105
(314) 480-1500 – telephone
(314) 480-1505 – facsimile

WINSTON & STRAWN LLP
Dan K. Webb
dwebb@winston.com
George C. Lombardi
glombardi@winston.com
Todd J. Ehlman
tehlman@winston.com
James M. Hilmert
jhilmert@winston.com
35 W. Wacker Drive, Suite 4200
Chicago, IL  60601
(312) 558-5600 – telephone
(312) 558-5700 – facsimile

John J. Rosenthal
jrosenthal@winston.com
Matthew A. Campbell
macampbell@winston.com
Jovial Wong
jwong@winston.com
1700 K Street, N.W.
Washington, DC  20006
(202) 282-5000 – telephone
(202) 282-5100 – facsimile

REDACTED VERSION

Gail J. Standish
gstandish@winston.com
333 South Grand Avenue
Los Angeles, CA 90071-1543
(213) 615-1700 – telephone
(213) 615-1750 – facsimile

MCDERMOTT WILL & EMERY
Steven G. Spears
sspears@mwe.com
Scott W. Clark
sclark@mwe.com
1000 Louisiana Street, Suite 3900
Houston, TX 77002-5005
(713) 653-1700 – telephone
(713) 739-7592 – facsimile

COVINGTON & BURLING LLP
Kurt G. Calia
kcalia@cov.com
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
(202) 662-6000 – telephone
(202 662-6291 – facsimile

ARNOLD & PORTER LLP
Anthony J. Franze
anthony.franze@aporter.com
555 Twelfth Street, N.W.
Washington, DC 20004
(202) 942-5000 – telephone
(202) 942-5999 – facsimile

*Attorneys for Plaintiff Monsanto Company and Monsanto Technology LLC*

REDACTED VERSION

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 8th day of October, 2010, the foregoing was filed electronically with the Clerk of the Court for the United States District Court for the Eastern District of Missouri, Eastern Division and was served by ECF notice by operation of that Court's electronic filing system, upon the following:

Andrew Rothschild, Esq.
C. David Goerisch, Esq.
Lewis, Rice & Fingersh, L.C.
600 Washington, Suite 2500
St. Louis, MO 63101

Leora Ben-Ami, Esq.
Thomas F. Fleming, Esq.
Christopher T. Jagoe, Esq.
Howard S. Suh, Esq.
Jeanna Wacker, Esq.
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022

Donald L. Flexner, Esq.
Hershel Wancjer, Esq.
Cynthia Christian, Esq.
Robert M. Cooper, Esq.
Boies, Schiller & Flexner LLP
575 Lexington Avenue, 7th Fl.
New York, NY 10022

James P. Denvir, Esq.
Amy J. Mauser, Esq.
Boies, Schiller & Flexner LLP
5301 Wisconsin Avenue, N.W.
Washington, D.C. 20015

*Attorneys for Defendants*

/s/ Joseph P. Conran

REDACTED VERSION