# WINSTON & STRAWN LLP

SUITE 718, CHINA WORLD OFFICE 1
1 JIANGUOMENWAI AVENUE
BEIJING 100004, CHINA

214 NORTH TRYON STREET
CHARLOTTE, NORTH CAROLINA 28202-1078

35 WEST WACKER DRIVE
CHICAGO, ILLINOIS 60601-9703

43 RUE DU RHÔNE
1204 GENEVA, SWITZERLAND

GLOUCESTER TOWER
11TH FLOOR
THE LANDMARK
15 QUEEN'S ROAD CENTRAL
HONG KONG, CHINA

99 GRESHAM STREET
LONDON, EC2V 7NG, UK

1700 K STREET, N.W.
WASHINGTON, D.C. 20006-3817

+1 (202) 282-5000

FACSIMILE +1 (202) 282-5100

www.winston.com

333 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-1543

SUITE A350, 4 STASOVOY STREET
MOSCOW, 119071, RUSSIAN FEDERATION

200 PARK AVENUE
NEW YORK, NEW YORK 10166-4193

ONE RIVERFRONT PLAZA, SUITE 730
NEWARK, NEW JERSEY 07102-5401

25 AVENUE MARCEAU, CS 31621
75773 PARIS CEDEX 16, FRANCE

101 CALIFORNIA STREET
SAN FRANCISCO, CALIFORNIA 94111-5802

UNITS 3105-3106, SHANGHAI KERRY CENTRE
1515 NANJING ROAD WEST
JINGAN, SHANGHAI 200040, CHINA

!

July 12, 2010

**Via Email**
Amy J. Mauser, Esq.
Boies, Schiller & Flexner LLP
5301 Wisconsin Avenue, N.W.
Washington, D.C. 20015-2015

> Re: ***Monsanto Co. vs. E.I. DuPont de Nemours & Co.*, Case No. 09-CIV-0686-ERW (E.D. Mo.)**

Dear Amy:

I write in response to your letters of June 28 and 30, 2010 and to address the current disputes concerning the parties' antitrust-related document requests. By separate letter, Steve Spears will provide Monsanto's responses to Tom Fleming's letter addressing the patent- and contract-related requests.

It was Monsanto's intent through the correspondence in advance of our June 16 meet and confer in Washington, D.C. to attempt to define, by broad categories, what the exact disputes were between the parties so that they could be addressed in person at the June 16 meet and confer. Your June 28 letter goes well beyond the topics raised in advance of the June 16 meeting. Accordingly, many of these issues are being addressed for the first time here and have never been discussed before.

Also, it was our hope that by narrowing the issues in advance of the June 16 meeting, we would not have to go document request by document request to reach resolution. Your June 28 letter, however, does just that, effectively restating every document request and asking Monsanto to withdraw all of its objections to each of them. This does not strike us as the best way to reach resolution as to these issues. It further makes it difficult for us to identify any area where Defendants are proposing any form of compromise as to the documents that Monsanto must produce. Nevertheless, we will go down the outlined topics presented in your letter and address

EXHIBIT B

Amy J. Mauser, Esq.
July 12, 2010
Page 2

them.  In addition, we will outline request-by-request deficiencies and concerns we have with Defendants' objections and response to Monsanto's document requests.

One overarching issue is the extent to which documents should be produced beyond the search term/custodial searches.  Defendants initially objected to any production beyond the results of the custodial collection.  We think that Defendants have now recognized that further production is warranted with respect to limited categories of documents.  Monsanto made its proposal as to what such limited categories of documents should be produced beyond the custodian collections in our June 28 letter.  We have not received any response from Defendants.  In view of this overarching unresolved issue, whenever we state in this letter that responsive documents will be produced, what we mean is (i) they will be produced from the files of the custodians that Monsanto has agreed to search, and (ii) they will also be produced pursuant to any agreement by Monsanto to produce documents beyond such a custodial-based collection.

While we appreciate your preference for exchanging written proposals, we believe that at least one additional telephonic meeting is appropriate and consistent with the parties' meet and confer obligations.  We propose that such a meeting be scheduled shortly after the parties have had a chance to review the letters being exchanged today.

## I.  MONSANTO'S OBJECTIONS AND RESPONSES TO DUPONT'S & PIONEER'S SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

Monsanto's responses to the issues raised in Section I of your letter are set forth below.  For convenience, we have used the same section headings as you used in your letter with one exception.  Section I of your letter is missing a sub-section "I."  Our response below includes a subsection "I."

### A.  Responses in which Monsanto Identifies No Class of Documents it Intends to Withhold

In your letter, you asked Monsanto to confirm that it does not intend to stand on any of the objections it made in response to Defendants' Second Set of Requests for Production of Documents Nos. 9, 26, 27, 28, 38, 43, 44, 48, 49, 57, and 61.  Monsanto intends to produce non-privileged documents identified in our responses to these requests from the files of the designated custodians.  We reserve the right to stand on our objections to these requests if in the course of our production it becomes necessary, but we will notify you promptly if we decide to do so.

### B.  Objections to Production of Documents Based on Monsanto's Interpretation of the Stay Order

Monsanto objected to Requests 6, 18, 20, 24, 30, 31, 32, 33, 37, 39, 40, 41, 42, 47, 53, and 59 based on Judge Webber's September 16, 2009 Memorandum and Order staying discovery on certain of Defendants' antitrust counterclaims.  We agree with your proposal to defer discussion of these requests until after Judge Webber rules on Defendants' motion for clarification.

Amy J. Mauser, Esq.
July 12, 2010
Page 3

     C.      **Objections to Production of Communications Monsanto Has Had With Seed Companies, Germplasm Developers, Trait Developers and Farmers Concerning Optimum GAT, DuPont or Pioneer**

You proposed the following restated version of Request No. 15:

> **Restated Request 15:** All documents concerning communications between you and any seed company, germplasm developer or trait developer concerning Optimum GAT or Plenish, including documents discussing DuPont's or Pioneer's marketing, licensing or sale of Optimum GAT, Plenish, a generic version of Roundup Ready in stand-alone form or in combination with Optimum GAT and/or Plenish.

Monsanto will produce non-privileged documents responsive to this request, as restated, from the files of the custodians it has agreed to search.

     D.      **Objections to Production of Documents Concerning Investigations, Lobbying, and Public Relations**

Subject to the parties' agreeing to a final stipulation concerning governmental investigations, lobbying and public relations, Monsanto accepts Defendants' proposal that Monsanto withdraw its Requests 48, 73, 190, 204, 205, 207, 208, 209, 210, and 212 of its First Request for Production of Documents in exchange for Defendants' withdrawal of Requests 16 and 52 in their Second Request for Production of Documents. Notwithstanding the foregoing, Monsanto still expects Defendants to produce documents relating to communications with the Department of Justice ("DOJ") that Defendants intend to offer at trial. *See* Second Am. Countercls. ¶¶ 12, 76, and 463.

     E.      **Objections to Production of Documents Concerning Pricing and Licensing of Roundup Ready, Roundup Ready 2 Yield and Stacked Soy Products**

You proposed that Defendants will agree to produce non-privileged documents responsive to Monsanto's Request No. 73 from the designated custodians, if Monsanto agrees to do the same in response to Defendants' Request Nos. 51 and 53. This is not an acceptable compromise. As you note in your letter, our Request No. 73 is limited to *thirteen* statements by DuPont. In contrast, Defendants' Request No. 51 seeks documents regarding any and all of Monsanto's "public statements regarding the licensing of Roundup Ready® and/or Roundup Ready® 2 Yield." Monsanto has already agreed to produce the public statements themselves. If Defendants identify specific statements for which you are seeking underlying strategic documents or communications, Monsanto will consider producing such documents.

