IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MONSANTO COMPANY and MONSANTO TECHNOLOGY LLC, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| E.I. DUPONT DE NEMOURS AND COMPANY and PIONEER HI-BRED INTERNATIONAL, INC., | ) ) ) ) ) | Case No. 4:09-cv-00686-ERW |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF MONSANTO'S FIRST MOTION TO COMPEL**

# INTRODUCTION

This action involves Defendants' breach of contract and patent infringement based on their stacking of Monsanto's Roundup Ready traits with Defendants' OGAT trait.  Defendants are refusing to produce essential discovery relating to Monsanto's claims, including basic research materials proving Defendants' infringement.  As this Court is aware from prior experience, such materials are critical to an accurate understanding of the extent of Defendants' actionable misconduct.  *See Pioneer Hi-Bred Int'l, Inc. v. Monsanto Co.*, 2001 WL 170410, at *18 (E.D. Mo. Jan. 2, 2001) (sanctioning Pioneer for deliberately withholding research information in violation of discovery orders).

This motion addresses four categories of urgent concern.  *First*, Defendants have refused to produce *any* documents regarding their stacked corn products on the frivolous ground that they are "not part of the case."  *Second*, Defendants have refused to comply with Monsanto's requests for seed samples and pedigree information for each line of the accused products – materials that embody the infringement and demonstrate Defendants' breach of contract.  *Third*, Defendants have refused to produce regulatory materials containing Defendants' own representations about the technical details of their accused products.  *Fourth*, Defendants have refused to provide any information concerning their failed, unstacked OGAT corn and soybean products – discovery relevant to nearly every issue in this case.

Defendants have no plausible legal basis to withhold any of these materials.  The Court should compel Defendants to produce complete discovery, as discussed below.  Moreover, it is critical that these materials be produced immediately, but no later than the final deadline for document production on November 1, 2010.  The withheld discovery represents a large and important source of information that Monsanto must have access to before depositions can proceed within the Court's schedule.  Monsanto also needs time to analyze Defendants' seed

samples, to the extent appropriate, before submitting opening expert reports by the January 5, 2011 deadline.  Therefore, Monsanto requests that this motion be granted on an expedited basis.

## FACTUAL BACKGROUND

After selling Monsanto's Roundup Ready corn and soybean technologies under its patent licenses for nearly 10 years, Defendants decided to breach these licenses. The Complaint alleges that Defendants stacked their OGAT trait with Monsanto's patented Roundup Ready trait in at least two crop products – corn (NK603) and soybeans (40-3-2) – in order to mask the problems with OGAT as a standalone trait.  (Dkt. 1, ¶¶ 11-13).  Monsanto also alleges that Defendants' stacking activities breach separate corn and soybean licenses (*id.*, ¶¶ 76-122), and willfully infringes Monsanto's '247 patent (*id.*, ¶¶ 61-67).  This Court has twice held that the licenses are unambiguous and do not permit Defendants to stack their OGAT trait with Roundup Ready soybean and corn. (Dkt. 124 & 283).  Any activities with these stacked products – including any making, use, testing, manipulation, propagation, or commercialization – breach the licenses and infringe Monsanto's patent, for which Monsanto is entitled to damages and injunctive relief.

*Documents Related to Stacked Corn Products*.   In the course of discovery, Monsanto served document requests seeking relevant evidence related to Defendants' infringement and breach, including documents regarding the accused OGAT/NK603 stacked corn product.  For example, Monsanto sought the following:

> **Request 12.**   All documents that refer to, relate to, or otherwise reflect the **making, using, bulking, testing, breeding, and/or research and development of**: (a) Optimum GAT, (b) the Optimum GAT/40-3-2 Stack, (c) the **Optimum GAT/NK603 Stack;** (d) **the Optimum GAT Crop Products**, and/or (e) **Stacked Crop Products.**

> **Request 13.**   All documents that refer to, relate to, or otherwise reflect the **decision to stack** Monsanto's 40-3-2 Event with Optimum GAT and/or to stack **Monsanto's NK603 Event with Optimum GAT**, and documents that refer to, relate to, or otherwise reflect any and all deliberations and considerations made related to that decision.

