# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

MONSANTO COMPANY and
MONSANTO TECHNOLOGY LLC,

        Plaintiffs/Counterclaim
        Defendants,

        v.

E.I. DU PONT DE NEMOURS AND CO. and
PIONEER HI-BRED INTERNATIONAL, INC.,

        Defendants/Counterclaim
        Plaintiffs.

Case No. 09-cv-0686 (ERW)

**REDACTED VERSION**

**DUPONT'S OPPOSITION TO MONSANTO'S MOTION TO DISMISS
CERTAIN ANTITRUST, PATENT AND CONTRACT COUNTERCLAIMS AND
TO STRIKE CERTAIN PATENT AND CONTRACT AFFIRMATIVE DEFENSES**

# TABLE OF CONTENTS

Table of Authorities ........................................................................................ iii

Preliminary Statement ...................................................................................... 1

Argument ......................................................................................................... 3

I.   Legal Standard ........................................................................................ 3

  A.   Monsanto's Motion Should be Denied as Improper Under Rule 12(b)(6)
       and Disruptive of the Orderly Resolution of the Claims in this Litigation. .......... 3

  B.   Monsanto's Motion Does Not Articulate a Basis for Dismissal under
       Rule 12(b)(6), Rule 12(c), or Any Other Rule. ...................................... 6

II.  DuPont Did Not Release Any Claims or Defenses Asserted in this Action by
     Entering the Master Settlement Agreement ("MSA") ...................................... 8

  A.   ████████████████████████████████████████████ ........................ 8

    1.  █████████████████████████████████████ .......................... 8

    2.  █████████████████████████████████ ............................... 10

  B.   █████████████████████████████████████████████ . ....................... 11

    1.  The allegations concerning the prosecution of the '435 Patent are, at
        a minimum, relevant to the unchallenged claims based on
        misconduct during the reissue application. ..................................... 13

    2.  ███████████████████████████████████ ............................. 15

  C.   ██████████████████████████████ . .................................... 17

  D.   ████████████████████████████ . ....................................... 17

    1.  ██████████████████████████████████████ ...................... 18

    2.  ███████████████████████████████ . ................................. 19

  E.   ████████████████████████████████████ ............................. 22

    1.  ███████████████████████████████████ ............................ 23

2. █████████████████████████...........................................25

3. █████████████████████████████████
   ████████████████████████████............................................26

III. DuPont Has Made Timely Allegations Regarding the Purported Stacking
Restrictions in the Soybean and Corn License Agreements......................................28

IV. Monsanto Is Not Entitled to Dismissals of Allegations Relating to Its
Exploitation of Regulatory Barriers to Entry. ............................................31

Conclusion ...........................................................................................................35

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ............................................................6

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985) .......................34

*Assoc. Gen. Contractors v. Carpenters*, 459 U.S. 519, 539 (1983) ...................................20

*Baseload Energy, Inc. v. Roberts*, 2010 WL 3504765 (Fed. Cir. Sep. 9, 2010) ................................................................................................................9, 10

*Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Calif.*, 522 U.S. 192 (1997) ..................................................................................29

*B. Braun Medical v. Abbott Labs.*, 124 F.3d 1419 (Fed. Cir. 1997) ..................................35

*Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) ...................................................................6

*BJC Health Sys. v. Columbia Cas. Co.*, 348 F.3d 685 (8th Cir. 2003) ..............................5

*Bowersox Truck Sales & Servs. v. Harco Nat'l Ins. Co.*, 209 F.3d 273 (3d Cir. 2000) ..............................................................................................................11

*Bristol-Meyers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, No. 95–Civ-8833, 2002 WL 59429 (S.D.N.Y. 2002) ......................................................12, 14

*Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297 (3d Cir. 2007) ....................................32

*Cerberus Intern., Ltd. v. Apollo Mgmt., L.P.*, 794 A.2d 1141 (Del. 2002) .......................25

*City of Mishawaka, Ind. v. Am. Elec. Power Co., Inc.*, 616 F.2d 976 (7th Cir. 1980) ...........................................................................................................32

*Clariant Corp. v. Hartford Mutual Ins. Co.*, No. 577, 2010 WL 3115829 (Del. July 23, 2010) ........................................................................................11, 23

*Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1059 (8th Cir. 2000) ...........................................................................................................32

*Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690 (1962) ...........................................................................................................31

*C.R. Bard, Inc. v. M3Sys., Inc.*, 157 F.3d 1340, (Fed. Cir. 1998) ....................................35

*CVD, Inc. v. Raytheon Co.*, 769 F.2d 842 (1st Cir. 1985) .................................................33

*Diversey Lever, Inc. v. Ecolab, Inc.*, 191 F.3d 1350 (Fed. Cir. 1999) ...............................9

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451 (1992) ......................34, 35

*Ecolab, Inc. v. Paraclipse, Inc.*, 285 F.3d 1362 (Fed. Cir. 2002) ........................................9

*Fisher v. Pohlman, Inc.*, No. 06-Civ-01761, 2007 WL 188411
(E.D. Mo. Jan. 23, 2007)......................................................................................30

*Flying J Inc. v. TA Operating Corp.*, No. 06-Civ-30, 2008 WL 4923041
(D. Utah Nov. 14, 2008) ......................................................................................22

*Foster v. Hallco Mfg. Co.*, 947 F.2d 469 (Fed. Cir. 1991) ..................................................9

*Fox v. Midwest Theatres, Inc. v. Means*, 221 F.2d 173 (8th Cir. 1955) ..........................22

*Gen. Indus. Corp. v. Hartz Mountain Corp.*, 810 F.2d 795 (8th Cir. 1987) ....................20

*Gibbs v. Scott*, 958 F.2d 814 (8th Cir 1992) ........................................................................5

*Goodall v. Whispering Woods Center, L.L.C.*, 990 So.2d 695
(Fla. App. 4 Dist. 2008) ......................................................................................25

*In re Copper Antitrust Litig.*, 436 F.3d 782 (7th Cir. 2006) ..............................................4

*Jessie v. Potter*, 516 F.3d 709, (8th Cir. 2008) ..............................................................4, 30

*Knieriem v. Group Health Plan, Inc.*, 434 F.3d 1058 (8th Cir. 2006)..............................30

*Lawrence v. Pile*, No. 08-Civ-3615, 2009 WL 1286453
(E.D. Ark., May 7, 2009)......................................................................................23

*Lear v. Adkins*, 395 U.S. 653, 669-70 (1969) ....................................................................33

*Leffingwell v. Sears, Roebuck and Co.*, 717 F. Supp. 620 (N.D. Ill. 1989).........5, 7, 14, 32

*LePage's Inc. v. 3M*, 324 F.3d 141 (2003) ........................................................................32

*Leroy v. Dayringer*, No. 08-Civ-4128, 2009 WL 142189
(W.D. Mo. May 19, 2009) ................................................................................6, 8

*Lorain Journal Co. v. United States*, 342 U.S. 143 (1951) ..............................................34

*MBIA Ins. Corp. v. Royal Indemnity Co.*, 426 F.3d 204 (3d Cir. 2005) ..........................26

*Medtronic Ave., Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44
(3d Cir. 2001)..............................................................................................17, 23

*Mega Tech Intern. Corp. v. Al-Saghyir Establishment*, No. 96-Civ-8711,
1999 WL 314179 (S.D.N.Y. May 18, 1999) ......................................................6

*Metropolitan St. Louis Equal Housing Opportunity Counsel v. Tillman*,
No. 07-Civ-04114, 2007 WL 3046585 (W.D. Mo. Oct. 16, 2007) ...............................31

*Mitsubishi Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985).......................22

*Morrison v. Amway Corp.*, 421 B.R. 381 (Bankr. S.D. Tex. 2009)..................................4, 5

*NAMA Holdings, LLC v. World Market Ctr. Venture, LLC*, 948 A.2d 411
(Del. Ch. 2007) .................................................................................................19

*Northstar Indus., Inc. v. Merrill Lynch & Co.*, 576 F.3d 827 (8th Cir. 2009).................26

*Oglesby v. Penn Mut. Life Ins. Co.*, 877 F. Supp. 872 (D. Del. 1994) ...................4, 11, 25

