IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MONSANTO COMPANY and ) <br> MONSANTO TECHNOLOGY LLC, ) <br> ) <br>  Plaintiffs, ) <br> ) <br>  vs. ) <br> ) <br> E.I. DUPONT DE NEMOURS AND ) <br> COMPANY and ) <br> PIONEER HI-BRED INTERNATIONAL, ) <br> INC., ) <br> ) <br>  Defendants. ) | Case No. 4:09-cv-00686-ERW |

**MONSANTO'S PROPOSED SCHEDULING PLAN
FOR DEFENDANTS' ANTITRUST COUNTERCLAIMS**

Pursuant to the Court's September 17, 2010 Order, Monsanto submits this Proposed Scheduling Plan for the resolution of Defendants' antitrust counterclaims. The parties have reached agreement on May 27, 2011 for the completion of fact discovery on antitrust issues not subject to this Court's September 16, 2009 Bifurcation and Stay Order (Dkt. #77). The parties also agree that absent a showing of good cause, neither will seek any modification of the total number of fact depositions that are allocated for fact discovery on contract, patent and non-stayed antitrust depositions (*i.e.*, 35 party and non-party depositions per side and 30 hours of Rule 30(b)(6) depositions per side). The parties were unable, however, to reach an agreement on the timing of expert discovery and dispositive motions for the antitrust claims as well as a proposed date for the antitrust trial.

Monsanto proposes a single round of antitrust expert discovery and dispositive motions, to commence *after* Monsanto's contract and patent claims have been resolved and the parties have completed discovery on the non-stayed antitrust issues (*i.e.*, allegations of patent fraud,

sham litigation, and false statements to customers). Thus, Monsanto proposes the following schedule:

- **Fact Discovery on Non-Stayed Issues**: Completed on or before May 27, 2011.

- **Fact Discovery on Stayed Issues:** Commencing **2 weeks** after the end of the patent case, and to be completed within **8 weeks**.

- **Antitrust Expert Reports:** Submitted within **4 weeks** of the conclusion of fact discovery related to stayed issues, with rebuttal reports to be provided **4 weeks** later, and antitrust expert discovery to be completed **8 weeks** later.

- **Dispositive Motions:** Filed no later than **4 weeks** after the completion of antitrust expert discovery, with oppositions due **4 weeks** later and replies due **4 weeks** thereafter.

- **Trial on Antitrust Issues**: Commencing 11 months after the conclusion of the patent proceedings.

Defendants, on the other hand, propose *two* separate and distinct rounds of antitrust expert discovery and motions practice – one for the non-stayed issues before the patent trial and another for the stayed issues immediately after the patent trial. Defendants also propose that the antitrust trial be scheduled to begin only three months after the start of the patent trial. Monsanto believes this proposal does not comport with Defendants' prior positions before this Court regarding the nature of their allegations and fails to promote judicial economy for the Court or the parties.

The Court should adopt Monsanto's proposed schedule and reject Defendants' proposed schedule for three reasons. *First*, Defendants' proposed schedule is incompatible with their position – strenuously asserted throughout this litigation – that the various elements of their allegations of "a comprehensive, multifaceted" monopolization scheme cannot be evaluated in isolation. (*See, e.g.*, Opp'n to Stay Mot. at 13 (Dkt. #57) ("[P]arties alleging antitrust violations should be permitted to have their proof considered as an integrated whole and not on a

compartmentalized or segmented basis."). Under Defendants' theory, the experts cannot opine on the issue of foreclosure and anticompetitive injury by parsing out the individual alleged forms of anticompetitive conduct or including in their analysis only part of the alleged anticompetitive conduct. The experts should, therefore, consider the alleged conduct as a whole – after discovery has been completed on all of the issues. For the same reason, dispositive motions will need to consider the impact of the alleged conduct as a whole, which cannot be done until fact discovery and depositions are completed on *all* antitrust issues.

*Second*, Defendants' two-staged approach ignores the fact that resolution of the patent case will greatly affect antitrust expert discovery and dispositive motions practice for the majority of the antitrust case, including both stayed and non-stayed antitrust issues. The non-stayed antitrust issues focus primarily on the "switching strategy" allegations. Defendants have repeatedly argued that "Monsanto's switching strategy is composed of many other elements," including the stacking and "poison pill" provisions in Monsanto's license agreements. (Dkt. #193 at 8 (emphasis added).) Because the legality of the stacking and "poison pill" provisions turns on the resolution of the patent case, the experts and dispositive motions will necessarily have to take into account the resolution of the patent case. If the stacking provisions, for example, are appropriate field of use restrictions in a license relating to a valid and enforceable patent, the viability of the switching allegations is directly impacted.

