UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MONSANTO COMPANY, et al., )
                                      )
         Plaintiffs, )
                                      )
    vs. ) No. 4:09-CV-00686(ERW)
                                      )
E.I. DUPONT DE NEMOURS & COMPANY, )
et al., )
                                      )
         Defendants. )

MOTION HEARING

BEFORE THE HONORABLE E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE

September 2, 2009

APPEARANCES:

FOR PLAINTIFF:    DAN K. WEBB
                         WINSTON & STRAWN, LLP
                         35 W. Wacker Drive
                         Chicago, IL 60601
                         (312) 558-5600

                         JOHN J. ROSENTHAL
                         WINSTON & STRAWN, LLP
                         1700 K Street, NW
                         Washington, DC 20006
                         (314) 539-2200

                         JOSEPH P. CONRAN
                         GREG G. GUTZLER
                         HUSCH, BLACKWELL, SANDERS, LLP
                         190 Carondelet Plaza, Suite 600
                         St. Louis, MO 63105
                         (314) 480-1500

                         STEVEN G. SPEARS
                         MCDERMOTT & WILL
                         1000 Louisiana Street, Suite 3900

Houston, TX 77002-5005
(713) 653-1700

FOR DEFENDANTS:    JAMES P. DENVIR, III
                         AMY J. MAUSER
                         BOIES, SCHILLER & FLEXNER, LLP
                         5301 Wisconsin Avenue, Suite 800
                         Washington, DC 20015
                         (202) 237-2727

                         LEORA BEN-AMI
                         THOMAS F. FLEMING
                         KAYE SCHOLER, LLP
                         425 Park Avenue
                         New York, NY 10022
                         (212) 836-7203

                         C. DAVID GOERISCH
                         LEWIS, RICE & FINGERSH
                         500 N. Broadway, Suite 2000
                         St. Louis, MO 63102-2147
                         (314) 444-7600

COURTROOM CLERK:        MARY GRACE BECKER

REPORTED BY:    DEBORAH A. KRIEGSHAUSER, FAPR, RMR
                     Official Court Reporter
                     United States District Court
                     111 South Tenth Street, Third Floor
                     St. Louis, MO 63102
                     (314) 244-7449

---

3

1    (PROCEEDINGS BEGAN AT 9:00 AM.)
2    THE COURT: Good morning.
3    COUNSEL OF RECORD: Good morning, Your Honor.
4    THE COURT: Once more onto the breach we go.
5    *Monsanto Company and others versus E.I. DuPont and*
6    *others;* 4:09-CV-00686(ERW).
7    The matter comes before the Court today on
8    Plaintiffs', Monsanto Company and Monsanto Technology, LLC's,
9    Motion to Stay Discovery and for Separate Trial of Defendants'
10   Antitrust Counterclaims, Document No. 35.
11    In their motion, Plaintiffs ask that the Court stay
12   discovery on the antitrust counterclaims filed by Defendants
13   until resolution of Plaintiffs' patent and contract claims.
14   Additionally, Plaintiffs ask that the antitrust counterclaims
15   be tried separately.
16    Plaintiffs state that it is common practice for
17   Courts to sever antitrust claims and patent claims to simplify
18   issues and reduce the risk of jury confusion. Plaintiffs note
19   that patent claims are less complex and require less discovery
20   and will be ready for trial earlier. Plaintiffs state that
21   the antitrust counterclaims depend upon issues at the core of
22   the patent claims and resolving the patent claims first will
23   moot or simplify the antitrust counterclaims.
24    Defendants respond that granting this motion would
25   substantially delay the resolution of this case and assert

