```
                    UNITED STATES OF AMERICA
                   EASTERN DISTRICT OF MISSOURI
                         EASTERN DIVISION


MONSANTO COMPANY and            )
MONSANTO TECHNOLOGY LLC,        )
                                )
         Plaintiffs,            )
v.                              ) No. 4:09-cv-00686-ERW
                                )
E.I. DUPONT DE NEMOURS AND      )
COMPANY and PIONEER HI-BRED     )
INTERNATIONAL, INC.,            )
                                )
         Defendants.            )


                     TRANSCRIPT OF PROCEEDINGS


             BEFORE THE HONORABLE E. RICHARD WEBBER
                  UNITED STATES DISTRICT JUDGE


                         June 21, 2010


APPEARANCES:

FOR PLAINTIFF:         Dan K. Webb, Esq.
(via telephone)        George Lombardi, Esq.
                       WINSTON & STRAWN, LLP
                       35 W. Wacker Drive
                       Chicago, IL 60601
                       312-558-5600

FOR PLAINTIFF:         John J. Rosenthal, Esq.
                       WINSTON AND STRAWN, LLP
                       1700 K Street, NW
                       Washington, DC 20006
                       202-282-5000

FOR PLAINTIFF:         Joseph P. Conran, Esq.
                       Greg G. Gutzler, Esq.
                       HUSCH BLACKWELL SANDERS, LLP
                       190 Carondelet Plaza, Suite 600
                       St. Louis, MO 63105-3441
                       314-480-1500
```

EXHIBIT B

```
 1
 2   FOR DEFENDANT:      C. David Goerisch, Esq.
                         Andrew Rothschild, Esq.
 3                       LEWIS RICE FINGERSH
                         600 Washington, Suite 2500
 4                       St. Louis, MO 63101
                         314-444-7600
 5
     FOR DEFENDANT:      James P. Denvir, III, Esq.
 6                       Christopher L. Hayes, Esq.
                         BOIES AND SCHILLER, LLP
 7                       5301 Wisconsin Avenue, Suite 800
                         Washington, DC 20015
 8                       202-237-2727

 9   FOR DEFENDANT:      Leora Ben-Ami, Esq.
                         Thomas F. Fleming, Esq.
10                       Christopher T. Jagoe, Esq.
                         KAYE SCHOLER, LLP
11                       425 Park Avenue
                         New York, NY 10022
12                       212-836-7203

13   REPORTED BY:        Christine A. Simpson, RMR, CRR,
                         Official Court Reporter
14                       111 South Tenth Street, 3rd Floor
                         St. Louis, MO  63102
15                       (314) 244-7989

16   Proceedings recorded by mechanical stenography, produced
     by computer-aided transcription.
17
18
19
20
21
22
23
24
25
```

1       (Proceedings began at 1:07 p.m.)
2       THE COURT:  I understand we have a technical issue
3  and so the choice is to select between the image of the
4  attorney or the image of the exhibit and I would assume
5  that the exhibit is what everyone needs to see.  Am I
6  correct or is that incorrect?
7       MS. BEN-AMI:  I think that's right for at least
8  one of the motions, Your Honor.
9       THE COURT:  Okay.  Why don't we go with that and
10 then once we do that, can we switch if we need to?
11      MS. BEN-AMI:  I think we can, Your Honor.
12      THE COURT:  Okay.  All right.  Is there any
13 objection to proceeding in that fashion?
14      MR. CONRAN:  (Nonverbal response.)
15      THE COURT:  All right.  Very well.  The case is
16 Monsanto -- please be seated -- Monsanto Company and
17 Monsanto Technology LLC versus DuPont, Pioneer.  The case
18 number is 4:09-cv-00686-ERW.
19      There are several motions that I'll be considering
20 today.  First, Monsanto's Motion for a Protective Order
21 Relating to Third-Party Document Subpoenas, Document No.
22 160.  I'll stop there for just a moment.
23      Can -- is there a good audio connection in
24 Chicago?
25      MR. WEBB:  Yes, Your Honor, this is Dan Webb and I

 1   switching strategy.  That was what we told the Court back
 2   in September.
 3          Now if you look at the second exhibit that we used
 4   back in September, a thing of beauty.
 5          THE COURT:  And a joy forever.
 6          MR. DENVIR:  It's been joy to me, Your Honor.  My
 7   colleague prepared that, but it's my favorite exhibit.
 8   And what I would draw the Court's attention to here, Your
 9   Honor, is that this is -- this is a summary of what the
10   counterclaims alleged -- and they alleged an unlawful
11   scheme that had five key related components, each by
12   itself anti-competitive and each contributing to the
13   exclusionary effects of the whole.
14          And there on the bottom right each company -- each
15   component as part of Monsanto's integrated switching
16   strategy, again the use of switching strategy to encompass
17   all of this anti-competitive license restrictions in
18   Monsanto's agreements.
19          So first, to force the industry without, Your
20   Honor, 32 as in the platform trait, that's the strategy to
21   switch the industry from Roundup Ready 1 to Roundup Ready
22   2.  Second, to compete competitive generic Roundup Ready
23   -- of the competitive generic Roundup Ready platform trait
24   to extend the temporal scope of that patent monopoly.
25          And then finally, Your Honor, to extend that

1  patent monopoly into adjacent markets for traits stacked
2  with generic Roundup Ready platform trait, that on its
3  face implicates these anti-competitive license
4  restrictions.
5         So, Your Honor, the Court says the
6  anti-competitive license restrictions form the basis for
7  defendants switching strategy theory and submit to the
8  Court that what that means is what we have alleged it
9  means, which means it encompasses the -- the restrictions
10 in Monsanto's licenses that prohibit independent seed
11 companies and germplasm developers from stacking, it
12 includes anti-competitive restrictions in Monsanto's
13 licenses that prevent independent seed companies from
14 being sold to anyone but Monsanto.
15        It includes anti-competitive provisions in
16 Monsanto's licenses which prevent -- which further
17 buttress Monsanto's poisoned pill provisions by
18 prohibiting co-branding.
19        So all of these restrictions, Your Honor, from the
20 beginning we have used to describe our switching theory.
21        Finally, Your Honor, the third demonstrative we
22 use before Your Honor last September 2nd, the key point
23 here was that the coerced ISC switching strategy is
24 alleged to be the centerpiece of Monsanto's monopolistic
25 campaign.

1          Again, through unlawful scheme alleged herein,
2     according to the complaints, counterclaims, has five key
3     interrelated -- five key related components, each by
4     itself anti-competitive and each contributing to the
5     exclusionary effects through the whole.
6          Now, Your Honor, I'm not going to walk you through
7     these exhibits, but at pages 3 through 5 of the
8     demonstratives we have handed up to the Court I have
9     described in more detail some of the counterclaims both in
10    the first set of counterclaims and in the second amended
11    set of counterclaims, which -- which describe -- which
12    describe the switching strategy as encompassing all of
13    these various elements.
14         Now the other thing, Your Honor, that the
15    September 16th order says is that the claims that are not
16    stayed are claims which do not hinge on the validity of
17    Monsanto's patents.
18         If you'd turn to page 6, please.  The Court says
19    in the order at page 4, the order recognizes -- we say
20    this, the order recognizes that, quote, defendants'
21    switching strategy also does not hinge on the validity of
22    plaintiffs' patents, although it would require significant
23    patent and license related discovery.
24         Now, Your Honor, we say that anti-competitive
25    license restrictions do not hinge on the validity of