UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MONSANTO COMPANY and MONSANTO TECHNOLOGY LLC, <br><br> Plaintiffs/Counterclaim-Defendants, <br><br> vs. <br><br> E.I. DUPONT DE NEMOURS AND COMPANY and PIONEER HI-BRED INTERNATIONAL, INC., <br><br> Defendants/Counterclaim-Plaintiffs. | Case No. 4:09-cv-00686 ERW |

**DUPONT'S AND PIONEER'S RESPONSE TO MONSANTO'S SUBMISSION PROPOSING A SCHEDULE FOR DEFENDANTS' ANTITRUST COUNTERCLAIMS**

Counterclaim-Plaintiffs E.I. du Pont de Nemours and Company and Pioneer Hi-Bred International, Inc. (collectively "DuPont & Pioneer"), submit this response to Counterclaim-Defendants Monsanto Company's and Monsanto Technology LLC's (collectively "Monsanto") proposed scheduling plan.

DuPont & Pioneer provided Monsanto a detailed proposed schedule only a week after the Court ordered the parties to confer concerning the antitrust schedule (*see* Dkt. 408 Exhibit B), but Monsanto never responded with a counterproposal and never suggested dates for antitrust expert discovery, dispositive motions, or trial. As a result, DuPont & Pioneer learned of Monsanto's position on these dates for the first time when Monsanto filed its submission with the Court late Monday night. As Monsanto's submission makes clear, it again seeks what it twice failed to obtain by litigating over a stay of DuPont's & Pioneer's antitrust "switching strategy" claims – a two-year delay of resolution of the merits of those claims.

## ARGUMENT

Juxtaposing the parties' proposed schedules makes plain that adopting Monsanto's schedule would render meaningless the Court's decision not to stay DuPont's & Pioneer's "switching strategy" antitrust claims:

| DuPont's Antitrust Schedule Proposal | | Monsanto's Antitrust Schedule Proposal |
|---|---|---|
| Close of non-stayed antitrust fact discovery | May 2011 | Close of non-stayed antitrust fact discovery |
| | June 2011 | |
| | July 2011 | |
| Close of non-stayed antitrust expert discovery | Aug. 2011 | |
| | Sept. 2011 | |
| Complete briefing non-stayed antitrust dispositive motions | Oct. 2011 | Patent & Contract Trial |
| Stayed antitrust fact and expert discovery | Nov. 2011 | |
| | Dec. 2011 | |
| Complete briefing any stayed antitrust dispositive motions | Jan. 2012 | Close of stayed antitrust fact discovery |
| **Antitrust Trial** | Feb. 2012 | |
| | Mar. 2012 | |
| | Apr. 2012 | |
| | May 2012 | Close of antitrust expert discovery |
| | June 2012 | |
| | July 2012 | |
| | Aug. 2012 | |
| | Sept. 2012 | Complete briefing antitrust dispositive motions |
| | Oct. 2012 | |
| | Nov. 2012 | **Antitrust Trial** |

Under Monsanto's proposal, the antitrust case is effectively stayed for six months between the close of fact discovery on the non-stayed antitrust claims in May 2011 and the beginning of fact discovery on the stayed antitrust claims in November 2011 upon completion of the patent-contract trial.  Under Monsanto's proposal, that half year of wasted time would cause the trial of DuPont's & Pioneer's antitrust claims to be delayed for at least an additional eight or nine months beyond the date proposed by DuPont & Pioneer, and for at least a year after the patent and contract trial.[1]  Such a result is neither fair to DuPont & Pioneer, which are entitled to pursue their claims absent a compelling reason for delaying their resolution, nor in keeping with the Court's stated "understanding [that] the parties will have already progressed in *completing* discovery on the 'switching strategy'" while the patent and contract case is proceeding.  (July 30, 2010 Order, Dkt. 283 at 20 (emphasis added).)

