UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MONSANTO COMPANY and | ) | |
| MONSANTO TECHNOLOGY LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:09CV00686 ERW |
| | ) | |
| E.I. DUPONT DE NEMOURS AND | ) | |
| COMPANY and PIONEER HI-BRED | ) | |
| INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Plaintiffs Monsanto Company and Monsanto Technology LLC's (collectively, "Monsanto") First Motion to Compel [doc. #376], Defendants E.I. DuPont de Nemours and Company and Pioneer Hi-Bred International, Inc.'s (collectively, "Defendants") Motion to Compel [doc. #389], and Monsanto's Motion to Unseal November 2, 2010 Memorandum and Order on Claim Construction [doc. #437]. The Court heard arguments from the parties on the first two Motions at a hearing held on November 23, 2010.

**I.   LEGAL STANDARD**

Federal Rule of Civil Procedure 26(b)(1) sets forth the scope of discovery for actions filed in federal court:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Rule 26(b)(2)(C) requires, however, that the court "limit the frequency or extent of discovery otherwise allowed" by the Federal Rules or by local rule – that is, the court is required to curtail the discovery of admittedly relevant evidence – if:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the important of the discovery in resolving the issues.

*See also Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999) ("Even if relevant, discovery is not permitted where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information.") (internal alteration, quotations, and citation omitted).

**I. MONSANTO'S FIRST MOTION TO COMPEL**

In its Motion, Monsanto requests four essentially distinct categories of discovery: (A) documents concerning stacked corn products produced by Defendants – that is, those corn products containing both Monsanto's Roundup Ready® ("RR") corn trait and Defendants' Optimum® GAT® ("OGAT") corn trait; (B) seed samples and pedigree information for all lines of stacked soybean and corn products developed by Defendants; (C) all regulatory filings, domestic and foreign, made by Defendants with respect to products containing Monsanto's RR traits; and (D) documents concerning Defendants' soybean and corn products that contain only Defendants' OGAT traits, also known as "stand-alone" OGAT soybeans and corn.

### A. Stacked Corn Products

Monsanto contends that it is entitled to discovery related to Defendants' RR/OGAT stacked corn products because Monsanto alleges that these products infringe on its intellectual property rights under the patent-in-suit, and because it also alleges that the creation of these products breached the parties' license agreement for the RR corn trait. Defendants argue that the requested discovery is unnecessary because they developed the stacked corn products for strictly non-commercial purposes as permitted by the license agreement.

The Court concludes that Monsanto's Motion will be granted on this point. Documents concerning the stacked corn products are undoubtedly relevant to the present litigation, for the simple reasons stated by Monsanto in support of its Motion: (1) they are alleged to be infringing products; and (2) they are alleged to place Defendants in breach of the corn license agreement. Defendants' arguments that stacked corn products do not infringe on the patent-in-suit – based on their non-commercial purpose – and do not breach the license agreement – based on provisions in the agreement authorizing certain non-commercial uses of the licensed trait – are premature, as these are merits inquiries that go to issues not properly considered in ruling on whether these documents are discoverable. In other words, Defendants may well be correct that stacking the RR and OGAT corn traits for non-commercial purposes does not infringe on the '247 Patent, and that certain provisions in the license agreement authorize this use of the licensed RR technology, but these issues have not yet been decided, and for that matter should not decided in the context of a motion to compel. Furthermore, with respect to Defendants' contention that this discovery would be unnecessarily burdensome, they have offered nothing more than a conclusory assertion to that effect. Documents related to RR/OGAT corn are relevant to Monsanto's patent infringement and breach of contract claims, and because Defendants have failed to establish that

this discovery would, in fact, be unduly burdensome, the Court will order this requested discovery.

