**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MONSANTO COMPANY and MONSANTO TECHNOLOGY LLC, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) ) | |
| E.I. DUPONT DE NEMOURS AND COMPANY and PIONEER HI-BRED INTERNATIONAL, INC., | ) ) ) ) ) ) | Case No. 4:09-cv-686 ERW |
| Defendants. | ) | |

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MONSANTO'S MOTION FOR SANCTIONS FOR DISCOVERY MISCONDUCT**

**REDACTED VERSION**

**INTRODUCTION**

Defense counsel's pervasive misconduct throughout the depositions of Dr. Paul Stephens and Dr. Daria Schmidt robbed Monsanto of the opportunity to fairly examine these witnesses. In their opposition, Defendants attempt to shift the Court's attention away from their own misconduct, attacking individual lines of questions posed by Monsanto's counsel and discrete excerpts from other depositions. But the present Motion does not target isolated instances involving a limited number of specific objections or questionable instructions. Rather, Monsanto's Motion demonstrates that, taken as a whole, defense counsel's extensive speaking objections, witness coaching, and continuous interruptions unfairly impeded Monsanto's right to question these two witnesses and made a mockery of the deposition process.

Defense counsel engaged in similarly inappropriate behavior defending other earlier depositions – including Dr. Bedbrook and Dr. Soper – using speaking objections and unfounded privilege instructions to inappropriately shape their testimony. Unchecked by the Court, this misconduct continued and escalated, with defense counsel's objections and continuous interruptions filling more than 20% of both the Stephens and Schmidt transcripts, nearly equaling the total volume of actual testimony offered by the deponents. In fact, as outlined in the moving papers, defense counsel's speaking objections and running commentary during the first portion of the Stephens' deposition filled nearly a third of the record and substantially eclipsed the testimony provided by the witness. Notably, in their opposition, Defendants offer no response to these statistics except to complain about the transcript formatting. Opp. at 33 ("▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬"). Even a cursory review of the complete transcripts demonstrates the extensive nature of defense counsel's misconduct; behavior that simply cannot be explained away through "indented" objections.

**REDACTED VERSION**

Deposition discovery is proceeding rapidly. In just the last few weeks, the parties have completed a dozen depositions, with an even larger number to be completed before the close of fact discovery in the patent case next month. While disagreements regarding the propriety of individual objections and privilege instructions made by counsel can be expected under such circumstances, defense counsel's actions far exceeded any reasonably justifiable conduct. To the contrary, as demonstrated in the present Motion, Defendants' escalating misconduct through these early depositions completely frustrated Monsanto's ability to fairly examine Dr. Stephens and Dr. Schmidt.[1]

That sanctions are warranted, and indeed necessary to prevent this type of misconduct from frustrating future depositions, is demonstrated by the strident position taken in Defendants' opposition: "███████████████████████████████████████████" Opp. at 34-35. Defense counsel evidently believe that their conduct is not just acceptable but "████████ █████████" Sanctions are necessary to make clear that it is not.

## ARGUMENT

### I. SANCTIONS ARE APPROPRIATE BECAUSE DEFENDANTS' CONDUCT HAS IMPEDED AND FRUSTRATED FAIR EXAMINATION OF THE WITNESSES

Monsanto will not here repeat all the instances of misconduct cited in the prior briefing on this Motion. The misconduct is fully set forth in Monsanto's opening briefs and the deposition transcripts that Monsanto has submitted in full themselves irrefutably demonstrate defense counsel's extensive misconduct, including extensive speaking objections, continuous

---

[1] Monsanto has provided the Court with complete copies of the Stephens and Schmidt deposition transcripts, and the full videos, so that the Court may evaluate the egregious nature of defense counsel's pervasive misconduct in context. By comparison, Defendants only selectively excerpted the deposition transcripts they cited. While Monsanto's conduct is not at issue, if the Court is interested, Monsanto would be happy to provide complete copies of any additional transcripts to assist the Court in comparing the relative conduct of the parties.

REDACTED VERSION

interruptions, and coaching of witnesses. Here, Monsanto will address just a few areas that bear further discussion given Defendants' response.

Not surprisingly, because nothing Defendants argue can now reform the record, the bulk of their opposition is a side show based on objections Monsanto made in defense of its own witnesses, objections which Defendants can bring before the Court in a proper motion to compel if there is any actual violation of the discovery rules. Defendants' opposition is also materially inaccurate in many instances, suggesting, for example, that Monsanto has not cited one example where a witness actually refused to answer a question, even though Monsanto cited pages and pages of transcript where the witness (especially Dr. Schmidt) repeatedly stated that ▇ ▇ or provided some similar non-response. *See*, *e.g.*, Supp. Memo. at p. 8-11.[2]

### A. Defendants Fail To Offer Any Response Regarding Several Examples Of Misconduct Which Alone Warrant Sanctions.

Defendants' opposition ignores large portions of Monsanto's Motion and offers unconvincing excuses to explain some of the most egregious misconduct. For example, Defendants completely ignore the fact that one of the two documents they purported to claw back during the deposition of Dr. Stephens had been marked as an exhibit during the deposition of Dr. Soper two weeks earlier. Mem. in Support at 9-10. There is simply no basis whatsoever for Defendants to suggest two weeks later, for the first time, that the document was "inadvertently" produced. First, at a deposition defended by counsel for Defendants, Dr. Soper

---

[2] On at least thirty occasions, Dr. Schmidt responded to a question by stating that her ▇ ▇" or some variation thereof. Schmidt Tr. ▇ ▇ Stephens did the same more than twenty times. Stephens Tr. ▇

-3-

testified at length about the document without objection (and with no suggestion whatsoever that the document disclosed any attorney-client communication). Second, as that portion of the Protective Order quoted in Defendants' opposition makes clear, to invoke the claw back Defendants were obligated to "promptly" notify Monsanto regarding any inadvertent production. Again, waiting more than two weeks, during the course of ongoing depositions, simply does not qualify. Finally, while speculating that the document must reflect legal advice, defense counsel have still not identified any privileged communication underlying this document – or even the name of any attorney allegedly involved in such communication. Indeed, defense counsel's argument appears to be that any discussions regarding any contract issues necessarily involve legal issues and thus must, *ipso facto*, involve legal advice protected by the attorney-client privilege (even without ever identifying any attorney-client communication). *See generally* Opp. at 15-16. That is clearly not the law, and none of the cases cited by Defendants support such an overly broad application of the attorney-client privilege.

Defendants' opposition also fails to offer any response regarding clearly coached usage of the litigation-inspired, pretend distinction between ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ Mem. in Support at 7-8. Such manufactured testimony is a clear affront to the basic premise underlying Rule 30 that "[i]t is the witness – not the lawyer – who is the witness." *Hall v. Clifton Precision*, 150 F.R.D. 525, 528 (E.D. Pa. 1993).

As to Dr. Schmidt's difficulty with simple English words – like "do," "use" and "else" – defense counsel offer only that she was nervous and wished to be precise. Opp. at 30. Any objective review of the deposition transcript belies this feeble effort to mischaracterize the

REDACTED VERSION

evasive nature of Dr. Schmidt's testimony.  Moreover, this argument only serves to highlight defense counsel's misconduct in using objections to frustrate the deposition.  *See, e.g.,* Schmidt Tr. at ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬ (emphasis added).  Notably, Defendants do not even attempt to distinguish Dr. Schmidt's evasive answers from the virtually identical conduct that led to sanctions, including a second deposition and an award of attorneys' fees and costs, in *United Consumers Club, Inc. v. Prime Time Mktg. Mgmt. Inc.*, --- F.R.D. ----, 2010 WL 4789264, at *14-15 (N.D. Ind. Nov. 16, 2010).

  **B.**  **Defendants Have Improperly Used The Attorney-Client Privilege To Block Questioning Regarding Relevant Facts Within The Witnesses' Knowledge.**

  One of the most important issues in this case is whether Defendants believed they could stack Pioneer's Optimum GAT trait with Monsanto's Roundup Ready trait under the terms of the License Agreements between the parties.  Defendants' opposition makes clear that Defendants are affirmatively using the attorney-client privilege, in the first instance, to prevent examination into any witness's individual understanding on this issue, even when the questions are not directed at and do not implicate any attorney-client communications.  As detailed above, the extenuated argument offered to support this extraordinarily broad overuse of the privilege is that any question regarding any contract issue necessarily implicates a legal issue, and any question that implicates a legal issue must ▬▬▬▬▬▬▬▬▬▬  *See* Opp. at p. 18 (arguing that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬).  This misuse of the privilege to block

**REDACTED VERSION**

testimony regarding facts that Defendants admit ███████████████" is completely inappropriate. Opp. at 18.

First, it is of course clear that a witness may have information regarding contract issues wholly apart from any communications with counsel. Monsanto is clearly entitled to inquire regarding the witnesses' own knowledge derived independent of counsel – even knowledge regarding contract issues. Nonetheless, defense counsel affirmatively instructed Dr. Stephens not to answer these types of questions. *See, e.g.*, Mem. in Support at 16-17, Stephens Tr. at ████████████████████████████████████████████████████████████████ (emphasis added). As reflected in the case law cited by Defendants, such instructions are entirely inappropriate. *See Philadelphia v. Westinghouse Elec. Corp.*, 205 F. Supp. 830, 831 (E.D. Pa. 1962) ("The point which the defendants appear to have missed is that the protection of the privilege extends only to communications ***and not to facts***. A fact is one thing and a communication concerning that fact is an entirely different thing.") (emphasis added).

Further, Monsanto is entitled to question witnesses regarding facts known to them, regardless of who the information was shared with or learned from, so long as the questions do not seek disclosure of protected communications. In this regard, it is noteworthy that defense counsel repeatedly instructed witnesses not to answer questions regarding facts known to the witness, or the witnesses' own understanding – questions that did not ask about any communication whatsoever. *See generally* Mem. in Support at 14-22, Stephens Tr. at ████████████████████████████████████████████████████████████████

**REDACTED VERSION**

██████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████). Again, facts are not privileged, and instructions not to answer such questions are clearly inappropriate. *Id.*

Moreover, most typically, it is defense counsel who, through a speaking objection, inappropriately inserted the suggestion that a question was directed at some unidentified attorney-client communication thereby blocking testimony regarding the witnesses' personal knowledge. *See generally* Mem. in Support at 17-18, Stephens Tr. ████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████

████████████████████████) (emphasis added); *see also* Schmidt Tr. at ████████

██████████████████████████████████████████████

████████████████████████████████████

Defense counsel have also repeatedly instructed witnesses not to answer foundational questions necessary to establish whether the question involves any protectable attorney-client communication. *See*, *e.g.*, Mem. in Support at 18-21, Stephens Tr. at ████████████

-7-

██████████████████████**REDACTED VERSION**██████████████████████

██████████████████████); *see also* Bedbrook Tr. at ████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

Schmidt Tr. at ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████ the refusal to permit questioning on such foundational issues clearly was not. *See Refuse & Envtl. Sys., Inc. v. Indus. Servs. of America*, 120 F.R.D. 8, 10-11 (D. Mass. 1988) (fact that an attorney was consulted; date, length of time, and place of the consultation; and who was present at the meeting "may be probed without in any way implicating the privilege"); *Stabilus v. Haynsworth, Baldwin, Johnson & Greaves, P.A.*, 144 F.R.D. 258, 268 (E.D. Pa. 1992) ("underlying facts, as well as the factual circumstances surrounding the attorney-client relationship, are discoverable") (internal citations omitted); *see also* Fed. R. Civ. P. 26(b)(5)(a) (requiring, as to all discovery, that a party who refuses to provide discovery on a claim of privilege provide sufficient specifics to "enable other parties to assess the claim"); *Hall v. Clifton Precision*, 150 F.R.D. 525, 530 (E.D. Pa. 1993) (an attorney who, during a deposition, privately confers with a witness regarding the application of a privilege "should place on the record the fact that the conference occurred, the subject of the conference, and the decision reached as to whether to assert a privilege").

Finally, and perhaps most troubling, Defendants are attempting to use the attorney-client privilege as both sword and shield. On one hand, Defendants continue to misuse the privilege as a shield to block any and all testimony that arguably relates to any contract issues, including the

witness's own personal knowledge regarding whether Defendants could stack Optimum GAT and Roundup Ready.  At the same time, Defendants ███████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████████████████████████.  *See* Mem. in Support at 9, Soper ███████████

These conflicting positions clearly demonstrate defense counsel's inappropriate misuse of the privilege to block relevant discovery and manipulate the deposition testimony.

These are not isolated incidents, but are repeated throughout the depositions, and taken together with the overly broad assertion of the privilege have the effect of blocking all inquiry into key subject matters in dispute.  This misuse of the privilege clearly warrants sanctions, including an order that defense counsel stop using privilege to block testimony regarding the witnesses' personal knowledge.  *See One Bancorp Sec. Litig. v. One Bancorp*, 134 F.R.D. 4, 8 (D. Me. 1991) (ordering witness to appear to resume the deposition and ordering counsel to "state on the record a fact-specific basis for any claim of privilege sufficient to permit the Court to determine the validity of the claim").

      **C.     Through Their Continued Misconduct, Defendants Have Obstructed Fair Examination Regarding The Witnesses' Personal Knowledge.**

An overall theme that began to take shape during the depositions of Dr. Bedbrook and Dr. Soper was that Defendants' witnesses had been coached to claim a "lack of personal knowledge" regarding facts they knew or understood to be true other than through direct firsthand observation or experience.  Lack of personal knowledge is not a proper objection in the context of a deposition.  Witnesses must testify to what they know, regardless of how they learned of the information.  Determination of whether the information is admissible at trial is for later.

REDACTED VERSION

This coaching became even more evident during the deposition of Dr. Stephens. For example, Dr. Stephens testified ███████████████████

███████████████████████████████████████

███████████████████████████████████████

█████████████████████████████ Dr. Stephens also testified █████████████████████████████████

███████ Nonetheless, despite his admitted █████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████. *See* Stephens Tr. ███████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████).

Dr. Schmidt, a Ph.D. in plant breeding and genetics, also picked up on this coaching. ███████████████████████████████████████

█████████████████████ During her deposition, she testified ███████████████████████████████████

███████████████████████████████████

████████████████. *See* Schmidt Tr. at 14:22-15:24. Nonetheless, like Dr. Stephens, Dr. Schmidt ████████████████████████████████ *See,*

-10-

**REDACTED VERSION**

*e.g.,* Schmidt at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮ .

Dr. Schmidt then extended the absurdity to repeatedly suggest ▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮ . *See generally* Supp. Mem. at 11-13. Moreover, even where the document in

question bore every indicia that it was in fact what it purported to be, Dr. Schmidt still

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



-11-

**REDACTED VERSION**



Schmidt Tr. at ▮▮▮▮▮▮ (emphasis added).

The issue Monsanto has raised, for the Court's consideration, has nothing to do with a witness being examined on documents or subject areas outside of her "personal knowledge," in any rational definition of that term.  Dr. Schmidt was an author or recipient of many of the emails she was questioned about, and the subject matter of the emails was both within her ability to understand and within her specific job responsibilities.  Yet she ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and without offering any evidence that could bring the document's authenticity into question.

Defendants have provided no response to this issue in their opposition, except to say that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (overlooking the obvious problem that such evasive responses are anything but precise), and that the obstruction will not cause Monsanto any prejudice because the parties are negotiating an agreement to authenticate all relevant documents.  Of course, the problem is not only that Dr. Schmidt refused ▮▮▮▮▮

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████

      For example, when asked questions about ███████████████████████████

███████████████████████████████████████████████████████████

██████████████████████. Schmidt Tr. at ████████ Dr. Schmidt then testified █████

███████████████████████████████████████████████████████████

██. Schmidt Tr. at 7█████  And, despite direct questions explicitly targeting her understanding of this phrase, Dr. Schmidt effectively refused to respond, █████████

███████████████████████ *See generally* Schmidt Tr. at ████████ The legal authority cited by Defendants in their attack on Monsanto's counsel does not condone this kind of gamesmanship. Those cases stand for the unsurprising proposition that a witness cannot be harassed with questions about information obviously outside his or her personal knowledge. *Ferguson v. Valero Energy Corp.*, 2010 WL 2164493, at *2 (E.D. Pa. May 27, 2010) (sanctioning counsel for "asking a nonmedical witness his opinion on autopsy photographs, asking witnesses about letters and press releases that they had neither drafted nor seen before their depositions, and asking non-executive employees questions about [the company's] corporate profits and corporate charitable spending" after court warning that such conduct was inappropriate); *In re Folding Carton Antitrust Litig.*, 83 F.R.D. 132, 134 (N.D. Ill. 1979) (inappropriate to "ask[] the witness to perform mathematical calculations [and] to read from and compare documents including documents which the deponents had never seen before"). Defendants' cases say nothing about a witness's ████████████████████████

███████████████████████████████████████████████████████████

REDACTED VERSION



███████████████████.” Schmidt Tr. at ████

Of course, Dr. Schmidt's purported difficulty understanding what ████████████ ████████████████████████████████████████ ████████████████████████████████████████ ███████████████████ *See* Schmidt at ████████████ ████████████████████████████████████████ ████████████████████). Again, Dr. Soper ████████████ ███████████████ testified that ████████████████████ ████████████████████████████████████████ *See* Soper Tr. at ████████ Nonetheless, Dr. Schmidt was ████████████ ████████████████████████████████ ████████████████████████████████████████ ████,"

Finally, it must be noted that defense counsel's argument that Monsanto will not be prejudiced because the parties have agreed to a separate procedure for authentication of documents only further demonstrates their sanctionable misconduct. Based on Defendants' opposition, it appears that Defendants do intend to stipulate to the authentication of emails, email attachments, and other documents, including those marked at Dr. Schmidt's deposition. However, during the deposition itself, defense counsel took a very different approach altogether, affirmatively impeding the deposition by objecting to exactly those types of foundational issues. *See* Schmidt Tr. at ████████████████████████ ████████████████████████████████████████

-14-

REDACTED VERSION

███████████████████████████████████████████████

███████████████████████████████████████████████ .

### D. Sanctions Are Appropriate To Remedy Pervasive Discovery Abuse.

Defense counsel's conduct of these depositions, as a whole, shows a pattern of abuse that is preventing Monsanto from fairly examining Defendants' witnesses. The witnesses have provided evasive answers and refused outright to respond to questions, while defense counsel have attempted to shape the witness's testimony through baseless objections and to block testimony on important issues through invalid privilege assertions. There is also additional evidence, left unrebutted by Defendants, that they have coached all of their witnesses into adopting their lawyer's view that there is a distinction between ███████████████ ███████████████ even though no such distinction ever existed before this lawsuit began.

Monsanto's Motion is not directed at individual, isolated issues. It is directed at widespread and pervasive misconduct, based on an untenable view of the attorney-client privilege and on Defendants' belief that they can use objections to coach their witnesses and shape their testimony. The abuse has already substantially frustrated Monsanto's efforts to obtain discovery, and it threatens to continue if left unaddressed.

### CONCLUSION

For the reasons stated above, Monsanto respectfully requests that the Court grant the instant motion.

Dated: January 24, 2011

**REDACTED VERSION**

Respectfully submitted,

HUSCH BLACKWELL LLP

By: /s/ Joseph P. Conran .
Joseph P. Conran, E.D.Mo. # 21635MO
joe.conran@huschblackwell.com
Omri E. Praiss, E.D.Mo. # 41850MO
omri.praiss@huschblackwell.com
Greg G. Gutzler, E.D.Mo. # 48893MO
greg.gutzler@huschblackwell.com
Tamara M. Spicer, E.D.Mo. # 54037MO
tamara.spicer@huschblackwell.com
Steven M. Berezney, E.D.Mo. # 56091MO
steve.berezney@huschblackwell.com
190 Carondelet Plaza, Suite 600
St. Louis, MO  63105
(314) 480-1500 – telephone
(314) 480-1505 – facsimile

WINSTON & STRAWN LLP
Dan K. Webb
dwebb@winston.com
George C. Lombardi
glombardi@winston.com
Todd J. Ehlman
tehlman@winston.com
James M. Hilmert
jhilmert@winston.com
35 W. Wacker Drive, Suite 4200
Chicago, IL  60601
(312) 558-5600 – telephone
(312) 558-5700 – facsimile

John J. Rosenthal
jrosenthal@winston.com
Matthew A. Campbell
macampbell@winston.com
Jovial Wong
jwong@winston.com
1700 K Street, N.W.
Washington, DC  20006
(202) 282-5000 – telephone
(202) 282-5100 – facsimile

**REDACTED VERSION**

Gail J. Standish
gstandish@winston.com
333 South Grand Avenue
Los Angeles, CA 90071-1543
(213) 615-1700 – telephone
(213) 615-1750 – facsimile

MCDERMOTT WILL & EMERY
Steven G. Spears
sspears@mwe.com
Scott W. Clark
sclark@mwe.com
1000 Louisiana Street, Suite 3900
Houston, TX 77002-5005
(713) 653-1700 – telephone
(713) 739-7592 – facsimile

*Attorneys for Plaintiff Monsanto Company and Monsanto Technology LLC*

**REDACTED VERSION**

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that on the 24th day of January, 2011, the foregoing was filed electronically with the Clerk of the Court for the United States District Court for the Eastern District of Missouri, Eastern Division, under seal, and was served by ECF notice by operation of that Court's electronic filing system with the sealed version served by electronic mail pursuant to agreement of counsel, upon the following:

Andrew Rothschild, Esq.
C. David Goerisch, Esq.
Lewis, Rice & Fingersh, L.C.
600 Washington, Suite 2500
St. Louis, MO 63101

Leora Ben-Ami, Esq.
Thomas F. Fleming, Esq.
Christopher T. Jagoe, Esq.
Howard S. Suh, Esq.
Jeanna Wacker, Esq.
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022

Donald L. Flexner, Esq.
Hershel Wancjer, Esq.
Cynthia Christian, Esq.
Robert M. Cooper, Esq.
Boies, Schiller & Flexner LLP
575 Lexington Avenue, 7th Fl.
New York, NY 10022

James P. Denvir, Esq.
Amy J. Mauser, Esq.
Boies, Schiller & Flexner LLP
5301 Wisconsin Avenue, N.W.
Washington, D.C. 20015

*Attorneys for Defendants*

                                                                      /s/ Joseph P. Conran             .

**REDACTED VERSION**