**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MONSANTO COMPANY, | ) | |
| MONSANTO TECHNOLOGY LLC | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 4:09-cv-00686(ERW) |
| v. | ) | |
| | ) | |
| E.I. DUPONT DE NEMOURS AND | ) | |
| COMPANY and PIONEER HI-BRED | ) | |
| INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MONSANTO'S RESPONSE TO DEFENDANTS' REPORT CONCERNING**
**THE COURT ORDERED MEET AND CONFER & REQUEST FOR RELIEF**
**PURSUANT TO THE COURT'S MARCH 18, 2011 ORDER**

**INTRODUCTION**

Disregarding their meet-and-confer obligations, and without leave of court, Defendants have now filed a *third* report regarding the Court's March 18, 2011 Order.  This so-called "report" is in fact a brand new motion:  it raises matters never addressed in any of Defendants' underlying motions to compel; complains about issues never discussed between the parties; and seeks new relief never asked for at any point during the extremely thorough proceedings underlying Defendants' motion.   These new and overbearing demands are based on an interpretation of the parties' protocol that the Court has already rejected.   If granted, their demands would eviscerate the scheduling order and inhibit orderly administration of this case toward trial.

The primary issue before the Court in Defendants' Second Motion to Compel was the correct interpretation of the custodian protocol agreed upon by the parties.  The Court's March 18 Order was clear: Monsanto has the "proper interpretation of the custodian protocol."  Dkt.

665 at 44. The protocol called for "[e]ach side [] to discuss with named custodians where they kept *their* documents in paper, files on personal computers, on a server or servers, on any other central location, or in conventional storage." *Id.* (emphasis added). Monsanto has met, and is continuing to meet, this protocol.

Having failed to persuade the Court to expand the scope of discovery beyond the protocol, Defendants now claim for the first time that Monsanto has not complied with the terms of the custodian protocol as it has been interpreted by Monsanto and this Court. Yet, with the exception of not having interviewed former employees (something Monsanto conceded to the Court and something Defendants themselves failed to perform), Defendants offer no facts to demonstrate that Monsanto has not complied with its obligations. Instead, Defendants throw out page after page of unsupported allegations and suspicions.

Defendants' filing is a transparent attempt not only to re-litigate their Second Motion to Compel, but also to *completely* disrupt the Court's Case Management Order. On a unilateral basis, Defendants now seek to dramatically expand their allotted time for 30(b)(6) depositions (by an extra *three days* worth of testimony), seek extra fact interrogatories for Defendants, and seek leave to reopen the depositions of numerous witnesses. *See* Dkt. 673 at 9-10. Rather than moving this case forward, Defendants' demands would rewind this case to the start of fact discovery, and seriously imperil the trial that Defendants have long purported to be keenly interested in having.

For all of these reasons, Defendants' new and baseless demands should be denied. Furthermore, Monsanto respectfully requests an in-person status conference to discuss how to resolve the outstanding discovery motions, how to address Defendants' substantial document deficiencies, and how to promptly move this case to forward to trial.

## ARGUMENT

### I.    MONSANTO HAS COMPLIED WITH THE CUSTODIAN-BASED PROTOCOL

The Court has now ruled on the proper interpretation of the custodian protocol: "Each side was to discuss with named custodians where they kept *their* documents in paper, files on personal computers, on a server or servers, on any other central location, or in conventional storage." Dkt. 665 at 44 (emphasis added).   The Court definitively rejected Defendants' unfounded and perpetually changing interpretations of the protocol. *Id.* at 8-9 ("Monsanto is correct in its conclusions that Defendants' interpretation of the custodian protocol has changed from time to time.").

Monsanto followed the protocol.   A representative from Monsanto's legal department has confirmed that she understood that the custodian interviews "needed to capture every area where custodians stored their documents." Dkt. 568 (Troupis Decl.) at ¶ 4.   During the interviews, custodians were asked where they stored all of their hard-copy documents and ESI, including in their offices, home offices, central filing, off-site storage, archives, hard drives, e-mail servers, smart phones, loose media (such as CDs, thumb drives, external hard drives), network private and public drives, shared servers, collaboration workspaces and/or with their administrative assistants. *Id.* at ¶¶ 5-10.   The agreed-upon search terms were then run on the documents and data was collected. *Id.* at ¶ 9.

At the initial telephone hearing on the instant motion, Monsanto advised the Court that it had not conducted interviews of former employee custodians, as set forth in the protocol. *See* Jan. 24, 2011 Tr. at 78.   At the February 11, 2011 hearing in St. Louis, Defendants conceded that they had not done so either.   Monsanto is completing these interviews and is hopeful to have that process completed within a week.   Monsanto requests that Defendants be ordered to do the same.

Monsanto believes that completing the process of interviewing its former employee custodians is not likely to "do violence" to the scheduling order. Although Monsanto did not interview all former employees in the first instance, Monsanto **did collect and produce responsive hardcopy and electronic documents of these custodians**.[1] Monsanto has subsequently interviewed many of these custodians, and the interviews have not yet revealed any additional documents to be produced, beyond what Monsanto has already produced from their files.

For example, Monsanto interviewed Dr. Barry following his deposition. Dr. Barry confirmed that the totality of his documents were left in a box in his office. During the initial document collection efforts, Monsanto located Dr. Barry's hardcopy documents in storage (in fact, Monsanto located documents in excess of the single box Dr. Barry had remaining in his office when he left), and produced responsive documents to Defendants. The subsequent interview of Dr. Barry has resulted in the identification of *zero* additional documents that were not previously produced to Defendants. Likewise, because many of the other former-employee custodians left Monsanto years ago, Monsanto was in a better position than these custodians to determine what became of their documents following the custodians' departure. Thus, Monsanto does not expect the completion of custodial interviews to result in the identification or production of any substantial amount of additional documents to Defendants.

---

[1] Monsanto searched their record center indices, files of the Legal Department, archives, e-mail archives and locations where all historical lab notebooks and MSLs are maintained for any responsive documents and ESI of former employees. To the extent possible, Monsanto also contacted relevant employees within the former employee's department to ascertain whether they were aware of any other potential locations where the former custodian's documents could be located. Dkt. 568, Att. 8 (Troupis Decl.) at ¶ 10.

## II.  DEFENDANTS' NEW ALLEGATIONS OF NON-COMPLIANCE ARE COMPLETELY BASELESS

Having failed in their argument regarding the protocol, Defendants now argue that Monsanto has not followed the protocol as interpreted by the Court.  Defendants offer no facts whatsoever to support their hyperbolic claims.  Rather, their filing is premised entirely on baseless attorney conjecture that is contrary to the evidence.  A cursory examination of Defendants' new assertions demonstrate they are bereft of merit.

*First,* Defendants argue that Dr. Barton stated during his deposition that he stored documents in a separate storage facility at Agracetus, and they assert that Dr. Barton was not asked about these documents during his custodian interview.  Dkt. 673 at 8.  Yet, Defendants completely ignore that Dr. Barton testified that he informed Monsanto about these documents. *See* Dkt. 673, Ex. I at 31.  In fact, Monsanto collected documents from the Agracetus storage facility, and produced them pursuant to the custodian protocol.

*Second*, Defendants assume because Brian Martinell was able to find out the answer to a question posed during the regular course of business, it must have meant that he reviewed the original source document or had the source document in his possession.  Dkt. 673 at 8, and Ex. J. But Defendants have no support for this assumption.  Both the custodians referenced in Exhibit J were fully questioned about their documents according to the custodian protocol, and Monsanto has produced responsive, non-privileged documents that were collected from them.

*Third*, Defendants claim that there are various reports Dr. Mackey allegedly received while an employee at Monsanto that should have been produced.  Dkt. 673 at 8-9.  Defendants base their argument on the assertion that if a custodian identifies an area where she may have kept documents, Monsanto must produce documents even if there are no documents of the custodian at the location.  *Id.*  This argument is the same as Defendants' old position – that

Monsanto must produce documents of others that might in some way be related to the work that the custodians did.   That is simply *not what the protocol says*, and it is not what this Court ordered after its lengthy review of the protocol.   As the Court stated, the protocol was designed to collect the **custodians'** documents.   *See* Dkt. 665 at 44.   Therefore, if a location identified by a custodian did not have any of her documents, under the protocol, other documents from that location should not be produced.   Monsanto has produced Dr. Mackey's documents to Defendants.

*Fourth*, Defendants "suspect" that Monsanto is selectively withholding relevant documents from non-custodial files of a prior litigation.   Dkt. 673 at 6-7.   Defendants' wild speculation is purportedly based on the deposition of Dr. Hinchee.   During that deposition, Defendants' counsel attempted to introduce an incomplete document as an exhibit, and represented that a complete version was missing from Monsanto's production.   Monsanto promptly investigated the matter, determined that a processing error had occurred, and produced the full document to counsel during the deposition.   Defendants' counsel proceeded to question Dr. Hinchee extensively about that document.   There was nothing nefarious about Monsanto's prompt resolution of this innocent mistake, nor does that situation warrant the unfounded accusation that Monsanto is selectively "withholding" documents.

*Fifth*, Defendants claim that Monsanto has refused to produce all relevant Weldon notebooks.   Dkt. 673 at 7.   Dr. Weldon **is not**, **was not, and has never been** a custodian. Nevertheless, in response to **Defendants' demand** for a non-custodian production of her notebooks, Monsanto agreed – as a gesture of good faith – to produce the notebooks Defendants demanded.   On the theory that no good deed should go unpunished, Defendants now contend that Monsanto's good-faith production requires it to undertake the additional burden of producing **all**

6

Weldon documents, despite the fact she was never identified as a custodian. That is nonsense. The Court should not punish Monsanto's cooperation by ordering additional production from this non-custodial source. If Defendants wanted "all" of Weldon's documents, they should have designated her as a custodian. They did not.

*Sixth*, Monsanto has offered to "produce certain vector information from the pMON database to Defendants," even though this information falls outside the scope of custodial documents. Dkt. 667 at 2. Given Defendants' position that any good-faith production of materials from non-custodial sources "opens the door" to still more discovery, Monsanto is concerned that by agreeing voluntarily produce such documents to Defendants, Defendants will later contend they are entitled to still more. Nevertheless, Monsanto made its offer to search the pMON database. It did so based on the understanding that Defendants would produce similar information from their sequence databases so that parties have equivalent discovery from one another. *Id.*; *see also* Dkt. 673, Ex. O. Defendants have now refused to do so, and contend that that Monsanto should be forced to produce information beyond the custodial protocol without Defendants reciprocating in any manner. This position is clearly untenable.

*Seventh*, in perhaps their most outrageously baseless complaint, Defendants concoct a fantasy that Monsanto is engaging in "discovery games" by withholding a supposed "deposition transcript" of Dr. Padgette from a *Rhone Poulenc* litigation. Defendants are just wrong. In response to Defendants' demands, Monsanto investigated whether Dr. Padgette was even deposed in that case. Monsanto has been unable to locate any such deposition transcript, and based on its investigation, does not believe that such a deposition occurred. In their motion to compel, Defendants' referenced certain testimony from Dr. Padgette that was read into the record of a trial during the course of the *Rhone Poulenc* litigation. Dkt. 673 at 13. Although the

attorney at trial identified the testimony as coming from portions of testimony from a prior "deposition," Monsanto's investigation revealed that the testimony actually was quoted from a prior ***trial*** proceeding.  In light of the Court's statement that the Padgette transcript should be produced "immediately," Monsanto produced the prior trial testimony to Defendants on March 24, 2011.

After Defendants refused to engage in a meet and confer, Monsanto's attorney explained this situation to Defendants' counsel in an email, in crystal clear terms, and confirmed that Monsanto would be producing the transcript.  Dkt. 673, Ex. O.  Defendants now completely ignore Monsanto's explanation and production of the transcript, and instead choose to make incendiary allegations lacking even the slightest factual basis.  That they have chosen to do so encapsulates the entirety of Defendants' improvident filing.

## II.     DEFENDANTS ARE ATTEMPTING TO RE-WRITE THE COURT'S CASE MANAGEMENT ORDER

In addition to their baseless document complaints, Defendants now demand: (1) an additional ten fact interrogatories; (2) twenty-one additional hours for Rule 30(b)(6) deposition testimony; and (3) further depositions of Drs. Barry, Padgette, and Kishore, and possibly other witnesses.  Dkt. 673 at 9-11.  These requests are blatant attempts to circumvent the parties' agreement on limitations on discovery as set forth in the Case Management Order, and are completely unjustified.

The parties sought various agreements to limit the scope of discovery in this action in order to both move quickly to trial and also limit the cost of discovery.  The ESI Stipulation with the custodian protocol was one of those agreements, which Defendants have unsuccessfully sought to reinterpret.  Now Defendants are attempting to evade the second agreement – the limitations in the CMO regarding the amount of written discovery and numbers/hours of

depositions – without any plausible basis or coherent explanation. The limitations on depositions were central to the parties' agreements, and there is no basis for Defendants to unilaterally rewrite those limitations now.

Defendants' request for an additional 10 fact interrogatories – only for Defendants and not Monsanto – is completely unsupported. Defendants offer no explanation for why these interrogatories would be needed, other than to vaguely state that there is "information that Defendants have been unable to obtain." Dkt. 673 at 9. The parties agreed in February 2010 that "each side may propound no more than 30 interrogatories." Dkt. 165 at 9. Defendants have not demonstrated any cause to allow for more interrogatories, nor have they explained with any degree of specificity how this demand relates at all to their Second Motion to Compel, which it apparently does not.

Defendants' request for an additional 21 hours of Rule 30(b)(6) deposition testimony is equally baseless. Dkt. 673 at 10. Defendants complain that Monsanto has not provided 30(b)(6) witnesses for many months, but do not begin to explain how this demand has the least bit to do with the discovery protocol or Defendants' Second Motion to Compel. *Id.* at 10-11. Defendants further ignore ***that Defendants themselves have failed to produce a 30(b)(6)*** witnesses, and that the parties have been in discussions for weeks in an attempt to ***mutually limit, not expand,*** the scope of the noticed 30(b)(6) topics and the resulting burdens on both parties. Defendants' sudden demand for 21 hours of testimony – never before raised with Monsanto's counsel – is contrary to all of the parties' numerous discussions about 30(b)(6) depositions for several weeks. Moreover, Defendants provide no explanation for why they need 21 more hours of testimony before even a minute of testimony has been taken. Defendants request means that they want ***51 hours*** of 30(b)(6) testimony, when they originally only requested ***35 hours***, Dkt. 165 at 6, and

the Court ordered **30 hours**.  Dkt. 178 at 2.  Defendants' attempt to increase this Court's order by 70% does violence to the limitations originally agreed to by both parties.

Finally, the Court should reject Defendants' demand for re-depositions of Drs. Barry, Padgette, and Kishore, or other witnesses.  Dkt. 673 at 11. Defendants do not identify any additional documents that they need to ask these witnesses about, nor are there likely to be such documents following completion of the former-employee custodial interviews.  Although Monsanto did not initially conduct a custodial interview of Dr. Barry, Monsanto **did** search for and produce his documents in the first instance.  Since that time, Monsanto conducted a custodial interview of Dr. Barry, and that interview did not result in the identification of additional documents**.**  Dr. Padgette was already interviewed, and his documents were produced prior to his deposition.  There is no basis to force these witnesses to sit for another deposition.[2]  Moreover, Defendants themselves have produced hundreds of thousands of pages of documents from relevant custodians *after* the depositions of those custodians.  Presumably Defendants will not agree to the reproduce all of *their* witnesses for a second deposition.

## III.  MONSANTO REQUESTS A STATUS CONFERENCE TO ADDRESS OPEN DISCOVERY AND SCHEDULING ISSUES

In addition to Defendants' Second Motion to Compel, the parties have filed several additional discovery motions, which are ripe for resolution.  The Court's resolution of scheduling issues in this case should take into account not only Monsanto's document production, but

---

[2]  Both Dr. Barry and Dr. Kishore are third-party witnesses.  Dr. Barry lives in the Philippines, and voluntarily traveled to the United States to testify in this case pursuant to Defendants' notice.  Although the Court observed that Dr. Barry was compensated $1,000/day, he is not ordinarily on Monsanto's payroll.  He was compensated that amount in exchange for the disruption to his schedule imposed by his flying across the world to give testimony in this case.  Monsanto does not control either Dr. Barry or Dr. Kishore, and it cannot represent to the Court that either witness will voluntarily agree to sit for another deposition after having already sat for one complete seven-hour deposition.

Defendants' production, which remains substantially incomplete.  Monsanto requests a status conference to address these open issues.

Defendants have attempted to falsely paint a picture of bad faith by alleging that Monsanto has withheld documents from its production.  Defendants, however, have consistently ignored substantial problems with their own production – even when ordered to remedy them by the Court.  Monsanto continues to be highly concerned about the inadequacy of Defendants' production, especially in light of the repeated representations made to this Court regarding the alleged scope of their collection and production.

For example:

- Three months after the Court ordered their production, Defendants have still failed to produce a *single corn seed* or a single document indicating the pedigree of their stacked corn products.

- Defendants have failed to produce OGAT/Roundup Ready® license agreements, and  OGAT agreements with universities and other partners, despite Monsanto's repeated requests.  Defendants did not even provide a list of parties who licensed the OGAT/Roundup Ready® stack until **February 16, 2011** (a list that contained 46 different parties).  Monsanto may need to seek discovery from these third-parties if Defendants refuse to produce these documents.

- Jeff Rowe (Head of Pioneer's Regulatory Department and a Custodian) testified that Defendants have made submissions concerning the OGAT/Roundup Ready® stack in soybean in Mexico and Japan.  Yet these documents have not been produced to Monsanto, despite the Court's order, which said that Defendants were

required to produce "*all* domestic and foreign regulatory filings concerning stacked soybeans and corn."  Dkt. 475 at 6 (emphasis added).

- Paul Schickler (Pioneer's President) testified that he attended monthly board meetings with executives at DuPont in which the issues relating to OGAT and the OGAT/Roundup Ready stack were discussed.  He further testified that agendas were prepared for these meetings and summaries were distributed after the meetings.  Yet, these documents inexplicably have not been produced, despite Mr. Schickler being a custodian.

- Defendants have also failed to produce their sales and royalty information relating to all of their transgenic products.  These documents are relevant to determine damages and to defend Defendants' antitrust claims, yet Defendants have not produced them.

- Furthermore, it is clear from Defendants' privilege log that Defendants have chosen to withhold numerous critical, non-privileged scientific documents on the basis of "privilege."

Rather than simply running to the Court on a motion to compel, Monsanto has been attempting to use the meet-and-confer process with Defendants to secure these documents or a reasonable explanation for why they were not produced.  Most of Monsanto's requests have fallen on deaf ears.[3]

Monsanto believes that these outstanding discovery issues can be addressed expeditiously, such that this case can proceed to trial at the presently scheduled date.

---

[3] Monsanto will soon file a global motion to compel regarding all of these failures in production by Defendants.

Dated:  March 28, 2011

Respectfully submitted,

HUSCH BLACKWELL LLP

By: _/s/ Joseph P. Conran_____.
Joseph P. Conran, E.D.Mo. # 21635MO
joe.conran@huschblackwell.com
Omri E. Praiss, E.D.Mo. # 41850MO
omri.praiss@huschblackwell.com
Greg G. Gutzler, E.D.Mo. # 48893MO
greg.gutzler@huschblackwell.com
Tamara M. Spicer, E.D.Mo. # 54037MO
tamara.spicer@huschblackwell.com
Steven M. Berezney, E.D.Mo. # 56091MO
steve.berezney@huschblackwell.com
190 Carondelet Plaza, Suite 600
St. Louis, MO  63105
(314) 480-1500 – telephone
(314) 480-1505 – facsimile

WINSTON & STRAWN LLP
Dan K. Webb
dwebb@winston.com
George C. Lombardi
glombardi@winston.com
Todd J. Ehlman
tehlman@winston.com
James M. Hilmert
jhilmert@winston.com
35 W. Wacker Drive, Suite 4200
Chicago, IL  60601
(312) 558-5600 – telephone
(312) 558-5700 – facsimile

John J. Rosenthal
jrosenthal@winston.com
Matthew A. Campbell
macampbell@winston.com
Jovial Wong
jwong@winston.com
1700 K Street, N.W.
Washington, DC  20006
(202) 282-5000 – telephone
(202) 282-5100 – facsimile

Gail J. Standish
gstandish@winston.com
333 South Grand Avenue
Los Angeles, CA 90071-1543
(213) 615-1700 – telephone
(213) 615-1750 – facsimile

MCDERMOTT WILL & EMERY
Steven G. Spears
sspears@mwe.com
1000 Louisiana Street, Suite 3900
Houston, TX  77002-5005
(713) 653-1700 – telephone
(713) 739-7592 – facsimile

*Attorneys for Plaintiff Monsanto Company and
Monsanto Technology LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed electronically with the Clerk of Court and served on counsel of record by operation of the Court's ECF System, this 28th day of March, 2011:


Andrew Rothschild, Esq.
C. David Goerisch, Esq.
Lewis, Rice & Fingersh, L.C.
600 Washington, Suite 2500
St. Louis, MO 63102

Leora Ben-Ami, Esq.
Thomas F. Fleming, Esq.
Christopher T. Jagoe, Esq.
Howard S. Suh, Esq.
Jeanna Wacker, Esq.
Kaye Scholer LLP
425 Park Avenue
New York, NY  10022

Donald L. Flexner, Esq.
Hershel Wancjer, Esq.
Cynthia Christian, Esq.
Robert M. Cooper, Esq.
Boies, Schiller & Flexner LLP
575 Lexington Avenue, 7th Fl.
New York, NY  10022

James P. Denvir, Esq.
Amy J. Mauser, Esq.
Boies, Schiller & Flexner LLP
5301 Wisconsin Avenue, N.W.
Washington, D.C.  20015

*Attorneys for Defendants*


 /s/ Joseph P. Conran                   .