UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MONSANTO COMPANY and MONSANTO TECHNOLOGY LLC, <br><br> Plaintiffs, <br><br> vs. <br><br> E.I. DUPONT DE NEMOURS AND COMPANY and PIONEER HI-BRED INTERNATIONAL, INC., <br><br> Defendants. | Case No. 4:09CV00686 ERW |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on Defendants E.I. du Pont de Nemours and Co. and Pioneer Hi-Bred International, Inc.'s (collectively, "Defendants") Motion to Compel a Finding of Waiver Related to the Filing of U.S. Patent No. RE39,247 ("the '247 Patent") [doc. #613]. In their Motion, Defendants assert that Plaintiffs Monsanto Company and Monsanto Technology LLC (collectively, "Monsanto") have waived attorney-client privilege with respect to the reasoning underlying Monsanto's decision to file the reissue application for the '247 Patent and the circumstances of its drafting, as a result of information on those topics provided by Monsanto during discovery. Monsanto contends that no waiver took place because Monsanto has not revealed the substance of any confidential attorney-client communications.

"The attorney-client privilege protects the confidentiality of communications between attorney and client made for the purpose of obtaining legal advice," and disclosure of confidential communications to a third party therefore generally constitutes a waiver of privilege as to those matters. *Genentech, Inc. v. U.S. Int'l Trade Comm'n*, 122 F.3d 1409, 1415 (Fed. Cir.

1997) (internal citations omitted).[1] Thus, courts have found that disclosures of confidential attorney-client communications to the Patent and Trademark Office ("PTO") may support a finding of waiver. *See Medtronic, Inc. v. Guidant Corp.*, 2004 WL 883394, at *1-*2 (D. Del. 2004); *Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 237 F.R.D. 618, 624-25 (N.D. Cal. 2006). It is not apparent, however, that Monsanto's reissue application for the '247 Patent or its supplemental disclosures with respect to that application specifically contained the contents of any confidential communications; those filings simply indicate that the predecessor patent, U.S. Patent No. 5,633,435 ("the '435 Patent") erroneously "included claims that grouped together subject matter first disclosed in different parent applications and, therefore, having different effective filing dates," and that the reissue application also corrected the classification of certain DNA sequences as amino acid sequences.

That said, during the course of depositions in this case, Monsanto offered additional information about the motivations behind filing the reissue application. For example, in-house counsel Dennis Hoerner expanded on the statements to the PTO, revealing that because of the issue of the different effective filing dates, there was a specific concern that the mixed subject matter claims were technically anticipated by Monsanto's publication of PCT[2] Application No. PCT/US91/06148 ("the PCT application"). Hoerner further indicated that communications between himself and other in-house and outside counsel led to this concern, or at least were the

---

[1] Federal Circuit law applies to discovery matters where the issue "clearly implicates substantive patent law," *In re Pioneer Hi-Bred Int'l, Inc.*, 238 F.3d 1370, 1374 n.3 (Fed. Cir. 2001), and this includes the issue of the extent to which a party waives attorney-client privilege in connection with filing a reissue declaration with the PTO. *See Mass Engineered Design, Inc. v. Ergotron, Inc.*, 2008 WL 744705, at *1 (E.D. Tex. 2008) (internal citations omitted).

[2] "PCT" refers to the Patent Cooperation Treaty, which provides a single mechanism for filing a patent application in all countries that are signatories to the treaty.

2

means by which the concern was expressed.[3] The Court is persuaded that these conversations constituted confidential attorney-client communications concerning the reissue application, and that the deposition statements about the role of the PCT application therefore constitute a waiver of privilege.[4]

Having found a waiver, the next question is its scope. "The widely applied standard for determining the scope of a waiver of attorney-client privilege is that the waiver applies to all other communications relating to the same subject matter." *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005). "There is no bright line test for determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures." *Id.* at 1349-50.

Although Defendants contend that the waiver should extend to all matters relevant to the decision to file the reissue application and the circumstances of its drafting, including the claim scope believed available under the '435 Patent and the issue of whether Hoerner's purported drafting error was made without deceptive intent, the Court finds that the *Fort James* factors counsel in favor of a narrower waiver. As set forth above, the privileged matters disclosed all specifically relate to the role of the PCT application in Monsanto's decision to seek reissue, and accordingly that will define the scope of the waiver. This necessarily will involve some

---

[3] Defendants offer a number of additional examples of Monsanto allegedly revealing confidential communications with respect to the PCT applications. They are omitted here in the interest of brevity, as they put substantially the same information at issue as the statements from Hoerner.

[4] Although the PCT application was disclosed in Monsanto's reissue filings, the disclosure was made in a list of hundreds of documents, without any indication of its significance.

information about Monsanto's beliefs as to the claim scope available under the '435 Patent, the circumstances of the drafting of the reissue application, and the deceptive intent inquiry, but only to the extent that those subjects were affected by Monsanto's understanding of the ramifications of the PCT application on the validity of the claims of the '435 Patent.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Compel a Finding of Waiver Related to the Filing of U.S. Patent No. RE39,247 [doc. #613] is **GRANTED**. Monsanto has waived attorney-client privilege with respect to legal advice concerning the role of the PCT application in its decision to seek reissue of the '435 Patent, and shall therefore produce to Defendants all privileged documents on that topic that it previously withheld and identified on privilege logs.[5]

Dated this 10th Day of May, 2011.

_E. Richard Webber_ (signature)
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE

---

[5] The Court declines to order or permit additional depositions of Monsanto counsel or personnel, finding that such depositions would be unnecessarily burdensome at this stage in the litigation and that the information sought by Defendants is adequately addressed through the production of documents identified in Monsanto's privilege logs.