UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MONSANTO COMPANY and<br>MONSANTO TECHNOLOGY LLC, | )<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| vs. | )<br>) | Case No. 4:09CV00686 ERW |
| E.I. DUPONT DE NEMOURS AND<br>COMPANY and PIONEER HI-BRED<br>INTERNATIONAL, INC., | )<br>)<br>)<br>) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on Plaintiffs Monsanto Company and Monsanto Technology LLC's (collectively, "Monsanto") Fifth Motion to Compel [doc. #638]. In its Motion, Monsanto asserts that Defendants E.I. du Pont de Nemours & Co. and Pioneer Hi-Bred International, Inc. (collectively, "Defendants") have waived attorney-client privilege with respect to all communications concerning Defendants' understanding of the stacking rights and restrictions in the license agreements between the parties, specifically the two Roundup Ready® ("RR") license agreements at issue in this litigation and the 2007 Yieldgard® ("YG") license agreement.

Under the "at-issue" exception to the attorney-client privilege, a party waives the privilege "by (1) injecting the attorney-client communication into the litigation or (2) injecting an issue into the litigation, the truthful resolution of which requires an examination of attorney-client communications." *Princeton Ins. Co. v. Vergano*, 883 A.2d 44, 59-60 (Del. Ch. 2005).[1]

---

[1] The parties are in agreement that Delaware law governs the present dispute, as it concerns Defendants' state-law counterclaims related to the parties' license agreements, which

Additionally, "[i]n order to gain access to the privileged information placed 'at issue,' . . . the party requesting the privileged information must be placed at a disadvantage due to the inability to review the concealed information," which most commonly is based on "the moving party's inability to obtain the concealed information from an alternative source if the privilege is upheld." *Fitzgerald v. Cantor*, 1999 WL 64480, at *2 (Del. Ch. 1999).

In their Second Amended Answer and Counterclaims ("SAAC"), Defendants assert claims for reformation due to mutual mistake and due to unilateral mistake coupled with knowing silence. A party seeking reformation on either ground must demonstrate, as one necessary element of the claim, that it "was mistaken and had a belief that is not in accord with the facts." *See Cerberus Int'l, Ltd. v. Apollo Mgmt., L.P.*, 794 A.2d 1141, 1151, 1155 (Del. 2002) (internal quotations and citation omitted). As a result, Delaware courts have concluded that such a reformation claim places the plaintiff's subjective understanding of the terms of the agreement "at issue" and therefore requires a waiver of attorney-client privilege as to legal advice on that issue. *See Fitzgerald*, 1999 WL 64480, at *2 ("By making their claim for reformation of the Partnership Agreement, Defendants have placed 'at issue' in this litigation their understanding, at the time they entered the 1993 amendments to the Partnership Agreement, of CFI's rights under the 1993 amendments to the Partnership Agreement to compete with CFLP and keep the profits from that competition."). Indeed, the *Fitzgerald* court expressly concluded that a reformation claim requires the court to consider all information reasonably bearing on the reformation plaintiff's subjective understanding of the disputed matter:

> Determining Defendants' actual understanding of the issues essential to its claim for reformation of the 1993 amendments to the Partnership Agreement and Defendants' actual understanding of the issues essential to its claim for reformation of the

---

contain choice-of-law clauses designating Delaware law.

2

> Settlement Agreement *requires review of all information available to Defendants at the time they entered the respective agreements that they could have used to reach their understanding as well as later evidence that reflects their understanding at the time they entered the respective agreements*. Without this information, it will be impossible for this Court to assess the credibility of Defendants or the reasonableness of their allegations regarding their understanding of these issues at the time they entered into [the agreements]. This assessment will be necessary to determine if, in fact, the Agreements should be reformed.

*Id.* (emphasis added).

In the context of Defendants' reformation claims, the alleged mistake concerns whether the RR agreements prohibited Defendants from stacking their Optimum® GAT® ("OGAT") traits with Monsanto's RR soybean and corn traits. Defendants suggest that they can rely solely on a Letter of Intent concerning the RR license agreements as evidence of the parties' understanding with respect to stacking rights, but under *Fitzgerald*, a necessary aspect of determining whether Defendants were, in fact, mistaken is assessing what advice they obtained from counsel about their stacking rights under the RR agreements. *See id.* As for advice about stacking under the YG license agreement, the *Fitzgerald* court made clear that "later evidence" reflecting a reformation plaintiff's understanding at the time of an agreement is necessary to deciding whether an agreement should be reformed, *see id.*, and Defendants have also placed this advice at issue by asserting, in response to interrogatories from Monsanto, that the negotiations of the YG license agreement provide further evidence of Defendants' alleged belief that the RR agreements did not prohibit stacking. Thus, Defendants' subjective beliefs about their stacking rights under the RR and YG license agreements are issues Defendants have injected into this litigation, "the truthful resolution of which require[] an examination of attorney-client communications," *Vergano*, 883 A.2d at 59-60, and Defendants' reformation claims therefore

3

require a waiver attorney-client privilege with respect to legal advice about their stacking rights under the RR and YG agreements.[2]

Accordingly,

**IT IS HEREBY ORDERED** that Monsanto's Fifth Motion to Compel [doc. #638] is **GRANTED**. To the extent Defendants wish to pursue their claims for reformation based on mutual mistake and unilateral mistake coupled with knowing silence, they have waived attorney-client privilege with respect to legal advice concerning their stacking rights under the RR license agreements and the subsequent YG license agreement. Defendants shall therefore either voluntarily dismiss these reformation claims or produce to Monsanto all documents bearing on these issues that it previously withheld and identified as privileged on privilege logs.[3]

Dated this 17th Day of May, 2011.

_E. Richard Webber_ (signature)
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE

---

[2] Monsanto also argues that Defendants have placed their subjective beliefs at issue through their claim for reformation based on fraudulent misrepresentation, in that one element of that claim is that "the plaintiff acted or did not act in justifiable reliance on the representation." *See Albert v. Alex. Brown Mgmt. Servs., Inc.*, 2005 WL 2130607, at *7 (Del. Ch. 2005). The Court rejects this argument, because justifiable reliance is judged by an objective standard and therefore does not require an inquiry into the plaintiff's actual state of mind. *See Norman v. Paco Pharm. Servs., Inc.*, 1991 WL 182447, at *2 (Del. Ch. 1991).

[3] The Court declines to order or permit additional depositions of Defendants' counsel or personnel, finding that such depositions would be unnecessarily burdensome at this stage in the litigation and that the information sought by Monsanto is adequately addressed through the production of documents identified in Defendants' privilege logs. The Court also notes that in this Motion, Monsanto has expressly declined to seek documents or information identified as attorney work product.