UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MONSANTO COMPANY and MONSANTO TECHNOLOGY LLC, ) ) ) Plaintiffs, ) ) vs. ) ) E.I. DU PONT DE NEMOURS AND COMPANY and PIONEER HI-BRED INTERNATIONAL, INC., ) ) ) ) ) Defendants. ) | Case No. 4:09CV00686 ERW |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Plaintiffs Monsanto Company and Monsanto Technology LLC's (collectively, "Monsanto") Seventh Motion to Compel [doc. #714]. In its Motion, Monsanto seeks an order compelling Defendants E.I. du Pont de Nemours and Company and Pioneer Hi-Bred International, Inc. (collectively, "Defendants") to produce several categories of documents, and the Court considers each of those categories in turn.[1]

**I.   DOCUMENTS CONCERNING DEFENDANTS' STACKED CORN PRODUCTS AND CORN PEDIGREE INFORMATION**

In a December 7, 2010 Memorandum and Order [doc. #475], the Court ordered Defendants to produce documents related to Roundup Ready® ("RR")/Optimum® GAT® ("OGAT") stacked corn products and pedigree information for all of their lines of RR/OGAT soybeans and corn. In its Motion, Monsanto represents that Defendants have failed to fully

---

[1] In addition to the matters discussed in this Memorandum and Order, Monsanto initially sought to compel Defendants' regional newsletters and documents reflecting Defendants' knowledge that yield is important to seed purchasers, but it has since abandoned those requests.

comply with this Order, in that (1) Defendants have produced "virtually no" documents concerning RR/OGAT corn, such as documents addressing how many lines of stacked corn were created, the reasons for creating stacked corn, how stacked corn was created, and testing of stacked corn; and (2) Defendants have only produced a brief summary of parentage pedigree information for the stacked corn lines they created, and not the pedigree information for all lines, as the Court ordered.

With respect to the first category of allegedly deficient production, Defendants represent that they have produced all the responsive documents in their possession as called for by the parties' Stipulation and Agreement for Preservation and Production of Documents and Electronically Stored Information ("the Stipulation" or "the custodial protocol"). As the Court stated in its May 20, 2011 Memorandum and Order [doc. #761], the Court will not order any document production outside of the terms of the Stipulation. In that Order, the Court declined to order any additional production of documents on a certain topic from Monsanto, based on Monsanto's representations that it had fully complied with the Stipulation, and fairness dictates that the Court credit Defendants' representations of compliance just as it did Monsanto's. As such, the Court will not order Defendants to produce additional documents concerning RR/OGAT corn.

As to the second category, Defendants concede that their production is deficient and state that they "will produce pedigree information sufficient to provide all the information Monsanto requested, for all GRS[2] corn lines from the GRS corn trial." Given that it is not clear whether Defendants have done so at this point, the Court will grant Monsanto's Motion as to these documents.

---

[2] "GRS" is an acronym for GAT Roundup Ready Stack.

**II.     PRESENTATIONS AND AGENDA FROM JANUARY 2008 MEETINGS**

Here, Monsanto seeks documents from Defendants' custodians Nita Seelinger, John Soper, and Paul Stephens, concerning several specific meetings in January 2008, and Defendants acknowledge that they must supplement their production based on a review indicating that certain custodial documents were mistakenly designated as privileged or nonresponsive. Again, because the Court has no way of knowing whether Defendants have produced these documents, Monsanto's Motion will be granted to that extent.

**III.    PAUL SCHICKLER DOCUMENTS**

This category involves documents from regular "Operator Team" meetings, "Officer Team" meetings, and "Office of Chief Executive" meetings between custodians Paul Schickler, James Borel, and Ellen Kullman. Schickler testified to the existence of these meetings and to the existence of agendas, summaries, and other documents that he reviewed in connection with the meetings. Monsanto states that Defendants have not produced these documents, and Defendants respond that they have been produced to the extent that they were uncovered by the search terms for document collection and were responsive to Monsanto's discovery requests.[3] As discussed above, fairness requires the Court to credit Defendants' assertion, and Monsanto's Motion will therefore be denied to the extent it seeks documents outside of the custodial protocol.

---

[3] Defendants previously asserted that the custodial protocol required the parties to search central databases for a custodian's documents, but the Court rejected that interpretation in its March 18, 2011 Memorandum and Order [doc. #665]. The Court finds Monsanto's suggestion that Defendants should be bound to their position in responding to Monsanto's discovery requests to be grossly unfair and punitive, especially given that Monsanto has sought the protection of the Court's interpretation on numerous instances in the discovery process.

## IV.  FINANCIAL ANALYSES OR PROJECTIONS OF THE VALUE OF A LICENSE TO STACK RR AND OGAT TRAITS

Monsanto requests Defendants' internal analyses of discussions with Monsanto about obtaining a license to create and sell RR/OGAT stacked seed products.  Defendants concede that they have located additional responsive documents that should have been produced under the custodial protocol, and to that extent, Monsanto's Motion will be granted.

## V.  YIELD DOCUMENTS

Monsanto next seeks an order compelling Defendants to produce yield information for their products, including studies comparing the yield of OGAT and RR/OGAT stacked seed products to Monsanto's RR or Roundup Ready® 2 Yield products.  Monsanto's argument that these documents should have been produced is premised on Defendants' assertions, in connection with their Rule 26(a) disclosures, that they expected custodians to have maintained such documents in their files or accessed them in the course of their work.  Additionally, in response to Defendants' contention that this information need not be produced because it is located in a structured non-custodial database, Monsanto notes that Defendants represented in a January 2011 hearing that Defendants had searched such databases for responsive documents in connection with document production under the custodial protocol.

The flaw in Monsanto's arguments is that the Court has already concluded – accepting Monsanto's interpretation of the Stipulation – that the parties had no obligation to collect documents that a custodian simply accessed at some point in his or her work – as opposed to documents authored by the custodian or located in his or her files – and that searches of structured databases are expressly excluded from the custodial protocol.  Regardless of whether Defendants stated that they had searched for and produced information from central files or

databases, the Court has repeatedly emphasized that it will not order document production outside the terms of the Stipulation and will not deviate from that position here. Furthermore, Defendants represent that they offered to compile yield data from structured databases in exchange for reciprocal production from Monsanto, and Monsanto's apparent decision to decline that offer further convinces the Court that the requested relief should not be granted. As such, the Court will not order Defendants to produce this yield information.

## VI. DOCUMENTS OUTSIDE THE CUSTODIAL PROTOCOL THAT DEFENDANTS AGREED TO PRODUCE

In this last category, Monsanto asks the Court to compel Defendants to produce certain documents that they allegedly agreed to produce outside the custodial protocol, including trait and germplasm licenses between Defendants and third parties, sales and market share documents concerning projections for RR/OGAT stacked products, and pricing lists and discounting terms for Defendants' transgenic trait products. Monsanto's request will be granted to the extent that Defendants state that they will supplement their production of annual Brand Concentration Surveys, and will be otherwise denied with respect to non-custodial documents.

## VII. CONCLUSION

For the sake of clarity, the Court will again emphasize that it will not order either party to produce any documents outside the scope of the parties' Stipulation. Monsanto has on prior occasions successfully avoided searching for and producing documents requested by Defendants because the Court accepted Monsanto's argument that such production is not called for by the custodial protocol, and the Court will not interpret or apply the protocol differently now that Monsanto is the party seeking production. In the event Monsanto might recognize the pitfalls of its interpretation of the Stipulation as a result, the Court suggests that the parties resolve these

issues amongst themselves through good faith negotiation and quid-pro-quo agreements to produce additional documents.

Accordingly,

**IT IS HEREBY ORDERED** that Monsanto's Seventh Motion to Compel [doc. #714] is **GRANTED, in part** and **DENIED, in part**, as set forth above.

Dated this 9th Day of June, 2011.

_____
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE

Case: 4:09-cv-00686-ERW   Doc. #:  787   Filed: 06/09/11   Page: 6 of 6 PageID #: 37804