UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MONSANTO COMPANY and | ) | |
| MONSANTO TECHNOLOGY LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:09CV00686 ERW |
| | ) | |
| E.I. DU PONT DE NEMOURS AND | ) | |
| COMPANY and PIONEER HI-BRED | ) | |
| INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendants E.I. du Pont de Nemours and Company and Pioneer Hi-Bred International Inc.'s (collectively, "Defendants") Motion to Compel Monsanto's Compliance with this Court's May 10, 2011 Order [ECF No. 803].

In the May 10 Order [ECF No. 752], the Court considered whether, and to what extent, Plaintiffs Monsanto Company and Monsanto Technology LLC (collectively, "Monsanto") waived attorney-client privileged by disclosing in depositions and elsewhere that Monsanto had sought reissue of U.S. Patent No. 5,633,435 ("the '435 patent") – the predecessor patent of the patent-in-suit – because Monsanto was concerned that certain mixed subject matter claims in the '435 patent were technically anticipated by Monsanto's publication of PCT Application No. PCT/US91/06148 ("the PCT application"). The Court concluded that certain deposition statements did disclose the substance of privileged communications, and that Monsanto had therefore waived privilege as to "the role of the PCT application in Monsanto's decision to seek reissue" of the '435 patent. The Court further noted that the waiver would necessarily extend to "some information about Monsanto's beliefs as to the claim scope available under the '435

patent, the circumstances of the drafting of the reissue application, and the deceptive intent inquiry,[1] but only to the extent that those subjects were affected by Monsanto's understanding of the ramifications of the PCT application on the validity of the claims of the '435 patent."

In response to the Court's Order, Monsanto produced four redacted e-mail strings along with their attachments, and Defendants now argue that this production cannot possibly represent full compliance with the May 10 Order, given that Monsanto has represented that the effect of the PCT application on the priority of the claims of the '435 patent was its sole reason for seeking reissue. Thus, according to Defendants, "*all* communications concerning error in the '435 patent implicating Monsanto's decision to seek reissue, whether or not expressly mentioning the PCT application, ***necessarily*** involve the role of the PCT application's publication and therefore ***must*** be" produced under the terms of the May 10 Order.

Monsanto responds that Defendants' understanding of the scope of the waiver is overbroad, and that the four e-mails and attachments it produced put it in full compliance with the May 10 Order. Monsanto asserts that it is inaccurate to state that the publication of the PCT application was its sole basis for seeking reissue, in that the error Monsanto corrected was the drafting of claims that mixed together subject matter entitled to 1990 and 1994 priority dates, causing them only to be entitled to a 1994 priority date; the PCT application merely "gave additional significance" to that error, insofar as the improperly-drafted claims were technically anticipated by its publication in 1992. Monsanto claims that the drafting error justified reissue standing alone, and that Monsanto's privileged communications strictly addressing the drafting

---

[1] The statute providing for patent reissue, 35 U.S.C. § 251, imposes two requirements for obtaining reissue: (1) the original patent is "wholly or partly inoperative or invalid"; and (2) the error that caused the patent to be "inoperative or invalid" arose "without any deceptive intention." *See also, e.g.*, *In re Tanaka*, 640 F.3d 1246, 1249 (Fed. Cir. 2011).

error are therefore not implicated by the May 10 Order, even if the PCT application was what put Monsanto on notice that the error needed to be corrected.

The Court agrees with Monsanto that Defendants' characterization of the scope of the waiver is overbroad, as the Court clearly stated that the waiver concerns the connection between the publication of the PCT application and Monsanto's *decision* to seek reissue of the '435 patent. Contrary to Defendants' suggestion, the May 10 Order does not require Monsanto to produce *all* previously-withheld, privileged communications concerning error in the '435 patent; it only requires production of communications about the role of the PCT application in Monsanto's decision to seek reissue. Thus, for example, Monsanto has waived privilege over communications about its beliefs as to the claim scope available under the '435 patent, but only to the extent that (1) the communications reflect beliefs that were informed by the publication of the PCT application; and (2) the communications reflect beliefs that played a role in Monsanto's decision to seek reissue.

That said, Monsanto's statement that the PCT application merely "gave additional significance" to the priority issue appears to be somewhat disingenuous, given that it would seemingly be of little consequence that the mixed subject matter claims were entitled to 1994 priority dates, absent Monsanto's belief that those claims were anticipated by the subject matter claimed in the PCT application. To the extent Monsanto's previously-withheld attorney-client communications refute this claim about the relative insignificance of the PCT application in its decision to file for reissue, they are, of course, within the scope of the waiver and must be produced.

In response to Defendants' Motion, Monsanto also submitted for *in camera* review two of the e-mails it produced in accordance with the May 10 Order, and the Court finds that

3

Monsanto's redactions were appropriate. Exhibit C, the Shelton-Fraley e-mail exchange, contains appropriate redactions of Monsanto's positions on litigation matters that are unrelated to the issues addressed in the May 10 Order. The redactions from the Waack-Randle e-mail exchange, submitted as Exhibit F, concern privileged matters that are likewise unrelated to the PCT application or, even more broadly, to the substance of the error(s) in the '435 patent. The Court does find it somewhat curious, however, that Monsanto did not submit the other two e-mails it produced to Defendants, and Monsanto should once again review those materials to ensure that they were appropriately redacted. To that end, the Court will, as Defendants have requested, order Monsanto to certify to the Court its full compliance with the May 10 Order and with this Order. At this time, the Court declines to incorporate a procedure for Defendants to request *in camera* review of documents remaining on Monsanto's privilege log after it has certified its compliance, because the Court has, as yet, not encountered any instances in which Monsanto improperly redacted or withheld documents pursuant to the May 10 Order.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Compel Monsanto's Compliance with this Court's May 10, 2011 Order [ECF No. 803] is **GRANTED, in part** and **DENIED, in part**, as set forth above.

**IT IS FURTHER ORDERED** that Monsanto shall, no later than **September 5, 2011**, certify to the Court that it has fully complied with its obligations under the Court's May 10, 2011 Order and under this Order.

Dated this 23rd Day of August, 2011.

_____
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE