**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

MONSANTO COMPANY and
MONSANTO TECHNOLOGY LLC,

Plaintiffs/Counterclaim Defendants,

v.

E.I. DU PONT DE NEMOURS AND CO. and
PIONEER HI-BRED INTERNATIONAL, INC.,

Defendants/Counterclaim Plaintiffs.

Case No. 09-cv-0686 (ERW)

**REDACTED**

**REPLY IN SUPPORT OF DUPONT'S MOTION TO COMPEL TESTIMONY AND DOCUMENTS RELATED TO SYNGENTA'S ROUNDUP READY 1 LICENSE AND TESTIMONY RELATED TO SYNGENTA'S ROUNDUP READY 2 LICENSE AND DUPONT'S RENEWED MOTION TO COMPEL PRODUCTION OF DOCUMENTS RELATED TO SYNGENTA'S ROUNDUP READY 2 LICENSE**

Monsanto argues the Court should deny DuPont's motions to compel discovery related to Syngenta's RR1 and RR2 licenses (Dkt. 828), because (i) the Court already entered an order denying a motion for the same documents, (ii) DuPont is now seeking to compel those documents under late-served document requests, (iii) the requested information is protected by a third party confidentiality provision and (iv) the requested information is immune to discovery under a "settlement privilege." (Opposition to DuPont's Motion to Compel Syngenta-Related Testimony and Documents ("Opp."), Dkt. 856.) Monsanto is demonstrably wrong on each point.

*First*, contrary to Monsanto's assertion, DuPont did not have "ample opportunity to address" whether third party confidentiality interests outweigh the interest DuPont has in obtaining factual discovery about Syngenta's RR2 license before the Court denied its Third Motion to Compel. Monsanto's opposition to DuPont's Third Motion to Compel argued only that the Syngenta RR2 license and related documents [REDACTED] (Opposition to DuPont's Third Motion to Compel ("Third MTC Opp.") at 6-10, Dkt. 625.) Monsanto's opposition to the current motions reproduces that *same* argument almost verbatim (*compare* Opp. at 16-21 *with* Third MTC Opp. at 6-10), but adds a *separate* argument that the Syngenta RR2 license [REDACTED] (Opp. at 12-15.) These facts demonstrate that allowing renewal or reconsideration is appropriate because the Court went beyond the adversarial issues presented in resolving DuPont's Third Motion to Compel.

*Second*, Monsanto's assertion that DuPont now seeks discovery under document requests that are untimely under the Court's Case Management Order ("CMO") misrepresents DuPont's motions. (*See* Opp. at 3.) As DuPont's opening brief makes clear, to the extent seek documents, these motions are based on narrowed versions of the document requests DuPont served on

Monsanto in March 2010, before the Court entered an antitrust CMO. (Mem. in Support of DuPont's Mtn. to Compel Syngenta-Related Discovery ("Syngenta MTC Br.") at 7-10, Dkt. 830.) DuPont issued a few document requests on April 1, 2011 that substantially narrowed the original document requests to communicate that it was willing to compromise. Accordingly, DuPont's motions do not seek to "reopen[] document discovery," but to overcome Monsanto's ongoing obstruction of discovery that DuPont has been seeking for more than a year and a half.[1]

*Third*, Monsanto is obstructing discovery by making an unprecedented and unwarranted claim to third party confidentiality. Monsanto does not contest the importance and relevance of the Syngenta-related discovery to DuPont's antitrust claims which requires that the discovery be allowed, even in the face of any third party confidentiality interest. *E.g.*, *Phoenix Solutions Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 582-85 (N.D. Cal. 2008). Moreover, Monsanto does not even acknowledge that DuPont agreed to heightened protections that will preclude access by any DuPont personnel – concessions that are substantial and address any confidentiality objections Monsanto may legitimately raise. Monsanto's position that it can avoid producing admittedly relevant information by asserting an undisclosed confidentiality provision amounts to asserting a confidentiality privilege, which the Supreme Court rejected decades ago. *Federal Open Market Comm. v. Merrill*, 443 U.S. 340, 362 (1979).

*Fourth*, Monsanto is obstructing discovery under an unjustified and overbroad assertion of a "settlement privilege." Monsanto does not contest that no court has ever applied a "settlement privilege" to a finished settlement agreement, settlement-related license, or internal strategic licensing documents, and Monsanto has not cited a single case extending the

[1] To the extent Monsanto is objecting to the timeliness of DuPont's [REDACTED] (Opp. 23), that objection is misplaced because fact discovery remains open and DuPont has not exhausted the number of depositions, interrogatories or requests for admission available to it under the antitrust Case Management Order.

"settlement privilege" to such documents. Thus, no authority supports Monsanto's attempt to withhold production of Syngenta's finished RR2 license or Monsanto's internal strategic documents regarding its efforts to switch Syngenta from RR1 to RR2. Further, Monsanto has failed to address the factors the Supreme Court prescribed for evaluating novel privileges, and has therefore failed to carry its "significant burden of establishing" that excluding evidence of its admittedly relevant settlement negotiations with Syngenta is justified despite "the normally predominant principle of utilizing all rational means for ascertaining the truth." *Carman v. McDonnell Douglas Corp.*, 114 F.3d 790, 793 (8th Cir. 1997).

Monsanto's desperation to avoid producing this important evidence is evident from its shifting and inconsistent positions. Perhaps most telling, it has made no effort to protect other confidential information consistently with the standards it purports to uphold in opposing discovery of Syngenta's RR2 license. Monsanto has produced without objection two settlement-related patent license agreements with Dow and another with Novartis (Syngenta's predecessor), as well as numerous patent license agreements with confidentiality terms, including a RR1 patent license with Ciba-Geigy (another Syngenta predecessor). The Court should not allow Monsanto to intentionally manipulate the evidence of its antitrust violations and DuPont's defenses.

## I. SYNGENTA'S RR2 LICENSE SHOULD NOT BE PROTECTED FROM DISCOVERY ON THE BASIS OF CONFIDENTIALITY BECAUSE MONSANTO NEVER ASSERTED A CONFIDENTIALITY OBJECTION.

Monsanto argues the Court should deny DuPont's renewed motion to compel because it already decided Syngenta's RR2 license is protected from disclosure by its confidentiality provision and [REDACTED] (Opp. at 9.) Monsanto is mistaken because it never argued Syngenta's confidentiality interests outweigh DuPont's interest in

obtaining this important factual discovery. For that reason, DuPont did not address the issue, and the Court's order went beyond the adversarial issues raised in resolving the motion on that basis.

DuPont demonstrated in its opening brief that the Court denied DuPont's motion to compel on grounds Monsanto did not raise (Syngenta MTC Br. at 10-12, 17-18), and Monsanto does not contest the relevant facts about the procedural history of the Third Motion to Compel:

- Monsanto precipitated the Third Motion to Compel by objecting to producing the Syngenta-related documents on the basis they were not relevant (*id.* at 10-11);
- DuPont filed its Third Motion to Compel and devoted its opening brief to arguing the documents it sought were in fact relevant (*id.* at 10-11);
- Monsanto abandoned its relevance objection and first stated its "settlement privilege" objection only *after* DuPont had filed its motion (*id.* at 11-12.);
- Monsanto's opposition did not argue that Syngenta's confidentiality interest outweighed DuPont's interest in obtaining the Syngenta RR2 license (*id.*); and
- Monsanto never argued DuPont's requests for license negotiation and licensing strategy documents were overbroad or burdensome (*id.*).

These concessions demonstrate Monsanto made an active choice to rely on the "settlement privilege" to avoid disclosure, and therefore waived objections based on relevance, the balancing of third party confidentiality against the importance of disclosure, and burden.

These uncontested facts are fatal to Monsanto's argument that renewal or reconsideration is inappropriate because they show the March 30 Order went beyond the issues presented in the motion and the briefing. Accordingly, DuPont is fully justified in asking the Court to take up DuPont's renewed motion to compel a narrowed set of documents that were also at issue in DuPont's Third Motion to Compel.[2] The Court should order those documents produced subject to the heightened protections DuPont proposed in its opening brief.[3]

---

[2] Monsanto cites no cases holding renewal or reconsideration of DuPont's Third Motion to Compel is improper. And Monsanto's efforts to distinguish the cases DuPont cited in favor of renewal or reconsideration are misguided. A party meets the standard for reconsideration by showing the Court "made a decision outside of the adversarial issues" presented by the parties. *Westinghouse Elec. Co. v. United States*, 2009 WL 881605, at *4 (E.D.

Monsanto does not argue reconsideration is inappropriate under the circumstances presented here. Instead, it responds that the grounds on which the Court denied discovery were implicit in its opposition brief and the order is defensible for that reason. According to Monsanto, it raised the third party confidentiality issue implicitly by pointing out "the Syngenta settlement documents were protected by strict confidentiality provisions" to explain why they are immune from discovery based on a "settlement privilege." (Opp. at 10.) This argument is mistaken. Monsanto must state any basis for resisting the production of relevant discovery clearly and precisely. *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada*, 2008 WL 822119, at *2 (E.D. Mo. 2008). Monsanto never argued any confidentiality interest outweigh DuPont's interest in obtaining factual discovery to substantiate its antitrust claims and defenses, which it was Monsanto's burden to establish.[4] *Cryptography Research, Inc. v. Visa Intern. Serv. Ass'n*, 2008 WL 346411 (N.D. Cal. 2008). Monsanto therefore failed to provide the Court the information necessary to perform the balancing analysis it is obligated to conduct before ruling whether third party confidentiality interests outweigh the need for disclosure. *See In re Remington Arms Co., Inc.*, 952 F.2d 1029, 1032 (8th Cir. 1991) (issuing writ of mandamus and vacating district court order for failing to balance need of discovery and injury of disclosure).

Monsanto is also wrong to suggest it could avoid undertaking the required balancing analysis by pointing out Syngenta objected that the Protective Order was inadequate in its initial

---

Mo. Mar. 30, 2009). Numerous courts have applied that standard and reconsidered orders that had deprived a party of the opportunity to contest an important issue. *E.g.*, *Giron v. City of Alexander*, 2009 WL 2998946, at *21 (E.D. Ark. 2009); *Woody v. Dirani*, 243 F.R.D. 319, 321 (W.D. Ark. 2007).

[3] *See* Syngenta MTC Br. at 2 (offering "to treat *all* documents related to the Syngenta RR2 license on an 'Outside Attorneys' Eyes Only' basis to ensure DuPont personnel would not have access.").

[4] Monsanto agreed not to assert any third party confidentially interest without seeking consent to production and notifying DuPont of any objection. (Exh. 9 at 4 and Exh. 31 at 4 (memorializing agreement to seek consent and provide notice); *cf.* Exh. 11 (DuPont notifying Monsanto of Bayer refusal to consent); Exhibit 12 (Monsanto notifying DuPont of Dow refusal to consent).) Since Monsanto does not contest this agreement or its own failure to comply, Monsanto has waived any objection based on the inadequacy of the Protective Order.

response to separate requests under a separate subpoena. (Opp. at 10.) Syngenta's objection was boilerplate – one of dozens of objections it made in an initial written response to DuPont's subpoena. Syngenta made clear in later discussions that its primary reason for refusing to produce its RR1 and RR2 licenses and communications with Monsanto was that DuPont could obtain them from Monsanto. (*See* Exh. 18.) DuPont and Syngenta never discussed the sufficiency of the Protective Order or, more importantly, the sufficiency of DuPont's offer to provide Syngenta-related documents stronger protections that preclude access by DuPont personnel. On the contrary, DuPont could not discuss these issues with Syngenta because Monsanto actively interfered.[5] Thus, Monsanto has no basis to assert either the Protective Order or DuPont's offer of heightened protections is adequate.[6]

Monsanto itself asks the Court to reconsider its order by asking it to hold *all* the documents and testimony DuPont seeks in these motions are protected from disclosure by the contractual confidentiality provision and a "settlement privilege." Both requests conflict with the Court's prior holding that only the Syngenta RR2 license is protected from disclosure on the basis of third party confidentiality and the Court's refusal to adopt the "settlement privilege."[7] Whether the Court considers DuPont's motion to compel production of a subset of documents

---

[5] Monsanto does not contest it intentionally interfered with DuPont's ability to discuss with Syngenta ways of meeting its confidentiality objections. Instead Monsanto attempts to take advantage of its own dilatory tactics by accusing DuPont of delaying its motion for five months. In point of fact, DuPont initiated attempts to compromise with Monsanto within two days of the Court's March 30 Order and diligently pursued compromise and information until Monsanto reneged on its promise to provide a "settlement privilege" log.

[6] It appears Monsanto never contacted Syngenta to seek consent for production. DuPont repeatedly asked Monsanto to confirm it sought Syngenta's consent, and was prepared to negotiate heightened protections. (Exh. 15 at 3; Exh. 31 at 4; Exh. 26 at 12, Interrogatory 22).) Monsanto refused to answer these requests, including on the obviously false ground that the interrogatory [REDACTED] (Exh. 27 at 10.)

[7] DuPont refused Monsanto's late attempt to claw back documents used as exhibits in the Third Motion to Compel because the Court's order refused Monsanto's invitation to adopt a "settlement privilege." (*See* Opp. at 9 n.3.) DuPont informed Monsanto of its position months ago (Exh. 30 at 2), but rather than file a motion for protective order, Monsanto pretended to engage in discussions before ultimately putting DuPont to the burden of filing a motion to compel. Having made that choice, Monsanto cannot properly move the court for a protective order in an opposition brief. *See* Fed. R. Civ. P. 7(b)(1). "Since [Monsanto] ha[s] not raised this issue by Motion, [it] cannot raise it for the first time in [its] Brief." *Dombrosky v. Banach*, 2010 WL 3749267, *4 (M.D. Pa. 2010).

DuPont sought in its Third Motion to Compel as a renewed motion or a motion for reconsideration, revisiting the merits and ordering production under the narrowed requests and stronger confidentiality protections is clearly warranted.

## II. THE SYNGENTA RR2 LICENSE AND RELATED DOCUMENTS ARE NOT PROTECTED FROM DISCOVERY BY A CONFIDENTIALITY PROVISION.

Monsanto argues that the Court should deny DuPont's motion for disclosure of the Syngenta RR2 license and "additional settlement documents"[8] because DuPont "fail[s] to explain why this Court should dispense with [its] bargained-for confidentiality provision that was part of a carefully negotiated agreement between Monsanto and Syngenta." (Opp. at 12.) Monsanto's position defies belief. DuPont explained its opening brief why settled law and the uncontested facts of this case establish that the Court should order production of Syngenta's RR2 license and related negotiation and strategy documents. (Syngenta MTC Br. at 28-38.)

First, DuPont explained that under the relevant legal standard a party seeking discovery of confidential settlement materials overcomes the claim to confidentiality by showing the requested information has the potential to lead to the discovery of relevant evidence. (*See* Syngenta MTC Br. at 29-36.) Monsanto does not contest this standard and makes no serious attempt to distinguish or address the relevant legal authority. Monsanto's objection that some of the cases that recognize and apply this legal standard [redacted] is meritless. There is no special confidentiality rule for settlements involving licenses, which is why federal courts unanimously hold relevant patent licenses with third parties are discoverable. "[C]ourts have routinely recognized that license agreements relating to the patent-in-suit, and entered into in connection with settlement, are discoverable and that Plaintiff's

---

[8] Monsanto is intentionally vague on this point, but clearly wants the Court to extend its holding that the Syngenta RR2 license is protected from disclosure by a contractual confidentiality provision by holding settlement negotiation and licensing strategy documents are also protected from disclosure. The Court should deny this request for reconsideration on the merits.

third party confidentiality concerns do not outweigh legitimate grounds to compel production." *Wyeth v. Orgenus Pharma. Inc.*, 2010 WL 4117157, at *4 (D. N.J. 2010) (collecting cases).[9]

Second, DuPont has explained not only the relevance of the discovery it seeks, but also why the discovery is critical to its antitrust claims and defenses (Syngenta MCT Br. at 32-34) and to determining damages under a reasonable royalty analysis (*id.* at 34-36). Monsanto has not contested that DuPont seeks evidence relevant to its antitrust claims and defenses, presumably because it has no credible basis for doing so. (*See* Opp. at 12-14.) Instead, Monsanto has argued only that settlement negotiation documents are not relevant to the reasonable royalty analysis. (Opp. at 14-15.) However, the uncontested importance of the Syngenta-related evidence to DuPont's antitrust claims and defenses alone is fatal to Monsanto's position.

Monsanto's only response is that some [redacted] (Opp. at 12-13.) Monsanto's reliance on the only two cases it cites is misplaced. Neither case held a license agreement could be protected from disclosure. In *Hear-Wear Techs. v. Oticon, Inc.* the party who objected to producing *some* documents based on confidentiality and the purported "settlement privilege" produced the resulting patent license agreements voluntarily as "non-privileged responsive documents." *Hear-Wear*, 2008 WL 3388455 at *1. The *Berryman v. SuperValu Holdings, Inc.* case did not

9 Monsanto's attempts to distinguish *Pandora Jewelry v. Bajul Imports, Inc.*, 2011 WL 976623 (E.D. Mo. Mar. 17, 2011) are meritless. Monsanto acknowledges [redacted] but argues the case is distinguishable because the decision does not [redacted] (Opp. at 14.) On the contrary, the Court undertook the usual analysis when faced with an objection that requested discovery would violate confidentiality provisions in a license and found "that Bajul's requests for the license agreements are reasonably calculated to lead to the discovery of admissible evidence, and the parties have already devised a protective order sufficient to protect **confidentiality** concerns." *Id.* at *2 (emphasis added). It is of no importance that the Court did not recite the language of the confidentiality provision in the licenses it ordered produced. This Court cannot even consider the confidentiality provision Monsanto is using as a shield because Monsanto has refused to disclose it even to the Court. Monsanto's attempt to distinguish *Pandora* on the basis that the court ordered production of patent licenses that were part of the settlement, but not the separate settlement agreement itself is also misguided. DuPont seeks only the patent license that was part of Monsanto's larger settlement with Syngenta and not the separate settlement agreement. *Pandora* is therefore on point.

involve a license agreement; the court denied discovery of settlement-related documents from an employment discrimination lawsuit in a later employment discrimination suit against the same defendant. 2008 WL 4934007, *9-10 (S.D. Ohio 2008). Moreover, both cases denied production of confidential documents related to settlement negotiations only because they concluded such "evidence … is not relevant under Rule 26 and therefore not discoverable."[10] *Hear-Wear*, 2008 WL 3388455, at *3; *see also Berryman* 2008 WL 4934007, *9-10 ("Plaintiffs not only have failed to establish its relevance, but also have offered nothing to allow this Court to conclude that their need for such information **outweighs** Defendants' interest in maintaining its confidentiality."). These cases therefore support *DuPont's position* by acknowledging and applying the proper standards and they denied discovery only where it was not relevant.[11]

Monsanto's argument that Syngenta's RR2 license and negotiation documents are not relevant to conducting a damages analysis for the patent and contract case is mistaken and beside the point. According to Monsanto, the Federal Circuit's *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 868-69 (Fed. Cir. 2010), decision [REDACTED] because the [REDACTED] (Opp. at 14.) Monsanto misunderstands the import of the *ResQNet* decision, which establishes that settlement agreements and negotiation documents are relevant to calculating damages in lawsuits involving the same patent. The relevance of those documents in turn makes them discoverable despite confidentiality concerns

10 *Hear-Wear* held that patent-license settlement negotiations were not relevant to determining a reasonable royalty rate *before* the Federal Circuit issued its contrary decision in *ResQNet*. Courts since have recognized their relevance. *E.g.*, *Tyco Healthcare Group LP v. E-Z-EM, Inc.*, 2010 WL 774878, at *2 (E.D. Tex. 2010).

11 Unable to support its position using legal precedent, Monsanto cites a twenty year-old law review article. (Opp. at 13 n.8.) Even that article acknowledges that "because the public interest in disclosure of other aspects of a settlement agreement may sometimes be particularly compelling and the importance of maintaining confidentiality may be reduced, an absolute prohibition on access would be unwise." Miller, Arthur M., *Confidentiality, Protective Orders, and Public Access to the Courts*, 105 Harv. L. Rev. 427, 485 (1991). According to Professor Miller, "[t]hese considerations can be accommodated best … by leaving discretion with the trial court to weigh the competing interests in particular cases," just as DuPont asks the Court to do in this case.

under established principles discussed above. *Volumetrics Med. Imaging, LLC v. Toshiba Am. Med. Sys., Inc.*, 2011 WL 2470460, at *14 (M.D.N.C. June 20, 2011) ("The vast majority of courts to consider the relevance of settlement agreements (and offers) to the subject of patent damages in light of *ResQNet.com*" have concluded the decision "forecloses [the] categorical contention that "[a]greements reached to resolve patent litigation are not relevant to the calculation of a reasonable royalty."); *MSTG, Inc. v. AT&T Mobility LLC*, 2011 WL 841437, at *2-3 (N.D. Ill. Mar. 8, 2011) ("[T]he Court joins those courts that have relied on *ResQNet* to allow the discovery of settlement negotiations when, as here, they are relevant to demonstrating" the "market footprints of the patents-in-suit."); *see also High Point SARL v. Sprint Nextel Corp.*, 2011 WL 3241432, at *5-6 (D. Kan. July 29, 2011).

To counter this overwhelming weight of authority, Monsanto relies on two decisions issued by a magistrate judge in the Eastern District of Texas. (Opp. at 15 (citing *Software Tree, LLC v. Red Hat, Inc.*, 2010 WL 2788202 (E.D. Tex. June 24, 2010) (Love, M.J.) and *Fenner Investments, Ltd. v. Hewlett-Packard Co.*, 2010 WL 1727916 (E.D. Tex. Apr. 28, 2010) (Love, M.J.).) Neither supports protecting the Syngenta RR2 license from discovery. *Software Tree* explicitly recognized that settlement-related patent licenses are discoverable, 2010 WL 2788202 at *3-4, and *Fenner* ruled on the *admissibility* at trial of patent licenses that had already been produced, 2010 WL 1727916 at *1. In addition, the *Software Tree* decision, issued shortly after *ResQNet*, recognized *ResQNet* may ultimately require a different analysis, but "decline[d] to upset its traditional approach" as long as there was no "clear precedent compelling a new track." 2010 WL 2788202 at *4. Subsequent decisions at the district court level in the Eastern District of Texas have rejected the magistrate judge's approach and provide that clear contrary precedent. *Clear with Computers, LLC v. Bergdorf Goodman, Inc.*, 753 F. Supp. 2d 662, 663-64 (E.D. Tex.

2010) (ordering production of settlement negotiation communications because they "may be relevant to explain the settlement agreements and shed light on whether the settlement agreements accurately reflect the inventions' value"); *ReedHycalog UK, Ltd. v. Diamond Innovations Inc.*, 727 F. Supp. 2d 543, 547 (E.D. Tex. 2010) (recognizing the "probative value of the five licenses involving the Patents-in-suit that resulted from litigation" and ruling them admissible at trial). Accordingly, Syngenta's RR2 license and documents regarding its negotiation are discoverable because they are relevant to calculating a reasonable royalty.

## III. THE SYNGENTA RR2 LICENSE AND RELATED DOCUMENTS ARE NOT IMMUNE TO DISCOVERY UNDER A "SETTLEMENT PRIVILEGE."

Monsanto complains that DuPont's current motions to compel [REDACTED] because they are [REDACTED] (Opp. at 1.) Monsanto is wrong and, in any event, has taken requests for reconsideration to a new level by asking the Court to reconsider its prior refusal to adopt a "settlement privilege" using a nearly word for word reproduction of its prior argument. (*Compare* Opp. at 16-21 *with* Third MTC Opp. at 6-10.) Monsanto has failed to provide the Court with any reason to revisit its prior refusal to adopt a "settlement privilege," and by relying on the argument in which it first raised the issue, Monsanto has chosen not to respond to the merits of DuPont's arguments.

*First*, Monsanto does not contest that *no court* has recognized a "settlement privilege" that protects finished settlement agreements or resulting finished patent licenses and, therefore, has no basis for asserting the "settlement privilege" so broadly.[12] (*See* Syngenta MTC Br. at 22-23.) Even the primary case Monsanto cites, *Goodyear Tire & Rubber Co. v. Chiles Power*

---

[12] Monsanto's assertion that the "settlement privilege" should [REDACTED] (Opp. at 17 n.13), ignores the purpose of Rule 408 is to ensure concessions made during settlement negotiations cannot later be used at trial to "prove liability for, invalidity of, or amount of a claim" if those negotiations fail. There is no need to provide such protection for finished settlements.

*Supply, Inc.*, applied a "settlement privilege" only to settlement negotiation communications, not finished settlement licenses. 332 F.3d 976, 981 (6th Cir. 2003). The fact that Monsanto has failed to come up with even a **single case** applying the "settlement privilege" to a finished settlement agreement or settlement-related license agreement demonstrates Monsanto's attempt to shield its RR2 license with Syngenta is without basis.

Monsanto's assertion that [REDACTED] is wrong. (Opp. at 17 n.13.) The *Goodyear* court noted "exceptions to Rule of Evidence 408 ... occasionally allow[] a settlement agreement into evidence" to justify holding settlement communications to be privileged even though settlement agreements are not.[13] 332 F.3d at 981. As DuPont explained in its opening brief, *Goodyear* and the courts following its holding plainly reject applying a settlement privilege to settlement agreements. (Syngenta MTC at 22-23.) As a result, the Court should again reject Monsanto's invitation to become the first court to adopt a "settlement privilege" protecting a finished settlement agreement or related license.

*Second*, Monsanto does not contest that *no court* has recognized a "settlement privilege" that protects a party's internal licensing strategy. (*See* Syngenta MTC Br. at 25.) Monsanto has consistently refused DuPont's requests to justify this plainly overbroad assertion of a "settlement privilege," (*see* Exh. 30 at 1-2; Exh. 32), and has chosen to ignore the issue in filings with the Court. Thus, even if the Court were to adopt a "settlement privilege," it should refuse to apply

---

[13] The Sixth Circuit appears to have mistakenly relied on the appellants' inadequate briefing to reach the conclusion. *See Goodyear*, 332 F.3d at 981 (noting appellants had "not presented evidence of any case where the Rule 408 exceptions have been used to allow settlement *communications* into evidence for any purpose.") (emphasis added). The plain language of Rule 408 establishes that settlement communications are subject to the same exceptions as settlement agreements. Fed. R. Evid. 408 ("Evidence of the following is not admissible ... **statements made in compromise negotiations**"); *see also Matsushita Elec. Indus. Co., Ltd. v. Mediatek, Inc.*, 2007 WL 963975, at *5 (N.D. Cal. 2007) ("[W]hen Congress approved Rule 408 to promote settlements ... it specifically provided that **settlement negotiations** can be admitted for certain purposes"). Consequently, by the Sixth Circuit's own reasoning, Rule 408 establishes that recognizing "any federal settlement privilege" – even one limited to settlement negotiations – "is contrary to the enactment approved by the legislature." *Id.*

that privilege to Monsanto's internal strategic documents and should order Monsanto to produce those documents and allow testimony on that topic.

*Third*, Monsanto has not addressed most of the factors the Supreme Court has directed district courts to consider when asked to recognize a novel privilege: (i) whether there is a consensus among the states about the proposed privilege, (ii) whether the proposed privilege is among the specific privileges recommended by the Advisory Committees, and (iii) whether Congress has considered the competing concerns without providing for the proposed privilege. (Syngenta MTC Br. at 26-27.) Each of those factors precludes recognition of a federal settlement privilege. (*Id.* at 27-28.) There is a consensus among the states that no settlement privilege exists. (*Id.* at 26-27.) The "settlement privilege" was not among the privileges recommended by the Advisory Committee. (*Id.* at 27.) And Congress has already concluded Rule 408's targeted limitations on admissibility of settlement negotiations are sufficient to protect the interest in settlement. (*Id.* at 27-28.) Monsanto's failure to contest these facts in its opposition is fatal to its argument.

Monsanto's response that recognizing a "settlement privilege" supports a [redacted] is insufficient. (Opp. at 17 (quoting *Goodyear*, 332 F.3d at 980).) This argument merely asserts the truism that settlements are favored, but fails to address the other Supreme Court required factor: whether the proponent of the privilege has presented a clear and compelling empirical case for the necessity of the privilege. *Branzburg v. Hayes*, 408 U.S. 665, 693-95 & n.32 (1972).

Contrary to Monsanto's position, nothing about refusing to recognize a settlement privilege will undermine the tradition of maintaining the confidentiality of settlement communications where necessary and appropriate. (*See* Opp. at 18.) Congress has already acted

to ensure the confidentiality of settlement communications by enacting Rule 408, and in doing so made the judgment that limitations on the admissibility of such evidence for specific purposes was sufficient to protect the interest in settlement secrecy, and to protect against attempts to use failed settlement negotiations misleadingly. *Matsushita*, 2007 WL 963975 at *4. Rule 408 specifically allows the use of settlement negotiation communications for other purposes, and its exceptions extend to allowing discovery in subsequent litigation to uncover the ongoing anticompetitive effects of a finished license agreement which is currently governing the commercial relationship of two important market participants. *See Am. Re-Insurance Co. v. U.S. Fidelity & Guar. Co.*, 19 A.D.3d 103, 104 (Supr. Ct. N.Y. – App. Div., 1st Dept. 2005) (requiring production of settlement negotiation documents because the "so-called 'settlement privilege' is inapplicable" where party seeks "settlement-related materials for a purpose other than proving [defendants'] liability" in the underlying action). Recognizing a "settlement privilege" against this background of Congressional action is therefore contrary to established law. *Univ. of Penn.*, 493 U.S. at 189 (courts must be "especially reluctant to recognize a privilege in an area where it appears that Congress has considered the relevant competing concerns but has not provided the privilege itself").[14]

## IV. THE COURT SHOULD GRANT DUPONT'S MOTION TO COMPEL SYNGENTA'S RR1 LICENSES AND FACT AND RULE 30(b)(6) TESTIMONY.

Monsanto opposes DuPont's new motion to compel Syngenta's RR1 licenses and amendments only on the basis DuPont's request for those documents is untimely.[15] (Opp. at 23.)

---

14 Monsanto's argument regarding its attempts to avoid disclosing its licenses with DuPont is irrelevant. (Opp. 21-23.) Monsanto resisted discovery of those licenses on the basis that they were not relevant to the underlying disputes. Here, Monsanto has not even contested whether the Syngenta licenses, negotiation documents, and licensing strategy documents are relevant to DuPont's antitrust claims and defenses.

15 DuPont's separate motions to compel production of documents related to Syngenta's RR1 license and amendments as well as motions to compel fact and Rule 30(b)(6) witnesses testimony were not part of DuPont's Third Motion to Compel and do not require reconsideration in any form.

This objection is factually wrong. DuPont has been trying to obtain those licenses since it served document requests in March 2010, and the present motion seeks them under the narrowed versions of the same document requests. (*See* Syngenta MTC Br. at 7-10.) Monsanto has given no other reason it should be excused from producing those documents. Accordingly, the Court should grant DuPont's new motion to compel Syngenta's RR1 licenses and any amendments.

Monsanto opposes DuPont's motions for fact and Rule 30(b)(6) testimony related to Monsanto's relationship with Syngenta on the ground it violates the [REDACTED] (Opp. at 23.) This objection misreads the March 30 Order, which held only that the [REDACTED] (March 30 Order at 6.) The Court refused to order production of [REDACTED] (March 30 Order at 7.) The Court did not hold those documents were subject to a confidentiality provision. Monsanto has not provided any reason to believe they are subject to the provision, and if they were, they must be produced because they are indisputably critical to DuPont's antitrust claims and defenses. Accordingly, the Court should order Monsanto to allow its witnesses to testify.

## CONCLUSION

For all of the foregoing reasons, DuPont respectfully requests that the Court enter an order granting the relief set out in its opening brief. (*See* Syngenta MTC Br. at 39.)

Dated: September 15, 2011

Respectfully submitted,

**LEWIS, RICE & FINGERSH, L.C.**

By: /s/ C. David Goerisch
Andrew Rothschild, #23145MO
C. David Goerisch, #48418MO
600 Washington Avenue, Suite 2500
St. Louis, Missouri 63101
(314) 444-7600
(314) 241-6056 (facsimile)
arothschild@lewisrice.com
dgoerisch@lewisrice.com

Leora Ben-Ami
Thomas F. Fleming
Christopher T. Jagoe
Howard S. Suh
**KAYE SCHOLER LLP**
425 Park Avenue
New York, New York 10022
(212) 836-8000
(212) 836-8689 (facsimile)
lbenami@kayescholer.com
tfleming@kayescholer.com
cjagoe@kayescholer.com
hsuh@kayescholer.com

Donald L. Flexner
**BOIES, SCHILLER & FLEXNER LLP**
575 Lexington Avenue, 7th Fl.
New York, New York 10022
(212) 446-2300
(212) 446-2350 (facsimile)
dflexner@bsfllp.com

James P. Denvir
Amy J. Mauser
**BOIES, SCHILLER & FLEXNER LLP**
5301 Wisconsin Avenue, N.W.
Washington, D.C. 20015
202-237-2727
202-237-6131 (facsimile)
jdenvir@bsfllp.com
amauser@bsfllp.com

***Counsel for Defendants E.I. du Pont de Nemours and Company and Pioneer Hi-Bred International, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2011, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

- **Steven M. Berezney**
steve.berezney@huschblackwell.com
- **Kurt G. Calia**
kcalia@cov.com
- **Matthew A. Campbell**
macampbell@winston.com
- **Scott W. Clark**
sclark@mwe.com
- **Joseph P. Conran**
joe.conran@huschblackwell.com
- **Todd J. Ehlman**
tehlman@winston.com
- **Anthony J. Franze**
Anthony.Franze@aporter.com
- **Greg G. Gutzler**
greg.gutzler@huschblackwell.com
- **James M. Hilmert**
jhilmert@winston.com
- **George C. Lombardi**
glombardi@winston.com
- **Kurt A. Mathas**
kmathas@winston.com
- **Omri E. Praiss**
omri.praiss@huschblackwell.com
- **John J. Rosenthal**
jrosenthal@winston.com
- **Mark A. Smith**
markasmith@winston.com
- **Steven G. Spears**
sspears@mwe.com,jjknapp@mwe.com
- **Tamara M. Spicer**
tamara.spicer@huschblackwell.com,jean.melenbrink@huschblackwell.com
- **Gail J. Standish**
gstandish@winston.com
- **Dan K. Webb**
dwebb@winston.com

/s/ C. David Goerisch