UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MONSANTO COMPANY and MONSANTO TECHNOLOGY LLC, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Case No. 4:09CV00686 ERW ) |
| E.I. DU PONT DE NEMOURS AND COMPANY and PIONEER HI-BRED INTERNATIONAL, INC., | ) ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM AND ORDER**

This matter comes before the Court in connection with the *in camera* review of allegedly privileged documents related to Plaintiffs' Monsanto Company and Monsanto Technology LLC's ("Monsanto") Ninth Motion to Compel Production of Withheld Documents [ECF No. 750] and Defendants E.I. du Pont de Nemours and Company and Pioneer Hi-Bred International, Inc.'s ("Defendants") Cross-Motion to Compel Production of Withheld Documents [ECF No. 767]. In this Memorandum and Order, the Court addresses Monsanto's partially privileged redacted and unredacted documents, binders 1-29; Monsanto's supplemental binder of August 4, 2011; Monsanto's supplemental binder of previously produced redacted documents; and Defendants' redacted documents, volumes 1 - 46.

**I.     ATTORNEY - CLIENT PRIVILEGE**

One common formulation of the attorney- client privilege is that "where legal advice of any kind is sought from a professional legal advisor in his capacity as such, the communications relevant to that purpose, made in confidence by the client, are at his instance permanently protected from disclosure by himself or by the legal advisor except the protection be waived." *Diversified*

*Industries, Inc. v. Meredith*, 572 F.2d 596, 602 (8th Cir. 1977) (internal quotations and citations omitted). Another formulation is: "(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 403 n.7 (8th Cir. 1987) (internal quotations and citations omitted).

Under these formulations, "[a] communication is not privileged simply because it is made by or to a person who happens to be a lawyer." *Diversified Industries*, 572 F.2d at 602. The Eighth Circuit therefore has recognized that including an attorney in a discussion or as an addressee of a communication does not make that communication privileged:

> [T]he special master stated: "A business document is not made privileged by providing a copy to counsel. . . . Thus, those documents from one corporate officer to another with a copy sent to an attorney do not qualify as attorney client communications." [citation omitted]. We perceive no error in this statement of the law . . . .

*Simon*, 816 F.2d at 403.[1] "Just as the minutes of business meetings attended by attorneys are not automatically privileged, business documents sent to corporate officers and employees, as well as the corporation's attorneys, do not become privileged automatically." *Id.* (internal citations omitted). With respect to the level of confidentiality required, the client's "intent to maintain confidentiality" can be inferred from the circumstances, and drafts of documents ultimately intended to be shared with third parties may therefore be privileged if the draft was provided in order to solicit confidential advice concerning its content. *Robbins & Myers, Inc. v. J.M. Huber Corp.*, 274 F.R.D. 63, 84-85 (W.D.N.Y. 2011).

---

[1] The *Simon* court was applying Minnesota law, but the Minnesota standard for attorney-client privilege is identical to the federal standard. For that reason, *Simon* interchangeably cites to Minnesota and federal cases in the opinion.

2

Additionally, "[t]he privilege only protects [against] disclosure of communications; it does not protect [against] disclosure of the underlying facts by those who communicated with the attorney . . . ." *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981). As a result, attorney-client privilege does not cover client communications that "relate only business or technical data," where the client is not sharing that information in order to solicit legal advice. *Simon*, 816 F.2d at 403; *see also Robbins & Myers*, 274 F.R.D. at 86 ("Even if the client's communications with an attorney are confidential, merely because an attorney is consulted by a client does not render the ensuing communications privileged if the purpose of the consultation is to obtain [services] other than legal advice or services.").

In the corporate context, there may also be some question about whether the privilege applies to a low-level employee's communications. The Eighth Circuit has held that in that situation, a communication is privileged if:

> (1) the communication was made for the purpose of securing legal advice; (2) the employee making the communication did so at the direction of his corporate superior; (3) the superior made the request so that the corporation could secure legal advice; (4) the subject matter of the communication is within the scope of the employee's corporate duties; and (5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents.

*In re Bieter Co.*, 16 F.3d 929, 936 (8th Cir. 1994). This same test applies when the person making the communication is not an employee but is instead an independent contractor, such as a consultant. *See id.* at 937.

"[T]he party who claims the benefit of the attorney-client privilege has the burden of establishing the right to invoke its protection." *Hollins v. Powell*, 773 F.2d 191, 196 (8th Cir. 1985).

## II. THE WORK PRODUCT DOCTRINE

The work product doctrine shelters from discovery documents and tangible things that are prepared in anticipation of litigation. Fed. R. Civ. P. 26 (b)(3). This rule especially protects those

3

document and tangible things that contain the mental impressions, "investigative endeavors," conclusions, opinions, or other legal theories of a party's attorney. *In re Murphy*, 560 F.2d 326, 337 (8th Cir. 1977). "The primary purpose of the work product privilege is to assure that an attorney is not inhibited in his representation of his client by the fear that his files will be open to scrutiny upon demand of an opposing party." *Id*. at 334. This privilege is held and may be asserted by the attorney and the client. *In re Green Grand Jury Proceedings*, 492 F.3d 976, 980 (8th Cir. 2007).

The Eighth Circuit has stated the following about the protections that apply to attorney work product:

> There are two kinds of work product–ordinary work product and opinion work product. Ordinary work product includes raw factual information. Opinion work product includes counsel's mental impressions, conclusions, opinions or legal theories. Ordinary work product is not discoverable unless the party seeking discovery has a substantial need for the materials and the party cannot obtain the substantial equivalent of the materials by other means. In contrast, opinion work product enjoys almost absolute immunity and can be discovered only in very rare and extraordinary circumstances, such as when the material demonstrate that an attorney engaged in illegal conduct or fraud.

*Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000) (internal citations omitted). The work product doctrine does not protect documents from discovery unless they were prepared in anticipation of litigation. *Simon*, 816 F.2d at 401 (8th Cir. 1987); *see also* Fed. R. Civ. P. 26 advisory committee's note to 1970 amendment ("Materials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes are not" protected from disclosure as work product.). The test for determining if documents were prepared in anticipation of litigation is "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Simon*, 816 F.2d at 401 (internal citations omitted).

To a certain extent, an attorney or his or her agents must be involved in producing the work product in order for it to be protectible work product. For example, "[s]tatements and documents which represent the impressions and observations of the witnesses and not those of the attorney or his investigators, are not part of the attorney's 'work product.'" *Virginia Elec. & Power Co. v. Sun Shipbuilding & Dry Dock Co.*, 68 F.R.D. 397, 403 (E.D. Va. 1975). However, if these impressions and observations originate from an attorney or a discussion with an attorney, this material then comes within the work product doctrine. *See Simon*, 816 F.2d at 402 (holding that attorney-drafted material found within a document that was prepared in the ordinary course of business and not in anticipation for litigation was protected by the work product doctrine even if the other portions of the document were not protected).

"The work product privilege extends beyond the termination of litigation." *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 731 (8th Cir. 2002). In *Pamida*, the court found that materials prepared in anticipation of an earlier suit between the two parties were entitled to work product protection. *See id.*

Work product protection may be waived. For example, intentionally disclosing the materials to an adversary may waive the protection. *Gundacker v. Unisys Corp.*, 151 F.3d 842, 848. The work product protection remains, however, if the client passes the information generated by the attorney to a non-adversarial party. *Peralta v. Cendant Corp.*, 190 F.R.D. 38, 42 (D. Conn. 1999); *see also Ayers Oil Co. v. Am. Bus. Brokers, Inc.*, 2009 WL 4725297 at *3-4 (E.D. Mo. 2009) (finding privilege intact even though the client forwarded an email containing an attorney's legal advice to a non-adversarial third party). A so-called "at-issue waiver" may also occur "where the client places the subject matter of the privileged communication at issue," in that (1) "proof of a party's legal contention implicates evidence encompassed in the contents of an attorney-client

5

communication – for example, when a client uses reliance on legal advice as a defense or when a client brings a legal malpractice action"; or (2) "a client's testimony refers to a specific privileged document." *Baker*, 209 F.3d at 1055.

### III. DISCUSSION

After reviewing the applicable law, the Court has identified nine principal reasons why a given communication might not be protected from disclosure:

> (1) the communication only concerns underlying facts, such as business or technical data, and was not shared in order to solicit legal advice;
>
> (2) privilege was waived because the communication was disclosed to a third party;
>
> (3) no attorney was involved in the communication and it does not reflect privileged advice from an attorney;
>
> (4) the attorney's only involvement in the communication was as a passive recipient;
>
> (5) the attorney's advice is not legal in nature;
>
> (6) the communication was not made to the attorney for the purpose of obtaining legal advice;
>
> (7) privilege does not extend to the employee who made the communication;
>
> (8) the communication was not intended to be confidential;
>
> (9) the document is attorney work product but the party seeking production has demonstrated that it is discoverable.

Using this rubric, the Court has created comprehensive tables that document its rulings on each produced document. The column on the far right contains the Court's conclusion: "P" (privileged), "WP" (work product), "NP" ("not privileged"), "DWP" (discoverable work product), or some combination thereof. For those documents found not to be protected, the Court also states its rationale, with reference to the list of nine reasons set forth above. Thus, if the Court determined

that a document was not privileged because it only contained underlying facts and was not made in order to obtain legal advice, that column would contain "NP: 1."

The parties presented the redacted documents for review in different formats. The Court is aware of the parties' efforts in preparing and presenting the material to the Court. The "source" of the claimed privilege in Defendants' documents was easier to interpret. The source of privilege in the Court's Rulings on *In Camera* Review (or tables) attached to this order do not always comport with the identification stated by the parties.

The Court has reviewed many hundreds of documents in the past few weeks. Due to the scope of this *in camera* review, the Court recognizes that errors likely have been made in classifying individual documents. Therefore, the Court orders each party to review the attached Rulings on *In Camera* Review (or tables). Within ten (10) days of this order, each party may make up to twenty (20) brief requests to the Court for reexamination of specific documents determined by the Court to be "not privileged."

Any request for reexamination must be accompanied by a brief, individualized statement that explains why the party believes the judgment of "not privileged" is erroneous. Each request must also be supported by legal authority that supports the party's position.

The requests for reexamination are to be compiled in a binder and delivered to the Court. The binder should be organized as follows: a cover page identifying the document number, memorandum in support of a contrary determination, and the document in redacted and unredacted format. The parties should utilize tabs to separate each request for reexamination (tab, cover page, memorandum, document). Parties are to file on CM/ECF a one-page motion for reexamination in order for this Court action to be docketed properly. The Court will <u>not</u> review noncompliant requests.

7

After the Court conducts this reexamination, the Court shall order all documents determined to be "not privileged" in the reexamination and all other documents in the Court's Rulings on *In Camera* Review (or tables), which the Court has determined to be not privileged, delivered to the other party in unredacted format.

The Court is now beginning document review of up to 100 documents designated as fully privileged by each party at the request of the opposing party, which the parties have already delivered to the Court. *See* August 30, 2011 order [ECF No.853]. *See also* ECF Nos. 872, 875.

Accordingly,

**IT IS HEREBY ORDERED** that Monsanto's Ninth Motion to Compel Production of Withheld Documents [ECF No. 750] is **GRANTED in part** and **DENIED in part**.

**IT IS FURTHER ORDERED** that Defendants' Cross-Motion to Compel Production of Withheld Documents [ECF No. 767] is **GRANTED in part** and **DENIED in part**.

**IT IS FURTHER ORDERED** that within ten (10) days of this order, each party may make up to twenty (20) requests for reexamination to the Court as described above.

Dated this 22nd day of September, 2011.

E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE