UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MONSANTO COMPANY and MONSANTO TECHNOLOGY LLC, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Case No. 4:09CV00686 ERW ) |
| E.I. DUPONT DE NEMOURS AND COMPANY and PIONEER HI-BRED INTERNATIONAL, INC., | ) ) ) ) |
| Defendants. | ) ) |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on Monsanto's Motion to Strike Defendants' Requests for Judgment as a Matter of Law for Failure to Preserve under Fed. R. Civ. P. 50 [ECF No. 1621].

**I. BACKGROUND**

Plaintiffs Monsanto Company and Monsanto Technology LLC (collectively, "Monsanto") develop, manufacturer, license, and sell agricultural biotechnology, agricultural chemicals, and other agricultural products. Monsanto has developed certain technologies that allow it to produce genetically-modified seed products by transferring into crop seed one or more genes that give the resulting plants new genetic qualities, called transgenic traits. At issue in this matter was Monsanto's Roundup Ready® ("RR") soybean and corn traits,[1] known by their respective technical names 40-3-2 and NK603, which Monsanto developed upon discovering the CP4 gene,

---

[1] For purposes of this Order, only reference to the soybean trait is significant.

that makes plants resistant to glyphosate, a common herbicide.[2] Monsanto holds United States Patent No. U.S. RE 39,247E ("the '247 Patent"), which covers the 40-3-2 and NK603 traits along with other glyphosate-resistant traits based on the CP4 gene.

In 2002, Monsanto entered into non-exclusive license agreements with Defendant seed manufacturers E.I. DuPont de Nemours and Company and Pioneer Hi-Bred International, Inc. (collectively, "Pioneer"), giving Pioneer the right to manufacture and sell soybean and corn seed with the 40-3-2 and NK603 traits in exchange for the payment of royalties.[3] For purposes of developing the necessary seed lines, the agreements also obligated Monsanto to deliver to Pioneer certain biological materials and proprietary technical information. In 2006, Pioneer unveiled its own glyphosate-tolerant trait technology, known as Optimum® GAT® ("OGAT"), and subsequently began to combine, or "stack," the 40-3-2 trait with OGAT in some genetically-modified soybean seed products it produces.

In response to Pioneer's announcement concerning OGAT, Monsanto brought this action for breach of contract, patent infringement, inducement to infringe, and unjust enrichment, alleging that Pioneer violated Monsanto's contractual and patent rights by producing RR/OGAT stacked seed products. Pioneer counterclaimed for a declaratory judgment that the license agreements permitted it to stack OGAT with the 40-3-2 trait.[4]

---

[2] "Roundup Ready®" refers to Monsanto's glyphosate-tolerant trait technology generally, in the sense that the resulting seed products are "ready" for the use of Monsanto's Roundup® glyphosate herbicide, while 40-3-2 and NK603 refer to the specific Roundup Ready® soybean and corn trait technologies, respectively.

[3] The Amended and Restated Roundup Ready® Soybean License Agreement and the Roundup Ready® Corn License Agreement are identical for the purposes of this discussion.

[4] Pioneer also asserted a number of antitrust counterclaims, alleging that Monsanto has abused its patent monopolies, has inserted anticompetitive restrictions into its license agreements with seed producers, and is attempting to employ an anticompetitive "switching strategy" by using new licensing agreements to shift independent seed companies from the current RR trait

Prior to trial, the parties filed several motions for summary judgment. Pioneer filed unsuccessful motions asking for a grant of summary judgment on invalidity for nonenablement and improper reissue, anticipation and acquiescence [ECF Nos. 1321, 1383, 1394]. Pioneer successfully opposed Monsanto's summary judgment motions on improper reissue, inequitable conduct, enablement, and written description [ECF Nos. 1382, 1384, 1439].

The patent claims came before this Court for a trial by jury. As pertinent to the instant matter, this Court denied Pioneer's pretrial motions, in which Pioneer moved to exclude the opinions and testimony of Monsanto's damages expert witness; to sequence the trial on willfulness and damages after the trial on patent liability; to preclude Monsanto from offering evidence on patent infringement damages, to preclude Monsanto from arguing patent infringement under the doctrine of equivalents of the SEQ ID NO:3 claims, and to preclude Monsanto from offering expert testimony regarding a PHOSITA's[5] knowledge of the state of the art in August 1991, as evidence of enablement [ECF No. 1447]. Upon Pioneer's written request, this Court also clarified that some inequitable conduct issues would be tried to the jury.

At the close of Monsanto's case-in-chief, Pioneer argued 50(a) motions for judgment as a matter of law ("JMOL") on four distinct bases: acquiescence, [ECF No. 1536, July 19, 2012 AM Tr. at 7-24]; willful infringement [*Id*., July 19, 2012 AM Tr. at 25-32; ECF No. 1537, July 19, 2012 PM Tr. at 137-44, 148-50]; literal infringement [ECF No. 1537, July 19, 2012 PM Tr. at

---

seed lines to Roundup Ready 2 Yield®, in order to prevent generic entry into the market and extend Monsanto' patent protection through 2020. On September 16, 2009, this Court entered its Order concluding that a separate trial of Pioneer's antitrust counterclaims was warranted [ECF No. 77]. Accordingly, the patent and antitrust claims were bifurcated. Now that the patent claims have been tried, the separate trial on Pioneer's antitrust counterclaims is docketed to commence in 2013.

[5]PHOSITA: a person having ordinary skill in the art.

151-58, 172-74]; and infringement under the doctrine of equivalents [*Id.*, July 19, 2012 PM Tr. at 158-61, 174]. This Court cautioned Pioneer that it would be confined to the motions raised at that time, stating, "In any written motion I do not want anything beyond the arguments raised today . . ." [ECF No. 1536, July 19, 2012 AM Tr. at 13; ECF No. 1537, July 19, 2012 PM Tr. at 150-51]. Pioneer filed a written motion for JMOL on the basis of non infringement under the doctrine of equivalents [ECF No. 1526]. After hearing argument, this Court denied all four motions [ECF Nos. 1519, 1520, 1521, 1549]. Pioneer renewed these four JMOL motions at the close of their case [ECF No. 1580, July 31, 2012 PM Tr. at 189].

At the close of Pioneer's case, Monsanto presented motions for JMOL on the following defenses and counterclaims: 1) inequitable conduct as to the alleged non-disclosure of the '449 PCT application; 2) improper reissue; 3) anticipation; 4) non-infringement (literal); 5) non-enablement; 6) lack of written description; 7) non-infringement (doctrine of equivalents; 8) obviousness; 9) Obviousness-type double patenting; and 10) acquiescence [ECF Nos. 1552; 1579, July 31, 2012 AM Tr. at 4-31; 1580, July 31, 2012 PM Tr. at 106-91].

With the exception of Monsanto's obviousness motion, Pioneer opposed Monsanto's assertion that it was entitled to JMOL , and Pioneer expressly argued that factual questions existed for the jury to solve on the issues of inequitable conduct, effective filing date of the patent, and best mode [ECF No. 1580, July 31, 2012 PM Tr. at 134, 157, 161, and 182]. At the conclusion of argument regarding Monsanto's motions, Pioneer specifically renewed its earlier JMOL motions on literal infringement, doctrine of equivalents, willful infringement, and acquiescence [ECF No. 1580, July 31, 2012 PM Tr. at 189]. Subsequently, this Court denied the parties' contested JMOL motions [ECF Nos. 1570; 1580, July 31, 2012 PM Tr. at 190-91].

On August 1, 2012, the jury returned its verdict, finding for Monsanto against Pioneer on: Monsanto's Literal Infringement Claims 103, 104, 105 107, 108, 119, 125 and 128; Monsanto's Doctrine of Equivalents Claims 1, 2, 10, 57, 69, 131 and 143; Monsanto's Willful Infringement Claims; Pioneer's Validity Claims; Pioneer's Improper Reissue Claims; and Pioneers' Inequitable Conduct Claims [ECF No. 1569]. The jury awarded reasonable royalty damages to Monsanto in the amount of One Billion Dollars ($1,000,000,000).

Thereafter, the parties participated in a telephonic status conference with the Court on August 29, 2012, to discuss post-trial briefing procedures. The Court granted a request made by Pioneer to file briefs in excess of the Court's fifteen-page limitation, but ordered that the parties' briefs "shall not exceed thirty-five (35) pages in length" [ECF No. 1588].

On September 26, Pioneer filed its thirty-five-page Post-Trial Motion for a New Trial Pursuant to Fed. R. Civ. P. 59 [ECF Nos. 1614, 1615]. Pioneer filed five additional briefs, asserting motions pursuant to Fed. R. Civ. P. 50 and 59. [ECF Nos. 1603, 1604, 1605, 1606, 1608, 1609, 1610, 1611, 1612]. Pioneer renews its JMOL motions regarding acquiescence, willful infringement, literal infringement, and infringement under the doctrine of equivalents, and moves for JMOL for the first time on the following issues: 1) lack of adequate written description; 2) lack of enablement; 3) failure to disclose best mode; 4) failure to name correct inventors; 5) anticipation; 6) earlier priority date; 7) inequitable conduct; and 8) improper reissue [ECF Nos. 1603, 1604 at 1-35, 1611, 1612 at 1-29]. Pioneer also argues, for the first time, that patent damages should not have gone to the jury, due to lack of proof [ECF No. 1613 at 16-21, 29-30].

## II. MONSANTO'S MOTION TO STRIKE DEFENDANTS' REQUESTS FOR JUDGMENT AS A MATTER OF LAW FOR FAILURE TO PRESERVE UNDER FED. R. CIV. P. 50

### A. *Legal Standard*

1. <u>Motion for Judgment as a Matter of Law</u>

Federal Rule of Civil Procedure 50 Judgment as a Matter of Law in a Jury Trial; Related Motion for a New Trial; Conditional Ruling, provides, in pertinent part:

> (a)(2) Motion. A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.
> (b) Renewing the Motion After Trial; Alternative Motion for a New Trial. If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry or judgment – or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged – the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59 . . ..

Fed. R. Civ. P. 50.

A motion for JMOL under Rule 50 "*requires* that the moving party make the motion prior to the time the case goes to the jury." *Douglas Cnty. Bank & Trust Co. v. United Fin. Inc.*, 207 F.3d 473, 477 (8th Cir. 2000) (emphasis in original). Post-verdict motions are not valid unless they have been preceded by a motion for JMOL made at the close of evidence. *Farmland Indus., Inc. v. Morrison-Quirk Grain Corp.*, 54 F.3d 478, 483 (8th Cir. 1995). Some exceptions that may allow the merits of JMOL motion to be heard, even in the absence of timely presentation, have been recognized by courts; however, in all of the recognized exceptions, the movant made some type of motion for JMOL before the case went to the jury. *Douglas Cnty. Bank & Trust Co.*, 207 F.3d at 477-78 (listing three exceptions where a movant may be allowed to challenge verdict without moving for JMOL at close of all evidence: 1) movant's earlier Rule 50(a) was

6

raised prior to close of all evidence and court indicated movant need not renew motion to preserve it; 2) no new evidence was presented after movant's original motion and a tacit understanding existed that movant need not renew motion at the close of all evidence; and 3) a short period of time elapsed between movant's initial motion and the close of all evidence, but the movant failed to renew his motion as directed by the rule).

"Permitting movants for any reason to make an initial motion for judgment as a matter of law after the return of the jury verdict deprives the nonmoving party the opportunity to cure the deficiency in their case, if any exists." *Douglas Cnty. Bank & Trust Co.*, 207 F.3d at 478." "Allowing the motion to go forward would set an unacceptable precedent." *Id.*

The inquiry on a motion made pursuant to Rule 50 ("Rule 50 motion") is the same as that for summary judgment. *Kinserlow v. CMI Corp.*, 217 F.3d 1021, 1025 (8th Cir. 2000). The issue is "[w]hether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* Therefore, a court must not disturb the jury's verdict unless "no reasonable juror could have found for the non-moving party based on the trial record." *Sanders v. May Dep't Stores Co.*, 315 F.3d 940, 943 (8th Cir. 2003). A Rule 50 motion should be granted where the plaintiff fails to make a submissible case of the required elements of a cause of action. *See Charles Woods Television Corp. v. Capital Cities/ABC, Inc.*, 869 F.2d 1155, 1159-61 (8th Cir. 1989).

When deciding a Rule 50 motion, the court draws all reasonable inferences in favor of the non-moving party and may not make credibility determinations or weigh the evidence. *Kipp v. Missouri Hwy & Transp. Comm'n*, 280 F.3d 893, 896 (8th Cir. 2002); *Kinserlow*, 217 F.3d at 1025. A reasonable inference is one which may be drawn from the evidence without resort to speculation. *Kinserlow*, 217 F.3d at 1026. Accordingly, judgment as a matter of law should be

granted if the record contains no proof beyond speculation to support the verdict. *Id.* A court should grant a Rule 50 motion "when all of the evidence points one way and is susceptible of no reasonable inference sustaining the position of the nonmoving party." *Id.* at 1025 (internal quotations omitted). In short, a court should deny a Rule 50 motion if "reasonable jurors could differ as to the conclusion that could be drawn from the evidence." *Walsh v. Nat'l Computer Sys., Inc.*, 332 F.3d 1150, 1158 (8th Cir. 2003) (internal quotation omitted).

2. Motion for New Trial

A motion for a new trial may be granted "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a). "A district court may grant a new trial on the basis that the verdict is against the weight of evidence, if failing to do so would result in a miscarriage of justice." *Harris v. Sec'y, U.S. Dep't of the Army*, 119 F.3d 1313, 1318 (8th Cir. 1997). A new trial is warranted if the court concludes "that the jury quite clearly reached a seriously erroneous result in spite of the clear weight of evidence." *Leichihman v. Pickwick Intern.*, 814 F.2d 1263, 1267 (8th Cir. 1987) (internal quotation omitted).

In making this determination, a court can rely on its own reading of the evidence and is permitted to weigh the evidence. *Harris*, 119 F.3d at 1318. The Eighth Circuit has cautioned, however, that a court "may not reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." *Id.* (internal quotations omitted).

*B.     Discussion*

Monsanto moves to strike the following requests for judgment as a matter of law made under Fed. R. Civ. P. 50(b), on the basis that they were not properly preserved by Rule 50(a)

8

motions during trial: 1) Lack of Adequate Written Description [ECF Nos. 1611, 1612 at 1-6]; 2) Lack of Enablement [ECF Nos. 1611, 1612 at 6-19]; 3) Failure to Disclose Best Mode [ECF Nos. 1611, 1612 at 19-22]; 4) Failure to Name the Correct Inventors [ECF Nos. 1611, 1612 at 22-25]; 5) Anticipation [ECF Nos. 1611, 1612 at 26-27]; 6) Earlier Priority Date [ECF Nos. 1611, 1612 at 27-29]; 7) Inequitable Conduct [ECF Nos. 1603, 1604 at 1-27]; 8) Improper Reissue [ECF Nos. 1603, 1604 at 27-35]; and 9) Defendants' claim that patent damages should not have gone to the jury [ECF no. 1613 at Parts I.A, I.B., and I.F.].

Monsanto further asserts that this Court should strike these motions and their supporting memoranda because they violate the Court's Order limiting the party's opening briefs on post-trial motions to thirty-five (35) pages [ECF No. 1588]. Monsanto opines, "Essentially, [Pioneer] filed over 100 pages of improper briefing under the guise of Rule 50 in order to have additional arguments for a new trial. Their only argument to justify this conduct – that they *told* the Court in advance that they would be filing multiple briefs – is no justification at all" [ECF No. 1628 at 2].

In its Memorandum of Law in Opposition to Monsanto's Motion to Strike, Pioneer declares that it has "complied with the letter and spirit of both Rule 50 and Rule 59 and have clearly preserved their motions for judgment as a matter of law ("JMOL") and for a new trial" [ECF No. 1626]. Pioneer asserts that it is entitled to seek relief under Rule 59 regardless of whether they brought pre-verdict motions under Rule 50, stating that no court has held to the contrary and that this Court "cannot strike [Pioneer's] motions because they properly request a new trial under Rule 59 *in addition* to requesting JMOL under Rule 50(b)" (italics in original) [ECF No. 1626 at 7].

Pioneer further argues that it raised all bases for its motion to vacate, remit or grant a new trial on damages by challenging deficiencies in Monsanto's damages evidence throughout the proceedings, stating that its filing of a pre-trial *Daubert* motion and a motion in limine seeking to exclude Monsanto's damages evidence preserved its ability to seek relief under Rule 59 as a matter of law. Pioneer claims that it disclosed its bases for JMOL on the challenged issues in its pretrial motions; its opposition to Monsanto's motions for summary judgment on enablement, written description, improper reissue, and inequitable conduct; its argument concerning proposed jury instructions; and its motions for summary judgment on anticipation and acquiescence. The Court rejects Pioneer's notice argument. "Under Fed. R. Civ. P. 50(a)(2), a motion for judgment as a matter of law must 'specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.'" *Walsh v. Nat'l Computer Sys., Inc.,* 332 F.3d at 1158. "Adherence to the rule is mandatory." *Id.* For purposes of its JMOL motions, Pioneer failed to preserve its pre-trial arguments by raising them in accordance with Rule 50. Likewise, Pioneer never renewed the arguments it set forth in its summary judgment motions, or in its opposition to Monsanto's summary judgment motions, by moving for JMOL prior to the return of the jury's verdict on any of the bases Monsanto now moves to strike. Pioneer's failure to articulate the challenged issues as grounds for which it sought JMOL deprived Monsanto the opportunity to correct any defects in proof that might otherwise have precluded it from taking the case to the jury. *Id.* As well, Pioneer's noncompliance with the rule deprived this Court of the ability to examine all of the evidence before submitting the question to the jury. *Mathieu v. Gopher News Co.*, 273 F.3d 769, 777 (8th Cir. 2001).

Pioneer claims that it expressly stated at the close of its evidence that it was formally making its Rule 50 motions, and that it identified the specific bases now challenged by

Monsanto, "namely inequitable conduct, improper reissue, written description, enablement, best mode, improper inventorship, anticipation, and priority date" in oral argument immediately preceding the jury charge conference. The record clearly shows that, at the close of Monsanto's case, Pioneer argued that it was entitled to judgment as a matter of law on four distinct bases: acquiescence, willful infringement, literal infringement, and infringement under the doctrine of equivalents. The record also shows that Pioneer formally renewed its motions for JMOL on these four bases at the close of all the evidence, before the claim went before the jury, "I just want to make sure . . . Just for the record, that we renew our earlier JMOLs on literal infringement, doctrine of equivalence, willful infringement, and acquiescence, just for the record, Your Honor" [ECF No. 1580 at 162, 189].

The record, however, does not support Pioneer's assertion that, prior to the jury verdict, it moved for JMOL on the bases of inequitable conduct, improper reissue, written description, enablement, best mode, improper inventorship, anticipation, or priority date. In fact, the trial transcript reveals that, when Monsanto moved for JMOL on these very same bases at the close of all the evidence, Pioneer argued that Monsanto could not prevail as a matter of law because there was sufficient disagreement to require submission to a jury on all these issues.

During its response to Monsanto's motion for JMOL on the issue of inequitable conduct, Pioneer argued, among other things, that credibility determinations were required as to intent to deceive [ECF No. 1580 at 133-35]. Specifically, as to Pioneer's argument regarding priority date and anticipation, the record reveals that, when opposing Monsanto's motion for JMOL on this issue, Pioneer stated, "And I think that the jury has the right to be able to weigh this evidence and determine what the effective filing date of the patent is. And based upon a 1994 effective filing date for these claims, it is unrebutted that the 1992 publication of the PCT application anticipates

all of those claims" [ECF No. 1580 at 161, 173]. Pioneer argued extensively regarding factual determinations needed as to reissue [ECF No. 1580 at 137-52]. Regarding improper inventorship, Pioneer stated, among other things, "So there's plenty of communication going back and forth between Monsanto and agracetus relating to the invented work of getting the glyphosate tolerant soybeans. So we submit, Your Honor, there's substantial evidence to go forward on the question of improper inventorship" [ECF No. 1580 at 187-88]. In opposing Monsanto's best mode argument, Pioneer stated, "But if you do have to look at intent, there's substantial evidence of intent in this case of . . . Monsanto not wanting to disclose what their best mode was. We've seen the inconsistent testimony of the inventors as to what the sequence is in the DNA. . . . So there's plenty of evidence of intent to conceal in this case, Your Honor, and we've heard a lot about it in the inequitable conduct arguments . . . But I think there's substantial evidence for this to go to the jury" [ECF No. 1580 at 182].

After the parties concluded their arguments regarding Monsanto's JMOL motions, and Pioneer renewed its earlier JMOL motions, this Court orally denied, on the record, Monsanto's motions for JMOL on inequitable conduct, reissue, anticipation, infringement, doctrine of equivalents, best mode, and inventorship [ECF No. 1580 at 190-91]. Then, the Court asked whether there were any motions for Rule 50 relief that it had not ruled. After Pioneer inquired about its motion on literal infringement, as well as Monsanto's motions regarding written description and enablement, this Court announced those motions also were denied [ECF No. 1580 at 191]. This Court finds that Pioneer failed to make JMOL motions regarding inequitable conduct, improper reissue, written description, enablement, best mode, improper inventorship, anticipation, or priority date prior to the return of the jury's verdict.

12

The law on this issue is clear. Permitting Pioneer to make its motions for judgment as a matter of law for the first time in its post-trial briefs would be fundamentally prejudicial to Monsanto, as Pioneer's failure to argue these motions in a timely fashion deprived Monsanto of the opportunity to cure any deficiency in its case before the jury returned its verdict. *See Douglas Cnty. Bank & Trust Co.*, 207 F.3d at 478. Allowing Pioneer's JMOL motions on those issues for which no previous Rule 50 motion had been raised would set an unacceptable precedent. *Id.*

Monsanto also moves to strike Pioneer's Post-Trial Motion to Vacate Damages Award Or, in the Alternative, for Remittur or a New Trial on Damages. Pioneer has filed a separate, thirty-five page brief supporting their Motion for New Trial Pursuant to Fed. R. Civ. P. 59[ECF Nos. 1614, 1615]. Pioneer's Motion to Vacate Damages Award, or in the Alternative, for Remittur or a New Trial on Damages is an attempt to expand the briefing on their motion for a new trial by styling the motion as an alternative request. The Court finds that Parts I.A., I.B, and I.F. of Pioneer's brief, which argue that the issue of patent damages should not have been submitted to the jury, due to lack of proof [ECF No. 1613 at 16-21, 29-30], and that the evidence failed to present sufficient disagreement to require submission to a jury, is an improperly preserved request for JMOL.

In its Memorandum of Law in Support of its Post-Trial Motion to Vacate Damages Award, or in the Alternative for Remittur or a New Trial on Damages, Pioneer argues, among other things, that Monsanto's "Head Start" damages theory should not have been presented to the jury. In subparts of this argument, Pioneer argues that: A) the damages award was not tied to Pioneer's actual use of OGAT/RR; B) Monsanto's "Head Start" theory is based on speculation; and F) Dr. Keeley's "Head Start" damages theory is contrary to the treatment of post-verdict infringement. Judgment as a matter of law may be entered only when "a party has been fully

13

heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Reeves v. Sanderson Plumbing Prods, Inc.,* 530 U.S. 133, 149 (2000). Parts I.A, I.B., and I.F. of Pioneer's brief, although purportedly brought under Fed. R. Civ. P. 59(e), are not asking for remittur on grounds that the verdict was clearly excessive; resulted from passion, bias or prejudice; or was so excessive to shock the judicial conscience of the court. *See Duty v. Norton-Alcoa Proppants,* 293 F.3d 481, 496 (8th Cir. 2002) (trial court is within its discretion in remitting verdict only when, after reviewing all evidence in light most favorable to awardee, it is convinced that verdict is so grossly excessive as to shock the court's conscience). Rather, these sections argue that the damages award must be set aside because it was based on inadmissible evidence that should not have been presented to the jury. Basically, in the argument of these sections, Pioneer is asking this Court to determine that there was not a sufficient basis for submission of damages to the jury.

The situation presented here is analogous to that discussed in *i4i Limited P'ship v. Microsoft Corp.*, 598 F.3d 831, 857 (Fed. Cir. 2010). In *i4i Limited P'ship*, Microsoft failed to file a pre-verdict JMOL motion challenging the sufficiency of the damages' evidence. In argument, Microsoft challenged the expert testimony of i4i's damages expert, contending that the expert's royalty rate was exorbitant, and pointing out various weaknesses in his calculations. The Fed Circuit clarified that Microsoft's disagreements were with the expert's conclusions, not his methodology. *Id.* at 854. Regarding Microsoft's challenge to the reasonableness of the damages award, the Court found that "[a]sking whether a damages award is 'reasonable,' 'grossly excessive or monstrous,' 'based only on speculation or guesswork,' or 'clearly not supported by the evidence,' are simply different ways of asking whether the jury's award is supported by the evidence." *Id.* at 856-57. The Court concluded that Microsoft had waived its ability to have the

Court determine that question by failing to file a pre-verdict JMOL on damages. *Id.*; *see also Hyundai Motor Fin. Co. v. McKay Motors I, LLC*, 574 F.3d 637, 642 (8th Cir. 2009) (stating that if the amount of damages was in fact uncontested, Hyundai Finance should have moved for JMOL before case was submitted to jury, and, citing to case law stating that such failure limited its review to whether the record reflected an absolute dearth of evidentiary support for the verdict, holding that, to the extent the appellate court could consider the merits or Hyundai Finance's appeal, the district court's denial of Hyundai Finance's post-verdict motion for JMOL did not constitute manifest injustice).

Pioneer has waived its ability to have this Court consider whether the jury's award is supported by the evidence by failing to file a pre-verdict JMOL on damages. Accordingly, Parts I.A, I.B., and I.F. of the Argument Section of Pioneer's Memorandum of Law in Support of Their Post-Trial Motion to Vacate Damages Award or, in the Alternative, for Remittur or a New Trial on Damages" shall be stricken.

Local Rule 7 - 4.01(D) establishes page limitations for briefs filed with this court, and states that no party shall file any motion memorandum or brief that exceeds fifteen numbered pages, exclusive of the signature page and attachments, without leave of Court. Recognizing the complexity of the action and the significance of the issues involved, this Court granted Pioneer's request for a substantial expansion of the briefing page limitations. The Court cautioned the parties, however, that it was imposing page limitations to avoid the often enormous burden of sorting through the duplicative argument previously found in voluminous briefs in this case. Filing what Pioneer claims to be separate JMOL motions, and alternatively moving for new trial on several issues outside of its Motion for a New Trial, as Pioneer has done here, defeats the purpose of the briefing page limit that was imposed pursuant to this Court's case management

15

order, and disregards the spirit and the meaning of both the scheduling conference and the federal rules of civil procedure.

The Court finds that Pioneer properly moved for JMOL, prior to the return of the jury verdict, on only four bases: acquiescence, willful infringement, literal infringement, and infringement under the doctrine of equivalents. Accordingly, Pioneer's post-trial JMOL motions raising any other grounds are procedurally infirm and this Court will not review them. *See Farmland Indus., Inc.*, 54 F.3d at 483.

Any issue attempted to be raised in "Defendants' Motion For Judgment as a Matter of Law and/or a New Trial on Selected Bases of Their Inequitable Conduct Defense and Counterclaim and on Their Invalidity Defense and Counterclaim on The Bases of Improper Reissue" [ECF No. 1603], "Defendants' Motion For Judgment as a Matter of Law and/or a New Trial on the Issues of Written Description, Enablement, Best Mode, Improper Inventorship, Anticipation and Acquiescence" [ECF No. 1611], and "Defendants' Post Trial Motion To Vacate Damages Award or, in the Alternative, for Remittur or a New Trial on Damages" [ECF No. 1610], and argued in Defendants' Memorandum in support of these motions [ECF Nos. 1604, 1612, 1613], other than acquiescence, willful infringement, literal infringement, and infringement under the doctrine of equivalents properly raised as a matter of law under Rule 50(a), will not be further considered and will be stricken.

Accordingly,

**IT IS HEREBY ORDERED** that Monsanto's Motion to Strike Defendants' Requests for Judgment as a Matter of Law for Failure to Preserve under Fed. R. Civ. P. 50 [ECF No. 1621] is **GRANTED**. Pioneer's following requests for JMOL with supporting memoranda are stricken:

1. Lack of Adequate Written Description. [ECF Nos. 1611, 1612 at 1-6];

2. Lack of Enablement [ECF Nos. 1611, 1612 at 6-19];

3. Failure to Disclose Best Mode [ECF Nos. 1611, 1612 at 19-22];

4. Failure to Name the Correct Inventors [ECF Nos. 1611, 1612 at 22-25];

5. Anticipation [ECF Nos. 1611, 1612 at 26-27];

6. Earlier Priority Date [ECF Nos. 1611, 1612 at 27-29];

7. Inequitable Conduct [ECF Nos. 1603, 1604 at 1-27];

8. Improper Reissue [ECF Nos. 1603, 1604 at 27-35]; and

9. Defendants' request that patent damages should not have gone to the jury

[ECF No. 1613 at Parts I.A, I.B, and I.F.].

Dated this  2nd  day of November, 2012.

E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE