UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MONSANTO COMPANY and | ) | |
| MONSANTO TECHNOLOGY LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:09CV00686 ERW |
| | ) | |
| E.I. DUPONT DE NEMOURS AND | ) | |
| COMPANY and PIONEER HI-BRED | ) | |
| INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Monsanto's Motion to Unseal Orders Rejecting Defendants' Claims that They had Rights to Stack and Access Monsanto's Regulatory Data [ECF No. 1583].

**I.    BACKGROUND**

Monsanto initiated this action against Defendants E.I. Du Pont De Nemours and Company and Pioneer HiBred International, Inc. (collectively, "Defendants"), asserting claims for breach of contract, patent infringement, inducement to infringe, and unjust enrichment. In its Complaint, Monsanto alleged that Defendants violated Monsanto's contractual and patent rights by producing certain stacked seed products, combining Defendants' Optimum® GAT® ("OGAT") trait with Monsanto's Roundup Ready® ("RR") trait in soybeans. Defendants brought several counterclaims against Monsanto, requesting a declaratory judgment that license agreements provided them with the right to stack the traits, and asserting a number of antitrust counterclaims. During the course of this litigation, the Court entered an Order concluding that a separate trial of the antitrust claims was warranted. The patent and antitrust claims were

bifurcated.  Following trial on the patent claims, the jury returned a verdict for Monsanto, and awarded damages in the amount of $ 1 Billion.  The separate trial on Defendants' antitrust counterclaims is docketed to commence in 2013.

On June 28, 2010, the Court entered a Protective Order in this matter.  The Protective Order greatly limits the dissemination of confidential information contained within documents filed with the Court and produced between the parties, in order to protect, among other things, the parties' proprietary, financial, and commercial information. [ECF No. 238].  The Protective Order commands that only three members of each parties' in-house counsel team may review court documents filed under seal.  *Id*.

Pursuant to the Protective Order, the Court has filed under seal several memorandum opinions and orders.  One of those orders, dated June 6, 2012, found that Defendants had "breached" their license agreement with Monsanto by stacking OGAT with RR [ECF No. 1308].  In another order issued that same date, the Court found that Defendants' contention that § 3.01(f) of the license permitted them to research and develop the same stack was "not tenable," "illogical," and "nonsensical" and that Monsanto was not required to provide regulatory letters of access for the stacked product [ECF No. 1309].  Another order dated June 29, 2012, (the "Hatch-Waxman Order") determined, among other things, that Defendants' stacking of OGAT with RR was not otherwise permitted under the safe harbor provision of the Hatch-Waxman Act [ECF No. 1447 at 6-7, "Monsanto's Motion to Exclude All Evidence Regarding Defendants' Hatch-Waxman Safe Harbor Defense"].  Also filed under seal pursuant to the Protective Order was this Court's December 21, 2011 Sanctions Order ("the Sanctions Order") [ECF No. 974].

In the Sanctions Order, the Court found, among other things, that during the period running from 2002 through 2008, e-mails exchanged between several of Defendants' senior

2

business executives, their inside counsel, and their outside counsel, showed that Defendants knew that their 2002 license agreements with Monsanto prohibited them from stacking and commercializing glyphosate-tolerant traits. Notwithstanding this knowledge, Defendants, throughout two years of litigating this matter, stated that they negotiated for stacking rights and always believed they had those rights. The Court's finding in the Sanctions Order included that documents belatedly produced by Defendants showed that, for more than a year, Defendants had made false representations to the Court about issues critical to their breach-of-contract defenses and counterclaims. The egregiousness of Defendants' behavior and the lack of remorse Defendants displayed for their wrongdoing convinced the Court that only the most severe sanctions would deter their misconduct and preclude them from continuing their abuse of the judicial process. Accordingly, in addition to awarding Monsanto attorney's fees incurred from defending Defendants' reformation counterclaim and filing its motion for sanctions, the Court ordered that Defendants' pleadings on the breach-of-contract claims and counterclaims be stricken.

The Court sealed its Sanctions Order to avert the possibility that media coverage might taint or prejudice the patent trial jury pool. Monsanto now moves the Court to unseal these Orders. Defendants oppose only unsealing of the Sanctions Order.

## II. LEGAL STANDARD

Federal courts "recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) (footnotes omitted). This right is not absolute, however, and courts have properly denied access, for example, where the records were sought to "gratify spite or promote public scandal," where they functioned only as "reservoirs of libelous statements for press

3

consumption," and where they contained "business information that might harm a litigant's competitive standing." *Id*. at 598. (internal quotations and citations omitted). Nevertheless, "there is a common law presumption in favor of public access to judicial records." *United States v. McDougal*, 103 F.3d 651, 657 (8th Cir.1996). Because the right to access is not absolute, it "requires a weighing of competing interests." *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 245 F.R.D. 632, 636 (D. Minn. 2007) (quoting *Webster Groves Sch. Dist. v. Pulitzer Publ'g Co.*, 898 F.2d 1371, 1376 (8th Cir.1990)).

The Court has supervisory power over its papers and files, and the decision to seal or unseal a court document is left to sound discretion of the Court, "a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon.*, 435 U.S. at 598-99. However, "only the most compelling reasons can justify non-disclosure of judicial records." *In re Neal*, 461 F.3d 1048, 1053 (8th Cir. 2006) (quoting *In re Gitto Global Corp.*, 422 F.3d 1, 6 (1st Cir.2005)).

The presumption in favor of access places the burden on the party seeking to maintain confidentiality to establish sufficient grounds for prohibiting public access to the record. *See Rohrbough v. Hall*, 2010WL 1998554 at *1 (E.D. Mo. May 19, 2010). "When the concern is the efficient administration of justice and the provision to defendants of fair trials, the consideration of competing values is one heavily reliant on the observations and insights of the presiding judge." *United States v. Webbe, Jr.,* 791 F.2d 103, 106 (8th Cir. 1986) (quoting *Belo Broadcasting Corp. v. Clark*, 654 F.2d 423, 431 n. 18 (5th Cir. 1981)). The Eighth Circuit has not given specific guidance on the competing interests to be weighed by the Court. However, other courts have examined six factors to determine if a party has overcome the presumption in

favor of publication. *Schedin v. Ortho-McNeil-Janssen Pharm., Inc.*, 2011 WL 1831597 at *1 (D. Minn. May 21, 2011) (citing *United States v. Hubbard*, 650 F.2d 293, 318 (D.C. Cir. 1980)).

> Those factors are: (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.[1]

*Schedin,* 2011 WL 1831597 at *1-2 (citing *Doe v. Exxon Mobile Corp.*, 570 F. Supp. 2d 49, 52 (D. D.C. 2008)).

## III. DISCUSSION

Monsanto asserts that, with the patent trial now concluded, the Court should unseal these orders, stating the following reasons: 1) there is no compelling reason to shield from the public this Court's decision relating to its determination of Monsanto's breach-of-contract claims, its declaration of the parties' rights under the seed license agreements, its rejection of Defendants' position that it should be entitled to access Monsanto's technology under the Hatch-Waxman Act, or its finding that Defendants committed fraud upon this Court in an effort to manipulate the judicial process for their own business interests; 2) unsealing the orders would give Monsanto the opportunity to respond to Defendants' public allegations concerning Defendants' right to stack OGAT with RR1, and to Defendants' continued assertions that they did not infringe the Roundup Ready® soybean patent, that the Monsanto patent is invalid, and that actions by Monsanto were

---

[1] For purposes of analysis, these enumerated factors will be referred to as "the six-factor test articulated in *Hubbard*."

preventing regulatory approval and commercialization plans for OGAT soybeans; 3) keeping the Sanctions Order sealed permits Defendants to avoid the financial consequences of their conduct and provides no deterrent effect in precluding similar future conduct by the parties and their counsel, or future unrelated litigants and their counsel; and 4) Defendants can show no compelling reasons justifying continued non-disclosure of these Orders, as the orders contain no confidential information that has not already been made public in the course of this litigation.

In their Memorandum in Opposition to Monsanto's Motion to Unseal Orders [ECF No. 1620], Defendants agree that there is no reason to maintain under seal the two June 6, 2012 orders [ECF Nos. 1308, 1309], or the Hatch-Waxman Order [ECF No. 1447 at 6-7, "Monsanto's Motion to Exclude All Evidence Regarding Defendants' Hatch-Waxman Safe Harbor Defense"]. Accordingly, the Court unseals these Orders [ECF Nos. 1308, 1309, 1447 at 6-7, "Monsanto's Motion to Exclude All Evidence Regarding Defendants' Hatch-Waxman Safe Harbor Defense"] for public dissemination.

However, Defendants do oppose Monsanto's request to unseal the Sanctions Order.

A.  Monsanto's Previous Motion to Unseal [ECF No. 1003]

Monsanto previously filed a motion to unseal the Sanctions Order on January 5, 2012 [ECF No. 1003]. In a Memorandum and Order, dated February 16, 2012, the Court granted in part, and denied in part, Monsanto's January 5 motion [ECF No. 1042]. The Order adopted all aspects of a Stipulation contained within the parties' Consent Motion to Amend the Protective Order [ECF No. 1037-1], and unsealed the Sanctions Order for purposes of dissemination to the individuals listed in the Stipulation (Defendants' and Monsanto's senior executives), and the Department of Justice's Antitrust Division, Transportation, Energy, and Agriculture Section. In all other aspects, however, the Sanctions Order remained sealed.

6

In its January 5 motion to unseal, Monsanto argued that the order should be disseminated to the public in order to undo damage caused by Defendants' media assault against Monsanto. Monsanto submitted exhibits in support of its motion, showing that the misrepresentations Defendants made to the Court, and for which the Defendants were sanctioned, had also been made on several occasions to national media outlets. Monsanto claimed the only way to protect the public was to reveal Defendants' deception through the publication of a redacted version of the Sanctions Order. In their vehement opposition to allowing any public access to the order, Defendants contended that release of the Sanctions Order, even in redacted form, would prejudice them at trial.

In balancing the preference for access and the parties' interests, the Court noted that the angry tenor of Monsanto's motion suggested a strong desire to punish and to publicly shame Defendants. The Court also noted, however, that Monsanto's exhibits showed a calculated, strategic effort by Defendants to demonize Monsanto and to portray themselves as the seed industry's David to Monsanto's Goliath. Thus, due to the its determination to avoid being used as a pawn in the parties' public relations battle, and concern about the impact unsealing the Sanctions Order could have had on the jury pool for the patent trial, the Court found that "it would imprudent of the Court to allow Monsanto to use the Order to fight Defendants' public relations campaign." The Court found that the need for access was outweighed by Defendants' interest in being heard by an unbiased jury. Accordingly, the Court determined that the Order would not be redacted and unsealed for public dissemination until after the jury rendered a verdict in the patent trial.

B. Monsanto's Present Motion to Unseal [ECF No. 1583]

Monsanto contends that the presumption in favor of access to judicial records strongly favors unsealing this Court's prior Orders, as they go the "the very heart" of the commercial dispute over one of the most significant agricultural inventions in U.S. history and reveal the competitive

relationship between two large competitors. Monsanto further claims that unsealing the Orders would "shed light" on DuPont's lack of stacking rights under the license, lack of regulatory rights to stack, and "the extent to which DuPont has attempted to exploit the judicial process for its own gain." Additionally, Monsanto asserts that, as the patent trial has concluded, there is no longer any compelling reason for the Orders to remain sealed because the Court's concern regarding jury pool bias no longer applies.

In their opposition to the Motion to Unseal currently before the Court, Defendants assert that "the same reasons why the Court declined to unseal the December 21 Order in February of this year require that the order remain under seal today." Defendants contend that the "Order is interlocutory, is replete with references to confidential information, risks prejudicing further jury proceedings in this case, and should not be used as a commercial weapon."

Defendants argue that, after the extensive publicity surrounding pretrial rulings and the jury's verdict in the patent trial, any remaining uncertainty concerning the current status of DuPont's legal rights with respect to stacking would be "more than adequately addressed by unsealing the June 6, 2012 Orders and the Hatch-Waxman Order." Pointing out that the antitrust claims in the case are scheduled for trial in 2013 and that the parties are involved in other litigation in this district, Defendants claim that unsealing the Sanctions Order would prejudice these proceedings. They aver that unsealing the Sanctions Order "would serve only to gratify private spite and confer competitive advantage." As well, Defendants assert that unsealing the Sanctions Order would be unfair to non-parties, as the Order "quotes extensively from internal e-mails between DuPont executives, in-house counsel, and research scientists regarding the negotiation and interpretation of DuPont's licensing agreement with Monsanto." They state that redacting names, as suggested by Monsanto in its brief, would not sufficiently mask the identities of the involved individuals.

Monsanto counters that avoiding potential embarrassment resulting from the public learning that Defendants had committed fraud on the court is not a basis to prevent disclosure of the Sanctions Order. Monsanto argues that the presumption favoring public access to judicial records is especially strong where the records concern sanctionable conduct, because public awareness is necessary to redress the wrong and to discourage future misconduct. Monsanto further claims that the Sanctions Order contains no trade secret or competitively-sensitive information; but, rather "concerns only decade-old negotiations over license agreements, the key provisions of which have already been made public." Monsanto asserts that unsealing the Sanctions Order will inform the public that Defendants falsely stated they always believed they had stacking rights, and that the conclusion of the patent trial and the remoteness of the antitrust trial eliminate the danger of jury bias from disclosing the Sanctions Order. Monsanto contends that allowing the Sanctions Order to remain unsealed merely allows Defendants to perpetuate their fraud. This Court agrees.

As an initial matter, the Court notes that the principal reason for refusing Monsanto's previous motion to unseal the Sanctions Order was the Court's unwillingness to compromise Defendants' chance for an unbiased jury in the patent trial. The possibility of prejudice to those opposing disclosure is the fifth factor of the six-factor test articulated in *Hubbard*[2]. Because the patent trial has concluded, the Court's concern regarding negative pretrial publicity is no longer a consideration. Defendants' present claim that unsealing the Sanctions Order will prejudice the antitrust trial or other litigation between them and Monsanto is insufficient to justify maintaining its confidentiality. Defendants have had the opportunity to litigate their legal rights with respect to stacking and have made the issue public. Since the return of the jury verdict, Defendants continue to stand by their position that they did not infringe the Roundup Ready® soybean patent and that

---

[2] 650 F.2d at 318.

the Monsanto patent is invalid. Defendants also continue to represent that they believed that they had a right to stack under their license agreement with Monsanto. In an August 1, 2012, news release, Defendants claimed that several fundamental errors in the case deprived the jury of important facts and arguments and led to the disappointing outcome [ECF No. 1584-1]. Because the Sanctions Order has remained under seal, Defendants have been able to continue their public relations spin. Defendants stated in the news release that the trial evidence "demonstrated clearly that Monsanto's Roundup Ready® soybean patent (RE 39,247) is invalid and unenforceable and that Monsanto intentionally deceived the United States Patent and Trademark Office on several occasions as it sought patent protection."

As discussed, the Court denied Monsanto's previous motion to unseal the Sanctions Order. Recognizing facets of the case would turn on credibility determinations that could be undermined by the findings contained within the Order, the Court was not willing to compromise Defendants' chance at an unbiased jury during trial of the patent claims. Although the patent trial has concluded, Defendants assert that the same reasons for denying the prior motion require that the Sanctions Order remain under seal. However, the jury has already returned a verdict in the parties' patent dispute. Moreover, the antitrust trial, docketed to begin in late 2013, is still quite remote, and the opportunity for voir dire examination will serve to eliminate any jurors who may have been prejudiced by the unsealing of the Sanctions Order. *See Chandler v. Florida*, 449 U.S. 560 (1981). The Court concludes that the potential for prejudice in the antitrust matter does not justify maintaining the Sanctions Order under seal. Accordingly, the fifth factor weighs in favor of unsealing the Sanctions Order.

The Court also finds that the first factor of the six-factor test first articulated in *Hubbard*, the need for public access, weighs in favor of Monsanto's request to unseal the Sanctions Order. The

findings contained within the Order concern important issues in the patent dispute, and could serve to inform the public about our legal system, and to help the public understand some of the basic theories underlying Monsanto's claims and Defendants' defenses.

The Court finds the second factor, prior public access, to be neutral. The Sanctions Order was sealed, subject to a Protective Order, and thus was not available to the public at any prior time. However, the Sanction Order's previous confidential designation does mean that the Order must remain sealed indefinitely, and does not overcome the presumption in favor of access to judicial records.[3] Defendants argue that unsealing the Sanctions Order is not warranted because the public already has substantial access to key information in the Sanctions Order dealing with Defendants' contract rights, and they claim the Order adds nothing to the extensive public record regarding those rights. Defendants are correct that the public is now aware that Defendants had no right to stack OGAT with Monsanto's RR trait. However, the primary findings of the Sanctions Order concern the Defendants' actual knowledge and understanding of their stacking rights under their 2002 license agreement with Monsanto; the Defendants' continued misrepresentation to the public and the Court, contrary to their true subjective knowledge, that they always believed that they had those rights; and the basis for the Court's striking of Defendants' reformation defenses and counterclaims. The findings and conclusions of the Sanctions Order, a judicial record determining Defendants' actual understanding of their lack of stacking rights under the license agreement, have not been made public.

---

[3]This lack of previous access makes this factor somewhat less relevant than it would be to a determination whether more liberal access should be granted to materials previously available on a limited basis. The Court notes, however, that, in denying Monsanto's prior request to unseal, the Court announced that it would reconsider a motion to unseal the Sanctions Order after the jury rendered a verdict in the patent trial. Thus, the parties were aware of the possibility that the Sanctions Order would become public.

Regarding the third factor, the nature of objections and the party objecting, the Court finds this factor weighs in favor of unsealing the Sanctions Order. Defendants and their attorneys knowingly perpetrated a fraud against the Court, and unreasonably protracted the patent litigation to the prejudice of Monsanto. Consequently, the Court finds the Defendants' objection, that unsealing the Order would prejudice other litigation between the parties, gratify private spite, and confer competitive advantage, to be an ironic attempt to wield the Protective Order as both a shield and a sword. The public is entitled to a full disclosure of the Defendants' fraud, which unduly delayed resolution of this litigation.

As to the fourth factor, the strength of any property and privacy interest asserted, the Sanctions Order contains no trade secrets or other confidential research, development or commercial information. The Sanctions Order quoted provisions of the parties' license agreement, however, these provisions were made publicly available during an October 2009 hearing and the patent trial. The only other documents quoted in the Sanctions Order are the e-mail communications that directly contradict Defendants' assertion that they believed they had the right to sell RR/OGAT stacked seeds. Defendants have not pointed to specific private or public interests that need protection, other than their assertion that unsealing the Sanctions Order would be unfair to non-parties, which suggests that access could cause individuals embarrassment or other unpleasant circumstances. Although Defendants have represented the nature of these communications as confidential, the excerpts contained within the Sanctions Order concern only the license agreement, the parties' interpretations of certain of its sections, and negotiations regarding the agreement. Because possible embarrassment or discomfort is not enough to justify sealing court records and the public version of the Sanctions Order could redact individual's names, the fourth factor weighs in favor of unsealing the Sanctions Order.

Finally, the Court finds that the sixth factor, the purposes for which the documents were introduced during the judicial proceedings, weighs in favor of disclosure. The Order concerns sanctions for abuse of the judicial process, and discusses wrongful behavior engaged in by entities and individuals that have legal and ethical obligations to shareholders, the public at large, and the Court. Public awareness of the sanctionable conduct in which Defendants engaged would serve to discourage similar future misconduct by Defendants, their counsel, and non-related litigants and their counsel.

In sum, the Court finds that one of the *Hubbard* factors is neutral, and that the remaining five factors weigh in favor of Monsanto. As a result, the Court determines that Defendants have not met their burden to overcome the presumption in favor of access to judicial records. *See Rohrbough*, 2010 WL 1998554 at *1.

## IV. CONCLUSION

The preference for access to court orders and filings must be weighed with the parties' interests in maintaining confidentiality. In this case, the general public's need for access to the Sanctions Order outweighs Defendants' need for confidentiality.

Accordingly,

**IT IS HEREBY ORDERED** that Monsanto's Motion to Unseal Orders Rejecting Defendants' Claims that They Had Rights to Stack and Access Monsanto's Regulatory Data [ECF No. 1583] is **GRANTED** .

**IT IS FURTHER ORDERED** that the two June 6, 2012, Orders [ECF Nos. 1308, 1309] and the Hatch-Waxman Order [ECF No. 1447 at 6-7, "Monsanto's Motion to Exclude All Evidence Regarding Defendants' Hatch-Waxman Safe Harbor Defense"] are **UNSEALED**.

**IT IS FURTHER ORDERED** that the December 21, 2011 Memorandum and Order [ECF No. 974], as redacted, is **UNSEALED**.

Dated this   16th   day of November, 2012.

                                                                                    _____
                                                                                    E. RICHARD WEBBER
                                                                                    SENIOR UNITED STATES DISTRICT JUDGE