We do not understand how Request No. 53, which seeks "documents discussing the setting of prices, royalties, fees, and/or licensing terms for" Roundup Ready products, is similar in substance to Request No. 51 or to our Request No. 73, such that it should be considered a part of your proposal. As such, we will address it separately. Monsanto will agree to produce non-

Amy J. Mauser, Esq.
July 12, 2010
Page 4

privileged internal strategic documents and presentations that are responsive to Request No. 53 and found in the files of the designated custodians, but will not agree to produce *all* documents discussing pricing and licensing, which we continue to believe is an unreasonably broad and burdensome request.

**F.    Objections to Productions from Prior Litigations**

Monsanto stands on its objections to Requests Nos. 10 and 11, which seek materials from the Syngenta litigation.  We continue to believe that the Syngenta materials, which relate to an entirely different litigation between different parties, are not relevant to this case, and that Defendants' requests for these materials amount to a fishing expedition.  Your offer to limit the requests to responsive materials covered by the protective order does not address Monsanto's concerns regarding the relevancy of these materials.

**G.    Objections to the Production of Documents Related to YieldGard**

Per our discussion during the meet and confer, Monsanto has reviewed its position regarding the production of documents relating to YieldGard in response to Requests Nos. 62, 63, and 36.  We continue to believe that these documents are not relevant to this litigation.

**H.    Objection to the Production of Documents Discussing Actual or Potential Competition**

During the meet and confer, you clarified that Requests Nos. 54, 55, and 56 seek documents that discuss any traits that actually or potentially compete with Roundup Ready, Roundup Ready 2 Yield, and Roundup Ready 2.  Based on this clarification, Monsanto will produce non-privileged, responsive documents from the files of the designated custodians.

**I.    Production of Documents Relating to Regulatory Approval and Data Packages**

Regarding Request No. 13, Defendants proposed that "neither party would seek documents concerning communications with government or regulatory bodies other than those communications that were made to any regulatory body with authority to make decisions regarding regulatory or import approvals for some product at issue in the litigation and which concern approval of such product."  As you note in your letter, the parties are currently negotiating a stipulation regarding the production of documents concerning communications with regulatory bodies.  Subject to the parties reaching a final agreement, Monsanto will produce non-privileged, responsive documents from the files of the designated custodians.

Regarding Request No. 14, Monsanto confirms that it will produce non-privileged documents from the files of the designated custodians that discuss the ability of seed companies to access any data package for Roundup Ready prior to patent expiration.

Amy J. Mauser, Esq.
July 12, 2010
Page 5

**J.      Objections for which Monsanto Provided a Narrowing Proposal Not Otherwise Discussed Above**

**Request No. 20.**  This request essentially seeks every document in the company that mentions or refers to competition or competitors.  Per our prior discussions, we believe this request is overbroad and that we should agree upon a reasonable definition of what falls within the term "competition."

**Request No. 21.**  This request seeks all documents concerning "competition with respect to herbicide-tolerance traits in soybeans or corn when any patents you claim for Roundup Ready® or Roundup Ready® 2 expire, including, without limitation, generic competition."  You have narrowed this request to the '247 patent and specifically Roundup Ready Corn.  With this caveat, Monsanto will produce documents that refer or relate to the impact on competition of the expiration of the '247 patent as it relates to Roundup Ready 2 corn.

**Request No. 23.**  This request seeks "documents concerning the role of independent seed companies as a distribution channel for seeds."  As we stated before, we are willing to produce documents concerning the significance of independent seed companies as distribution channels of its or products of its competitors.  Unless and until the Court modifies the stay order, the documents outlined in your letter being sought would relate to a matter now stayed and not the appropriate subject of discovery in this phase of the case.

**Request No. 37.**  This request seeks "All documents concerning your communications and/or agreements with ag retailers and/or processors concerning the purchase, sale, distribution or use of soybeans containing your low linolenic trait, including, without limitation, any incentives you have offered and/or provided to ag retailers and/or processors to purchase, distribute, or sell soybean seeds containing your output traits."  Again, we are not clear why these documents would be relevant to this portion of the case, with the exception of market definition issues.  In that regard, we will agree to produce the correspondence and strategic documents that refer or relate to the marketing or distribution of such low linolenic traits.

**Request No. 47.**  This request seeks "all documents discussing actual or potential competition in the sale or licensing of (a) soybeans and/or soybean germplasm containing Roundup Ready®; (b) soybeans and/or soybean germplasm containing Roundup Ready® 2 Yield; and/or (c) soybeans and/or soybean germplasm containing Roundup Ready® stacked with any other trait; (d) soybeans and/or soybean germplasm containing Roundup Ready® 2 Yield stacked with any other trait."  The only issue currently not stayed to which this is relevant is the issue on the alleged "switching strategy."  As this relates to the transition from Roundup Ready to Roundup Ready 2 Yield, we will produce both strategic and internal correspondence.  As to other documents, we would ask you to explain their relevance to the non-stayed issues.

**Request No. 50.**   This request seeks "All documents discussing, describing or constituting public statements regarding the pricing of soybeans and/or soybean germplasm containing (a) the Roundup Ready® trait, including but not limited to soybeans and/or soybean germplasm containing multiple traits; and/or (b) the Roundup Ready® 2 Yield trait, including but not limited to soybeans and/or soybean germplasm containing multiple traits."  We are

Amy J. Mauser, Esq.
July 12, 2010
Page 6

willing to produce strategic documents relating to the pricing of Roundup Ready and Roundup Ready 2 Yield. We are also willing to produce internal corresponded relating to the pricing of Roundup Ready 2 Yield as it relates to the prior pricing of Roundup Ready. Beyond that we do not believe it is reasonable to require the production of every single internal document that mentions the word price as it relates to Roundup Ready 2 Yield would be reasonable given this phase of the litigation. We are happy, however, to discus whether there are discrete topics of internal communications that you are looking for that would be both reasonable and not burdensome.

Request No. 60. This request seeks "all documents concerning financial assessments, evaluations, analyses or reports of your corn or soybean trait, seed or germplasm businesses from January 1, 2003 to the present. At this point in the litigation, we are agreeable to producing strategic analysis and communications relating to the transition from Roundup Ready to Roundup Ready 2 Yield.

K.      Objections Based on Overbreadth

1.      Request Nos. 4 and 5: In your letter, you raise five issues with Monsanto's response to these requests. First, with respect to Monsanto's relevance objection to producing all documents relating to the negotiations of Roundup Ready and Roundup Ready 2 Yield licenses, you wrote that unless Monsanto is willing to stipulate that it did not negotiate any of these licenses, Defendants are entitled to these documents. Defendants have yet to articulate, however, how such negotiation documents are possibly relevant to this litigation. Second, you raised a concern about Monsanto's refusal to produce documents concerning Roundup Ready 2 corn licenses. These documents, however, are likewise irrelevant to this litigation, as Defendants' "switching strategy" allegations pertain exclusively to soybeans. Third, you complain that Monsanto's response concerning Defendants' request for documents relating to the process and timing for switching or transitioning Monsanto's licensees from Roundup to Roundup Ready 2 Yield in soybeans is too narrow. You have misread Monsanto's response, which is not limited in the way suggested by your letter. Fourth, you complain that Monsanto's response regarding preferential pricing is similarly too limited. Again, you have misread Monsanto's response, which is not limited in the way you have suggested. Finally, you dispute Monsanto's representation that it has not imposed any penalties or added costs on any company that did not agree to switch from Roundup Ready to Roundup Ready 2 Yield. In the interests of avoiding motions practice, Monsanto will produce such documents to the extent any exist.

2.      Request No. 7: In its response, Monsanto agreed to produce all Roundup Ready 2 Yield strategic plans, business plans and presentations to Monsanto's board of directors. In your letter, you complain that this response is too limited and request that Monsanto produce, among other things, all internal communications relating to the development or marketing of Roundup Ready 2 Yield. In essence, you are asking Monsanto to produce all documents mentioning Roundup Ready 2 Yield. Such a request is clearly overbroad and inappropriate. Although we believe that Monsanto's response is quite broad, we would be willing to discuss with you additional targeted categories of responsive documents. We are not, however, willing to produce all documents mentioning Roundup Ready 2 Yield.

Amy J. Mauser, Esq.
July 12, 2010
Page 7

        3.     **Request No. 12:**  In its response, Monsanto agreed to produce documents submitted to regulatory authorities for the export of Roundup Ready soybeans. In your letter, you proposed that Monsanto also agree to produce "(i) internal strategic and planning documents and communications related to registrations and regulatory approvals for Roundup Ready upon expiration of the patents Monsanto is claiming for Roundup Ready and (ii) external communications related to registrations and regulatory approvals other than documents submitted to regulatory authorities." Monsanto is willing to produce these documents to the extent they relate to Roundup Ready export approvals post patent expiration and are found in the files of the designated custodians.

        4.     **Request No. 19:**  In its response to this request, Monsanto agreed to produce documents sufficient to show market shares within the categories defined in the request. In your letter, you proposed that Monsanto also agree to produce five additional categories of documents relating to market shares, including "(v) communications regarding Monsanto's strategy or strategies for maintaining or increasing its share." We note, at the outset, that the documents identified in category (v) are not responsive to Request No. 19, and Monsanto will not agree to expand the scope of that request to encompass such documents. As for the other aspects of your proposal, so long as Defendants are willing to produce the same categories of documents, Monsanto will produce the following documents to the extent they exist in the files of the designated custodians: (i) internal strategic and planning documents referencing Monsanto's shares and those of its competitors, (ii) projections of Monsanto's shares and those of its competitors, and (iii) reports on Monsanto's shares and those of its competitors. As for "data Monsanto used to calculate such shares," we believe that for most of these market share calculations, it would be impossible at this stage to track down the data that was used.

        5.     **Request No. 22:**  In its response to this request, Monsanto agreed to produce documents sufficient to show the market share of companies that sell or license soybean or corn seed. In your letter, you proposed that Monsanto also agree to produce four additional categories of documents: "(i) documents sufficient to show the share of companies that license or otherwise market soybean traits and/or germplasm for each quarter and/or year available; (ii) documents sufficient to show the share of companies that license or otherwise market corn traits and/or germplasm for each quarter and/or year available; (iii) data Monsanto used to calculate such shares; and (iv) internal strategic and planning documents and communications related to such companies' shares." As with Request No. 19 above, Monsanto is willing to agree to produce these additional categories of documents so long as Defendants agree to do the same.

        6.     **Request No. 25:**  In its response to this request, Monsanto agreed to produce documents sufficient to show "comparisons or analyses of the yield of Roundup Ready 2 Yield soybeans with the yield of Roundup Ready soybeans. In your letter, you propose that Monsanto also agree to produce the following four additional categories of documents: (i) data and/or test results related to such testing; (ii) internal strategic and planning documents and communications related to such testing; (iii) documents sufficient to show the results of any comparisons between Roundup Ready 2 Yield seeds subjected to seed treatment and seed not subjected to treatment; and (iv) documents concerning any requirement to apply seed treatments to Roundup Ready 2 Yield soybeans. Monsanto is willing to consider producing the documents

Amy J. Mauser, Esq.
July 12, 2010
Page 8

in your categories (i) and (ii) if Defendants also agree to produce similar documents in response to Monsanto's Request No. 188, as discussed below.

7. **Request No. 34:** In its response to this request, Monsanto agreed to produce documents sufficient to show agreements between Dow and Monsanto concerning SmartStax. In your letter, you proposed that Monsanto also agree to produce three additional categories of documents: (i) internal strategic and planning documents related to agreements between Monsanto and Dow concerning SmartStax; (ii) external communications related to agreements between Monsanto and Dow concerning SmartStax, including, without limitation, communications with Dow; and (iii) documents concerning the role of Herculex in SmartStax, including Monsanto's reasons for including Herculex in SmartStax. The documents identified in category (iii) are not responsive to Request No. 34, and Monsanto will not agree to expand the scope of that request to encompass such documents. As for the other aspects of your proposal, Monsanto will produce the following non-privileged documents to the extent they exist in the files of the designated custodians: (i) internal strategic and planning documents related to agreements between Monsanto and Dow concerning SmartStax; and (ii) external communications related to agreements between Monsanto and Dow concerning SmartStax.

8. **Request No. 35:** Monsanto has already agreed to produce non-privileged communications between Monsanto and Dow concerning Pioneer's sub-licensing of Herculex to seed companies. In your letter, you propose that Monsanto also agree to produce the following two additional categories of documents relating to communications between Monsanto and Dow concerning Pioneer and Herculex. We have considered your proposal, and Monsanto will agree to produce (i) internal strategic and planning documents related to communications between Monsanto and Dow concerning Pioneer's right to sublicense Herculex, and (ii) external communications related to communications between Monsanto and Dow concerning Pioneer's right to sublicense Herculex.

9. **Request No. 45:** Monsanto has already agreed to produce non-privileged, responsive documents sufficient to show revenues and profits attributable to or derived, in whole or in part, from the '247 Patent and/or '435 Patent. In your letter, you propose that Monsanto also produce the following categories of documents: (i) internal strategic and planning documents discussing revenues and profits attributable to or derived, in whole or in part, from the '247 Patent and/or the '435 Patent, and (ii) internal strategic and planning documents discussing the impact on revenues and/or profits of the inability to enforce the '247 Patent and/or the '435 Patent for any reason. Monsanto will produce documents in your category (i), but we do not believe that the documents in your category (ii) are relevant to this litigation.

10. **Request No. 46:** Monsanto has already agreed to produce non-privileged, responsive documents sufficient to show actual, potential, and/or expected revenues attributable to or derived, in whole or in part, from Monsanto's licenses for Roundup Ready® 2 Yield. In your letter, Defendants propose that Monsanto also produce the following categories of documents: (i) internal strategic and planning documents discussing revenues and profits attributable to or derived, in whole or in part, from any patent Monsanto claims for Roundup Ready® 2 Yield and (ii) internal strategic and planning documents discussing the impact on revenues and/or profits of the inability to enforce any patent Monsanto claims for Roundup

Amy J. Mauser, Esq.
July 12, 2010
Page 9

Ready® 2 Yield for any reason.  Monsanto will produce documents in your category (i), but we do not believe that the documents in your category (ii) are relevant to this litigation.

## II.   DEFENDANTS' OBJECTIONS AND RESPONSES TO MONSANTO'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

As previously noted during the meet and confer and in various correspondence, Monsanto has serious concerns about the deficiencies in Defendants' responses to Monsanto's requests for productions of documents.  While some of these issues were discussed during the parties' June 16th meet and confer, time did not permit us to address each and every one of Monsanto's concerns.  Accordingly, in anticipation of our next meet and confer, we provide below a summary of the deficiencies in Defendants' responses.

### A.   Issues Addressed During the June 16th Meet and Confer

During our June 16th meet and confer, we discussed Monsanto's concerns with a number of Defendants' responses to Monsanto's First Set of Requests for Production of Documents. Your June 28th letter provides amended responses to Request Nos. 182, 183, 187, 188 and 190. While we appreciate Defendants' movement on these requests, your amendments do not resolve many of Monsanto's concerns, as discussed below.

**Request Nos. 182, 183 and 187.**  These requests seek documents relating to Defendants' licensing agreements, sales, royalties and promotion of corn and soybean traits, seeds, varieties, germplasm and herbicides used in conjunction with such seeds.  These documents are relevant to market definition, among other issues.  As we understand your amended responses, Defendants have agreed to produce responsive documents for any corn or soybean traits, varieties or germplasm at issue in this case and also to produce documents responsive to Request No. 187 for any corn or soybean seeds.

Your proposal, however, raises three issues.  First, your letter does not explain why Defendants are willing to produce seed-related documents in response to Request No. 187, but not in response to Request Nos. 182 or 183.  Defendants' seed agreements, sales, and royalties are clearly relevant to market definition in this case and should be produced.  Please let us know whether that was an oversight or, if not, the reasons why your proposal treats these requests differently.  Second, your letter does not explain why Defendants have limited their production to traits, seeds, varieties or germplasm "at issue in this case."  We believe this limitation is ambiguous and unnecessary, and request that they strike it from their amended responses. Finally, in the amended responses, Defendants still refuse to produce any documents relating to herbicides used in conjunction with any transgenic or conventional corn or soybean seeds.  We believe these documents are relevant to determining the proper scope of the relevant markets at issue here.  Please let us know whether Defendants are willing to produce such documents.

**Request No. 188.**  This request seeks documents concerning the superiority or inferiority of Defendants' corn or soybean traits, seeds, varieties, germplasm and herbicides used in conjunction with such seeds.  These documents are relevant to market definition, as well as whether Defendants have been foreclosed from a substantial portion of the market by virtue of

Amy J. Mauser, Esq.
July 12, 2010
Page 10

Monsanto's conduct.  In your proposal, however, Defendants agree only to produce documents sufficient to show comparisons or analyses of the yields of corn or soybean traits, seeds, varieties or germplasm "at issue in this case."  Limiting Defendants' production to these materials is improper for three reasons.  First, Defendants have agreed to produce only documents sufficient to show comparisons or analyses of yields.  Monsanto's request seeks *any documents* comparing the qualities of Defendants' products with those of its competitors.  Second, as with Request Nos. 182, 183 and 187, Defendants' response limits their production to products "at issue in this case."  That limitation is ambiguous and unnecessary, and we request that Defendants strike it from their responses.  Finally, we again note that Defendants have refused to produce any documents relevant to herbicides.

        **Request No. 190.**  This request seeks promotional materials Defendants have provided to seed companies, distributors, germplasm developers and other entities relating to their corn and soybean traits, seeds, varieties, germplasm and herbicides used in conjunction with such seeds. These materials are relevant to market definition, among other issues.  Your proposal, however, would limit Defendants' production in two improper ways.  First, Defendants would only produce responsive materials from the files of the designated custodians.  As I noted in my June 28th letter, however, we believe that Defendants should produce such marketing materials regardless of whether they are in the files of the designated custodians.  Second, your proposal again would limit Defendants' production to traits, seeds, varieties and germplasm while excluding herbicides used in conjunction with those seeds.  Please let us know if Defendants are willing to produce such documents.

        Your letter, however, fails to address 13 requests for which you agreed to provide clarification or consider revising your position during our June 16th meet and confer.  These requests are discussed below.

        **Request Nos. 49 and 50.**  Defendants' responses to Request Nos. 49 and 50 are limited to documents "contained in the files of the custodians Pioneer has agreed to search."  During the meet and confer, you indicated that this was a clerical error and that documents produced in response to these requests will include documents in the files of the designated DuPont custodians.  Please confirm in writing that Defendants will produce responsive documents in the files of the DuPont custodians.

        **Request Nos. 58, 60, and 172.**  These requests seek documents related to the research and development of OGAT products and stacked products, including trait integration records, USDA test plots, and Defendants' investment in biotechnology trait development.  During the meet and confer, you agreed to reconsider your objections to these requests.  Please let us know whether Defendants will agree to produce documents responsive to these requests.

        **Request No. 51.**  This request seeks all documents relating to any communications regarding the allegations, claims and defenses made by Monsanto in its Complaint or by Defendants in their Amended Counterclaims or Proposed Second Amended Counterclaims. During the meet and confer, you indicated that Defendants would be willing to produce documents responsive to this request (*e.g.*, Defendants' communications with seed companies regarding the claims in this case), but that such production might be limited by the stipulation

Amy J. Mauser, Esq.
July 12, 2010
Page 11

that the parties are currently negotiating regarding governmental investigations, lobbying, and public relations.  Please let us know whether Defendants will agree to produce all documents responsive to Request No. 51, and if not, what categories (if any) Defendants are willing to produce.

**Request Nos. 77-80.**  These requests seek documents relating to Greenleaf Genetics, Inc. ("GLG").  During the meet and confer, you claimed that the requests are very broad, and we explained that they seek documents discussing what GLG is doing with OGAT or with a stack, GLG's operating and license agreements, GLG's ability to license traits.  In addition, I noted that we would like to know whether Defendants will be producing documents from GLG.  You said Defendants would reconsider their responses to these requests.  Please let us know whether Defendants will agree to produce documents responsive to these requests and whether Defendants will be producing documents from GLG.

**Request Nos. 176 and 177.**  These requests seek documents relating to Defendants' existing or potential ownership or joint venture interests in seed companies.  Consistent with our discussion during the meet and confer, we propose deferring further discussion regarding these requests until after Judge Webber rules on Defendants' motion for clarification.

**Request No. 115.**  This request seeks all documents that refer to, relate to, or otherwise reflect any license agreement that Pioneer and/or Dow Agrosciences LLC have entered into with any party (other than Monsanto) since 1996.  During the meet and confer, you asked if there was any limitation on the type of agreements sought by this request.  I explained that the request seeks corn or soy agreements relating to the markets alleged in Defendants' counterclaims.  You indicated that Defendants would reconsider their response.  Please let us know whether Defendants will agree to produce documents responsive to Request No. 115.

**B.     Other Issues with Defendants' Responses**

Monsanto needs clarification of Defendants' responses to requests in addition to those discussed during our June 16th meet and confer.  These responses can be grouped into four categories:  (1) those in which Defendants identified no class of documents they intend to withhold; (2) those in which Defendants have refused to produce any documents; (3) those in which Defendants invited Monsanto to meet and confer to narrow the request; and (4) those in which Defendants have agreed to produce some, but not all, responsive documents.  Each category is addressed separately below.

**1.     Responses in which Defendants identify no class of documents they intend to withhold**

Defendants have not indicated that they will withhold any documents in their responses to the following requests in Monsanto's First Set of Requests for Production:  Request Nos. 1, 2, 5, 33, 76, 81, 82, 90, 92, 96, 98-107, 112-114, 116, 118-140, 142-172, 174, 175, 178-181, 185, 191-195, 199-200, 211, 213-218, 220-222, 224-225.  Please confirm that Defendants do not intend to stand on any of the objections they made in response to these requests, and will produce all non-privileged responsive documents without limitations.

Amy J. Mauser, Esq.
July 12, 2010
Page 12

2.      **Responses in which Defendants have refused to produce any documents**

In response to 14 of Monsanto's document requests, Defendants provided objections but did not agree to produce any responsive documents or invite Monsanto to narrow its requests. *See* Request Nos. 13, 26, 28, 43, 46, 48, 51, 70-71, 117, 203, 205, 219, and 223.  As discussed below, the documents Monsanto seeks in these requests are highly relevant to the claims and defenses in this case, and Monsanto intends to seek court intervention if Defendants continue to refuse to comply with these requests.

a.      **Regulatory Communications (Nos. 48, 70-71 and 203)**

Monsanto seeks documents relating to Defendants' communications with the Food & Drug Administration, the U.S. Department of Agriculture and the U.S. Environmental Protection Agency, as well as similar foreign regulatory agencies, regarding Monsanto's business practices and Defendants' OGAT and OGAT stacked products.  *See* Request Nos. 48, 70-71, 203.  We believe that these documents fall outside the scope of the agreement the parties have discussed regarding materials provided to agencies like the U.S. Department of Justice and are relevant to, among other issues, whether Defendants have been foreclosed from the alleged relevant markets by virtue of Monsanto's conduct.  During our June 16th meet and confer, we discussed Request Nos. 70 and 71, and as I noted in my June 28th letter, you explained that Defendants are not willing to produce any documents responsive to those two requests.  Please let us know whether Defendants are willing to produce documents responsive to Request Nos. 48 and 203.

b.      **Patent-Related Documents (Nos. 13, 26, 28 and 43)**

Monsanto seeks documents relating to Defendants' decision to stack their OGAT trait with Monsanto's patented traits, the destruction of seeds, lines or varieties containing those stacks, the valuation of Monsanto's '247 patent, and Defendants' patent clearance and avoidance policies.  *See* Request Nos. 13, 26, 28, 43.  These documents are relevant to, among other issues, patent infringement and patent damages.  During our June 16th meet and confer, we discussed Requests No. 26 and 28, and I proposed a narrowing of these two requests in my June 28th letter.  As for Request Nos. 13 and 48, however, my notes indicate that although they were included in our list of objection categories sent in early June, we did not discuss them during the meet and confer.  Please let us know whether Defendants are willing to produce documents responsive to those two requests.

c.      **Product Performance (No. 46 and 205)**

Monsanto seeks documents relating to communications regarding the performance of Defendants' OGAT trait and councils, panels or committees of farmers or other advisors who consult with Defendants on traits, seeds and other products.  *See* Request Nos. 46 and 205.  These documents are relevant to, among other issues, the scope of the relevant market and whether Defendants have been foreclosed from the alleged relevant markets by virtue of Monsanto's conduct.  Please let us know whether Defendants are willing to produce documents responsive to this request.

Amy J. Mauser, Esq.
July 12, 2010
Page 13

### d.    Alleged "Veto" Agreements (No. 117)

Monsanto seeks documents relating to any agreements Monsanto has entered into with other trait developers that Defendants allege gives Monsanto "unilateral veto power over the ability of licensees of non-Monsanto traits to sublicense non-Monsanto technology to ISCs." Request No. 117.  These documents are clearly relevant to Defendants' antitrust claims in this case.  Defendants objected to this request claiming that it is identical to Monsanto's Request No. 112 and, on that basis, refused to produce all responsive documents.  Defendants are mistaken.  Request No. 117 goes beyond Request No. 112 in asking for all documents reflecting any agreement of the sort described in Defendants' allegations, whereas Request No. 112 seeks documents reflecting Defendants' allegations of such an agreement.  Please let us know if Defendants will produce all documents responsive to Request No. 117.

### e.    Miscellaneous Documents (Nos. 219 and 223)

Monsanto seeks documents that Defendants identified or relied upon in answering interrogatories in this case, or reflecting any statements by Monsanto representatives that Defendants may rely upon as evidence in this case.  *See* Request Nos. 219, 223.  Defendants objected to these requests on privilege grounds.  Please let us know if Defendants are willing to produce all non-privileged documents responsive to these requests.

### 3.    Responses in Which Defendants Invited Monsanto to Meet and Confer to Narrow the Request

In response to 49 of Monsanto's document requests, Defendants offered to meet and confer with Monsanto to "narrow and clarify the scope" of the requests.  *See* Request Nos. 3, 4, 6, 17-19, 21, 23, 25, 27, 29-32, 34, 35, 45, 47, 52-56, 58, 60, 64, 65, 68, 73, 77-80, 85, 86, 87, 97, 173, 176, 177, 182, 183, 188, 190, 197, 204, 207-210, and 212.  In advance of our meeting on June 16, 2010, Defendants provided a proposal regarding these requests[1] in which they:

- offered to produce some, but not all, responsive documents for 21 requests;

- sought clarification for 19 requests;

- refused to produce any documents in response to three requests because they "relate[] solely to corn";

- noted that the parties are in the process of negotiating an agreement concerning six of the requests; and

---

[1]  During our telephonic meet and confer on June 4, 2010, Defendants agreed to provide written proposals stating what documents they are willing to produce in response to these requests, and Monsanto agreed to do the same for their similar responses to Defendants' requests.

Amy J. Mauser, Esq.
July 12, 2010
Page 14

      •    offered to revisit their responses to two of the requests pending the Court's resolution of Defendants' Motion to Clarify the September 16, 2009 stay order.

*See* June 16, 2010 Email from Jeanna Wacker to John Rosenthal (attaching RFP responses.doc).

We address each of these five categories separately below. We also note that Defendants failed to provide any proposal whatsoever regarding Request No. 31. Please provide a proposal for this request, as you had previously promised.

      **a.**    **Requests for Which Defendants Offered to Produce Some, But Not All, Responsive Documents**

      **i.**    **Communications Regarding the Soybean License Agreement and/or Corn License Agreement**

**Request Nos. 3 and 6.** These requests seek all documents reflecting communications regarding the Soybean License Agreement and OGAT or communications within or between Defendants regarding the Soybean License Agreement and/or Corn License Agreement and OGAT. For both these requests, Defendants have only agreed to produce "communications regarding the Soybean License Agreement and the accused soybean product." As noted in my letter dated June 25, 2010, while Monsanto is not inclined to either request or produce documents regarding the negotiation or interpretation of the license agreements or amendments thereto, we are agreeable to producing documents regarding the enforcement or analysis of the agreements or amendments thereto, as well as documents relating to the parties' efforts to revise the agreements to potentially permit the stacking of OGAT and Roundup Ready. Please let us know if Defendants are willing to produce such documents as well. In addition, these requests also seek documents related to the Corn License Agreement and other OGAT products, which are relevant to, among other issues, patent infringement and patent damages issues. Please let us know whether Defendants are willing to produce any other documents responsive to these requests.

**Request No. 45.** This request seeks all documents reflecting any communications between Defendants and third parties regarding the Corn License Agreement and the ability or inability of Defendants or any third party to stack Optimum GAT with any other glyphosate-tolerant trait. Defendants' response states that they "will produce responsive, non-privileged documents as indicated in their response to Request No. 6." Please advise whether Defendants' proposal regarding Request 6 also applies to Request No. 45. Please also advise whether Defendants' position is that documents responsive to Request No. 45 are a subset of the documents responsive to Request No. 6, or if Defendants are willing to produce any other documents in response to Request No. 45.

Amy J. Mauser, Esq.
July 12, 2010
Page 15

### ii.      Patent-Related Requests

**Request No. 17.**  This request seeks all documents concerning communications regarding the '938 Application, the underlying inventions disclosed therein, and/or the testing referenced therein.  Defendants have only agreed to produce "documents for the file history in the PTO for the '938 Application and documents sufficient to show the tests performed in West Memphis, Arkansas and in Napoleon, Ohio related to the '938 Application."  As noted in my letter dated June 25, 2010, we believe Defendants' production should include all documents related to the testing of the underlying inventions, and not just documents "sufficient to show" the tests performed at two locations.  Please let us know whether Defendants will agree to produce these documents.

**Request No. 18.**  This request seeks all documents concerning any litigation or potential litigation regarding the '247 RE patent, the '435 patent, the Soybean License Agreement and/or the Corn License Agreement (the "License Agreements").  Defendants have only agreed to produce "documents relating to litigation regarding the '247 RE patent and the '435 patent." These requests also seek documents related to potential litigation regarding the '247 RE patent and the '435 patent, as well as documents related to both litigation and potential litigation regarding the License Agreements.  Such documents are relevant to, among other issues, patent infringement and patent damages.  Please let us know whether Defendants are willing to produce any other documents responsive to these requests.

**Request No. 23.**  This request seeks all documents concerning the objective indicia of non-obviousness as relating to the subject matter claimed by the '247 RE patent.  Defendants refused to produce any documents responsive to this request until "Monsanto has identified the specific claims it is asserting and has established a nexus between the product and the asserted claim."  Please let us know whether Defendants will produce documents responsive to this request.

**Request No. 27.**  This request seeks all documents relating to Defendants' licensing practices or policies with respect to patents and technologies licensed to third parties by Defendants and technologies licensed by third parties to Defendants.  Defendants have only agreed to produce "documents sufficient to show Defendants' licensing policies with respect to the accused soybean products."  As noted in my letter dated June 25, 2010, Monsanto is amenable to narrowing this request (as well as Request No. 28) to the following technology areas:  (1) genetically modified crops; (2) traits for genetically modified crops; (3) genes applicable to genetically modified crops; and (4) methods for genetically modifying crops. Please let us know whether Defendants will agree to produce all non-privileged, responsive documents that fall within these four technology areas.

**Request Nos. 29, 30 and 32.**  Request No. 29 seeks all documents relating to any patent rights sought (or held) by Defendants relating to Optimum GAT, Optimum GAT Crop Products, the Optimum GAT/40-3-2 Stack, the Optimum GAT/NK603 Stack, and/or Stacked Crop Products.  Request No. 30 seeks all documents relating to any invention disclosures, draft patent applications, draft licenses or licensing applications, or other invention-related descriptions regarding Optimum GAT, Optimum GAT Crop Products, the Optimum GAT/40-3-2 Stack, the

Amy J. Mauser, Esq.
July 12, 2010
Page 16

Optimum GAT/NK603 Stack, and/or Stacked Crop Products.   Request No. 32 seeks all documents related to patent applications filed by Defendants in any country containing tests, or references to tests, on Stacked Crop Products.

For all three of these requests, Defendants have only agreed to produce "file histories and issued patents on any U.S. patent covering the accused soybean product." For Requests 30 and 32, Defendants have also agreed to produce "any licenses of same." Defendants' proposal to limit production to "the accused soybean product" is not acceptable.  As noted in my letter dated June 25, 2010, Defendants should also produce prosecution histories for any other patent applications that contain examples of stacked OGAT/RR products.  Please let us know whether Defendants are willing to produce any other documents responsive to these requests.

**Request No. 34.**  This request seeks all documents reflecting the identity of or any testing, analysis, or sequencing of (i) any gene encoding an EPSPS enzyme in 40-3-2 or NK603, or (ii) any EPSPS protein expressed in said events, (iii) the promoter associated with such EPSPS genes, (iv) any gene encoding a chloroplast transit peptide associated with and/or fused to said EPSPS proteins, and (v) any said chloroplast transit peptide.  Defendants have only agreed to produce "documents sufficient to show any sequencing by Defendants designed to identify the presence or absence of the sequence of any DNA or expressed protein that corresponds to DNA inserted in the 40-3-2 event within the accused soybean product." Defendants' response is inadequate for two reasons.  First, Defendants have limited their production to documents sufficient to show, whereas the request seeks all documents relating to Defendants' testing, analyses or sequencing of the genes, protein and promoters at issue.  Second, Defendants continue to refuse to produce documents relating to their testing, analyses or sequencing concerning NK603.  Please let us know whether Defendants are willing to produce any other documents responsive to these requests.

**Request Nos. 35 and 55.**  These requests seek all documents reflecting the transfer of genetic material containing 40-3-2 or NK603 from Monsanto to Defendants and any research, communications, work, or biological material exchanged with Monsanto related to 40-3-2 in connection with Defendants' research and development of 40-3-2 products.  For both these requests, Defendants have only agreed to produce "communications between Monsanto and Pioneer showing the transfer of Pioneer soybean germplasm to and from Monsanto between 1992 and 1994." As noted in my letter dated June 25, 2010, Defendants should expand the date range for responsive documents to include 1995 for soybeans, and should also produce (1) any agreements related to the seed transfer; (2) any agreements and documents related to the transfer of glyphosate tolerance vectors from Monsanto; (3) documents related to any research and testing done with those vectors and plants and seeds made with those vectors (by Defendants or by third parties under contract with Defendants); (4) documents analyzing or, reporting the tolerance of 40-3-2 soybeans to glyphosate herbicide or the yield of 40-3-2, including any document comparing 40-3-2 to other soybean lines; and (5) similar documents for NK603 and corn (including appropriate adjustment to time period).  Please let us know whether Defendants are willing to produce any other documents responsive to these requests.

**Request No. 47.**  This request seeks all documents reflecting any communications regarding the OGAT stacks and products.  Defendants have only agreed to produce "documents

Amy J. Mauser, Esq.
July 12, 2010
Page 17

relating to communications between Defendants and third parties regarding the accused soybean product." Defendants' proposal to limit production to "the accused soybean product" is not acceptable. Please let us know whether Defendants are willing to produce any other documents responsive to this request.

**Request No. 52.** This request seeks all documents reflecting the soybean transformation at Agracetus from 1989-1995. Defendants have only agreed to produce "documents relating to the soybean transformation at Agracetus for Monsanto from 1989-1995." As we explained during the June 16, 2010 meet and confer, this request seeks documents relating to any soybean transformation at Agracetus done in connection with any agreement between Defendants and Agracetus. Please let us know whether Defendants are willing to produce any other documents responsive to this request.

**Request No. 64.** This request seeks all documents reflecting the glyphosate resistance or lack thereof of Optimum GAT Crop Products or Stacked Crop Products. Defendants have only agreed to produce "documents sufficient to show the yield results of the accused soybean products to be commercialized as reported by Pioneer." Defendants' proposal to limit production to "the accused soybean products to be commercialized" is not acceptable. Please let us know if Defendants are willing to produce any other documents responsive to this request.

### iii.    Statements by DuPont (Request No. 73)

Request No. 73 seeks all documents reflecting any of thirteen statements by DuPont. In your proposal provided in advance of our June 16 meeting, Defendants only agreed to produce "public disclosures containing the statements in [subparts] a-m." As discussed above, in your letter dated June 28, 2010, you proposed that Defendants will agree to produce non-privileged documents responsive to Monsanto's Request No. 73 from the designated custodians, if Monsanto agrees to do the same in response to Defendants' Requests Nos. 51 and 53. For the reasons discussed above, Monsanto does not accept this proposal. Please let us know whether Defendants are willing to produce any other documents responsive to this request.

### iv.    Requests Relating to Marketing and Competition (Request Nos. 85-87)

Request No. 85 seeks all documents that analyze or compare (a) any of Defendants' corn or soybean traits, corn or soybean Hybrid Seed, corn or soybean Inbred Seed, corn or soybean Foundation Seed, corn or soybean line/variety, corn or soybean Transgenic Technology, corn or soybean Germplasm, and/or herbicides used in conjunction with any transgenic or conventional corn or soybean seeds; with (b) any Monsanto corn or soybean traits, corn or soybean Hybrid Seed, corn or soybean Inbred Seed, corn or soybean Foundation Seed, corn or soybean line/variety, corn or soybean Transgenic Technology, corn or soybean Germplasm, and/or herbicides used in conjunction with any transgenic or conventional corn or soybean seeds. Request No. 86 seeks all business plans, operating plans, strategic plans, marketing plans, market analyses, marketing studies, competitive analyses, financial plans, development plans or any other types of plans prepared by or for you relating to the development, production, purchase, sale, licensing, marketing and/or commercialization of your corn or soybean traits, corn or

Amy J. Mauser, Esq.
July 12, 2010
Page 18

soybean Hybrid Seed, corn or soybean Inbred Seed, corn or soybean Foundation Seed, corn or soybean line/variety, corn or soybean Transgenic Technology, corn or soybean Germplasm, and/or herbicides used in conjunction with any transgenic or conventional corn or soybean seeds. Request No. 87 seeks all documents reflecting competition for the development, production, purchase, sale, licensing, marketing and/or commercialization of corn or soybean traits, corn or soybean Hybrid Seed, corn or soybean Inbred Seed, corn or soybean Foundation Seed, corn or soybean line/variety, corn or soybean Transgenic Technology, corn or soybean Germplasm, and/or herbicides used in conjunction with any transgenic or conventional corn or soybean seeds.

For all three of these requests, Defendants have only agreed to produce "documents discussing comparisons of Pioneer corn and soybean traits at issue in this litigation with Monsanto corn and soybean traits at issue in this litigation."  Please let us know whether Defendants are willing to produce any other documents responsive to these requests.

v.     <b>Request No. 197</b>

Request No. 197 seeks all documents reflecting the royalty and license terms for OGAT and OGAT stacked products.  Defendants have only agreed to produce "documents sufficient to show Defendants' actual and projected revenues, profits, and margins relating to  . . . the Optimum GAT/40-3-2 Stack."  Defendants' proposal to limit production to "the Optimum GAT/40-3-2" is not acceptable.  Please let us know if Defendants are willing to produce any other documents responsive to this request.

<b>b.     Requests Defendants Asked Monsanto to Clarify</b>

Defendants requested that Monsanto clarify what it is seeking in Request Nos. 19, 21, 25, 53, 54, 65, 97, and 173, without providing any explanation as to why the requests are unclear. We believe these requests as written are clear.  Please identify as soon as possible which parts of these requests need clarification, and Monsanto will respond as appropriate.

<b>c.     Requests for Which Defendants Refused to Produce Documents</b>

Defendants have refused to provide any proposal for producing documents in response to Request Nos. 4, 56 and 68.  These requests seek documents relating to the analysis or performance of the Corn License Agreement; communications or exchanges with Monsanto in connection with Defendants' research and development of NK603 products; and communication concerning how the Optimum GAT/NK603 Stack will or is expected to compete with Monsanto's Roundup Ready corn technology in the marketplace.  In your proposal, you explained that Defendants are refusing to produce any documents responsive to these requests because they relate solely to corn.

During our June 16th meet and confer, we explained that we fail to understand your position that corn is not a part of this case, and you conceded that corn is relevant to at least the antitrust claims and defenses.  We explained that it is relevant to more than just the antitrust portion to the case because, among other reasons, DuPont's own public statements indicate that

Amy J. Mauser, Esq.
July 12, 2010
Page 19

the commercialization of its Optimum GAT stacked corn product is merely delayed, which is inconsistent with Mr. Fleming's statements that the product does not or will not exist.  Please let us know if Defendants will produce documents responsive to Requests 4, 56, 68, and any other requests you consider to "relate solely to corn."

       d.      **Requests on Hold Pending the Parties' Agreement Regarding Lobbying and Public Relations Activities.**

Monsanto agrees that Requests 204, 207, 208, 209, 210, and 212 are covered by the parties' ongoing negotiation of a stipulation concerning governmental investigations, lobbying and public relations.  As discussed above, subject to the parties' agreeing to a final stipulation, Monsanto accepts Defendants' proposal that Monsanto withdraw its Requests 48, 73, 190, 204, 205, 207, 208, 209, 210, and 212 in exchange for Defendants' withdrawal of Requests 16 and 52 in their Second Request for Production of Documents.

       e.      **Requests on Hold Pending the Court's Resolution of Defendants' Motion to Clarify the Stay Order**

Request No. 176 seeks all documents reflecting any ownership interest or joint venture interest Defendants have in any seed company doing business in the United States.  Request No. 177 seeks all documents reflecting any communications Defendants have had with any seed company doing business in the United States about acquiring an interest in the company and/or creating a joint venture.  As noted above, Monsanto agrees with Defendants' proposal to defer further discussion regarding these requests until after Judge Webber rules on Defendants' Motion to Clarify the September 19, 2009 stay order.

       4.      **Responses in Which Defendants Have Agreed to Produce Some, But Not All, Responsive Documents**

In response to 57 of Monsanto's document requests, Defendants have agreed to produce some, but not all of the responsive documents.  *See* Request Nos. 7-12, 14-16, 20, 22, 24, 36-42, 44, 49-50, 57, 59, 61-63, 66-67, 69, 72, 74-75, 83-84, 88-89, 91, 93-95, 108-111, 115, 184, 186-187, 189, 196, 198, 200-202, 206, 225.  As discussed below, the documents identified in these Requests are highly relevant to the claims and defenses in this case, and Monsanto intends to seek court intervention if Defendants continue to refuse to comply in full with these requests.

**Request Nos. 7 and 15.**  In these Requests, Monsanto seeks, among other things, all documents that relate to any efforts or communications by Monsanto or Defendants to modify either the Soybean License Agreement or the Corn License Agreement.  In their responses, Defendants state that they understand the Requests to be seeking "documents relating to offers to amend the Agreements actually communicated."   In actuality, they more broadly seek all documents relating to any efforts by Monsanto or Defendants to amend the Agreements, regardless of whether the offers were actually committed or the modifications were ultimately accepted or rejected.  These communications and efforts to modify the agreements are directly relevant to Defendants' antitrust counterclaims, including foreclosure.  Please confirm whether

Amy J. Mauser, Esq.
July 12, 2010
Page 20

or not Defendants will produce documents related to all efforts to modify or amend the Agreements.

      **Request Nos. 8-11.**   In these Requests, Monsanto seeks all documents that relating to several of Defendants' affirmative defenses and counterclaims.   In response to each of these Requests, Defendants have only agreed to produce "documents they will use in support" of these defenses.   The Requests, however, seek all documents relating to those defenses, which would also include documents that may rebut or tend to weaken those defenses.   Such documents are just as likely to lead to admissible evidence as documents that may support them.

      **Request Nos. 12, 14, 57, 59, 61-63.**   In these Requests, Monsanto seek all documents that, *inter alia*, relate to the making, using, bulking,[2] testing, breeding, and research and development, and performance of OGAT and various OGAT stacks.   Defendants only agreed to produce documents "sufficient to show the breeding event" for the Optimum GAT/40-3-2 Stack and the "accused products," the latter of which Defendants have not defined.   Please confirm whether Defendants will also produce documents relating to the making, using, bulking, testing, research and development and performance of the other products and traits listed in the Requests. These documents are undeniably relevant to Monsanto's patent allegations, including willfulness, obviousness, and damages.   Defendants should also produce documents relating to the making of any OGAT/Roundup Ready stacked products, all documents related to any laboratory, greenhouse, field, genetic, or other tests performed on such products, communications with third parties regarding OGAT/Roundup Ready products, testing, and/or ability to stack.

      **Request No. 16.**   In this Request, Monsanto seeks all documents relating to the '938 Application, including testing concerning the inventions disclosed in the '938 Application. Defendants have stated that they are only willing to produce the file history in the PTO for the '938 Application and tests performed in certain locations related to that Application.   We believe that Defendants should also produce the prosecution histories for any other patent applications that contain examples of stacked OGAT/Roundup Ready® products and all documents related to the underlying tests of stacked OGAT/Roundup Ready® products, not just those "sufficient to show and the West Memphis, Arkansas, and Napoleon tests."   These documents are calculated to lead to admissible evidence related to Monsanto's patent claims.   Please confirm whether or not Defendants will produce such documents.

      **Request Nos. 20, 22, 24, 36-41.**   In this Request, Monsanto seeks, among other things, all documents relating to the patentability of the '247 RE patent, prior art, and the enforceability of the '247 RE patent.   Defendants state in their responses that they understand these Requests as calling for documents that "they will rely on in defense of this action."   The Requests, however, plainly call for more, including documents that Defendants may not rely upon or that may

---

[2] Monsanto has since clarified the phrase "bulking up of stacks" in its Request No. 63 to mean work directed to increasing the quantity of a particular hybrid or inbred seed for testing or commercialization purposes.   *See* Ltr. from J. Rosenthal to A. Mauser, June 25, 2010.

Amy J. Mauser, Esq.
July 12, 2010
Page 21

support Monsanto's patent claims.[3]   These types of documents are just as likely to lead to admissible evidence as those documents Defendants will rely upon to defend Monsanto's claims and thus must be produced.   Please confirm whether or not Defendants will produce all documents responsive to the Requests, regardless of whether Defendants will rely upon them.

**Request No. 42**.   In this Request, Monsanto seeks, among other things, all documents related to the production of any Inbred Seed, Hybrid Seed, line or variety containing Optimum GAT/NK603 Stack and/or the Optimum GAT/40-3-2 Stack.   Defendants have agreed to provide only documents "sufficient to show or identify" *a* commercial Inbred Seed, Hybrid Seed, line or variety containing Optimum GAT/40-3-2 Stack.   Accordingly, Defendants have apparently refused to produce documents related to the production of *any* Inbred or Hybrid Seed as requested and have refused to produce documents related to the Optimum GAT/NK603 Stack. Because such documents are highly relevant to Monsanto's patent infringement claims, Defendants should also provide documents sufficient to identify each inbred line, hybrid line, or variety created and the amounts created and/or "bulked up." Please confirm whether Defendants intend to comply with this Request.

**Request No. 44.**   In this Request, Monsanto seeks all documents relating to, among other things, communications regarding the Soybean License Agreement and the ability of Defendants or any third party to stack OGAT with another glyphosate-tolerant trait.   In their response, Defendants have referred Monsanto to their responses to Request Nos. 2 and 3.   Yet, as noted above in subsection C, Defendants have not agreed to produce anything in response to Request No. 3 and instead invited Monsanto to discuss the Request.   Additionally, Request No. 44 seeks at least some documents that are distinct from those sought in Requests Nos. 2 and 3 that are relevant to Monsanto's patent allegations, including those relating to communications regarding sections of the Soybean License Agreement that are not specified in Request No 2.   Accordingly, even if Defendants ultimately produce documents responsive to both Request Nos. 2 and 3, that production would not satisfy Defendants' obligations under Request No. 44.   Please confirm whether Defendants will produce all documents responsive to that request.

**Request Nos. 49-50, 66-67, 69, 72, 74-75, 83-84, 196, 198, 201, 206.**   In each of these Requests, Monsanto seeks documents pertaining to OGAT traits and products and/or stacked traits and products containing OGAT.   In their responses, Defendants have refused to provide documents related to anything other than the Optimum GAT/40-3-2 Stack even though documents relating to the other products are just as relevant to Monsanto's patent infringement allegations, including willfulness, obviousness and damages, as well as Defendants' antitrust allegations.   Please confirm whether Defendants will produce responsive documents relating to the other products.

Additionally, in response to Request No. 49 and 50, Defendants have only agreed to produce "commercial materials" and communications of "commercial materials" without defining that term.   The Requests are broader in that they seek documents relating to communications by Defendants' field organization relating to the specified products.   Because

---

[3] In fact, several of these Requests expressly seek all documents that "support or contradict" various defenses Defendants have raised.  *E.g.*, Request Nos. 39-41.

Amy J. Mauser, Esq.
July 12, 2010
Page 22

these documents are relevant to both Monsanto's patent infringement allegations and Defendants' antitrust allegations, Defendants should also produce documents relating to communications with third parties and communications within Defendants' field organizations regarding OGAT/Roundup Ready® products. Please state whether Defendants will produce all documents relating to communications by Defendants' field organization relating to the specified products.

**Request Nos. 88-89, 91, 93-95, 108-111, 184, 186-187, 189.**   In these Requests, Monsanto seeks information, among other things, relating to corn or soybean Hybrid, Inbred, and Foundation Seeds and Transgenic Technology.  Defendants have agreed to provide documents relating only to corn or soybean "seeds."  Please confirm that Defendants also intend to produce documents relating to Hybrid, Inbred, and Foundation Seeds.   Additionally, Defendants' responses are silent as to whether they will produce documents relating to Transgenic Technology.  Such documents are relevant to Defendants' antitrust allegations.  Please state whether Defendants intend to produce such documents.

**Request No. 115.**  In this Request, Monsanto seeks all documents relating to any license agreements that Pioneer or Dow has entered into with any party other than Monsanto since 1996. Defendants have agreed to produce only those documents relating to license agreements pertaining to Herculex.  Yet, documents relating to other license agreements are relevant to Defendants' antitrust counterclaims and their contention that they have been foreclosed from the alleged relevant markets.  Please confirm whether Defendants will produce documents relating to license agreements in addition to those pertaining to Herculex.

**Request No. 202**.  In this Request, Monsanto seeks, among other things, subpoenas and other requests for documents from government entities concerning the development or commercialization of corn or soybean traits Hybrid, Inbred, and Foundation Seeds, line/variety, Transgenic Technology, and germplasm.  Defendants have only agreed to provide documents relating to corn or soybean traits.  This is not sufficient given that the remaining requested items are relevant to Defendants' antitrust counterclaims.  Please confirm whether Defendants will produce the remaining items requested.

## III.   ISSUES RAISED IN YOUR JUNE 30TH LETTER

In your June 30th letter, you raised several additional issues and made certain proposals, which are addressed below.

*First*, you proposed a July 17th deadline for completing negotiations regarding the parties' document requests.  I suggest that we wait to exchange letters before we agree to whether that is a realistic deadline.  Again, I think one more phone call would make sense before commencing motion practice.

*Second*, you proposed that the parties agree to provide weekly rolling productions of documents starting on Wednesday, July 21st.  Monsanto appreciates the challenge both parties face in meeting the Court's deadline for document production, and we are willing to discuss rolling productions to facilitate the parties' abilities to prepare for depositions under the Court's

Amy J. Mauser, Esq.
July 12, 2010
Page 23

schedule.  We are not prepared at this time, however, to agree to your proposal that the parties "commit to making a substantial production to the other party every two weeks beginning on Wednesday, July 21, 2010 and culminating on Wednesday, September 15, 2010."  We propose that the parties discuss the scheduling of rolling productions during our next telephonic meet and confer.

*Third*, you requested that Monsanto file a written motion formally withdrawing its motion for protective order on third-party discovery, which Monsanto withdrew orally during the June 21st hearing.  I suggest we document in a signed writing our agreement in this regard before filing a notice of withdraw.

*Fourth*, my June 28th letter to you provided a list of categories of documents Monsanto expects Defendants to produce regardless of whether they are in the custody of the designated custodians.  Your June 30th letter states that Defendants will provide a similar list by today.  We will review Defendants' proposed list and respond as appropriate.

*       *       *

We propose that the parties schedule a telephonic meet and confer to discuss their positions and any outstanding issues.  Please let us know when you would be available later this week to discuss these issues.

Sincerely,


/s/
John J. Rosenthal

cc:    Thomas F. Fleming, Esq.
       Greg G. Gutzler, Esq.
       Steven G. Spears, Esq.