- 2 -

(Ex. 1 at 10, First Request, Nos. 12 and 13).  Defendants objected to both requests and refused to produce any documents relating to the NK603/OGAT stacked corn product on the incredible basis that such products are "not at issue in this case."  (Ex. 2 at 15).  That is plainly false given that Monsanto alleges that the NK603/OGAT stack infringes its patent and breaches the license.

Monsanto propounded additional requests to obtain necessary discovery on Defendants' stacked corn product.  This included the molecular characterizations of Defendants' stacked products (No. 34),[1] the transfer of NK603 genetic material from Monsanto to Defendants (Nos. 35 and 56), Defendants' production and destruction of inbred varieties containing the NK603/OGAT stack (Nos. 42-43), their use of stacked products (No. 57), trait integration records for stacked products (No. 58), and their testing and breeding of stacked products (Nos. 59 and 61).  Monsanto also requested documents reflecting Defendants' internal and external communications about their stacked products (Nos. 6, 47, 49-50, 62-63), their marketing and commercialization of those products (Nos. 66 and 196), and their regulatory submissions for them (Nos. 70-71).  Every time, Defendants made the same objection that the stacked corn products were "not at issue in this case."  (*E.g.*, Ex. 2 at 11, 30, *et seq.*).  Later, Defendants' counsel confirmed that Defendants refuse to produce any documents responsive to any of the above requests as they relate to the accused stacked corn products.  (*E.g.*, Ex. 3 at 23)[2].

***Discovery on Infringing Seeds and Pedigree Information***.  There should be no question about infringement because Defendants' accused products indisputably contain the Roundup Ready events claimed in the '247 patent.  Yet, in response to Monsanto's contentions, Defendants claim there is a "lack of reliable evidence" that these products infringe.  (Ex. 4 at 30).

---

[1] For the sake of simplicity, all citations to "No. __" or "Nos. __" in this motion refer to the request numbers in Monsanto's First Set of Requests for Production of Documents (Ex. 1) unless otherwise indicated.

[2] Exhibits 3 and 4 are filed under seal.

- 3 -

Thus, Monsanto asked Defendants for seed samples from their various lines of accused products, which can be analyzed to confirm that those seeds contain the patented Roundup Ready DNA. Monsanto requested 200 viable seeds for each line of stacked 40-3-2/OGAT soybean product, and 200 viable seeds for each line of stacked NK603/OGAT corn product. (Ex. 5, Second Request, Nos. 1-2). These are modest requests aimed at obtaining the "reliable evidence" of infringement Defendants say is lacking.[3]

Along with the samples, Monsanto requested documents setting forth the complete pedigree of all lines of stacked soybean (40-3-2/OGAT) and corn (NK603/OGAT) since the initial stacking of the NK603 and 40-3-2 events with OGAT. (*Id.*, Nos. 3-4). These requests seek the genealogy of the infringing products so that the scope and extent of infringement can be made clear, and so that the seed samples Defendants produce can be properly identified. Moreover, this genealogy will conclusively show that these products were made by breeding in the Monsanto traits containing the patented CP4 gene technology claimed in the '247 RE patent.

Once again, Defendants have thwarted this discovery. They have refused to produce *any* corn seed responsive to these requests and have stated that they will limit their production of soybean seeds to lines that Defendants subjectively "intend to commercialize" – and only then "to the extent that such lines have been identified to date." (Ex. 6 at 4-5). Defendants thus reserve the right to selectively withhold from production all soybean seed samples merely by contending that they have not presently identified a commercial line. Finally, Defendants have refused to produce any documents on the genealogy of the infringing products. (*Id.* at 5-6).

---

[3] During the October 14, 2010, meet and confer, Defendants represented that they had limited amounts, per line, of the requested seeds, and stated that even for those lines for which they chose to produce seeds, they would provide 25 seeds, not 200. Monsanto will attempt to work with this reduced amount, but reserves its right to request additional seeds for testing should the need arise.

***Domestic and Foreign Regulatory Filings and Communications.*** Monsanto also requested the complete regulatory packages for Defendants' accused products. (Nos. 70-71). These materials contain Defendants' representations to governmental agencies about the technical contents of their stacked products showing their infringement. Given Defendants' claim that there is a lack of "reliable evidence" about the DNA contents of their own products, complete discovery regarding Defendants' characterization of their own products is critical. Yet, Defendants have only agreed to provide "documents sufficient to demonstrate regulatory *approval* of a commercial GAT/RR soybean products" (Ex. 7 at 10) – documents that **would not** contain the relevant technical details of their stacked soybeans or corn or their representations about those products.

***Discovery on OGAT Corn and Soybeans.*** Monsanto's Complaint alleges that Defendants attempted to develop a glyphosate-tolerance trait on their own to avoid paying Monsanto royalties for Roundup Ready. (Dkt. 1 at ¶ 11). When these efforts failed, Defendants elected to stack their failed OGAT trait with Monsanto's Roundup Ready trait to conceal OGAT's problems. (*Id.* at ¶¶ 50-60). Despite the failure of a standalone OGAT trait, Defendants allege that Monsanto has monopolized or attempted to monopolize three corn trait markets in which Defendants purportedly plan to compete with their failed OGAT trait. (*See, e.g.*, SAAC, Dkt. 316 at ¶¶ 35-36, 44-45).

Monsanto asked Defendants for documents concerning the development, performance, commercialization and marketing of OGAT corn, as well as regulatory approval and financial projections for the product. *See* Nos. 14, 46, 49-50, 60-61, 64-65 (performance); Nos. 66-67, 69, 78-80, 201, 206 (commercialization); Nos. 72-75, 83-84 (marketing); Nos. 70-71 (regulatory approval); Nos. 172-173, 196-198 (financial projections). Defendants refused to produce these documents on the basis that OGAT corn is "not at issue in this case," even though it forms the

- 5 -

basis for their own antitrust counterclaim. (Ex. 2 at 16, *et seq.*). Defendants also refused to provide any documents regarding unstacked OGAT soybeans,[4] even though these documents directly relate to a host of disputed issues in this case. Defendants' ongoing obstructionism necessitates the present motion.

## **ARGUMENT**

Discovery under the Federal Rules is "accorded a broad and liberal treatment." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). Rule 26 provides that the "[p]arties may obtain discovery regarding *any matter*, not privileged, that is *relevant to the claim or defense of any party*. . . . Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1) (emphases added). "Relevant" is an extremely broad term encompassing any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Masters v. UHS of Delaware, Inc.*, No. 4:06 CV 1850-DJS, 2007 WL 3120015, *1 (E.D. Mo. Oct. 23, 2007).

A party objecting to discovery on relevance grounds bears the burden of showing specifically *how* each request seeks impermissible discovery. *See, e.g.*, *McLeod, Alexander, Powel & Apffel v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990). Merely reciting the standard list of objections is insufficient. *See id.* And, litigants cannot refuse discovery simply because the requested information does not fit into their own legal theories. *See Henderson v. Nat'l R.R. Passenger Corp.*, 113 F.R.D. 502, 507 (N.D. Ill. 1986) (defendant's attempt "to limit the theory of plaintiff's case" by limiting scope of discovery "is improper"); *Petersen v. DaimlerChrysler Corp.*, 2007 WL 2391151, *3 (D. Utah 2007) ("Given Plaintiffs' broad theory of the case,

---

[4] After repeatedly refusing to provide this discovery, Defendants suggested during an August 24, 2010 meet-and-confer discussion they were "inclined to" produce information on the standalone OGAT trait in soybeans. However, Defendants then failed to confirm in writing that they would do so, despite Monsanto's request. (Ex. 7 at 3).

- 6 -

limiting discovery in the fashion [defendant] proposes would be premature and could potentially deprive Plaintiffs of discovery supporting that theory.").

## I. THIS COURT SHOULD COMPEL DEFENDANTS TO PRODUCE DOCUMENTS ON THEIR STACKED CORN PRODUCTS

Monsanto's requests concerning stacked corn products clearly are "reasonably calculated to lead to the discovery of admissible evidence." The Complaint identifies the NK603/OGAT corn product as one of the two infringing products; it pleads separate counts of breach of contract based on the creation and use that product; and it seeks damages and injunctive relief based on Defendants' activities in conjunction with these products. (Dkt. 1 at ¶¶ 65, 110-29). Defendants' stacked corn product is just as much a part of the case as their stacked soybean product. They cannot avoid their discovery obligations by pretending that corn is not in this case, when it plainly is. *See, e.g.*, *Polycom, Inc. v. Codian, Ltd.*, No. 2:05-cv-520, 2007 WL 194588, at * 2 (E.D. Tex. Jan. 22, 2007) (compelling production of documents regarding accused products, even where they were *not* specifically identified in the Complaint).

Defendants' refusal to abide by their most basic discovery obligations is impossible to justify. In meet-and-confer discussions and letters, Defendants suggested they are entitled to withhold discovery on the stacked corn product because stacking is allegedly permitted under the parties' Corn License Agreement. Essentially, Defendants argued that their denial of liability and assertion of an affirmative defense entitles them to unilaterally withhold discovery. That is not the way the discovery process works, as Defendants well know. "[A]n attack on the merits will not preclude discovery." *Caterpillar, Inc. v. Deere & Co., Inc.*, No. 96 C 5355, 1997 WL 399627, *2 (N.D. Ill., July 11, 1997) (citing 8A Wright, Miller & Marcus, Federal Practice & Procedure § 2008, at 104 & n.14 (2d ed. 1994)). If the law were otherwise, Monsanto could refuse any discovery into Defendants' antitrust allegations simply by denying it violated the

antitrust laws. Of course, Monsanto has not done so because, unlike Defendants, it takes its discovery obligations seriously – despite its view that Defendants' claims are meritless.

Defendants' "license" argument is also directly contrary to two separate orders from this Court. The Court has held that the parties' Corn License Agreement does *not* permit Defendants to stack Roundup Ready with OGAT, and thus, Defendants' stacking activities are *not* licensed. (Dkt. 124 at 23, Dkt. 283 at 8). Defendants' objections to the production of documents on stacked corn products would be frivolous even in the absence of these Court orders. Their continuing refusal in the face of these orders is inexcusable.

Defendants have also asserted that they can withhold these documents because they do not intend to commercialize a stacked Roundup Ready/OGAT corn product. (Ex. 3 at 23). Neither the Court nor Monsanto, is required to accept Defendants' representation as true, and it cannot foreclose relevant discovery. *See Hagenbuch v. 3B6 Sistemi Elettronici*, 2005 WL 6246195 at *3 (N.D. Ill. 2005) ("Plaintiff is entitled to explore whether 3B6 Italy has infringed on his patents and need not accept the statements of 3B6 Italy's chief engineer and part owner as the final word on the matter.").

Moreover, Monsanto and this Court have every reason to doubt this unilateral representation because both have heard a similar argument before that proved to be false. In prior litigation between these parties involving the Bt corn trait, Pioneer repeatedly claimed that it had not engaged in the alleged stacking at issue in that case. On the eve of trial, Monsanto learned from newly-produced documents that Pioneer had, in fact, created the alleged stacks and that Pioneer tried to conceal that fact by redacting documents. *See Pioneer Hi-Bred Int'l, Inc. v. Monsanto Co.*, 2001 WL 170410, at *18 (E.D. Mo. Jan. 2, 2001). This Court, in sanctioning Pioneer over $8 million for repeated discovery violations, stated that "no conclusion is plausible except Pioneer willfully attempted to conceal its stacking activity of Monsanto's Cry1A(b) gene,

which it had denied." *Id.* at \*18, 23.  Given this history, Pioneer is not entitled to the benefit of the doubt regarding its self-serving representations.

In any event, Defendants need not *commercialize* their products in order to *infringe* Defendants' patents.  In their Answer, Defendants admitted to stacking OGAT with the Roundup Ready/NK603 corn event. (*See* Dkt. 26, ¶ 13) (denying only that stacking was done on a "commercial product," but not denying the stacking was actually performed).  As this Court has indicated, making and using a stacked product would constitute acts of infringement, rather than "experimental use," irrespective of commercialization.  (Dkt. 283 at 18).  Thus, Monsanto is entitled to discovery on them regardless of whether Defendants subjectively intend to commercialize these products at the present time.

Finally, Defendants have suggested that they can unilaterally withhold discovery because their stacked corn products are protected by safe-harbor provisions exempting activities "***solely*** for uses reasonably related to the development and submission of information under a Federal law which regulates the manufacture, use, or sale of drugs or veterinary biological products." 35 U.S.C. § 271(e) (emphasis added).  Again, that Defendants have alleged a defense is no basis for withholding discovery.   Indeed, this Court has expressed skepticism about the viability of such a defense, (Dkt. 283 at 17) and discovery is plainly appropriate to test Defendants' assertions that their propagation of a stacked corn product is "*solely*" related to the submission of information under a Federal law governing drug products.

In the end, "the burden is on the party resisting discovery to explain why discovery should be limited given that the Federal Rules allow for broad discovery." *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, 250 F.R.D. 426, 436 (D. Neb. 2008).  Defendants have done nothing more than allege dubious or already-rejected defenses as a basis to refuse discovery.  They should be ordered to produce documents on their stacked corn products to the same extent

as their stacked soybean products. Thus, Monsanto requests that the Court enter an order compelling Defendants to produce documents responsive to Requests 4, 6, 12-13, 29-30, 34-35, 42-43, 47, 49-50, 56-59, 61-63, 70-71, and 196 of Monsanto's First Set of Requests.

## II. THIS COURT SHOULD COMPEL DEFENDANTS TO PRODUCE ALL REQUESTED SEEDS AND PEDIGREE INFORMATION IMMEDIATELY

Federal Rule 34 allows a party to request production of tangible things under the same broad standards that govern the production of documents. *See* Fed. R. Civ. P. 34(a)(1). Monsanto's requests for samples of the infringing seeds seek obviously relevant discovery – products embodying Defendants' infringement of the '247 patent. These products can, to the extent appropriate, be subjected to scientific tests to confirm that infringement. Numerous courts have ordered production of the accused products. *See, e.g.*, *Alloc, Inc. v. Unilin Beheer B.V.*, No. 03-C-1266, 2006 WL 757871, *4 (E.D. Wis., Mar. 24, 2006) (compelling production of multiple copies of accused products); *Caliper Tech. Corp. v. Molecular Dev. Corp.*, 213 F.R.D. 555, 558 (N.D. Cal. 2003) (compelling production of each of the defendant's accused test kits); *see also Caterpillar*, 1997 WL 399627, at *2 (compelling production of tractor accused of infringement).

Defendants have agreed to produce "representative" samples of stacked soybeans with respect to lines that they "intend to commercialize," but have (1) refused to provide any samples for any other soybean lines other than those that they unilaterally choose; (2) refused to provide pedigree information for any of their accused, stacked soybean products; and (3) wholly refused to produce any samples of their stacked corn product. These refusals are unjustified.

First, the total extent of Defendants' stacked Roundup Ready/OGAT soybean lines is relevant, not just the few lines Defendants' subjectively intend to commercialize. All stacked soybean lines are prohibited by the license agreement. For purposes of infringement, the Court has held that "it is clear that the creation of genetically-modified seed products by corporations in the business of selling such products likewise does not qualify" as experimental use. (Dkt.

283 at 18). "Defendants have admitted that they intend to commercialize OGAT/RR soybeans, and even if they do not intend to do the same with OGAT/RR corn, commercial implications are irrelevant if the infringing acts are consistent with the defendant's business operations." (*Id.*)

Thus, Defendants cannot validly limit discovery into their infringing activities by contending that certain lines were not "commercial" in nature. All of Defendants' stacking activities are relevant, and this includes all product lines that Defendants have created, used, tested, or propagated. If Defendants intend to dispute infringement, despite the fact their products were bred to contain the exact Monsanto 40-3-2 and NK603 events that have been proven to contain an infringing CP4 gene, they will need to make a complete production of products for potential testing. *See Vardon Golf Co., Inc.*, 156 F.R.D. at 645 (compelling production of *all* accused golf club heads in possession of defendant); *Caliper*, 213 F.R.D. at 558 (compelling production of *each* of the defendant's accused test kits).

Further, Defendants' refusal to provide *any* pedigree (genealogy) information for its infringing lines is wholly improper. Monsanto's requests seek the full extent of Defendants' breeding of the stacked products. Because each act of breeding reflects a separate act of infringement and breach, Monsanto's request for pedigree information aims at discovering the extent to which Defendants have been misappropriating Monsanto's patented technology. Indeed, the pedigree information sought here is precisely the type of information that was produced late in the prior dispute between the parties, and which fully uncovered the extent of Defendants' deceit in that action. *See Pioneer Hi-Bred Int'l, Inc.*, 2001 WL 170410, at *16-19. ("The evidence is clear beyond any doubt that Pioneer intentionally redacted the references to the Pentin-1 stack, and the Court concludes it was a willful act to prevent Monsanto and the Court from learning of Pioneer's unauthorized stacking activities of Monsanto's Cry1A(b) gene which is clearly proscribed by the Agreement.") Now, just as in the past, Defendants have obstructed

discovery into documents indicating *how many* stacked soybean and corn lines have been produced, and how those lines relate to one another and to Defendants' unstacked lines. The true nature of Defendants' activity can only be ascertained from a complete production of their underlying records and materials.

Relying on same spurious arguments discussed above in Part I, Defendants have refused to produce *any* corn seeds. Defendants should be ordered to produce these seeds responsive to Monsanto's Requests, for the same reasons stated above. Thus, Monsanto requests that the Court order Defendants to produce all documents and materials responsive to Monsanto's Second Set of Requests for Documents and Things, Requests 1-4, as requested.

### III. THIS COURT SHOULD COMPEL DEFENDANTS TO PRODUCE THE COMPLETE REGULATORY PACKAGE FOR THEIR ACCUSED PRODUCTS

Defendants' refusal to produce the regulatory packages for their accused products is also inexcusable, and for essentially the same reasons. These documents contain Defendants' *own characterization* of the technical details of their soybean and corn products, including potential DNA testing, glyphosate-tolerance testing, and other admissions about the technical details relevant to Defendants' infringement of the asserted '247 patent claims. There is no legal basis for Defendants to withhold this information. Again, this is especially true in light of Defendants' claim that there is a lack of reliable evidence that their products contain the claimed DNA. Such information clearly exists and is in Defendants' possession. Defendants cannot resist infringement based on a supposed lack of evidence, while withholding that very evidence. Accordingly, they should be compelled to produce all regulatory packages and communications for all of their accused products on a world-wide basis in response to Monsanto's First Request for Production, Nos. 70 and 71.

## IV. THIS COURT SHOULD COMPEL DEFENDANTS TO PRODUCE DOCUMENTS CONCERNING THEIR STANDALONE OGAT TRAIT

Finally, Defendants should be ordered to produce documents relating to the development, testing, and marketing for their unstacked OGAT corn and soybean products.

### A. Documents on Defendants' Standalone OGAT Trait Are Relevant to Monsanto's Patent Infringement Claims

Defendants' research, development, and testing of a standalone OGAT trait in corn and soybeans are intertwined with Defendants' infringing activities. As Monsanto's Complaint alleges, Defendants tried to develop a standalone glyphosate-tolerance trait called OGAT, but that effort failed to deliver commercially viable levels of tolerance. (Dkt. 1 at ¶ 11). Lacking a viable product, Defendants resorted to stacking OGAT with Monsanto's patented Roundup Ready gene in violation of their licenses and Monsanto's patent rights. (*Id.*, ¶¶ 50-60). Thus Defendants' failed OGAT trait directly informs their decision to pursue a stacked product, establishes their willful infringement of Monsanto's patents, and shows the importance of Monsanto's Roundup Ready for purposes of a patent damages calculation.

Documents regarding the research, development, and failure of OGAT in soybeans and corn are also relevant to the technical proof of Defendants' infringement. Defendants have resisted infringement on the grounds that there is insufficient evidence the glyphosate tolerance of their stacked products can be attributed to the claimed Roundup Ready DNA (as opposed to OGAT). (Dkt. 111 at 23). However, the documents Defendants are withholding speak directly to this issue. They are expected to show that the glyphosate tolerance of OGAT alone is insufficient, as Defendants have publicly admitted elsewhere, and therefore the glyphosate tolerance of the stacked products is due at least to the claimed Roundup Ready gene.

Still further, the withheld documents on OGAT are highly relevant to validity issues. Defendants contend that the '247 patent claims are invalid as obvious over the prior art.

Objective indicia of non-obviousness, such as the failure of others and evidence of copying, must always be considered by a court in connection with an obviousness attack. *Knoll Pharm. Co., Inc. v. Teva Pharm. USA, Inc.*, 367 F.3d 1381, 1385 (Fed. Cir. 2004). Evidence that an accused infringer was unable to develop a product has been held particularly persuasive evidence of non-obviousness. For instance, in *Advanced Display Systems, Inc. v. Kent State University*, the infringer obstructed discovery into its own failures, and withheld evidence that it was only able to reach success when it copied the patentee. 212 F.3d 1272, 1285 (Fed. Cir. 2000). The evidence was not discovered until after trial. The Federal Circuit found it was potentially case dispositive, granted a new trial, and sanctioned the infringer for withholding it. *Id.* at 1285-89.

### B.   Documents on Defendants' OGAT Corn Product Are Also Relevant to Defendants' Antitrust Counterclaims

Wholly apart from these patent issues, Monsanto's requests concerning Defendants' standalone OGAT corn product are clearly relevant to Monsanto's antitrust defenses. Defendants allege, among other things, that Monsanto monopolized or attempted to monopolize three different corn trait markets, (SAAC, Counts II-IV); and that Defendants have been foreclosed from competing in those markets by Monsanto's conduct. (*Id.*, ¶¶ 412, 437).

Monsanto seeks documents concerning the performance, commercial acceptability, and regulatory approval for its OGAT corn products, which are directly relevant to whether Defendants have been injured by Monsanto's conduct or whether their failure to market an OGAT corn product is due to the product's own shortcomings. Those documents are also relevant to whether Defendants are actual or potential competitors in the relevant market, an essential requirement of antitrust standing. *See, e.g.*, *Bourns, Inc. v. Raychem Corp.*, 331 F.3d 704, 711 (9th Cir. 2003) ("Only an actual competitor or one ready to be a competitor can suffer antitrust injury."); *Central Telecomms., Inv. v. TCI Cablevision, Inc.*, 800 F.2d 711 (8th Cir. 1986) (requiring alleged potential competitor to meet "intent and preparedness" test to establish

- 14 -

antitrust standing); *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 267-268 (3d Cir. 1998) (requiring proof that antitrust plaintiff is likely to obtain required regulatory approvals).

Monsanto's requests also seek documents concerning Defendants' plans to commercialize and market an OGAT corn product, including forecasts, market research, marketing materials and strategic plans (Nos. 66-67, 69); press releases and public statements about the product (Nos. 72-75); and what companies, products, and technologies Defendants believe will compete with the product (Nos. 83-84). These documents are relevant to the scope of the relevant market, an issue on which courts permit broad discovery given its importance to antitrust analysis. *See, e.g.*, *American Key Corp. v. Cole Nat'l Corp.*, 762 F.2d 1569, 1577 (11th Cir. 1985) (granting, in part, motion to compel relevant market discovery).

Finally, Monsanto's requests seek documents concerning Defendants' monetary investment in biotechnology trait development and any patents related to that technology (Nos. 172-173) and any financial analyses, projections, or budgets for the OGAT corn product (Nos. 196), including royalty and license terms and projected revenue for the product (Nos. 197-198). Such information is clearly relevant to the extent, if any, of Defendants' antitrust injury and damages. *See In re Folding Carton Antitrust Litig.*, 76 F.R.D. 420, 431 (N.D. Ill. 1977) (holding antitrust defendants entitled to discovery of plaintiffs' internal financial information).

Thus, there are a host of reasons why the requested discovery into Defendants' failed, standalone OGAT corn and soybean products are essential to the just resolution of this case. Defendants have no basis to withhold this evidence, and should be compelled to produce it.

## CONCLUSION

Monsanto's motion to compel should be granted.

Dated: October 15, 2010

Respectfully submitted,

HUSCH BLACKWELL LLP


By: /s/ Joseph P. Conran            .
Joseph P. Conran, E.D.Mo. # 6455
joe.conran@huschblackwell.com
Omri E. Praiss, E.D.Mo. # 35002
omri.praiss@huschblackwell.com
Greg G. Gutzler, E.D.Mo. # 84923
greg.gutzler@huschblackwell.com
Tamara M. Spicer, E.D.Mo. # 122214
tamara.spicer@huschblackwell.com
Steven M. Berezney, E.D.Mo. # 499707
steve.berezney@huschblackwell.com
190 Carondelet Plaza, Suite 600
St. Louis, MO  63105
(314) 480-1500 – telephone
(314) 480-1505 – facsimile

WINSTON & STRAWN LLP
Dan K. Webb
dwebb@winston.com
George C. Lombardi
glombardi@winston.com
Todd J. Ehlman
tehlman@winston.com
James M. Hilmert
jhilmert@winston.com
35 W. Wacker Drive, Suite 4200
Chicago, IL  60601
(312) 558-5600 – telephone
(312) 558-5700 – facsimile

John J. Rosenthal
jrosenthal@winston.com
Matthew A. Campbell
macampbell@winston.com
Jovial Wong
jwong@winston.com
1700 K Street, N.W.
Washington, DC  20006
(202) 282-5000 – telephone
(202) 282-5100 – facsimile

>Gail J. Standish
>gstandish@winston.com
>333 South Grand Avenue
>Los Angeles, CA 90071-1543
>(213) 615-1700 – telephone
>(213) 615-1750 – facsimile
>
>MCDERMOTT WILL & EMERY
>Steven G. Spears
>sspears@mwe.com
>Scott W. Clark
>sclark@mwe.com
>1000 Louisiana Street, Suite 3900
>Houston, TX 77002-5005
>(713) 653-1700 – telephone
>(713) 739-7592 – facsimile
>
>COVINGTON & BURLING LLP
>Kurt G. Calia
>kcalia@cov.com
>1201 Pennsylvania Avenue, NW
>Washington, DC 20004-2401
>(202) 662-6000 – telephone
>(202 662-6291 – facsimile
>
>ARNOLD & PORTER LLP
>Anthony J. Franze
>anthony.franze@aporter.com
>555 Twelfth Street, N.W.
>Washington, DC 20004
>(202) 942-5000 – telephone
>(202) 942-5999 – facsimile
>
>*Attorneys for Plaintiff Monsanto Company and Monsanto Technology LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 15th day of October, 2010, the foregoing was filed electronically with the Clerk of the Court for the United States District Court for the Eastern District of Missouri, Eastern Division, and was served by operation of that Court's electronic filing system, upon the following:

Andrew Rothschild, Esq.
C. David Goerisch, Esq.
Lewis, Rice & Fingersh, L.C.
600 Washington, Suite 2500
St. Louis, MO 63102

Leora Ben-Ami, Esq.
Thomas F. Fleming, Esq.
Christopher T. Jagoe, Esq.
Howard S. Suh, Esq.
Jeanna Wacker, Esq.
Kaye Scholer LLP
425 Park Avenue
New York, NY  10022

Donald L. Flexner, Esq.
Hershel Wancjer, Esq.
Cynthia Christian, Esq.
Robert M. Cooper, Esq.
Boies, Schiller & Flexner LLP
575 Lexington Avenue, 7th Fl.
New York, NY  10022

James P. Denvir, Esq.
Amy J. Mauser, Esq.
Boies, Schiller & Flexner LLP
5301 Wisconsin Avenue, N.W.
Washington, D.C.  20015

*Attorneys for Defendants*

  /s/ Joseph P. Conran                   .