*Pineada v. Steinberg*, C.A. 08C-01-226-JRJ, 2008 WL 4817088
(Del. Super. Ct. Oct. 29, 2008) ..................................................................15, 19

*Precision Instruments Mfg. Co., et al. v. Auto. Maint. Mach. Co.*,
324 U.S. 806 (1945)..................................................................................12, 13

*Redel's Inc. v. Gen. Elec. Co.*, 498 F.2d 95 (5th Cir. 1974) ............................................22

*Rohm & Haas Co. v. Crystal Chem. Co.*, 722 F.2d 1556 (Fed. Cir. 1983) ......................12

*Ross Holding & Mfg Co., v. Advance Realty Group, LLC*, No. 4113-VCN,
2010 WL 1838698 (Del. Ch. Apr. 28, 2010) ...............................................27

*Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561
(E.D. Pa. 2001)...................................................................................................22

*Smith v. Kramer & Frank, P.C.*, No. 09-Civ-802, 2009 WL 4725285
(E.D. Mo. Dec. 2, 2009)......................................................................................8

*Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059 (8th Cir. 2000)..........................................7

*Stoecker v. Raleigh*, 5 F.3d 1022 (7th Cir. 1993) ........................................................16

*Unisuper Ltd. v. News Corp.*, 898 A.2d 344 (Del. Ch. 2006)..........................................19

*United States v. Colgate & Co.*, 250 U.S. 300 (1919) ....................................................34

*Varner v. Peterson Farms*, 371 F.3d 1011 (8th Cir. 2004)...........................................29

*Williams v. Jader Fuel Co., Inc.*, 944 F.2d 1388 (7th Cir. 1991) ...................................7

*Wycoff v. Menke*, 773 F.2d 983 (8th Cir. 1985)..............................................................4

*Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321 (1971)............................29

**RULES**

Fed. R. Civ. P. 12(b)(6) ................................................................... passim

Fed. R. Civ. P. 12(d) ...........................................................................5

Fed. R. Civ. P. 12(f) ......................................................................7, 32

Fed. R. Civ. P. 56(c) ...........................................................................5

**TREATISES**

3 Areeda & Hovenkamp, *Antitrust Law* 706a (2009) .......................................33

5C Wright & Miller, Fed. Prac. & Proc. § 1380 (3d ed. 2004) .........................32

5C Wright & Miller, Fed. Prac. & Proc. § 1388 (3d ed. 2004) ..........................4

27 Williston on Contracts § 70:29 (4th ed.)...............................................25

28 Williston on Contracts § 70:219 (4th ed.).............................................26

29 Williston on Contracts § 73:8 (4th ed.)...............................................23

29 Williston on Contracts § 73:9 (4th ed.)...............................................16

29 Williston on Contracts § 73:11 (4th ed.)..............................................13

## PRELIMINARY STATEMENT

Monsanto waited over a year to file a motion to dismiss allegations supporting DuPont's[1] counterclaims and defenses, which it asserts "were released by the parties' prior settlement agreement, are untimely, or implicate conduct that is a lawful exercise of Monsanto's patent rights."[2]   Monsanto's motion is procedurally improper, unmeritorious, and nothing more than an effort to delay resolution of DuPont's counterclaims and defenses on their merits.  It should be denied for the following reasons:

*First*, Monsanto has already answered all of the counterclaims DuPont adequately pled in July 2009, including by responding to the vast majority of the individual allegations it now seeks (improperly) to dismiss.  DuPont's amendments added to or modified the allegations supporting those same counterclaims, but they did not revive Monsanto's right to challenge the sufficiency of the already answered counterclaims and defenses themselves.  *See* Section I.A.

*Second,* Monsanto's motion does not challenge the adequacy of any of the counterclaims and defenses it already answered.  Instead it seeks dismissal of particular *allegations* and focuses on arguments that well pled claims cannot prevail because of its own *affirmative defenses*.   Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") is directed at dismissal of inadequate claims, and it is not a proper means of raising affirmative defenses or challenging isolated allegations.  *See* Sections I.A. and I.B.

---

[1]     "DuPont" is used in this brief to refer to E.I. du Pont de Nemours and Company ("DuPont"), Pioneer Hi-Bred International, Inc. ("Pioneer"), and DuPont and Pioneer collectively.

[2]     Brief in Support of Monsanto's Motion to Dismiss Certain Antitrust, Patent, and Contract Counterclaims and to Strike Certain Patent and Contract Affirmative Defenses ("Br.") at 1-2 (Dkt. 338).

*Third*, contrary to Monsanto's contention, the Master Settlement Agreement ("MSA") cannot be read to have released any claims asserted in this action:

- DuPont did not release its fraud, inequitable conduct, or antitrust claims based on the '435 patent because ████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ████████████████████████████ In any event, the allegations show Monsanto's misconduct while prosecuting the '435 patent was part of a scheme Monsanto repeated and perpetuated during the later prosecution of the '247 reissue patent – which allegations Monsanto does not seek to dismiss. *See* Sections II.A and II.B.

- DuPont did not release its sham litigation claims because they are based on this lawsuit and other lawsuits and enforcement activities *after* the MSA was executed. In addition, allegations concerning Monsanto's sham litigation against farmers predating the MSA have no relation to the prior settled litigation between the parties, and claims based on them were not released. *See* Section II.C.

- DuPont did not release its antitrust claims based on Monsanto's assertion that there are stacking restrictions in the 2002 license agreement because those claims did not accrue until 2008 when Monsanto first sought to block DuPont's OGAT/Roundup Ready soybeans, which pose a competitive threat to Roundup Ready 2 Yield soybeans, by taking the position that DuPont's Roundup Ready soybean license agreement contains a stacking restriction. *See* Section II.D.

- DuPont could not have released antitrust claims alleging monopolization of trait markets based, in part, on stacking restrictions in other companies' licenses because, when the MSA was executed, DuPont did not compete in any market for genetically modified traits, and could not have brought such a claim in the prior litigation. In addition, the restrictions were included in licenses entered into years after the MSA and are part of Monsanto's ongoing attempt to switch the industry to Roundup Ready 2 Yield. *See* Section II.D.

- DuPont did not release its reformation claims because ████████████████ ███████████████████████████████████████████████ Further, DuPont's reformation claims include causes of action not addressed or released by the MSA. *See* Section II.E.

2

*Fourth,*  ███████████████████████████

████████████████████████████████████████████

███████████████████████████ *See* Sections II.B.2 and II.E.3.

*Fifth,* Monsanto's motion to dismiss DuPont's allegations ███████████

████████████████████████████████████████████ on the

basis of the statute of limitations is improper because an affirmative defense cannot be

raised on a Rule 12(b)(6) motion unless it is clear, from the face of the pleadings, that the

claims are time-barred. That is not the case here. ███████████████████

████████████████████████████████████████████

██████████████████████████████████████ To

the extent DuPont's antitrust claims are based on such allegations, they could not have

accrued until 2008 when DuPont was injured and discovered its injury. *See* Section III.

*Sixth,* Monsanto's efforts to dismiss the allegations relating to its exploitation of

regulatory barriers is an improper effort to single out allegations concerning one isolated

component of a larger anticompetitive scheme, whose components must be considered in

their totality. In addition, Monsanto's argument that its exploitation of regulatory barriers

is part of its patent monopoly rights assumes its patent is valid and enforceable, which is

contrary to the allegations in the counterclaims. *See* Section IV.

## ARGUMENT

### I.   Legal Standard

#### A. Monsanto's Motion Should be Denied as Improper Under Rule 12(b)(6) and Disruptive of the Orderly Resolution of the Claims in this Litigation.

Monsanto's motion to dismiss under Rule 12(b)(6) is procedurally improper and

should be denied for several reasons. First, an affirmative defense, such as Monsanto's

3

assertions of release[3] and statute of limitations,[4] cannot be raised on a 12(b)(6) motion. *Jessie v. Potter*, 516 F.3d 709, 713 n.2 (8th Cir. 2008) ("A defendant does not render a complaint defective by pleading an affirmative defense, and therefore the possible existence of a ... defense is not ordinarily a ground for Rule 12(b)(6) dismissal").

Second, except for the allegations relating to its exploitation of regulatory barriers, Monsanto does not ask the Court to dismiss any claims, defenses, or allegations which it has not already answered in responding to DuPont's First Amended Answer and Counterclaims.  For such claims and defenses, Monsanto's motion is untimely because it should have been filed "before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b)(6); *Morrison v. Amway Corp.*, 421 B.R. 381, 385 (Bankr. S.D. Tex. 2009). The amendments DuPont made to its counterclaims and defenses did not revive Monsanto's right to file a Rule 12(b)(6) motion that it could have filed over a year ago. *See, e.g., Morrison*, 421 B.R. at 386 ("[I]f the defense previously existed but was not asserted timely, then the right to bring it by a motion to dismiss is not 'revived' by mere amendment.") (citing 5C Wright & Miller, Fed. Prac. & Proc. § 1388 (3d ed. 2004)). Here, as in *Morrison*, "[t]hough the amended complaint contains 'new matter,' it is not

---

[3]    Monsanto cites no authority to support raising its affirmative defense of release on a 12(b)(6) motion. (*See* Br. at 15 (citing *Willis Corroon Corp. of Utah, Inc. v. United Capitol*, 1998 WL 30069 (N.D.Cal. Jan. 05, 1998) (noting settlement agreement "clearly referred to" in the complaint); *Wang v. Paterson*, 2008 WL 5272736, (S.D.N.Y. Dec. 18, 2008) (noting settlement agreement was a publically filed document subject to judicial notice)).)  Here, the MSA is neither a public document nor referred to in the complaint or counterclaims.  Moreover, as demonstrated below, Monsanto's proposed interpretation of the MSA at best introduces ambiguities that can only be resolved after discovery, on summary judgment or at trial. *Oglesby v. Penn Mut. Life Ins. Co.*, 877 F. Supp. 872, 881 (D. Del. 1994).

[4]    It is not the case that the face of the counterclaims show any statute of limitations period has run. *See Wycoff v. Menke*, 773 F.2d 983, 984-85 (8th Cir. 1985).  To the contrary, the pleadings make clear that no claim challenged under the statute of limitations accrued until 2008.  *See In re Copper Antitrust Litig.*, 436 F.3d 782, 789 (7th Cir. 2006) ("[T]he discovery rule ... postpones the beginning of the limitations period from the date when the plaintiff is wronged to the date when he discovers he has been injured. This principle is based on the general rule that accrual occurs when the plaintiff discovers that he has been injured and who caused the injury.") (quotation and citation omitted).

4

the type of 'new matter' that revives [the] right to file a post-answer motion to dismiss. The amendment added new and specific … allegations to bolster … previously asserted … claims …. The new matter did not create a new basis on which to assert the failure to state a claim or defense that did not previously exist. [Movant] should have raised the defense in a motion to dismiss the original complaint."[5] *Id.*

Third, there are strong prudential reasons for denying Monsanto's motion without prejudice to its renewing these arguments after discovery. Monsanto should have brought this 12(b)(6) motion before the parties incurred the formidable expense of identifying, collecting, negotiating over and reviewing for production millions of pages of documents. This delay undercuts the propriety of Monsanto's motion and its assertion that it is seeking to enforce the purpose of Rule 12(b)(6) to "avoid the 'enormous expense of discovery' associated with an unwarranted antitrust case." (Br. at 12.) With a document production deadline of November 1, 2010, taking up Monsanto's motion now would have none of the cost-saving benefits Monsanto contends it would. Monsanto's motion is simply another attempt to engender delay, and is inconsistent with this Court's

---

[5] To the extent Monsanto's motion is limited to seeking to dismiss the new allegations alone, rather than the existing claims those allegations bolster, its motion is also improper. *See infra* Section I.B; *Leffingwell v. Sears, Roebuck and Co.*, 717 F. Supp. 620, 622 (N.D. Ill. 1989). DuPont recognizes, however, that Monsanto preserved its defenses in its Answer, and may assert them against complete *claims* under other procedural rules, including Rule 12(c) and – more appropriately given the factual questions the motion raises and the advanced state of discovery – Rule 56(c) after discovery is completed. However, to the extent Monsanto's motion relies on the MSA and because the MSA is outside the pleadings, the Court must convert it into a motion for summary judgment after providing DuPont notice and an opportunity to submit other pertinent materials. *See* Fed. R. Civ. P. 12(d); *BJC Health Sys. v. Columbia Cas. Co.*, 348 F.3d 685, 687-89 (8th Cir. 2003) (finding contracts submitted on motion to dismiss not "embraced" by complaint, but outside the pleadings, and reversing dismissal for failure to convert to Rule 56 motion, and for not giving plaintiff "notice nor an opportunity to discover or to provide additional evidence") (citing former rule 12(b)(6), now codified as rule 12(d)); *Gibbs v. Scott*, 958 F.2d 814, 817 (8th Cir 1992) (reversing dismissal based on matters outside pleadings where court did not covert to rule 56 or give non-movant notice and opportunity to submit pertinent materials). Since all document production is required to be completed by November 1, 2010, and Monsanto's proposed interpretations of the MSA at minimum introduce ambiguities, it would be both proper and more efficient to consider Monsanto's release arguments only *after* the parties complete fact discovery and have the opportunity to submit additional pertinent material.

direction that "all phases of discovery related to the 'switching strategy' should proceed so that the Court can *expeditiously* move *to resolve all remaining issues*."[6]  (July 30, 2010 Order at 20, Dkt. # 283 (emphasis added).)

The parties have already imposed considerable obligations on the Court in seeking rulings on claims construction and substantive motions for summary judgment. Indeed, resolution of DuPont's pending motion for summary judgment of invalidity for improperly broadened reissues claims (Dkt. # 215) may moot Monsanto's motion entirely.  It is fully within the Court's discretion over case-management and resource-allocation to deny Monsanto's motion now without prejudice to its renewing the same arguments at a more appropriate time.   *Mega Tech Intern. Corp. v. Al-Saghyir Establishment*, No. 96-Civ-8711, 1999 WL 314179, *2 (S.D.N.Y. May 18, 1999) (denying motion to dismiss without prejudice based on resource allocation and other prudential concerns); *cf. Leroy v. Dayringer*, No. 08-Civ-4128, 2009 WL 142189, *3 (W.D. Mo. May 19, 2009) ("The issues raised in, and documentation submitted with, defendants' motion to dismiss raise factual issues which are more appropriately addressed at the summary judgment stage.").

### B.  Monsanto's Motion Does Not Articulate a Basis for Dismissal under Rule 12(b)(6), Rule 12(c), or Any Other Rule.

Monsanto's appeal to *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) is misplaced.  Monsanto asks the Court to "weed[] out conclusory allegations that are not entitled to the assumption of truth and then consider

---

[6]     Monsanto spent months refusing to produce documents responsive to DuPont's un-stayed antitrust counterclaims based on its "overly narrow" interpretation of this Court's September 16, 2009 Order staying discovery on claims of "patent fraud, sham litigation to enforce those patents, and misrepresentations concerning Monsanto's patent position." (*Id.* at 19-20.) This motion is a new gambit designed to achieve the same end – delaying Monsanto's obligation to reveal the facts and get to the merits.

whether the remaining factual allegations 'plausibly suggest an entitlement to relief.'" (Br. at 12-13 (quoting *Iqbal*, 129 S. Ct. at 1951).)  Both *Twombly* and *Iqbal* address the notice and plausibility standards that allegations must meet to give a defendant notice of the factual basis for the *claims* that have been asserted against it.  Monsanto does not contend it lacks such notice.  Instead, Monsanto asks the Court to rule on component parts of those claims, and strike *allegations* that it argues are inadequate taken on their own to state separate causes of action or that it contends were released by the MSA.

Monsanto's motion is improper for two reasons.  First, Rule 12(b)(6) is designed to address the adequacy of claims, not to allow the dismissal of allegations that support well-pleaded claims.  If Monsanto wished to strike *allegations* from counterclaims it should have moved under Rule 12(f),[7] which allows the Court to strike allegations to the extent they are "redundant, immaterial, impertinent, or scandalous."  Fed. R. Civ. P. 12(f); *cf. Leffingwell v. Sears, Roebuck and Co.*, 717 F. Supp. 620, 622 (N.D. Ill. 1989) ("Rule 12(b)(6) provides for the dismissal of claims, not allegations").  Monsanto has not argued the allegations have such deficiencies, and in any event the Eighth Circuit has made clear that "striking a party's pleadings is an extreme measure, and ... '[m]otions to strike under Fed. R. Civ. P. 12(f) are viewed with disfavor and are infrequently granted.'" *Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000) (citation omitted).

Second, Monsanto's motion raises factual questions that cannot be resolved on a motion to dismiss.  For example, Monsanto argues that DuPont released certain defenses

---

[7]   Monsanto moved to strike "reformation and fraud affirmative defenses" as insufficient under Rule 12(f), (Br. at 29), but not to strike *allegations* as "redundant, immaterial, impertinent, or scandalous."  Nor does Monsanto acknowledge that "[m]otions to strike are not favored and will not be granted unless it appears to a certainty that [movant] would succeed despite any state of the facts which could be proved in support of the defense." *Williams v. Jader Fuel Co., Inc.*, 944 F.2d 1388, 1400 (7th Cir. 1991) (quotation omitted).

based on its prior settlement agreement, but █████████████████████████████

████████████████████████████████████████████████████████████████████

This Court has already ruled in its July 30 Order on a related issue that implying terms into an agreement is a "fact-intensive" inquiry, that requires a fully developed factual record. (Dkt. 283. at 5-6.) Similarly, the release extends only to claims DuPont could have asserted as of the date of the settlement agreement. According to the allegations in the Second Amended Answer and Counterclaims ("SAAC"), which must be accepted as true on a motion to dismiss, the antitrust claims Monsanto seeks to dismiss on the basis of the statute of limitations did not accrue until 2008, six years after the MSA was executed. To refute those allegations, Monsanto will have to present evidence, which is possible only on a motion for summary judgment or at trial, not on a motion to dismiss. *See, e.g., Smith v. Kramer & Frank, P.C.*, No. 09-Civ-802, 2009 WL 4725285, *5-6 (E.D. Mo. Dec. 2, 2009); *Leroy*, 2009 WL 142189 at *3.

## II.   DuPont Did Not Release Any Claims or Defenses Asserted in this Action by Entering the Master Settlement Agreement ("MSA").



(Br. at 16-17.) Monsanto acknowledges its motion does not target the adequacy of any entire claim or defense, complaining only

8

that "[m]uch of Defendants' allegations [*sic*] of inequitable conduct ... are based on stale allegations of patent fraud." (Br. at 2.)

Generally courts interpret settlement agreements under standard principles of contract law, but where a party asserts a settlement releases claims that a patent is invalid or unenforceable, Federal Circuit law controls. *Baseload Energy, Inc. v. Roberts*, 2010 WL 3504765, at *3-4 (Fed. Cir. Sep. 9, 2010). Because of "the important public interest in permitting full and free competition in the use of ideas ... invalidity and unenforceability claims may be released ... only if the language of the agreement or consent decree is clear and unambiguous." *Id.* at *4 (citing *Ecolab, Inc. v. Paraclipse, Inc.*, 285 F.3d 1362, 1377 (Fed. Cir. 2002) (settlement's statement that "'690 patent is a valid patent" not clear enough to foreclose a validity defense in a new infringement suit); *Diversey Lever, Inc. v. Ecolab, Inc.*, 191 F.3d 1350, 1352 (Fed. Cir. 1999) ("[A]ny surrender of the right to challenge validity of a patent is construed narrowly.")).[8]

There is no clear and unambiguous language in the MSA releasing claims based on conduct during prosecution of the '435 patent. In *Baseload*, as here, the parties had signed a settlement agreement with a broad general release and a license granting the developer a nonexclusive license to use the disputed patent. *Baseload*, 2010 WL 3504765 at *2-3. Later, the relationship broke down, and the developer brought a second suit for a declaratory judgment of invalidity and unenforceability of the licensed patent. *Id.* The patentee asserted – as does Monsanto – that the licensee was barred from raising such claims. *Id.* at *1-2. The release in *Baseload* was virtually identical to the MSA's release. *See* Exhibit 1 (comparing language of releases). The Federal Circuit held the

---

[8]    Monsanto failed to acknowledge this binding authority, despite citing *Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 481 (Fed. Cir. 1991), which recognizes "provisions in a consent judgment asserted to preclude litigation of the issue of validity in connection with a new claim must be construed narrowly."

release contained no clear language barring invalidity or unenforceability claims, and that "there was no release of either patent claims or defenses." *Id.* at *6. The same result should obtain here. ████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████

2.   ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████ *Baseload*, 2010 WL

3504765 at *6. The Court stated that "[i]f infringement claims were preserved then it necessarily follows in the circumstances of this case that the defenses to infringement, including invalidity defenses were also preserved." *Id.* "Thus, the clear and unambiguous language necessary to effect a release of patent invalidity defenses is not present." *Id.* ████████████████████████████████████████████████████████

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

Even if the Court finds that the MSA is ambiguous as to whether such claims were released, at minimum, Monsanto would have to present evidence to resolve the ambiguity (which is another basis for denying Monsanto's motion). *Oglesby v. Penn Mut. Life Ins. Co.*, 877 F. Supp. 872, 881 (D. Del. 1994) (Under Delaware "contract principles, if the Court finds ambiguity in a contract provision, the ambiguity raises an issue of fact which must be resolved at trial").

**B.** [REDACTED]

A release of claims for prior bad acts is not a license to commit the same wrongs anew. *See, e.g.*, *Clariant Corp. v. Hartford Mutual Ins. Co.*, No. 577, 2010 WL 3115829, *7-10 (Del. July 23, 2010) (a release of claim for failure to pay litigation fees, did not release a second failure to pay expenses in same litigation); *Bowersox Truck Sales & Servs. v. Harco Nat'l Ins. Co.*, 209 F.3d 273, 279-280 (3d Cir. 2000) (release of prior bad faith claims did not apply to future claims based on continuing bad faith). [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED] As alleged in the SAAC, DuPont's claims based on fraud or inequitable conduct before the U.S. Patent & Trademark Office ("PTO") include Monsanto's concealment, repetition and perpetuation of its '435 patent prosecution misconduct during the prosecution of the '247 reissue patent. Applicants before the PTO "have an

uncompromising duty to report to it all facts concerning possible fraud or inequitableness underlying the applications in issue." *Precision Instr. Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 818 (1945). Thus, Monsanto's inequitable conduct in prosecuting the '435 patent became inequitable conduct again when Monsanto failed to disclose it in prosecuting the '247 reissue application, and allegations regarding that misconduct are necessary to explaining the misconduct during the reissue proceedings as well as to articulating DuPont's separate inequitable conduct defense

For example, in *Bristol-Meyers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, a patent agent committed inequitable conduct in an original and reissue application by concealing a material article in the original prosecution, and then disclosing the article during the reissue application, without informing the PTO of its materiality. No. 95–Civ-8833, 2002 WL 59429, *12-18 (S.D.N.Y. Jan. 16, 2002), *aff'd*, 326 F.3d 1226 (Fed. Cir. 2003). Initially, the patent agent drafted overbroad claims while withholding an article showing they were invalid. *Id.* at *8-9. Then, during prosecution of the reissue application, the agent disclosed the article, but did not identify to the PTO the portions of the article that contradicted the validity of the over-broad claims. *Id.* at *12-15. The court held the initial concealment and later disclosure of the article without explanation constituted inequitable conduct in both prosecutions. *Id.* at *18. By disclosing the article in reissue without making the PTO aware of the prior misrepresentation and concealment, and without identifying how the article contradicted the reissue application's patentability, the patent agent "committed inequitable conduct to the patent office during the prosecution of the [original patent] and the [reissue patent]." *Id.* (citing *Rohm & Haas Co. v. Crystal Chem. Co.*, 722 F.2d 1556, 1571-72 (Fed. Cir. 1983)).

Monsanto has committed the same inequitable conduct in prosecuting both the '435 patent and the '247 reissue patent. For some references, Monsanto withheld them during the '435 patent prosecution and continued to conceal them during the '247 reissue prosecution. (*See, e.g.*, SAAC ¶¶ 233-241.)   For others, Monsanto disclosed the references for the first time in the reissue prosecution without informing the PTO it had previously concealed them, why they were material, or how they contradicted the patentability of both the original and reissue patents. (*See, e.g.*, SAAC ¶¶ 253, 258.)

By continuing to rely on and perpetuate its inequitable conduct committed in the '435 patent prosecution, Monsanto made those acts a component of a new scheme to defraud the PTO and the public in prosecuting the '247 reissue patent.   *See, e.g.*, *Precision*, 324 U.S. at 819 ("Automotive knew of and suspected the perjury and failed to act so as to uproot it and destroy its effects.   Instead, Automotive acted affirmatively to magnify and increase those effects.").   Therefore, just as DuPont did not release inequitable conduct relating to the '247 reissue patent because it was prosecuted and issued after the MSA was executed, so DuPont did not release Monsanto's continuing concealment and perpetuation of the wrongs of the '435 patent prosecution that were part of that scheme.   *See, e.g.*, 29 Williston on Contracts § 73:11 (4th ed.) ("Moreover, a general release does not discharge liability for an injury caused by subsequent acts undertaken by the party released where the later conduct occurs as part of a scheme or conspiracy that was ongoing when the release was executed.").

      1.   **The allegations concerning the prosecution of the '435 Patent are, at a minimum, relevant to the unchallenged claims based on misconduct during the reissue application.**

████████   (Br. at 13.)  While DuPont alleges Monsanto committed fraud and inequitable conduct in prosecuting the '435 patent, it also alleges that Monsanto acquired a fresh duty to disclose its prior misconduct during prosecution of its reissue application, first filed on July 18, 2003, and that Monsanto again failed to make such disclosures and perpetuated the misrepresentations.  ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████   *Bristol-Meyers*, 2002 WL 95429 at *18; *see also Leffingwell*, 717 F. Supp. at 622 (refusing to strike or dismiss allegations of misconduct that occurred prior to the statute of limitations which "serve merely as evidentiary backdrops to this claim.").

Indeed, DuPont has specifically alleged Monsanto repeated the misconduct that occurred *before* the MSA when it failed to disclose and correct that conduct in prosecuting the reissue.  For example, DuPont alleges, "Monsanto's ['247 application] declaration was also knowingly false, incomplete and misleading because Janelle Waack and Grace Bonner knew that the '449 PCT Application was an invalidating prior art reference to claims having a 1994 effective filing date ... and that Dennis Hoerner had intentionally withheld it from the PTO during prosecution of the '435 Patent."  (SAAC ¶ 253.)  The SAAC provides other specific instances, and alleges generally that "Janelle Waack and Grace Bonner failed to disclose the prior misconduct of Monsanto and Dennis Hoerner, despite having a legal duty to be truthful that lasted until the reissue patent issued on August 22, 2006."  (SAAC ¶ 256; *see also id.* ¶¶ 257-258.)

DuPont's allegations about the details of Monsanto's misconduct in prosecuting the '435 patent are essential to its claims Monsanto acquired and maintained monopoly power (or attempted to do so) by committing fraud and inequitable conduct during the reissue application. ███████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

(MSA ¶ 3(b)); *see also Pineada v. Steinberg*, C.A. 08C-01-226-JRJ, 2008 WL 4817088, *2 (Del. Super. Ct. Oct. 29, 2008) ("'[A] general release covers only those matters about which there was some dispute, and not a future claim.'"). Thus, Monsanto's motion to dismiss (or strike) allegations relating to the '435 patent should be denied.

    **2.   Under the Plain Terms of the MSA, DuPont Did Not Release Its Inequitable Conduct Defense.**

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████

████████████████████████████████

████████████████████████████████████████



"[A]s is the case with any contract, the scope and meaning of a release is generally governed by the intent of the parties as expressed in their written document." 29 Williston on Contracts § 73:9 (4th ed.).

At a minimum, there is a fact dispute over whether the parties intended That fact dispute takes the matter outside the proper ambit of a motion to dismiss or strike.  (*See* Dkt. 283 at 5-6 (implying a term that is absent from a contract is a fact-intensive inquiry).)  In *Stoecker v. Raleigh*, 5 F.3d 1022, 1030 (7th Cir. 1993) (Posner, J.), for example, the Seventh Circuit,

Monsanto's motion must be denied so that the question of the parties' intent can be resolved in discovery.

16

**C.** 

(Br. at 18.)

DuPont has based its sham litigation claims on the present lawsuit as well as lawsuits and enforcement activities that occurred after April 2002. *See Medtronic Ave., Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 58 (3d Cir. 2001) ("[A] release usually will not be construed to bar a claim which had not accrued at the date of its execution"). In addition, antitrust claims based on Monsanto's bad faith enforcement of patents it knew to be invalid or unenforceable against farmers bear no relation to

**D.**

---

9          Monsanto relies on allegations in a prior case that Monsanto pursued "sham litigation predicated on known invalid and fraudulently obtained patents" against "Pioneer and other competitors." (Br. at 18-19.) These allegations are irrelevant, because the Illinois litigation did not concern the '435 patent and the enforcement activities concerned *competitors* of Monsanto, not *consumers* of Monsanto goods like farmers.



[10]

**1.** ▮▮▮▮▮▮▮▮▮▮

By its plain terms, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* Monsanto omits that key term from its argument, (Br. at 19), which therefore has no basis. ▮▮▮▮▮▮

---



**2.**

A general release will "not be construed to bar a claim which had not accrued at the date of its execution or a claim which was not known to the party giving the release." *Pindeda v. Steinberg*, 2008 Del. Super. Lexis 397 (Del. Sup. Oct. 29, 2008) (a general release barring known and unknown claims does "not bar claims that were nonexistent" upon executing the release); *see also Unisuper Ltd. v. News Corp.*, 898 A.2d 344, 347 (Del. Ch. 2006) (A settlement "can only release claims that are based on

<hr />

[11] ██████████████████████████████████ That is plainly not what the parties intended under the MSA. *See NAMA Holdings, LLC v. World Market Ctr. Venture, LLC,* 948 A.2d 411, 419 (Del. Ch. 2007) ("Contractual interpretation operates under the assumption that the parties never include superfluous verbiage in their agreement, and that each word should be given meaning and effect by the court.").

the 'same identical factual predicate' or the 'same set of operative facts' as the underlying

action .... If the facts have not yet occurred, then they cannot possibly be the basis for

the underlying action.").

> **a. DuPont could not have brought claims for monopolization of soybean trait markets in the prior cases for lack of standing.**

DuPont's prior antitrust cases challenged Monsanto's market power in, and

monopolization of, markets for cotton and soybean seeds and herbicides. None of those

markets are implicated in this case which alleges monopolization of *trait* markets.

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████ DuPont therefore would not have had

standing to complain about its exclusion from any such trait market. *See Assoc. Gen.*

*Contractors v. Carpenters*, 459 U.S. 519, 539 (1983) (to have standing to bring an

antitrust claim a plaintiff must be a consumer or competitor in the restrained market); *see*

*also Gen. Indus. Corp. v. Hartz Mountain Corp.*, 810 F.2d 795 (8th Cir. 1987) (granting

judgment notwithstanding the verdict for defendant because plaintiff was not a consumer

or a competitor in the restrained market).

> **b. DuPont's claims based on stacking restrictions rest on conduct post-dating the MSA.**

DuPont has alleged a multi-faceted scheme to monopolize, one part of which

involves Monsanto's use of stacking restrictions to protect its current platform monopoly

and to advance its scheme to convert the industry to a new Monsanto-controlled industry

platform based on Monsanto's new patented trait, Roundup Ready 2 Yield. DuPont

could not have asserted claims based on this scheme in 2002, because the conduct on which such claims are based had not yet occurred.

The specific allegations of the counterclaims make this clear, challenging Monsanto's post-MSA use of stacking restrictions in the licenses of ISCs to monopolize *emerging* markets for stacked soybean traits and to block products that would provide competitive alternatives to Monsanto's *new* Roundup Ready 2 Yield trait. For example, DuPont alleges that (a) "Monsanto has implemented its strategy to extend its monopoly power into emerging markets for stacked traits by either directly denying competitors the ability to stack their traits with Monsanto's unlawfully acquired monopoly traits or achieving the same result indirectly by foreclosing competitors from access to the market by denying such stacking rights to independent seed companies" (SAAC ¶ 2); (b) "[t]hese stacking restrictions have become more stringent over time and specifically target traits that Pioneer is developing, including herbicide-tolerant traits and output traits" (*id.*¶ 7); and (c) "[a]s Monsanto's commercialization of Roundup Ready 2 Yield soybeans nears, Monsanto has stepped up its efforts to lock ISCs into Monsanto traits, to prevent them from incorporating non-Monsanto traits into their breeding programs, and from selling seed with non-Monsanto traits." (*Id.* ¶ 426.) None of these allegations could have been made in 2002 because none of the conduct which they describe had yet occurred.

### c. It would be contrary to public policy to read the MSA to bar redress of future antitrust violations.

[redacted]

███████████████████████ "Any contractual provision which could be argued to absolve one party from liability for future violations of the antitrust statutes against another would to that extent be void against public policy." *Fox v. Midwest Theatres, Inc. v. Means*, 221 F.2d 173, 180 (8th Cir. 1955); *see also Mitsubishi Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 657 n.18 (1985) (citing *Fox v. Midwest Theatres* and stating "in the event that the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy").[12] ███████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

**E.** ████████████████████████████████

Monsanto's motion to dismiss the reformation claims is an improper end-run around the Court's July 30, 2010 ruling granting DuPont leave to file the reformation claims in the SAAC. (Dkt. 283.) Monsanto previously opposed the motion for leave to file the SAAC arguing those claims were futile because the contract barred them. (Dkt. 187, at 7-9). The Court rejected those arguments applying the identical legal standard that applies to 12(b)(6) motions. (Dkt. 283, at 11, 14-15.) ███████████████████

████████████████████████████████████████████████████

---

[12]    *See also Redel's Inc. v. Gen. Elec. Co.*, 498 F.2d 95, 99 (5th Cir. 1974) ("The prospective application of a general release to bar private antitrust action arising from subsequent violations is clearly against public policy."); *Flying J Inc. v. TA Operating Corp.*, No. 06-Civ-30, 2008 WL 4923041 (D. Utah Nov. 14, 2008) ("[T]he court agrees with Flying J that [the very broad release language] cannot be read to release claims that did not arise as of May 21, 2001, and that are based on post-settlement conduct.... [S]uch a prospective release of antitrust claims would be void as against public policy."); *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 578 (E.D. Pa. 2001) ("Because public policy prohibits a release from waiving claims for future violations of antitrust laws, and given that under the proposed release class members would be releasing unlitigated claims, the releases are too broad.").

█████████████████████████ (Br. at 22-23).  The Court should again reject

Monsanto's recapitulation of its past opposition as an improper second-bite-at-the-apple.

*See, e.g., Lawrence v. Pile*, No. 08-Civ-3615, 2009 WL 1286453, *2 (E.D. Ark., May 7,

2009) (denying defendant's motion to dismiss after it unsuccessfully opposed an

amendment to the complaint).   On the merits, Monsanto's motion to dismiss the

reformation claims fails for the reasons described below.



█████████████████████████ ; as a covenant not to sue, it

contains a promise never to institute a suit, and applies to future claims.  *See, e.g.,*

29 Williston on Contracts § 73:8 (4th ed.) (stating covenants not to sue "generally appl[y]

to future claims as well and constitute an agreement to forbear from asserting any claim

that either exists or that may exist in the future"); *Clariant Corp.*, 2010 WL 3115829, at

*13; *Medtronic*, 247 F.3d at 55 n.4.  ████████████





(*See, e.g.*, SAAC at ¶¶320-359 ("The drafting history of the Soybean and Corn License Agreements show the parties had an understanding and agreement not to prohibit stacking"); Counterclaim XI at ¶558 ("Pioneer respectfully requests that the Court reform the Soybean License Agreement and/or the Corn License Agreement accordingly to allow such activity *in accordance with the intent and contemplated scope of the Agreements permitting such activity.*") (emphasis added).)

███████████

███████████

███████████

requiring Monsanto to present extrinsic evidence of the parties' intent, and foreclosing dismissal. *See, e.g.*, *Oglesby*, 877 F. Supp. at 881.

### 2. Reformation Is Not a "Claim" under the MSA.

Monsanto invokes ███████████

███████████

███████████

███████████ Neither fraud nor deceit is a required element of a reformation claim based on unilateral or mutual mistake. *Cerberus Intern., Ltd. v. Apollo Mgmt., L.P.*, 794 A.2d 1141, 1152-55 (Del. 2002). "Unlike an action for fraudulent inducement, a reformation action seeks to modify or correct an otherwise clear and unambiguous contract provision that is adequately covered by a written contract …. Allegations of fraudulent or inequitable misconduct might be pertinent to both a reformation cause of action and a claim for fraudulent inducement. ***However, the two causes of action remain fundamentally different.***" *Goodall v. Whispering Woods Center, L.L.C.*, 990 So.2d 695, 700 (Fla. App. 4 Dist. 2008) (emphasis added); *see also* 27 Williston on Contracts § 70:29 (4th ed.) (fraud is only a subset of mistake).

---

13



*(See, e.g.*, SAAC at ¶¶ 318, 320-26; 335-338; Counts XIII-XIV.)

Moreover, as Williston states, broad releases of tort or contract claims, ███████

█████████████, do not vitiate claims based on mutual mistake:

> Some broad releases will call for the claimant to forgive any and all transgressions by respondent (whether arising in tort, contract, administratively, or otherwise) and known or known from the beginning of time until the date when the release is signed, without regard to any representations or misrepresentations that may have been made by anyone to induce claimant's execution of the release.  ***However, a misrepresentation, even one honestly made still allows a settlement to be set aside upon mutual mistake***[.]

28 Williston on Contracts (4th ed.) § 70:219 (emphasis added).

Knowing this, Monsanto argues for dismissal of DuPont's mutual mistake claim with a self-serving factual assertion that "there was no mistake by Monsanto."   (Br. at 22 n.5.)  This assertion, which contradicts DuPont's allegations, cannot serve as a basis for dismissal.  *Northstar Indus., Inc. v. Merrill Lynch & Co.*, 576 F.3d 827 (8th Cir. 2009) (stating factual allegations of claim are assumed true).  Further, Monsanto's reliance on only one inapplicable case addressing a release of fraud decided on *summary judgment* shows that its motion for dismissal under Rule 12(b)(6) is inappropriate.[14]

**3.**   █████████████████████████████████████████
███████████

█████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████

---

[14]   *MBIA Ins. Corp. v. Royal Indemnity Co.*, 426 F.3d 204 (3d Cir. 2005), the only case cited by Monsanto on this issue, involved a summary judgment motion concerning a contract in which an insurer secured a loan and agreed "that its obligations are absolute, continuing, irrevocable and unconditional irrespective of . . . any other rights or defenses that may be available to the insurer (all of which rights and defenses are hereby expressly waived by the insurer)."  *Id.* at 212 (ellipses in original).  When the insurer attempted to rescind the contract based on fraud in the inducement, the court stated that it is "unfathomable that an insurer that intended to rely on extracontractual representations would agree" to all of the above provisions.  *Id.*  That case is therefore entirely different from this case.  *Id.*  ███████████████
██████████████████████████████  Further, unlike the insurer in *MBIA*, DuPont is not seeking to rescind an agreement, but reform the Soybean and Corn Licenses to apply as the parties intended.

Monsanto's interpretation that DuPont's reformation claims are released relies on an out-of-context sentence fragment of ███████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████ (Br. at 22-23 (brackets and ellipses in original).)  However, in quoting ███████████ ████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████ (emphasis added).  This bolded language narrows ██████████████████████████████████████████████ ███████████████████████████████████ *See, e.g., Ross Holding & Mfg Co., v. Advance Realty Group, LLC*, No. 4113-VCN, 2010 WL 1838608, at * 8 (Del. Ch. Apr. 28, 2010) ("[I]t is an accepted principle that the words in a release are limited always to that thing or those things that were specifically in the contemplation of the parties at the time when the release was given"). ████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ █████████████████████████████████

27

Finally, as noted above, even if the affirmative claims for reformation were released, ████████████████████ and it would be improper to strike the reformation defenses in connection with Monsanto's motion.

### III. DuPont Has Made Timely Allegations Regarding the Purported Stacking Restrictions in the Soybean and Corn License Agreements.

Monsanto contends that any claims based on ████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████ (Br. at 24.) This contention is wrong.

*First,* the Court's prior holding that the Soybean and Corn License Agreements contain no explicit stacking prohibition, and that whether there is a "negative covenant" not to stack OGAT with Roundup Ready is a "fact-intensive" question that cannot be resolved on the basis of the pleadings, (July 30, 2010 Order at 6, Dkt. # 283), precludes dismissal as a matter of law. The Court has already held that "Defendants will be given the opportunity to present evidence supporting" the claim that the licenses contain no restriction on stacking OGAT with Roundup Ready. (*Id.* at 7.) If there is no stacking restriction in the licenses, then the antitrust claims based on the assertion of stacking restrictions arose when Monsanto first *asserted* that those stacking restrictions existed in 2008, (*see* SAAC ¶ 359), not when the parties executed the licenses in 2002.

*Second,* Monsanto's argument misapprehends DuPont's allegations concerning purported stacking restrictions in the license agreement. ████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████



Causes of action based on those allegations thus could not have accrued until 2008 when Monsanto engaged in such conduct and DuPont was injured by it. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 339 (1971) ("The basic rule is that damages are recoverable under the federal antitrust laws only if an action therefor is 'commenced within four years after the cause of action accrued'…. Generally, a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business.").[15]

Monsanto's leading case does not suggest a contrary conclusion. Monsanto cites *Varner v. Peterson Farms*, 371 F.3d 1011 (8th Cir. 2004), which holds that "[w]hen a complaining party *was fully aware of the terms of an agreement when it entered into the agreement*, an injury occurs only when the agreement is initially imposed; thus, the limitations period typically is not tolled by the requirements placed on the parties under agreement." *Id.* at 1020 (emphasis added). Under no circumstances could DuPont be

---

[15] *See also Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Calif.*, 522 U.S. 192, 195 (1997) ("A limitations period ordinarily does not begin to run until the plaintiff has a complete and present cause of action.") (quotation omitted). DuPont has also asserted interpreting the license agreement to prohibit stacking of OGAT with Roundup Ready would violate the antitrust laws. (SAAC at 16 (Eleventh Additional Defense).) But this is a defense not a claim, and even if it were a claim, it would not be time barred because it would arise only on a finding that the license agreement so provides.

deemed "fully aware" of the claimed prohibition on stacking until Monsanto first asserted that position. ███████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

*see also, e.g., Fisher v. Pohlman, Inc.*, No. 06-Civ-01761, 2007 WL 188411 (E.D. Mo. Jan. 23, 2007) ("In considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must 'accept[ ] all factual allegations in the complaint as true and grant[ ] every reasonable inference in favor of the nonmovant.'") (quoting *Knieriem v. Group Health Plan, Inc.*, 434 F.3d 1058, 1060 (8th Cir. (2006)).

*Third*, the statute of limitations is an affirmative defense as to which Monsanto bears the burden of proof. Even if there were some arguable basis for concluding that claims based on ████████████████████████████████████

██████████████████████████████████████ a grant of a motion to dismiss claims based on an affirmative defense would be inappropriate. *See Jessie v. Potter*, 516 F.3d 709, 713 n.2 (8th Cir. 2008) ("A defendant does not render a complaint defective by pleading an affirmative defense, and therefore the possible existence of a … defense is not ordinarily a ground for Rule 12(b)(6) dismissal"); *Metropolitan St. Louis Equal Housing Opportunity Counsel v. Tillman*, No. 07-Civ-04114, 2007 WL 3046585,

*2 (W.D. Mo. Oct. 16, 2007) ("[Plaintiff] was under no obligation to plead enough facts to defeat Johnson's statute of limitations defense.  Moreover, [Plaintiff's] complaint does not contain … any facts on its face establishing it is conclusively time-barred.").

## IV.    Monsanto Is Not Entitled to Dismissals of Allegations Relating to Its Exploitation of Regulatory Barriers to Entry.

Monsanto argues the Court should dismiss Defendants' antitrust counterclaims "to the extent they are based on allegations of … Defendants' new 'export approval' theory," (Br. at 29), because it assumes Monsanto has a duty to provide access to Roundup Ready data to other firms.  This argument should be rejected.

*First,* Monsanto improperly singles out one component of its multi-faced anticompetitive scheme, namely, its exploitation of regulatory barriers to impede generic competition from either stand-alone or stacked products.  (SAAC ¶¶ 13-14, 467-77.)  By isolating allegations relating to its exploitation of regulatory barriers, Monsanto seeks to rewrite the Counterclaims which allege that Monsanto undertook a comprehensive, multi-faceted campaign to undermine competition and to advance Monsanto's monopolistic scheme.   (SAAC ¶ 3 ("The unlawful scheme described herein has six key related components … *each contributing to the exclusionary effects of the whole*.").)  Courts reject Monsanto's divide-and-conquer tactic of rewriting a complaint to pick off sets of allegations isolated from the others.  *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 698-99 (1962) ("It is apparent from the foregoing that the Court of Appeals approached Continental's claims as if they were five completely separate and unrelated lawsuits.  We think this was improper.  In cases such as this, plaintiffs should be given the full benefit of their proof without tightly compartmentalizing the various

factual components and wiping the slate clean after scrutiny of each.").[16]  For purposes of

evaluating Monsanto's motion to dismiss, the court should reject Monsanto's attempt to

rewrite the complaint, and consider all factual allegations relevant to DuPont's claim that

Monsanto engaged in a pattern of anticompetitive conduct.[17]

*Second,* Monsanto's motion should be denied because the allegations relating to

Monsanto's exploitation of regulatory requirements are independently relevant to

establish the existence of barriers to entry, an element of a monopolization claim.

*Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297 (3d Cir. 2007) ("[I]n the context of a §

2 claim for attempted monopolization, … a complaint must allege 'something more' than

mere market share, such as … barriers to entry.") (quotation omitted), and important to

establishing the anticompetitive effects of exclusive dealing arrangements.  *Concord Boat*

*Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1059 (8th Cir. 2000) ("If entry barriers to new

firms are not significant, it may be difficult for even a monopoly company to control

prices through some type of exclusive dealing arrangement because a new firm or firms

easily can enter the market to challenge it.").  Because of the high cost in time and money

of meeting foreign regulatory and registration requirements, new entrants cannot easily

challenge Monsanto's monopoly in glyphosate-tolerance traits, and because exported and

domestic-bound soybeans are commingled, these barriers bar entry into the domestic as

---

[16]     *See also LePage's Inc. v. 3M*, 324 F.3d 141, 162 (3d Cir. 2003); *City of Mishawaka, Ind. v. Am. Elec. Power Co., Inc.*, 616 F.2d 976, 986 (7th Cir. 1980) ("[Antitrust defendant] would have us consider each separate aspect of its conduct separately and in a vacuum. If we did, we might agree with the utility that no one aspect standing alone is illegal. It is the mix of the various ingredients of utility behavior in a monopoly broth that produces the unsavory flavor.").

[17]     Because Monsanto singles out one component of its multi-faced anticompetitive scheme, its motion is an improper attempt to strike factual allegations. *See Leffingwell*, 717 F. Supp. at 622. Striking allegations under Rule 12(f) is strongly disfavored. *See generally* 5C Wright & Miller, Fed. Prac. & Proc. § 1380 (3d ed. 2004) ("'[S]triking a portion of a pleading is a drastic remedy [that]…often is sought by the movant simply as a dilatory or harassing tactic.'").

well as foreign markets. (*See* SAAC ¶¶ 13, 467-480.) Granting Monsanto's motion to dismiss would therefore improperly prevent DuPont from establishing important elements of its antitrust claims whose adequacy Monsanto does not challenge.

*Third*, Monsanto disregards the allegations in DuPont's counterclaims, which must be accepted as true on a motion to dismiss. Monsanto's argument that its preventing "licensees from using or referencing Monsanto's patented technology to obtain regulatory approval of a generic product during the term of its patents without Monsanto's approval … does not violate the antitrust laws" and is "part of the patent monopoly granted to a patent holder," (Br. at 27), disregards DuPont's allegations that the patent is invalid and unenforceable as obtained by fraud. (SAAC 89-300.) The Court must treat those allegations as true, which means, for purposes of this motion, Monsanto is not entitled to assert its purported intellectual property rights as a basis for refusing to deal. Under DuPont's allegations, Monsanto's licenses "in reality, [are] no more than a sham, or device[s] designed to restrict competition" and do not allow Monsanto to reap the benefits of their fraudulent patent. *CVD, Inc. v. Raytheon Co.*, 769 F.2d 842, 851 (1st Cir. 1985); *see also* 3 Areeda & Hovenkamp, *Antitrust Law* 706a (2009) ("[A] licensee under a patent determined to be unenforceable for fraud or inequitable conduct may escape payment of future royalties and, in cases of fraud, may recover previously paid royalties.") (footnotes omitted); *Lear v. Adkins*, 395 U.S. 653, 669-70 (1969) ("It is difficult to perceive why good faith requires that courts should permit [the licensor who has obtained his patent through a fraud] to recover royalties despite his licensee's attempts to show that the patent is invalid.").

*Fourth,* a patent holder's *general* right to impose license restrictions is not a license to violate the antitrust laws. *See Lorain Journal Co. v. United States*, 342 U.S. 143, 187 (1951). Monopolists have an obligation to deal with other firms, including rivals, when a refusal to deal has anticompetitive effects and no legitimate business justification. *See Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 601 (1985) (affirming jury verdict of improper refusal to deal where "the evidence supports an inference that Ski Co. was not motivated by efficiency concerns and that it was willing to sacrifice short-run benefits and consumer goodwill in exchange for a perceived long-run impact on its smaller rival"). The Supreme Court has long acknowledged these limitations on the right to refuse to deal where the refusal is motivated by an illegitimate anticompetitive purpose. *United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919) (recognizing right to refuse to deal only "*in the absence of any purpose to create or maintain a monopoly*") (emphasis added); *Aspen Skiing*, 472 U.S. at 601 (1985) ("The high value that we have placed on the right to refuse to deal with other firms does not mean that the right is unqualified"). Monsanto can rebut with evidence allegations that its refusals to deal with rivals are exclusionary. *See Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 483 (1992). But it cannot prevail on a motion to dismiss on a bare, unsupported assertion of a right to exclude that ignores DuPont's allegations.

DuPont has alleged Monsanto is exploiting registration and regulatory barriers to maintain and extend its monopoly beyond its proper scope by (among other things) denying requests for permission "to reference its existing Roundup Ready® regulatory data package as part of the registration process" and "to conduct sequencing on Roundup Ready®" to enable "potential competitors to create their own regulatory data packages."

(SAAC ¶ 479.)  DuPont has also alleged that "absence of proper registration in a single major export market will prevent Pioneer and other potential generic market entrants from selling any soybean seeds with a generic version of the Roundup Ready® trait for what could be a period of years after patent expiration," and that "Monsanto is exploiting [such regulatory] barriers to impede competition."  (SAAC 467, 470.)  Taking these allegations as true, Monsanto is operating under an antitrust duty to deal.  *Kodak*, 504 U.S. at 483 n.32.  Monsanto's assertion of its patent rights does not give it a basis for dismissal.  Even if Monsanto's patent is valid (which the counterclaims deny) and even if its exploitation of regulatory and registration requirements are refusals to deal under such patents (a factual issue yet to be resolved), DuPont is entitled to fact discovery so that the anticompetitive effects of Monsanto's conduct can be evaluated under the rule of reason.  *See B. Braun Medical v. Abbott Labs.*, 124 F.3d 1419, 1426 (Fed. Cir. 1997) ("[A]ny anticompetitive effects [field of use restrictions] may cause are reviewed in accordance with the rule of reason."); *C.R. Bard, Inc. v. M3Sys., Inc.*, 157 F.3d 1340, 1382 (Fed. Cir. 1998) (holding antitrust defendant's product redesign must be evaluated for exclusionary effects, even though conduct within scope of patents); *see also Kodak*, 504 U.S. at 479 n.29 (1992) ("[P]ower gained through some natural and legal advantage such as a patent … can give rise to liability if a seller exploits his dominant position in one market to expand his empire into the next") (quotation omitted).

## CONCLUSION

For all of the foregoing reasons, DuPont respectfully requests that the Court deny Monsanto's motion to dismiss certain antitrust, patent, and contract counterclaims and to strike certain patent and contract affirmative defenses.

Dated:  October 18, 2010

Respectfully submitted,

**LEWIS, RICE & FINGERSH, L.C.**

By:  \_\_\_\_/s/ C. David Goerisch_____
      Andrew Rothschild, #4214
      C. David Goerisch, #77207
600 Washington Avenue, Suite 2500
St. Louis, Missouri  63101
(314) 444-7600
(314) 241-6056 (facsimile)
arothschild@lewisrice.com
dgoerisch@lewisrice.com

Leora Ben-Ami
Thomas F. Fleming
Christopher T. Jagoe
Howard S. Suh
**KAYE SCHOLER LLP**
425 Park Avenue
New York, New York  10022
(212) 836-8000
(212) 836-8689 (facsimile)
lbenami@kayescholer.com
tfleming@kayescholer.com
cjagoe@kayescholer.com
hsuh@kayescholer.com

Donald L. Flexner
**BOIES, SCHILLER & FLEXNER LLP**
575 Lexington Avenue, 7th Fl.
New York, New York 10022
(212) 446-2300
(212) 446-2350 (facsimile)
dflexner@bsfllp.com

James P. Denvir
Amy J. Mauser
**BOIES, SCHILLER & FLEXNER LLP**
5301 Wisconsin Avenue, N.W.
Washington, D.C. 20015
202-237-2727
202-237-6131 (facsimile)
jdenvir@bsfllp.com
amauser@bsfllp.com

***Counsel for Defendants E.I. du Pont de Nemours and Company and Pioneer Hi-Bred International, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on October 18, 2010, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

- **Steven M. Berezney**
  steve.berezney@huschblackwell.com
- **Kurt G. Calia**
  kcalia@cov.com
- **Matthew A. Campbell**
  macampbell@winston.com
- **Scott W. Clark**
  sclark@mwe.com
- **Joseph P. Conran**
  joe.conran@huschblackwell.com
- **Todd J. Ehlman**
  tehlman@winston.com
- **Anthony J. Franze**
  Anthony.Franze@aporter.com
- **Greg G. Gutzler**
  greg.gutzler@huschblackwell.com
- **James M. Hilmert**
  jhilmert@winston.com
- **George C. Lombardi**
  glombardi@winston.com
- **Kurt A. Mathas**
  kmathas@winston.com
- **Omri E. Praiss**
  omri.praiss@huschblackwell.com
- **John J. Rosenthal**
  jrosenthal@winston.com
- **Rebecca M. Ross**
  rmross@winston.com
- **Mark A. Smith**
  markasmith@winston.com
- **Steven G. Spears**
  sspears@mwe.com,jjknapp@mwe.com
- **Tamara M. Spicer**
  tamara.spicer@huschblackwell.com,jean.melenbrink@huschblackwell.com
- **Gail J. Standish**
  gstandish@winston.com
- **Dan K. Webb**
  dwebb@winston.com

/s/ C. David Goerisch