*Third*, Defendants' proposal is simply wasteful and inefficient. It requires the antitrust experts to prepare *two* separate expert reports and submit to *two* separate expert depositions, and it forces the parties and this Court to go through *two* separate rounds of dispositive motions practice. If we proceed down the path suggested by Defendants, the experts will no doubt have to rewrite their earlier expert reports after the completion of the patent trial and discovery on the

stayed patent issues. In addition, at least some, if not most, of the dispositive motions would be premature prior to the resolution of the patent issues.[1]

Finally, an antitrust trial three months after the conclusion of the patent trial is unrealistic. After the conclusion of the patent trial, there will necessarily be bench trial on inequitable conduct issues. If Defendants are successful in their motion to bifurcate willfulness, then there will be yet another trial on that issue. Once the patent proceedings are completed, even under Defendants' proposal, expert reports will need to be prepared, dispositive motions filed and the pretrial process for the entire antitrust case will need to be completed. Defendants propose doing so in three months, all of which fall over the holiday season. Such as schedule is unrealistic; the proposed schedule proffered by Monsanto is far more realistic.

## ARGUMENT

### I. DISPOSITIVE MOTIONS ON DEFENDANTS' ANTITRUST COUNTERCLAIMS SHOULD PROCEED AFTER THE PARTIES HAVE COMPLETED ALL ANTITRUST-RELATED FACT DISCOVERY.

In its September 16, 2009 Bifurcation and Stay Order, the Court ordered separate trials of Monsanto's patent and contract claims and Defendants' antitrust counterclaims. (Dkt. #77). The Court also stayed all discovery on the antitrust allegations of patent fraud, sham litigation, and misrepresentations concerning Monsanto's patent position until after resolution of the patent claims. *Id*. Without this evidence, the parties cannot file dispositive motions on the vast majority of issues relating to Defendants' antitrust counterclaims.

Defendants have acknowledged this fact. They have repeatedly insisted that their Section 2 monopolization claims can only be evaluated in view of the *totality* of Monsanto's alleged

---

[1] With this said, Monsanto's proposed schedule would not prevent the parties from beginning their expert analysis of the antitrust issues in this case now or from filing dispositive motions when they become ripe.

anticompetitive conduct.² For example, in opposing Monsanto's Motion to Bifurcate, Defendants cited "the longstanding principle that parties alleging antitrust violations should be permitted to have their proof considered as an integrated whole and not on a compartmentalized or segmented basis."  (Opp'n to Stay Mot. at 13 (Dkt. #57) (citing *Continental Ore Co. v. Union Carbide Corp.*, 370 U.S. 690, 699 (1962).)  During the motion hearing, defense counsel argued that "***you can't view these – these acts in isolation here***" because the antitrust allegations "***are all part of a scheme" and are "all interrelated" and "operate synergistically***."  (9/02/09 Hr'g Tr. at 28-29 (Ex. A) (emphases added).  Defendants echoed this theme in their motion to clarify, claiming that staying some but not all of their "switching strategy" allegations would "deny[] them the ability to prepare and present their case as a cohesive whole."  (*See* Dkt. #193 at 12.) Defendants argued that the Court instead must give them "'the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each.'"  *Id*. at 12-13 (quoting *Continental Ore*).

Despite stressing the interrelated nature of their allegations, Defendants now propose a schedule that requires separate rounds of expert analysis and dispositive motions – each addressing only a *portion* of Defendants' antitrust allegations.  Given their view that Monsanto's conduct must be viewed as a whole, expert discovery prior to the completion of all antitrust fact discovery would – under Defendants' own theory of the case – be a futile exercise.

Defendants' proposed schedule would also place Monsanto in an untenable position regarding dispositive motions.  Were Monsanto to move for summary judgment before the completion of all antitrust discovery, Defendants would undoubtedly oppose the motion on the

---

² As previously noted, Monsanto disagrees with Defendants' claim that actions which are otherwise legal may, when combined with other legal conduct, violate the antitrust laws.  Defendants are simply wrong.  *See, e.g.*, *Pacific Bell Tel. Co. v. LinkLine Comms., Inc.*, 129 S.Ct. 1109, 1123 (2009) (rejecting plaintiffs' effort to "alchemize" two instances of lawful conduct into one antitrust violation, noting: "Two wrong claims do not make one that is right").

grounds that the non-stayed issues cannot be scrutinized separate and apart from the stayed issues. Indeed, Defendants have done just that in opposing Monsanto's recent motion to dismiss. They argue that because they have alleged "a comprehensive, multifaceted" monopolization scheme, Monsanto should not be permitted to "pick off sets of allegations isolated from the others." (Opp'n to Mot. to Dismiss at 31 (Oct. 18, 2010) (citing *Continental Ore*)). On the other hand, were Monsanto to wait to file its motion for summary judgment on the antitrust counterclaims until after the patent case, Defendants likely would argue that such a motion was untimely because it did not relate "exclusively" to stayed issues.

## II. RESOLUTION OF THE PATENT CASE WILL AFFECT MUCH OF THE ANTITRUST EXPERT ANALYSIS AND THE ARGUMENTS ON SUMMARY JUDGMENT.

Defendants now propose a schedule requiring the antitrust experts to render reports on violation and impact without knowing which of the alleged "components" of the "switching strategy" is lawful (and thus cannot considered as part of their opinion) or unlawful (and thus should be considered in their opinion). Monsanto's proposal seeks to avoid this Catch 22.

Defendants have repeatedly argued that the "switching strategy" encompasses almost all of the alleged anticompetitive conduct, including the seed license agreements' stacking and "poison pill" provisions. In their Motion to Clarify the Bifurcation and Stay Order, for example, Defendants successfully argued that:

> Monsanto's strategy of maintaining and extending its monopoly over glyphosate-tolerance traits and stacked traits by switching the agricultural biotech industry from Roundup Ready to Roundup Ready 2 Yield, DuPont and Pioneer allege, is an overarching scheme to monopolize. . . . Thus, while the allegations of Paragraph 2 make it clear that coercing ISCs to switch from Roundup Ready to Roundup Ready 2 Yield is one important element of Monsanto's anticompetitive scheme, it also explains that ***germplasm license restrictions and stacking restrictions are internal to the switching strategy***.

-6-

(Dkt. #193 at 7 (emphasis added).)  Defendants went on to argue:

> The pleadings also make explicit "[t]he unlawful scheme alleged herein has *six key related components, each by itself anticompetitive and each contributing to the exclusionary effects of the whole.*"  SAAC at ¶ 3 (emphasis added)
>
> * * *
>
> One of the other key components of Monsanto's [switching] scheme is its use of restrictions on the combination of traits with Roundup Ready ("stacking restrictions") in soybean germplasm and seeds to extend its monopoly power. . . .
>
> * * *
>
> The stacking restrictions are also alleged to work with the patent bridging strategy as a way to extend Monsanto's ability to control and charge monopoly rents on stacked traits . . . And, as a direct consequence of switching the industry, the counterclaims allege that Monsanto would thereby extend its monopoly power to stacked traits, threatening innovation and raising prices for consumers.
>
> * * *
>
> Monsanto's switching strategy is composed of many other elements, each of which plays an integral role in allowing Monsanto to realize its ongoing scheme to switch the industry from Roundup Ready to Roundup Ready 2 Yield and exclude generic competition and competition in stacked traits.  For example, Monsanto's "poison pill" or change-in-control provisions in ISC licenses reinforce the effects of the stacking restrictions in foreclosing the essential ISC distribution challenge to competitors and potential competitors by making it impossible for them to acquire distributors while simultaneously enabling Monsanto to acquire ISCs without competitive bidding.
>
> * * *
>
> Claimants have alleged all of these anticompetitive license restrictions and other conduct work together in a synergistic way as part and parcel of Monsanto's monopolist scheme.

*Id*. at 8-11.[3]

Two of the alleged "components" of the alleged "switching strategy (Monsanto's trait stacking and "poison pill" provisions) are field-of-use limitations that permit licensees to use Monsanto's technology in certain ways, but not in others. Such field-of-use limitations are generally lawful so long as they do not extend beyond the scope of the patent grant. *See*, *e.g., B. Braun Med., Inc. v. Abbott Labs*., 124 F.3d 1419, 1426 (Fed. Cir. 1997) ("[F]ield-of-use restrictions . . . are generally upheld. . . ."). Thus, the stacking restrictions here would be illegal only if they exceed the scope of Monsanto's patent rights. Similarly, the so-called "poison pill" provisions also can be analyzed as refusals to license Monsanto's patent rights, which courts deem to be per se lawful. See*, e.g., In re Independent Serv. Orgs. Antitrust Litig*., 203 F.3d 1322 (Fed. Cir. 2000). As such, the legality of those provisions turns on the validity of patent rights Monsanto has allegedly refused to license – an issue that will be resolved by the first trial.[4]

If the "switching strategy" is broad enough to include these other "components" (as Defendants have repeatedly maintained), then certainly the experts must understand what conduct is lawful or unlawful for the purpose of opining on the "switching strategy." The same is true when opining on the Section 2 claims as a whole. The experts cannot – nor they should

---

[3] During the hearing on that motion, Defendants' counsel continued to argue that the "switching strategy" encompassed the vast majority of Defendants' antitrust counterclaims, including those that turn on the validity of Monsanto's patent:

> The switching strategy "encompasses the—the restrictions in Monsanto's licenses that prohibit independent seed companies and germplasm developers from stacking, it includes anti-competitive restrictions in Monsanto's licenses that prevent independent seed companies from being sold to anyone but Monsanto. It includes anti-competitive provisions in Monsanto's licenses which prevent—which further buttress Monsanto's poisoned pill provisions by prohibiting co-branding. So all of these restrictions, Your Honor, from the beginning we have used to describe our switching theory.

(6/21/10 Hr'g Tr. at 18 (Ex. B).)

[4] This Court previously agreed, finding that resolution of the patent case presents "the possibility of simplifying those claims alleging that Plaintiffs' licensing restrictions are anticompetitive." (9/16/09 Order at 3.)

be required to – parse out the individual conduct in reaching partial opinions that are based upon incorrect and, quite possibly, false assumptions. Expert analysis, as well as summary disposition of Defendants' antitrust counterclaims, should occur only after the validity of Monsanto's patent is resolved.

### III.   MONSANTO'S PROPOSED SCHEDULING PLAN IS MORE PRACTICAL AND EFFICIENT.

Defendants' proposed scheduling plan is both grossly impractical and inefficient. First, Defendants' proposed scheduling plan is inefficient. Defendants already acknowledge the need for at least some fact discovery, expert discovery, and dispositive motions on antitrust issues after the patent case. The most efficient course would be to conduct expert discovery and dispositive motions on all antitrust counterclaims in a single shot. The parties would then avoid the time and expense of submitting two different rounds of expert reports and conducting two different rounds of expert depositions. And the parties and this Court would avoid the need to brief and dispose of two separate rounds of dispositive motions.

Under Defendants' proposed schedule, however, both parties' antitrust experts would inevitably have to re-do their expert opinions to incorporate evidence elicited during fact discovery on the stayed issues and the results of the patent trial. Defendants claim that that is just what the experts should be required to do, but have offered no explanation for why doing so would provide any benefit to the parties or this Court, or how it could possibly advance the litigation. To the contrary, given that summary disposition of the antitrust claims likely cannot occur until after the completion of all antitrust fact discovery and the patent trial, requiring expert discovery to proceed in this fashion achieves nothing while increasing costs to both parties.

Second, Defendants request the impossible: that the antitrust trial begin only three months after the start of the patent trial. Yet, the patent and contract trial is already expected to

last for at least three weeks. Defendants' recent motion to bifurcate willfulness and to stay discovery on those issues pending resolution of infringement would further extend the time necessary to complete the patent trial. Separate trials on infringement and willfulness, moreover, would be in addition to proceedings on various equitable issues. As this Court has held, fact discovery on the stayed antitrust issues cannot even begin until these various elements of the patent trial are complete. Moreover, even after the parties have completed fact discovery on the stayed issues, they must still complete expert discovery, dispositive motions practice, and pre-trial submissions – all before the antitrust trial can commence. In short, given the issues in the patent case and the need to conduct antitrust fact and expert discovery and motions practice after the patent trial, there is simply no way the antitrust trial can begin three months after the patent trial.

No doubt in response to the above, Defendants will argue – as they have at every chance – that Monsanto is seeking to delay the trial of this matter and/or that Defendants will be prejudiced since Monsanto's "switching strategy" will already be implemented. It is important to note that Defendants have unilaterally delayed the introduction of OGAT alone or stacked in soybeans with Roundup Ready until at least 2014 – after patent expiration. Moreover, Defendants have appeared to delay the launch OGAT alone or stacked in corn to some period well beyond 2014. Monsanto has had nothing to do with this delay. The reality is that OGAT does not work.

Nothing Monsanto has done has prevented Defendants from competing in the licensing of Roundup Ready 1. Over the last year, Monsanto has extended the ISCs' Roundup Ready 1 licenses from 2012 to 2014 – through patent expiration. For those wishing to continue to use Roundup Ready after patent expiration, Monsanto has also agreed to support the regulatory

package on Roundup Ready 1 through 2021.  In short, there can be no prejudice to Defendants either as a patented or generic competitor of Roundup Ready 1 by the trial of this matter 11 months after the conclusion of the patent proceedings.[5]

In sum, Monsanto's proposal is efficient and consistent with the Court's rationale in staying some of the antitrust claims.  If the patent is deemed valid, there will be no need for expert discovery or briefing on the stayed issues and no resources are wasted in the interim.  If the patent is invalidated, discovery and briefing of those issues will be necessary, but the experts need only opine once, enabling the parties to brief the antitrust case in its entirety.  Either way, Monsanto's proposal offers the most efficient, cost-effective path moving forward.

## CONCLUSION

For the reasons set forth above, Monsanto respectfully requests that this Court adopt Monsanto's proposed scheduling plan for resolution of Defendants' antitrust counterclaims and enter the accompanying proposed case management order.

Dated:  November 1, 2010

---

[5] Defendants often speak of the need for an early trial to remove the cloud over their head.  If a "cloud" hangs over anyone with respect to the antitrust side of this litigation, it hangs above Monsanto's head.  It is Monsanto's desire that these claims be dispensed of in a timely manner.  With that said, however, the issues are too significant to simply adopt a schedule that is unrealistic and not an appropriate use of the Court's or the parties' resources.

Respectfully submitted,

HUSCH BLACKWELL LLP


By: /s/ Joseph P. Conran           .
Joseph P. Conran, E.D.Mo. # 6455
joe.conran@huschblackwell.com
Omri E. Praiss, E.D.Mo. # 35002
omri.praiss@huschblackwell.com
Greg G. Gutzler, E.D.Mo. # 84923
greg.gutzler@huschblackwell.com
Tamara M. Spicer, E.D.Mo. # 122214
tamara.spicer@huschblackwell.com
Steven M. Berezney, E.D.Mo. # 499707
steve.berezney@huschblackwell.com
190 Carondelet Plaza, Suite 600
St. Louis, MO  63105
(314) 480-1500 – telephone
(314) 480-1505 – facsimile

WINSTON & STRAWN LLP
Dan K. Webb
dwebb@winston.com
George C. Lombardi
glombardi@winston.com
Todd J. Ehlman
tehlman@winston.com
James M. Hilmert
jhilmert@winston.com
35 W. Wacker Drive, Suite 4200
Chicago, IL  60601
(312) 558-5600 – telephone
(312) 558-5700 – facsimile

John J. Rosenthal
jrosenthal@winston.com
Matthew A. Campbell
macampbell@winston.com
Jovial Wong
jwong@winston.com
1700 K Street, N.W.
Washington, DC  20006
(202) 282-5000 – telephone
(202) 282-5100 – facsimile

Gail J. Standish
gstandish@winston.com
333 South Grand Avenue
Los Angeles, CA 90071-1543
(213) 615-1700 – telephone
(213) 615-1750 – facsimile

MCDERMOTT WILL & EMERY
Steven G. Spears
sspears@mwe.com
Scott W. Clark
sclark@mwe.com
1000 Louisiana Street, Suite 3900
Houston, TX  77002-5005
(713) 653-1700 – telephone
(713) 739-7592 – facsimile

COVINGTON & BURLING LLP
Kurt G. Calia
kcalia@cov.com
1201 Pennsylvania Avenue, NW
Washington, DC  20004-2401
(202) 662-6000 – telephone
(202 662-6291 – facsimile

                    ARNOLD & PORTER LLP
                    Anthony J. Franze
                    anthony.franze@aporter.com
                    555 Twelfth Street, N.W.
                    Washington, DC  20004
                    (202) 942-5000 – telephone
                    (202) 942-5999 – facsimile

                    *Attorneys for Plaintiff Monsanto Company and Monsanto Technology LLC*

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that on the 1st day of November, 2010, the foregoing was filed electronically with the Clerk of the Court for the United States District Court for the Eastern District of Missouri, Eastern Division, and was served by operation of that Court's electronic filing system, upon the following:

Andrew Rothschild, Esq.
C. David Goerisch, Esq.
Lewis, Rice & Fingersh, L.C.
600 Washington, Suite 2500
St. Louis, MO 63102

Leora Ben-Ami, Esq.
Thomas F. Fleming, Esq.
Christopher T. Jagoe, Esq.
Howard S. Suh, Esq.
Jeanna Wacker, Esq.
Kaye Scholer LLP
425 Park Avenue
New York, NY  10022

Donald L. Flexner, Esq.
Hershel Wancjer, Esq.
Cynthia Christian, Esq.
Robert M. Cooper, Esq.
Boies, Schiller & Flexner LLP
575 Lexington Avenue, 7th Fl.
New York, NY  10022

James P. Denvir, Esq.
Amy J. Mauser, Esq.
Boies, Schiller & Flexner LLP
5301 Wisconsin Avenue, N.W.
Washington, D.C.  20015

*Attorneys for Defendants*

                                        /s/ Joseph P. Conran            .