4

1    that Plaintiffs' current actions to extend its monopoly power
2    require an expedited briefing and trial schedule on these
3    counterclaims. Defendants state that many of their antitrust
4    counterclaims are not dependent on Plaintiffs' patent claims
5    and assert that the law does not support a stay where patent
6    claims would not be dispositive of all of the antitrust
7    claims.
8    Plaintiffs reply that the vast majority of
9    Defendants' antitrust counterclaims would be mooted by the
10   resolution of their contract and patent claims and state that
11   Courts frequently stay discovery even where resolution of the
12   patent claims will not dispose of all antitrust counterclaims.
13   Plaintiffs ready?
14    MR. CONRAN: Good morning, Your Honor.
15    THE COURT: Good morning. Plaintiffs ready?
16    MR. CONRAN: We're ready.
17    THE COURT: Defendants ready?
18    MR. DENVIR: We are, Your Honor.
19    THE COURT: Good morning. Whenever you're ready.
20    MR. CONRAN: I'd like to introduce to the Court
21   Dan Webb, a good friend, who is going to be handling the
22   motion on this issue. All right?
23    THE COURT: All right. Good morning, Mr. Webb.
24    MR. WEBB: Good morning, Your Honor. Thank you
25   allowing me to appear and argue this motion.

EXHIBIT A

25

1  our affirmative *Walker Process* claim.
2      These factual allegations, Your Honor, which account
3  for 49 of the 104 of the allegations of anticompetitive
4  conduct in the case, are, in fact, the most factually complex,
5  discovery-intensive disputed facts in this litigation.
6  Everything else will pale in comparison to the complexity and
7  the difficulty of that discovery, and that's going to take
8  place no matter what.
9      Now we enter, again using Monsanto's categories,
10 categories of Anticompetitive Conduct as to which there is no
11 dispute that discovery will eventually be necessary at some
12 point. So, again, we have patent fraud which we just
13 discussed; the sham litigation which we just discussed; the
14 Dow-Monsanto agreement. That's an additional 14 out of the
15 104 allegations of fact and the switching strategy which is
16 another 7 out of the 104. So that's 70 out of the 104
17 allegations, Your Honor, as to which discovery is going to
18 take place no matter what happens. It's just a question of
19 when.
20     Now you'll note in the middle column opposite
21 "Switching Strategy" that we put in parentheses "excluding
22 Paragraphs 137 to 143," and we've noted that because Monsanto
23 doesn't count those paragraphs anywhere. What those
24 paragraphs involve, Your Honor, ---
25     THE COURT: Just a second. Where are you now?

26

1      MR. DENVIR: I'm sorry. "Eventual Discovery
2  Necessary - Undisputed."
3      THE COURT: All right.
4      MR. DENVIR: And if you look down to "Switching
5  Strategy," the paragraphs of the counterclaims that have been
6  identified by Monsanto, 179 through 185, do not include, nor
7  does any other category in Monsanto's chart, include
8  Paragraphs 137 to 143. And I just wanted to tell you what --
9  Those paragraphs are the paragraphs that allege that the
10 independent seed companies are a critical, essential,
11 necessary distribution channel for developers of traits. That
12 is a key -- Those are key sets of allegations, Your Honor, in
13 antitrust terms, and Monsanto concedes that those have to go
14 forward as well. So we're really talking about 77 out of the
15 104 paragraphs of the counterclaims that allege
16 anticompetitive conduct as to which discovery will be
17 necessary at some point.
18     Now when you talk about efficiency, Your Honor,
19 "efficiency" means potentially avoiding unnecessary discovery.
20 It does not mean delaying discovery that's going to happen no
21 matter what, and that's essentially what Monsanto is arguing
22 for here today.
23     We then have the final category, Your Honor,
24 "Discovery Necessary," but it's our position that Monsanto
25 disputes that, and that includes the remainder of those -- of

27

1  those categories of anticompetitive conduct.
2      Now the reason we disagree with Monsanto's position,
3  Your Honor, that discovery will not be necessary with respect
4  to those claims is that they are all part of our allegations
5  of the switching strategy. If you look at the next page,
6  Your Honor, we tried to demonstrate this graphically.
7      When Monsanto refers to the "ISC switching strategy,"
8  they suggest, I think, Your Honor, that these are some
9  isolated, disconnected sort of allegations that we just threw
10 in the Complaint. As a matter of fact, Your Honor, the
11 Complaint says that we bring this action -- that's in the
12 yellow box on top -- "DuPont and Pioneer bring this action to
13 arrest a new anticompetitive scheme by Monsanto designed to
14 force ISCs to switch from Roundup Ready® 1 to Roundup Ready® 2
15 Yield prior to the expiration of the patents." So it's not
16 some isolated, off-to-the-side set of allegations. This is
17 the centerpiece of our case.
18     It is then alleged, Your Honor, in Paragraph 3 of the
19 counterclaims, "The unlawful scheme described herein" --
20 that's the switching scheme -- "has five key related
21 components each by itself anticompetitive and each
22 contributing to the exclusionary effects of the whole."
23     And what are those five? They're the five categories
24 of anticompetitive conduct that Monsanto says, "Well, these
25 are field-of-use restrictions," so the Court need not -- If we

28

1  went on -- if we went on the patents then, the Court will
2  never need to consider these issues, but we disagree with
3  that. We think, Your Honor, the discovery will be necessary
4  as to those parts of an overall -- overarching scheme,
5  regardless of the outcome on the patent issues.
6      Now we address that on the next page of this -- these
7  demonstratives, Your Honor.
8      We respectfully submit, Your Honor, that the
9  switching strategy cannot be viewed in isolation from its
10 various components, and those components are the five
11 categories as to which Monsanto claims discovery will not be
12 necessary.
13     It has long been held that even if individual
14 elements of an alleged anticompetitive scheme are legal, taken
15 outside of the context of monopoly power and taken outside of
16 the context of the synergistic effects of that scheme, that if
17 there are effects taken as a whole that are exclusionary
18 within the meaning of Section 2 of the Sherman Act, then they
19 violate Section 2, taken as a whole, even if individually,
20 each of those -- each of those acts viewed in isolation might
21 be legal.
22     Our Complaint -- Our counterclaims, Your Honor,
23 allege that you can't view these -- these acts in isolation
24 here. The Complaint alleges that they are all part of a
25 scheme; that they're interrelated and that they operate

29

1 synergistically. So we would submit, Your Honor, that no
2 matter what the outcome on the patent case is, on the patent
3 case we're going to have to take discovery on these five
4 remaining categories as well which means virtually a hundred
5 percent.
6        I want to make one comment. We've heard today and in
7 the briefing that's been done in this case the term "field of
8 use" as sort of a callusment (ph); if it's -- if it's a -- if
9 it's a field of use, then it's somehow blessed and no longer
10 subject to antitrust scrutiny. Well, it's not quite that
11 simple. Number one, we will dispute whether these are
12 actually field-of-use restrictions or not. But, second, even
13 if they are, the Federal Circuit in *B. Braun*, B-R-A-U-N,
14 *Medical v. Abbott Labs*, which is at 124 F3d 1419 at 1426,
15 Federal Circuit case, stated that field-of-use restrictions
16 are generally upheld. It then went on to note, however, that
17 quote, "Any anticompetitive effects they may have are analyzed
18 under the rule of reason," closed quote.
19        So we will -- we will argue during the course of this
20 case, Your Honor, that these are -- number one, these are not
21 field-of-use restrictions and, number two, even if they are,
22 they -- they have to be evaluated under the rule of reason.
23 And third, they cannot be viewed in isolation. They have to
24 be viewed as an integrated whole and in the way they operate
25 together synergistically. So that's the story on efficiency,

30

1 Your Honor -- on switching; on -- I'm sorry; on the stay.
2        Now as I said, Your Honor, the second reason or the
3 third reason we believe that a stay is inappropriate here is
4 that it would cause real prejudice. Now you heard this
5 morning that we've sat on our rights and that these license
6 restrictions go back years and years and years. The switching
7 strategy is new, and it has arisen with the pending/impending
8 expiration of the Roundup Ready® patent. So it's -- We have
9 not sat on our rights, Your Honor. This is -- This is not
10 only something that's new but it's taking place as we speak.
11        The Complaint alleges that Monsanto is currently
12 coercing ISCs to switch from Roundup Ready® 1 to Roundup
13 Ready® 2. The Complaint alleges that they have been told they
14 need to destroy their Roundup Ready® 1 seed lines. So before
15 the patent expires, Monsanto's goal is to have everybody
16 switched to Roundup Ready® 2. Roundup Ready® 1 seed lines
17 will be destroyed. What that means is that when the patent
18 expires, there's not going to be any possibility of generic
19 competition certainly by the ISCs or by the ISCs as a
20 distribution channel for other trait developers, and that's --
21 that's ongoing. Once that happens, Your Honor, we believe
22 that once the ISCs completely switch from Roundup Ready® 1 to
23 Roundup Ready® 2, that that conversion will become effectively
24 irreversible. So there is real imminent danger, Your Honor,
25 and it's real prejudice not only to -- not only Pioneer and

31

1 DuPont who are going to try to sell traits, license traits to
2 these independent seed companies, but to the public interest.
3        Now, finally, Your Honor, on the issue of separate
4 trials, Mr. Webb said earlier that there won't be two trials
5 of the antitrust claims in this case no matter -- no matter --
6 there will not be two trials of the --
7        THE COURT: Patents?
8        MR. DENVIR: -- inequitable defense in the *Walker*
9 *Process*. If Monsanto is willing to waive a second trial
10 today, we'd be happy to take it, but the Courts have held that
11 the elements of the two -- All of the facts may be precisely
12 the same. The elements of the two are different.
13        If you look, Your Honor, at Page 6 of this outline,
14 the heading is "Bifurcated Trials Is Redundant." We cite the
15 *Climax Molybdenum v. Molychem* case which is at 414 F.Supp. 2d,
16 1007. This is the law generally, but this is a clear
17 articulation of the law. In rejecting bifurcation, the Court
18 held that, "Bifurcation would result in duplication and
19 inefficient use of judicial resources. Although there is
20 considerable overlap between the issues of inequitable conduct
21 and the fraud necessary to establish a *Walker Process*
22 antitrust claim, the elements are not identical. Thus, if
23 Molychem were to prevail on its defense on inequitable conduct
24 during a separate trial of the patent issues, no issue
25 preclusion would result from that determination. A subsequent

32

1 trial of Molychem's *Walker Process* counterclaims would require
2 another evidentiary presentation about Climax's alleged fraud
3 on the Patent Office. In this case, a single trial of the
4 patent and antitrust issues would promote the objectives of
5 efficiency and fairness."
6        We would suggest that the same is true here,
7 Your Honor. Not only is there a large overlap but the factual
8 issues, the evidence is virtually the same; the same
9 witnesses, same documents. And if we prevail on our
10 inequitable conduct claim, I bet you almost anything that
11 Monsanto is going to come in the next day and say, "Well, wait
12 a minute. We get a new trial on the antitrust claim because
13 the standards are different," and they are. So if we prevail,
14 Your Honor, we're going to have two trials. There's no
15 question about it.
16        I assume there's no more dispute about whether we get
17 a jury trial on the inequitable conduct claim because that is
18 absolutely clear law. So what we end up having potentially is
19 not a savings but we have -- we have two virtually identical
20 trials before two different juries on the same factual issues.
21 I would suggest to Your Honor that that is not a model of
22 efficiency. It's a prescription for inefficiency and waste
23 and delay. And if the Court would want -- If there's a way
24 for the Court to guarantee that this case will stay on its
25 docket for a very, very long time, the way to do that is to