Monsanto provides no legitimate reason for imposing the delay it seeks.  Monsanto's argument that experts opining on the switching strategy antitrust claims must have access to the final determination, after trial, regarding the validity and enforceability of the patent Monsanto asserts against DuPont & Pioneer is simply wrong.  The evidence that will be used at trial of DuPont's & Pioneer's patent fraud antitrust claims will already have been the subject of discovery for the patent-contract trial, and therefore will be available to any Monsanto expert offering an opinion on the "switching strategy" antitrust claims who may wish to use it as a basis for his or her expert opinion.[2]  To the extent such an expert believes determinations of patent

---

[1] Monsanto's brief supporting its proposed antitrust schedule suggests there will be additional "proceedings on various equitable issues" after completion of the patent-contract trial. (Br. at 10.) DuPont & Pioneer do not understand what proceedings Monsanto is suggesting, and no such proceedings are currently contemplated by the case management order that controls the patent and contract schedule.

[2] Monsanto's proposed case management order provides that discovery "related to the stayed antitrust issues" may be produced after discovery related to DuPont's & Pioneer's switching strategy antitrust claims. DuPont & Pioneer respectfully request that the Court make clear in its case management order that any fact or expert

validity and enforceability are material to an analysis of the effects of Monsanto's switching strategy, he or she can provide opinions in the alternative, assuming validity and enforceability in one case and assuming invalidity and unenforceability in the other. Experts work in this fashion all the time, because they seldom have access to Court or jury factual determinations *before* they conduct their analyses and provide their opinions. As a result, Monsanto's argument that these experts would have to "re-do their expert opinions" under DuPont's and Pioneer's proposal is completely baseless. Their analyses can be completed before the patent-contract trial ever takes place. The only expert work likely to be needed after the patent-contract trial involves analysis of evidence relevant primarily to determining DuPont's & Pioneer's damages arising from Monsanto's enforcement of patent rights obtained through fraud or inequitable conduct. Such expert work will implicate and address issues that are discrete from the earlier expert analyses; indeed such analyses quite possibly will be conducted by different experts entirely.

Nor will filing dispositive motions related to DuPont's & Pioneer's switching strategy antitrust claims prior to completion of the patent-contract trial require the parties to duplicate their efforts. Monsanto can argue that the license restrictions it imposes on seed companies and germplasm breeders, including DuPont & Pioneer, are legitimate efforts at patent enforcement without first having the Court or jury decide its patent is valid and enforceable. Both parties are capable of discussing the import of any patent validity or unenforceability ruling in the alternative. In DuPont's & Pioneer's case, they anticipate arguing that Monsanto's license restrictions violate the Sherman Act due to their anticompetitive effects regardless of whether Monsanto can claim those restrictions are imposed based on a valid and enforceable patent. In

---

discovery that is relevant to *both* stayed and non-stayed antitrust claims is to be produced during the discovery period for non-stayed antitrust claims. DuPont & Pioneer attempted to do so in their proposed case management order by allowing later discovery only for information that is "exclusively related" to the stayed claims.

any event, the schedule DuPont & Pioneer have proposed provides the parties the opportunity to submit targeted supplemental briefs discussing the impact, if any, on DuPont's & Pioneer's antitrust claims of the judgment entered in the patent-contract trial.

As a result, contrary to Monsanto's professed fears, DuPont's & Pioneer's proposed schedule will not require the duplication of efforts by any party or any expert. More importantly, it will allow the parties to put the Court in a position to expeditiously resolve issues related to DuPont's & Pioneer's switching strategy antitrust claims, and to give DuPont & Pioneer their day in court on all their antitrust claims shortly after resolution of the patent-contract trial. The schedule will therefore avoid imposing the kind of prejudice Monsanto seeks by repeatedly delaying the antitrust trial while it continues to carry out its scheme to switch the industry to Roundup Ready 2 Yield and deny DuPont & Pioneer the ability to compete after its purported patent rights expire. Monsanto's scheme is already far advanced – most ISCs and germplasm breeders have signed Roundup Ready 2 Yield licenses and have begun the process of withdrawing Roundup Ready soybeans and germplasm from the market – and absent expeditious resolution of DuPont's & Pioneer's switching strategy claims, the industry will be left with limited sources of Roundup Ready soybean seeds and germplasm when the patent Monsanto asserts in this case expires. Monsanto's attempt to pin responsibility for delay in the commercialization of OGAT/RR on DuPont & Pioneer, one of the few remaining potential sources of Roundup Ready soybean germplasm, is both predictable and wrong. It is also contrary to the allegations in the counterclaims. The delay in the commercialization of OGAT/RR is due to delays DuPont & Pioneer have experienced in the foreign registration process, which Monsanto controls and which Pioneer believes, alleges, and will prove Monsanto

has exploited precisely for the purpose of delaying competition from OGAT/RR until its Roundup Ready 2 Yield platform is impenetrably entrenched.

## CONCLUSION

For the foregoing reasons, DuPont & Pioneer respectfully request that the Court set a trial date for all their antitrust counterclaims in February 2012, and enter the Proposed Case Management Order, attached to their initial submission as Exhibit A.

Dated:  November 5, 2010                                      Respectfully submitted,

**LEWIS, RICE & FINGERSH, L.C.**

By:      /s/ Andrew Rothschild
      Andrew Rothschild, #4214
      C. David Goerisch, #77207
600 Washington Avenue, Suite 2500
St. Louis, Missouri  63101
(314) 444-7600
(314) 241-6056 (facsimile)
arothschild@lewisrice.com
dgoerisch@lewisrice.com

Leora Ben-Ami
Thomas F. Fleming
Christopher T. Jagoe
Howard S. Suh
**KAYE SCHOLER LLP**
425 Park Avenue
New York, New York  10022
(212) 836-8000
(212) 836-8689 (facsimile)
lbenami@kayescholer.com
tfleming@kayescholer.com
cjagoe@kayescholer.com
hsuh@kayescholer.com

Donald L. Flexner
**BOIES, SCHILLER & FLEXNER LLP**
575 Lexington Avenue, 7th Fl.
New York, New York 10022
(212) 446-2300
(212) 446-2350 (facsimile)
dflexner@bsfllp.com

James P. Denvir
Amy J. Mauser
**BOIES, SCHILLER & FLEXNER LLP**
5301 Wisconsin Avenue, N.W.
Washington, D.C. 20015
202-237-2727
202-237-6131 (facsimile)
jdenvir@bsfllp.com
amauser@bsfllp.com

*Counsel for Defendants E.I. du Pont de Nemours and Company and Pioneer Hi-Bred International, Inc.*

**CERTIFICATE OF SERVICE**

       I hereby certify that on November 5, 2010, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

- **Steven M. Berezney**
  steve.berezney@huschblackwell.com
- **Kurt G. Calia**
  kcalia@cov.com
- **Matthew A. Campbell**
  macampbell@winston.com
- **Scott W. Clark**
  sclark@mwe.com
- **Joseph P. Conran**
  joe.conran@huschblackwell.com
- **Todd J. Ehlman**
  tehlman@winston.com
- **Anthony J. Franze**
  Anthony.Franze@aporter.com
- **Greg G. Gutzler**
  greg.gutzler@huschblackwell.com
- **James M. Hilmert**
  jhilmert@winston.com
- **George C. Lombardi**
  glombardi@winston.com
- **Kurt A. Mathas**
  kmathas@winston.com
- **Omri E. Praiss**
  omri.praiss@huschblackwell.com
- **John J. Rosenthal**
  jrosenthal@winston.com
- **Rebecca M. Ross**
  rmross@winston.com
- **Mark A. Smith**
  markasmith@winston.com
- **Steven G. Spears**
  sspears@mwe.com,jjknapp@mwe.com
- **Tamara M. Spicer**
  tamara.spicer@huschblackwell.com,jean.melenbrink@huschblackwell.com
- **Gail J. Standish**
  gstandish@winston.com

- **Dan K. Webb**
dwebb@winston.com

            /s/ Andrew Rothschild