B.      Seed Samples and Pedigree Information for Stacked Seed Products

The parties have in place an interim agreement under which Defendants have agreed to provide seed samples from the nineteen stacked soybean seed lines Defendants identified as suitable for commercialization, but Monsanto argues in its Motion that Defendants should be required to produce seed samples from *all* lines of stacked soybeans and corn they developed, as well as pedigree information for those lines. As in the preceding sub-section, Monsanto contends that these matters are relevant and discoverable because it alleges that all stacked seed products containing its RR traits are infringing, while Defendants claim that only those products subject to commercialization are relevant to the present litigation, and that they have therefore met their discovery obligations through their production of samples from the nineteen commercializable soybean lines.

For essentially the same reasons as stated above, the Court finds that these matters are discoverable. Monsanto alleges that RR/OGAT soybeans and corn infringe on its patent rights irrespective of whether they were created for commercial purposes, and as such, all lines of these seeds are relevant to Monsanto's claims. The Court also agrees that the pedigree information for those lines is relevant, in that it may indicate whether and under what circumstances Defendants used the licensed RR traits in the allegedly infringing seed products. Again, the Court does not necessarily agree with Monsanto that all stacked seed products are necessarily infringing or that their creation necessarily breaches the corn license agreement, but these are not the inquiries before the Court in assessing whether these matters are discoverable. As such, Monsanto's

4

requests for seed samples and pedigree information concerning all lines of RR/OGAT soybeans and corn will be granted.[1]

   C.   **Regulatory Filings**

Monsanto seeks the production of all of Defendants' domestic and foreign regulatory filings concerning stacked soybeans and corn, arguing that such filings are relevant in that they may provide additional evidence describing the accused products. Defendants state that they are willing to produce submissions for regulatory approval for these products, but that the remainder of the requested filings are irrelevant to the infringement claims because the filings merely contain information provided by Monsanto with respect to the RR traits.

The Court agrees with Monsanto that these filings contain potentially relevant information and should therefore be produced. Even if Defendants are correct that the filings only regurgitate information provided by Monsanto, these documents may provide evidence that the stacked products do, in fact, contain licensed technologies, making them relevant in the patent case. Furthermore, as Monsanto notes, Defendants take the position that they created stacked soybeans and corn solely in order to generate data used for regulatory approval, and Defendants' regulatory filings are therefore relevant to that argument. Finally, these documents may be relevant to Monsanto's defense of Defendants' antitrust counterclaims, to the extent Defendants claim that Monsanto has hampered their ability to compete by limiting their access to

---

[1] The Court declines to address the specifics of this transfer, such as the number of seed samples Defendants should provide and how to properly ensure the confidentiality of these matters, finding that these matters are best resolved by mutual agreement of the parties. Furthermore, the Court recognizes that the ordered production is onerous, and therefore encourages the parties to reach a compromise on this issue. For example, the compromise discussed in the briefing of this Motion – under which Defendants would produce samples from a limited number of lines, stipulate that they are representative of all lines, and provide documentation to that effect – would appear to be a reasonable means of accomplishing this discovery.

information necessary for certain regulatory filings for crops containing the licensed traits. The Court will therefore order Defendants to produce all domestic and foreign regulatory filings concerning stacked soybeans and corn.

### D. Stand-alone OGAT Products

In the last point in its Motion, Monsanto requests that Defendants be ordered to produce documents concerning stand-alone OGAT soybean and corn products, on the basis that these products are relevant both to the patent case and the antitrust case. Defendants concede that certain aspects of OGAT corn may be relevant to the antitrust case, but they assert that they have already produced responsive documents on that issue, and that neither OGAT corn nor OGAT soybeans are in any way relevant to the patent case.

The Court is, of course, only ruling on the discoverability of these matters, and not on their admissibility in a trial setting, and under these circumstances, the Court finds that Monsanto has made a sufficient showing of relevance to entitle it to discovery of these documents, in that: (1) documents concerning field tests of OGAT are alleged to demonstrate that it failed to effectively confer glyphosate tolerance on crops transformed with the trait, potentially providing evidence that the glyphosate tolerance exhibited by stacked soybeans and corn was at least due to the RR traits; (2) Monsanto contends that Defendants willfully infringed the '247 Patent, and documents concerning the development and "failure" of OGAT may shed light on the decision to develop the accused stacked products; and (3) Monsanto's defense to Defendants' antitrust claims is, at least partially, premised on its argument that Defendants, having failed to develop a product competitive with the licensed RR traits, lack standing to sue for Monsanto's alleged monopolization of the relevant markets. Furthermore, the Court believes that any concerns about the burden of producing responsive documents are alleviated somewhat by Monsanto's

agreement to seek documents related to OGAT only from the existing fifty identified custodians and with the search terms already in place for document production.

The Court will therefore grant Monsanto's request, for the most part, and order the production of the following categories of stand-alone OGAT documents: (1) regulatory filings and regulatory communications concerning the OGAT trait and any soybean or corn products containing the OGAT trait; (2) documents related to field tests on OGAT soybeans and corn; (3) documents concerning Defendants' decision to develop or commercialize the OGAT trait; (4) documents related to the performance, success, or failure of OGAT as a stand-alone trait in soybeans or corn; and (5) documents evidencing the capital invested in developing the OGAT traits in soybeans and corn.

## III. DEFENDANTS' MOTION TO COMPEL

Defendants' Motion relates to the following nine categories of documents: (1) specific documents concerning the research and development efforts underlying the work and disclosures described in the '247 Patent; (2) specific documents concerning related research into glyphosate tolerance; (3) documents concerning the scientific articles identified in Defendants' Second Amended Answer & Counterclaims ("SAAC"); (4) regulatory documents related to Roundup Ready products and other products allegedly covered by the '247 Patent; (5) documentation of Monsanto's decision on the inclusion of SEQ ID NO:70 in the '696 Patent; (6) documents concerning the scope of the claims in the patent-in-suit and the products those claims cover; (7) documents concerning secondary indicia of non-obviousness; (8) documents concerning the negotiation and drafting of the YieldGard agreement; and (9) previously-compelled documents concerning prior litigations.

With respect to the first three categories of discovery – documents related to the research underlying the '247 Patent, documents concerning research into glyphosate tolerance generally, and documents related to certain articles cited in the SAAC that Monsanto is alleged to have improperly withheld from the Patent and Trademark Office ("PTO") during the prosecution of the '247 Patent – the Court finds Defendants' requests to be overbroad. Defendants do not, in fact, seek specific, identifiable documents, but rather *all* documents that relate to (1) "any statement" in the '247 Patent, (2) any glyphosate tolerance research conducted by Monsanto, and (3) any research related to the articles cited in the SAAC, which essentially amounts to all of Monsanto's earlier research into glyphosate tolerance. These wide-ranging requests, encompassing a large amount of material that is admittedly not at issue in the present case, are not "reasonably calculated to lead to the discovery of admissible evidence," Fed. R. Civ. P. 26(b)(1), and the Court therefore declines to order the requested production.

That said, at the hearing on this Motion, Monsanto conceded that its production of admittedly relevant documents within these categories has been deficient, and Defendants pointed to numerous specific documents that Monsanto has failed to produce that are highly relevant to Defendants' defense of Monsanto's infringement claims. For example, the Court agrees with Defendants that some documents related to the underlying patent research are relevant to their contention that the claims in the '247 Patent which recite a DNA sequence encoding an EPSPS enzyme having the sequence of SEQ ID NO:3, SEQ ID NO:5, and SEQ ID NO:7, as well as those claims to glyphosate-tolerant plants, are not enabled. The Court likewise agrees that some of these research materials may be relevant to Defendants' arguments that certain asserted claims are invalid or unenforceable because (1) they fail to fulfill the written description requirement in 35 U.S.C. § 112, *see Honeywell Int'l, Inc. v. United States*, 609 F.3d

1292, 1301 (Fed. Cir. 2010) ("To comply [with the written description requirement], a patent applicant must convey with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession of the claimed invention.") (internal alterations, quotations, and citations omitted); (2) they do not satisfy § 112's "best mode" requirement, which precludes an inventor from concealing a means of practicing the invention that is preferable to that disclosed in the patent, *see, e.g.*, *Amgen, Inc. v. Chugai Pharm. Co.*, 927 F.2d 1200, 1209-10 (Fed. Cir. 1991); and (3) Monsanto engaged in inequitable conduct by withholding information contradicting its argument to the PTO that the enzymes disclosed in the patent are unique over the prior art, *see Cancer Research Tech. Ltd. v. Barr Labs., Inc.*, 2010 WL 4455839, at *7 (Fed. Cir. 2010) ("To successfully prove inequitable conduct, the accused infringer must provide evidence that the applicant (1) made an affirmative misrepresentation of material fact, failed to disclose material information, or submitted false material information, and (2) did so with intent to deceive the PTO.") (internal citation omitted). Nevertheless, Defendants' requests seek the production of documents far in excess of those required to support these contentions, and the Court declines to order such production in the absence of more narrowly-tailored requests. The Court notes, however, that Monsanto states that it will cure the deficiencies in its production as to research documents that underlie the asserted claims, and the Court will consider motions to compel from Defendants on an expedited basis with respect to any lingering deficiencies, and with respect to specific, identifiable documents within the overbroad categories of documents requested here.

Turning to Defendants' request for Monsanto's regulatory filings concerning RR products and any other products allegedly covered by the '247 Patent, the Court finds that this request will be granted. Defendants have made a sufficient showing that these documents may provide

9

information relevant to the defenses mentioned above, in that Monsanto's regulatory filings contain information about the genetic makeup of its products and the means of producing them, as well as information about the functioning of RR crops and corresponding field test data. Accordingly, Defendants' Motion will be granted with respect these documents.

Defendants' Motion will also be granted as to the remaining five categories of discovery: documents concerning Monsanto's decision on the inclusion of SEQ ID NO:70 in the '696 Patent, the scope of the claims in the '247 Patent, secondary indicia of non-obviousness, the negotiation and drafting of the YieldGard agreement, and related prior litigations. Monsanto asserts that Defendants' Motion is moot as to these categories because it has already produced all non-privileged responsive documents, but to the extent Defendants contend that Monsanto's production is incomplete, the Court has concluded that it will order this production in order to ensure that Monsanto is in full compliance with its discovery obligations.

## IV. MONSANTO'S MOTION TO UNSEAL MEMORANDUM AND ORDER

In this Motion, Monsanto asks the Court to unseal its November 2, 2010 Memorandum and Order on Claim Construction [doc. #411]. The Court filed this Order under seal based on concerns that it might contain information the parties consider confidential, but based on Defendants' lack of opposition, the Court concludes that Monsanto's Motion should be granted and the Order unsealed.

Accordingly,

**IT IS HEREBY ORDERED** that Monsanto's First Motion to Compel [doc. #376] is **GRANTED**, as set forth above in Section II.

**IT IS FURTHER ORDERED** that Defendants' Motion to Compel [doc. #389] is **GRANTED, in part** and **DENIED, in part**. Defendants' Motion is granted with respect to

regulatory documents related to Roundup Ready products and other products allegedly covered by the '247 Patent, documentation of Monsanto's decision on the inclusion of SEQ ID NO:70 in the '696 Patent, documents concerning the scope of the claims in the patent-in-suit and the products those claims cover, documents concerning secondary indicia of non-obviousness, documents concerning the negotiation and drafting of the YieldGard agreement, and documents concerning certain prior litigations, and is otherwise denied.

**IT IS FURTHER ORDERED** that Monsanto's Motion to Unseal November 2, 2010 Memorandum and Order on Claim Construction [doc. #437] is **GRANTED**.

Dated this 7th Day of December, 2010.

_____
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE